IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP., Plaintiff, v. THE UNITED STATES, Defendant, and ROSE ELECTRONICS, Proposed Defendant-Intervenor. | No. 08-69C<br>Judge Lawrence S. Margolis |

DEFENDANT'S REPLY TO PLAINTIFF AVOCENT REDMOND CORP.'S OPPOSITION TO ROSE ELECTRONICS' MOTION TO INTERVENE

GREGORY G. KATSAS
Acting Assistant Attorney General

JOHN FARGO
Director

ROBERT G. HILTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0346
Telefax: (202) 307-0345

June 12, 2008

# TABLE OF CONTENTS


TABLE OF AUTHORITIES. .......... ii

LIST OF ATTACHMENTS. .......... iv

I. STATEMENT OF FACTS. .......... 2

II. DISCUSSION. .......... 5

A. ROSE BY RIGHT CAN INTERVENE UNDER 41 U.S.C. § 114(b). .......... 5

1. Intervention Serves the Purpose of 41 U.S.C. § 114(b). .......... 5

2. Intervention By Rose Promotes Judicial Economy. .......... 7

3. Intervention By Rose Avoids Inconsistent Judgments Against the Government. .......... 7

B. ROSE HAS THE RIGHT TO INTERVENE UNDER RCFC 24(a)(2). .......... 8

1. Rose Has an Interest Relating To the Potential Infringement of the KVM's It Provided To the Government. .......... 8

2. Disposition of the Action May Practically Impair or Impede Rose's Ability to Protect It's Interest. .......... 12

3. Rose's Interest Is Not Adequately Represented By the United States. .......... 14

C. ROSE SHOULD BE PERMITTED TO INTERVENE UNDER RCFC 24(b)(2). .......... 15

1. Rose's Defenses and the Government's Defenses Contain Common Questions of Law and Fact. .......... 15

2. Rose's Intervention Will Not Delay or Prejudice the Adjudication of the Rights of Plaintiff or the Government. .......... 15

3. Rose Must Participate In the Formulation Of a Protective Order. .......... 16

III. CONCLUSION. .......... 17

# TABLE OF AUTHORITIES

## CASES

*Am. Maritime Trans., Inc. v. United States*,
870 F.2d 1559 (Fed. Cir. 1989) ........ 8, 9, 10, 11

*Armour of America v. United States*,
70 Fed. Cl. 240 (2006) ........ 17

*Avocent Redmond Corp. v. Rose Electronics*,
No. C06-1711-MJP (W.D. Washington) ........ passim

*Belton Indus., Inc. v. United States*,
6 F.3d 756 (Fed. Cir. 1993) ........ 3

*Bowser, Inc. v. United States*,
420 F.2d 1057 (Ct. Cl. 1970) ........ 6

*Carrier Corp. V. United States*,
534 F.2d 250 (Ct. Cl. 1976) ........ 12

*Formulabs, Inc. v. Hartley Pen Co.*,
275 F.2d 52 (9th Cir. 1960),
*cert. denied*, 363 U.S. 830 (1960) ........ 16

*Gasquet v. Johnson*,
1 La. 425 (1830) ........ 10, 11

*Honeywell International, Inc. v. United States*,
71 Fed. Cl. 759 (2006) ........ 11, 12, 13, 16

*Horn v. Volcano Water Co.*,
13 Cal. 62 (1859) ........ 9, 10, 11

*Klamath Irrigation Dist. v. United States*,
64 Fed. Cl. 328 (2005) ........ 13

*Maryland Cas. Co. v. United States*,
141 F. Supp. 900 (Ct. Cl. 1956) ........ 6

*Northrop Grumman Information Technology, Inc. v. United States*,
74 Fed. Cl. 407 (2006) ........ 16

*Penda Corp. v. United States*,
44 F.3d 967 (Fed. Cir. 1994)........................................................................................ 12

*Rockwell Int'l Corp. v. United States*,
31 Fed. Cl. 536 (1994)........................................................................................ 6

*Smith v. Gale*,
144 U.S. 509 (1892)........................................................................................ 9, 10, 11

*United States v. Am. Tel. & Tel.*,
642 F.2d 1292 (D.D.C. 1980)........................................................................................ 9, 10, 11

*Wolfchild v. United States*,
72 Fed. Cl. 511 (2006)........................................................................................ 6

**STATUTES**

28 U.S.C. § 1295(a)(3)........................................................................................ 12

28 U.S.C. § 1498(a)........................................................................................ 2, 3, 6

41 U.S.C. § 114(b)........................................................................................ passim

**MISCELLANEOUS**

RCFC 14(a)........................................................................................ 5, 12

RCFC 24(a)(2)........................................................................................ passim

RCFC 24(b)(2)........................................................................................ 5, 15, 16, 17

RCFC 26(c)........................................................................................ 4

## LIST OF ATTACHMENTS

*Avocent Redmond Corp. v. Rose Electronics*, No. C06-1711-MJP, Order Striking Avocent's Motion for a Protective Order (W.D. Washington, June 6, 2007)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AVOCENT REDMOND CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | No. 08-69C |
| | ) | |
| Defendant, | ) | Judge Lawrence S. Margolis |
| | ) | |
| and | ) | |
| | ) | |
| ROSE ELECTRONICS, | ) | |
| | ) | |
| Proposed Defendant-Intervenor. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF AVOCENT REDMOND CORP.'S
OPPOSITION TO ROSE ELECTRONICS' MOTION TO INTERVENE

Defendant, the United States, hereby replies to Plaintiff's opposition to Rose Electronics' (Rose) motion to intervene. As a practical matter, if Rose is not allowed to intervene, the government could be subject to a judgment for liability for infringement of the patents in suit, that may become inconsistent with a judgement that Rose is *not* liable for indemnity because the patents in suit are held *not* infringed or *not* valid in other litigations. The potential inconsistency arises not only from the co-pending case of *Avocent Redmond Corp. v. Rose Electronics*, No. C06-1711-MJP (W.D. Washington) (the Washington case), but also from the pending reexamination proceedings and a request for reexamination on the four patents in suit. In addition, the resources of the courts and the parties are best conserved by permitting Rose's intervention.

## I. STATEMENT OF FACTS

In this lawsuit, Plaintiff seeks compensation for the alleged unauthorized use or manufacture by or for the United States of certain Keyboard Video Mouse (KVM) switching devices. KVM switching devices allow one computer workstation to control multiple computers. These uses and manufactures allegedly infringe several claims in Plaintiff's United States Patent Nos. 5,884,096 (the '096 patent); 6,112,264 (the '264 patent); 6,345,323 (the '323 patent); and 7,113,978 (the '978 patent). Each successive patent resulted from a continuing application from the preceding patent. All four patents rely on substantially the same specification, and all claim the identical effective filing date.

Plaintiff asserts that unnamed federal agencies have ordered accused KVM switches against GSA Supply Schedule Contract GS-35F-0345J, March 30, 1999 (the supply schedule contract), issued to Rose Electronics. Clause C.1(h), page 22, of the supply schedule contract is a patent indemnity clause, which states that:

> [t]he Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(Exh. 1, Clause C.1[h], appended to Def. Mot. To Notice Rose, filed Mar. 11, 2008) Based on this patent indemnity clause, a judgment against the Government affects Rose as an indemnitor.

As stated in Paras. 5 and 6 of the Complaint, the present case is a spinoff of the Washington case. All of the accused product lines in the present case have been accused in the Washington case. Rose raised 28 U.S.C. § 1498(a) in the Washington case as a defense for those accused items that were sold to the Government. The present action seeks compensation for

those accused sales which have been excluded from the Washington case under Section 1498(a).[1] In the Washington case, Plaintiff asserted only the ‘096 patent, the ‘264 patent, and the ‘978 patent. The present case involves the ‘323 patent, as well as the ‘096 patent, the ‘264 patent, and the ‘978 patent.

Rose raised a number of defenses in the Washington case, including invalidity. In connection with the invalidity defenses, Rose was granted reexamination requests by the United States Patent and Trademark Office (PTO) pertaining to the three patents asserted in the Washington case. In order not to be inconsistent with the findings of the PTO, the Washington court stayed its case, pending the outcome of the reexamination requests. On June 6, 2008, Rose also filed a reexamination request pertaining to the ‘323 patent. Thus, all four of the related patents in suit are now, or may well be, the subjects of reexamination proceedings.

Plaintiff filed the present action on January 31, 2008. Pursuant to 41 U.S.C. § 114(b), Rose was served with Notice of the Complaint on March 31, 2008. Rose timely filed its Motion to Intervene on May 12, 2008. *See*, *Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993).

Defendant takes issue with the characterization in the opening sentence of Plaintiff's Brief, which alleges "that Rose seeks to intervene in this case in order to compound costs and to delay resolution of Avocent's claims." Yet, there is no indication that Rose's presence will delay resolution. Indeed, its participation as a party, rather than a non-party witness, may

---

[1] Defendant's current understanding is that the *dollar amount* in the present case is likely to be no more than 13% of the total accused Rose sales. Defendant's information is that the *number of units* in the present case is likely to be no more than 4% of the total accused Rose sales. The last sentence of Plaintiff's Brief admits that "the amount in controversy [in the present case] is relatively small [compared to the amount at issue in the Washington case]."

expedite discovery. Defendant submits that a lawsuit parallel to the Washington case, in which Rose does not participate, would compound costs. The issues in the present case are identical to the issues in the Washington case. Rose's reexamination requests also focus on important issues in the present case. Thus, Rose's participation will reduce costs, since its experience in the larger Washington case can be expected to expedite the handling of this case.

Defendant takes further issue with the characterization in Plaintiff's Brief at page 6 that "Rose's participation in this case has generated other unnecessary conflict and delay," referring to Plaintiff's proposed protective order. Specifically, Plaintiff cites an e-mail that it received from Defendant's counsel on May 27, 2008, which states:

> I think that Rose has to have an opportunity to weigh in on this, since they are now a prospective party. Basically, it is their trade secrets at issue. I'm not sure that Rose is happy about this protective order. I need to know what their views are before I can definitively say anything about the order as a whole. Have you asked them if they object to such an order?

(Plt. Exh. 5) It is Defendant's current belief that Plaintiff still has not contacted Rose with regard to the proposed protective order.

RCFC 26(c) requires that a movant for a contested protective order "has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute." *See*, *Avocent*, No. C06-1711-MJP, Order Striking Avocent's Motion for a Protective Order (June 6, 2007) (appended). Thus, contacting an affected party/trade secret owner with regard to a proposed protective order affecting those trade secrets is *not* "unnecessary conflict and delay," as characterized by Plaintiff. In fact, a motion to enter a protective order is premature, if the movant does not first attempt to define the differences between itself and the other parties. Thus,

there is no "unnecessary conflict and delay" in Defendant's suggesting that Plaintiff contact Rose; it is required by the rules, as well as simply prudent practice.

## II. DISCUSSION

### A. ROSE BY RIGHT CAN INTERVENE UNDER 41 U.S.C. § 114(b)

In its memorandum in support of its motion, Rose asserts that it can intervene under 41 U.S.C. § 114(b), RCFC 14(a), RCFC 24(a)(2), RCFC 24(b)(2), and the terms of the Court's Notice, dated March 25, 2008. The government agrees with this assertion.

#### 1. Intervention Serves the Purpose of 41 U.S.C. § 114(b)

In relevant part, 41 U.S.C. § 114(b) states:

> The United States Court of Federal Claims may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, notify such persons to appear to assert and defend such interests. Upon failure to so appear, any and all claims or interests or interests in claims of any such person against the United States, in respect of the subject matter of such suit or proceeding, shall forever be barred and the court shall have jurisdiction to enter judgment *pro confesso* upon any claim or contingent claim asserted on behalf of the United States against any person who, having been duly served with summons, fails to respond thereto, to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States.

Section 114(b) provides that the Court may notify a person having a possible interest in a proceeding to appear to assert and defend its interests. Thus, the language of section 114(b) treats the notification of Rose as an invitation to file an answer as a matter of right.

Intervention in this case by Rose would be consistent with the purpose of section 114(b) as elucidated by the legislative history of section 114(b) that this Court has reviewed in previous cases. As this Court has observed:

> The history of the Act indicated that Subsection 114(b) was created to promote judicial economy by avoiding repetitive litigation of the same issues, as well as to protect the government from potentially inconsistent judgments. Based on this determination, the Court of Claims found that the government could move to have a third party brought into the case and that the court had authority to grant such a request. Subsequent decisions reaffirmed this position.

*Wolfchild v. United States*, 72 Fed. Cl. 511, 534 (2006) (*citing*, *Maryland Cas. Co. v. United States*, 141 F. Supp. 900, 902-04 (Ct. Cl. 1956)); *see*, *Bowser, Inc. v. United States*, 420 F.2d 1057, 1060 (Ct. Cl. 1970) (observing that 41 U.S.C. § 114(b) included an implicit congressional intent that the issues of law and fact not be retried in another court after being tried in the Court of Claims); *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 536, 539 (1994) (*citing*, *Bowser*).[2] The presence of Rose as a third party defendant would serve both to avoid repetitive litigation of issues, as well as to protect the government from potentially inconsistent judgments.

Plaintiff argues that "pursuant to the language of [28 U.S.C. § 1498(a)], the only proper defendant is the United States." Plaintiff's cited authority is the language of Section 1498(a) which reads:

> the owner's remedy shall be by action against the United States in the United States Court of Federal Claims.

(Plt. Brf. at p. 1) Plaintiff does not offer any cases that suggest that this language in Section 1498(a) conflicts with, or limits, Section 114(b). There is nothing in the language of these two sections which suggests that they may be inconsistent with each other. There is nothing which suggests that Rose's contractual indemnity to reimburse the government for patent infringement is any different from, or should be treated any differently from, any other third party interest in

[2] While *Wolfchild*, itself, concerned the issuance of a summons, rather than notice, this passage reflects the Congressional intent underlying notice, as well.

an action in the Court of Federal Claims, contemplated by Section 114(b). Indeed, taken to its logical conclusion, Plaintiff's argument would render Section 114(b) meaningless, since the United States is always the defendant in the United States Court of Federal Claims.

2. Intervention By Rose Promotes Judicial Economy

As a third party defendant, Rose will be able to assert its contentions regarding the validity of the patents in suit and alleged infringement of the KVM's that it provided under the supply schedule contract at the same time that the government is presenting its arguments on these same issues. Yet if intervention is denied, Rose may well raise a number of infringement and validity issues as defenses to an action for indemnification. By allowing Rose to present its arguments in this proceeding, judicial resources will be conserved because the courts only once will have to invest the time necessary to understand the patents in suit and the often technical and nuanced issues that are typical in patent infringement litigation.

3. Intervention By Rose Avoids Inconsistent Judgments Against the Government

Rose's presence as a third party defendant will prevent a scenario wherein the United States is found to infringe the patents in suit, but then is unable to be indemnified by Rose because of a conflicting finding of non-infringement or invalidity of the patents in suit in the Washington case or in the reexamination proceedings. This is a scenario that Plaintiff's Brief suggests. Pl. Brief at 2-3. Defendant submits that this scenario creates an injustice.

Thus, allowing Rose to intervene in this action will serve the purpose of 41 U.S.C. § 114(b) both by conserving judicial resources and by helping the United States avoid inconsistent judgments.

B. ROSE HAS THE RIGHT TO INTERVENE UNDER RCFC 24(a)(2)

The government agrees that Rose has a right to intervene under RCFC 24(a)(2), apart from Section 114(b). In order for someone to intervene as a matter of right, RCFC 24(a)(2) requires the following:

> [1] when the applicant claims an interest relating to the property or transaction which is the subject of the action and [2] the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a)(2) (numerals added). These requirements are to be construed in favor of intervention. *Am. Maritime Trans., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989). Rose meets the requirements for intervention as a matter of right as set forth in RCFC 24(a)(2).

1. Rose Has an Interest Relating To the Potential Infringement of the KVM's It Provided To the Government

At least by virtue of the patent indemnity clause found in the supply schedule contract (Exh. 1, Clause C.1[h], appended to Def. Mot. To Notice Rose, filed Mar. 11, 2008), Rose is obligated to indemnify the United States if the Court holds that the patents in suit are infringed by the KVM's that Rose has provided to the government under the supply schedule contract. The argument in Plaintiff's Brief at page 2 that an indemnification "claim may ever be filed" is ill-conceived. Government officials, who are presumed to act in good faith, are obligated to

protect the government's interest. The government will enforce against Rose the patent indemnity clause of the supply schedule contract. By operation of this patent indemnity clause, Rose will be liable to indemnify the government should judgment for infringement of the patents in suit be entered. Therefore, Rose does have a real financial interest relating to the finding that government's use of the KVM's provided by Rose infringe the patents in suit.

Plaintiff's Brief at page 2 construes the patent indemnity clause to mean that the government "must first file a claim against Rose" before Rose will have sufficient interest to become a third party defendant. That interpretation conflicts with the plain language of the indemnity clause, which suggests that the liability resulting from the Court of Federal Claims proceedings must precede any claim against the contractor. Thus, there can be no requirement that the government "must first file a claim against Rose."[3]

Plaintiff's Brief at page 2 cites *Am. Maritime*, 870 F.2d at 1561, for the proposition that "[i]ntervention is proper only to protect those interests which are 'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'" (*quoting*, *United States v. Am. Tel. & Tel.*, 642 F.2d 1292 (D.D.C. 1980) (*quoting*, *Smith v. Gale*, 144 U.S. 509, 518 (1892) (*quoting*, *Horn v. Volcano Water Co.*, 13 Cal. 62 (1859))). Plaintiff then concludes that contractual indemnity liability is not a "direct and immediate" interest.

However, a review of the cases from which the "direct and immediate" test has evolved indicates that it was born out of disputes involving property rights, and interpreted an

[3] In addition, any ongoing contract between the government and Rose (such as the supply schedule contract) may permit the government to recover its indemnification through an offset against payments due to Rose.

intervention provision of the Louisiana Civil Code and similar provisions in force in California and the Dakota Territory that are different from RCFC 24(a).

The genesis of the phrase cited in *American Maritime* is *Gasquet v. Johnson*, 1 La. 425 (1830). In *Gasquet*, the third party requesting intervention had seized property of the defendant on which it had an attachment that was secondary to an attachment held by the plaintiff, Gasquet. According to the court, under the Civil Code of Louisiana, it was improper to allow the third party to intervene in order to sabotage Gasquet's action so that the property seized by the third party could be used to satisfy the defendant's debt to the third party. *Id*.

As in *Gasquet*, the courts in *Horn*, and *Smith* were deciding whether a party with some interest in property could intervene under a statute similar to that found in the Civil Code of Louisiana. The court in *AT&T* removed the test applied in *Gasquet*, *Horn*, and *Smith* from the context of property rights by applying it to allow a third party to intervene under Rule 24(a) of the Federal Rules of Civil Procedure so that the third party could assert its work product privilege in otherwise discoverable documents. *See*, *AT&T*, 642 F.2d at 1292.

Similarly, in *American Maritime* the Court was interpreting Rule 24(a) of the Rules of the U.S. Claims Court, not a statute similar to the intervention statute found in the Civil Code of Louisiana.[4] *Am. Maritime* at 1560 n.3 (Rule 24(a)(2) of the U.S. Claims Court appears to have

---

[4] According to the court in *Gasquet*, Article 390 of Louisiana's Code of Practice stated: "In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit." *Gasquet*. Similarly, according to the court in *Horn*, California's provision stated "any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both." *Horn*, 13 Cal. at 63. Section 90 of the Dakota Code of Civil Procedure similarly stated: "Any person may, before trial, intervene, in any action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both . . .." *Smith* at 517.

been the same as present RCFC 24(a)(2)). Furthermore, the third party's interest was not an interest in property, but rather a fear of potential future subsidized competition arising from litigation between a competitor and the United States. *Id*. at 1561.

Thus, because RCFC 24(a)(2) is not similar to Louisiana's Code of Practice discussed in *Gasquet*, or California's intervention provision discussed in *Horn*, or the Dakota Territory's intervention provision discussed in *Smith*, this Court should not apply the cited *American Maritime* test. Furthermore, because the application of Rule 24(a)(2) in *AT&T* did not involve property rights, this Court should not apply the cited *American Maritime* test.

Even if this Court were to apply this test, however, Rose should still be able to intervene under RCFC 24(a)(2). The certain effect of the patent indemnity clause found in the supply schedule contract stands in contrast to circumstance found in *American Maritime*. According to *American Maritime*, the third party's "fear of future subsidized competition" was contingent on something as uncontrollable as the policies of the Israeli government. *Am. Maritime*, 870 F.2d at 1561. In contrast, Rose's interest is direct and immediate in character because under the patent indemnity clause of the supply schedule contract Rose is required to indemnify the government if the KVM's it provided to the government are found to infringe the patents in suit. Thus, Rose "will either gain or lose by the direct legal operation and effect of the judgment." *See*, *Id*.

Plaintiff's Brief at page 3 states that *Honeywell International, Inc. v. United States*, 71 Fed. Cl. 759, 762-64 (2006), improperly allowed a patent indemnitor to become a third party defendant under RCFC 24(a)(2). Yet Plaintiff fails to recognize the distinction between the ability to appeal independently and the basis for a right to intervene under 41 U.S.C. § 114(b) or RCFC 24(a)(2). With respect to appeals jurisdiction, a party may only appeal a judgment against

itself. A mere *interest* is insufficient to establish jurisdiction for an appeal. A party may not appeal a finding that does not affect a judgment. A party may not appeal a judgment against a co-party. 28 U.S.C. § 1295(a)(3) ("jurisdiction–of an appeal from a final decision"); *Penda Corp. v. United States*, 44 F.3d 967, 971-72 (Fed. Cir. 1994). The reason that Cadillac Products, Inc. could not appeal the *Penda* case is that judgments of the United States Court of Federal Claims are only against the government. Cadillac's mere "interest" in the case did not amount to a judgment against it and was, therefore, insufficient to establish jurisdiction for an appeal. *Id*.

By contrast, 41 U.S.C. § 114(b) and RCFC 24(a)(2) provide that a "possible interest" or a "claimed interest" is sufficient to establish the right to intervene as a third party. *Honeywell*, 71 Fed. Cl. at 764, correctly recognized that L-3 Communication had an "interest" sufficient to allow it to become a third party defendant. *Honeywell* also correctly recognized that a different standard is applied to appeals. *Id.* at 763. *See*, *Carrier Corp. V. United States*, 534 F.2d 250, 251 (Ct. Cl. 1976) (holding that an RCFC 14(a) (then-Rule 41) notice should issue when party "appears" to have an interest).

2. Disposition of the Action May Practically Impair or Impede Rose's Ability to Protect It's Interest

Plaintiff's Brief at page 3 points out that, under *Penda*, 44 F.3d at 972-73, even if Rose is allowed to intervene, it will not have the ability to appeal judgments of this Court to the Federal Circuit independently of the government. Plaintiff's Brief also points out that, under *Penda*, a party in Rose's position would be able to raise the issue of patent invalidity in the Washington case. Nevertheless, a decision from this Court finding a patent valid and infringed might have some substantial effect on the ability of Rose to credibly argue to the Washington court that this

Court's ruling was incorrect. *See*, *Honeywell*, 71 Fed. Cl. at 765, *quoting*, *Klamath Irrigation Dist. v. United States*, 64 Fed. Cl. 328, 336 (2005) ("adverse precedents that undoubtedly will be wielded against it in the future").

Because Rose's presence as a third party defendant could avoid duplicate litigation of infringement and validity, preventing Rose from being able to offer helpful arguments regarding invalidity or non-infringement of the patents in suit will impair judicial economy as well as, practically speaking, impede Rose's ability to protect its interests in avoiding indemnifying the government for infringement of the patents in suit.

The practicality of intervention of Rose is born out in the legislative history of 41 U.S.C. § 114(b) as discussed above. In particular, judicial economy would be served by allowing Rose to intervene in this litigation. As discussed above, by allowing Rose to present its arguments in this proceeding, judicial resources will be conserved because the courts only once will have to invest the time necessary to understand the patents in suit and the often technical and nuanced issues that are typical in patent infringement litigation.[5]

The expense of monitoring this litigation, in addition to presenting invalidity or non-infringement arguments in the Washington court or in the PTO action, may also practically impair Rose's ability to protect its interests. Preventing Rose from participating in the present litigation does not relieve Rose from remaining informed about this litigation. The added expense of attorneys fees associated with remaining aware of the present litigation as well as attorneys fees in any subsequent actions involving the patent indemnity provision related to

[5] In addition, the courts and parties are likely to conserve resources by benefitting from the reexaminations by the PTO.

crafting invalidity and non-infringement arguments around the arguments presented in this case could, as a practical matter, impede Rose's ability to protect its interests. Thus, there are real cost savings to be had by Rose by being an intervenor in this litigation rather than forcing Rose in a subsequent litigation to re-argue or rehash arguments made in this litigation.

3. Rose's Interest Is Not Adequately Represented By the United States

The statements in Plaintiff's Brief at page 4, that "a judgement against the United States will have no collateral effect against Rose" and "Rose and the Government have exactly the same interest" are not correct. The government's interest in this case is to minimize its liability for infringement of the patents in suit. A finding of non-infringement or invalidity of the patents in suit would be the optimum outcome, from the government's perspective, because a finding of infringement would mean potential further litigation with Rose to enforce the patent indemnity clause of the supply schedule contract. Rose's interest in this litigation is limited to proving either invalidity of the patents in suit or non-infringement of the patents in suit. Thus, while some common interest is shared, Rose's interests and the government's interests are not identical. Specifically, because the government would be able to collect from Rose under the patent indemnity clause of the supply schedule contract, Rose has even more to lose in this litigation than does the government.

C. ROSE SHOULD BE PERMITTED TO INTERVENE UNDER RCFC 24(b)(2)

The government agrees with Rose that the Court should permit Rose to intervene in this action as is allowed under RCFC 24(b)(2).

1. Rose's Defenses and the Government's Defenses Contain Common Questions of Law and Fact

As discussed above, both the government and Rose have a shared interest in proving either invalidity of the patents in suit or non-infringement of the patents in suit by the KVM's provided to the government by Rose under the supply schedule contract. Potentially, Rose might present additional invalidity or non-infringement arguments, however, the subject matter of Rose's defenses to infringement and the government's defenses to infringement will contain the common question of "whether the patents in suit are valid," and "whether the patents in suit are infringed."

2. Rose's Intervention Will Not Delay or Prejudice the Adjudication of the Rights of Plaintiff or the Government

Contrary to the statements in Plaintiff's Brief at pp. 5-6, Rose's intervention will not unduly delay or prejudice the adjudication of the rights of the Plaintiff or the government. Rose's motion comes before discovery has commenced and it has not sought any additional time to accommodate its participation. From the government's perspective, Rose's intervention would encourage the swift resolution to these proceedings because Rose would be subject to the broader discovery obligations of a party. In addition, Rose's intervention would allow Rose to make all of its arguments regarding invalidity and non-infringement of the patents in suit in this

proceeding, which should allow any future proceedings involving indemnification under the patent indemnity clause of the supply schedule contract proceed more swiftly than if Rose had to attempt to present its arguments for the first time in an enforcement action.

Moreover, Rose's participation is essential to any settlement of this case. Since it is the indemnitor, the government would certainly consult Rose before settling any indemnified claim.

Furthermore, Rose's intervention will not unduly delay or prejudice the adjudication of the rights of the Plaintiff. Rose would not be expected to raise substantially different issues to the infringement and validity issues already present in this case, nor can it inject counterclaims or cross-claims in this Court. Moreover, it has not sought to lengthen the proceedings in this case, and Plaintiff could object to any schedule proposed by the government and Rose, if it felt that the schedule created undue delay.

3. Rose Must Participate In the Formulation Of a Protective Order

In addition, with regard to the proposed protective order, which is discussed in Plaintiff's Brief at page 6, Defendant is not in a position to speak to Rose's interests in its trade secrets, which is the main subject of the proposed protective order. Yet, Plaintiff suggests the Defendant should nevertheless do so. Defendant submits that, in considering Rose's motion under RCFC 24(b)(2), Rose's interest in protecting its trade secrets should also be considered. *See*, *Honeywell*, 71 Fed. Cl. at 767. In fact, a trade secret owner's interest in protecting its business secrets, alone, is sufficient to allow intervention under RCFC 24(a)(2). *Formulabs, Inc. v. Hartley Pen Co.*, 275 F.2d 52, 65 (9th Cir. 1960), *cert. denied*, 363 U.S. 830 (1960); *Northrop Grumman Information Technology, Inc. v. United States*, 74 Fed. Cl. 407, 408-09 (2006);

*Armour of America v. United States*, 70 Fed. Cl. 240, 242 (2006). In the latter three cases, the intervention was limited to protecting the trade secrets, inasmuch as that was the extent of the "possible interest" or "claimed interest."

## III. CONCLUSION

Rose has the right to intervene in this litigation pursuant to 41 U.S.C. § 114(b) and RCFC 24(a)(2). In the alternative, the Court has discretion to permit Rose to intervene in this litigation under RCFC 24(b)(2), and should do so.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JOHN FARGO
Director

s/Robert G. Hilton
ROBERT G. HILTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0346
Telefax: (202) 307-0345

June 12, 2008