**HOWREY** LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Bert C. Reiser**
Partner

reiserb@howrey.com

June 12, 2008

BY ELECTRONIC FILING AND MAIL

Clerk of the Court
United States Court of Federal Claims
Howard T. Markey Federal Courts Building
717 Madison Place, N.W.
Washington, DC 20005

**Re: *Avocent Redmond Corp. v. United States*, Case No. 08-69C**

Dear Sir or Madam:

Enclosed herewith please find Rose Electronics' Corrected Reply Supporting its Motion to Intervene. Although Rose filed a version of this Reply earlier this today, it inadvertently omitted Exhibit 1. This filing corrects that omission. The filings are otherwise identical.

We regret any confusion or inconvenience this error may have caused the Court or the parties. Should you have any questions with respect to this filing, please do not hesitate to contact the undersigned.

Respectfully submitted,

Bert C. Reiser
Counsel for Proposed Defendant-Intervener
Rose Electronics

BCR:
Enclosure

cc: Counsel of Record

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant,<br>and<br>ROSE ELECTRONICS,<br>Proposed Defendant-Intervenor. | No. 08-69C<br>Judge Lawrence S. Margolis |

## <u>ROSE ELECTRONICS' CORRECTED REPLY SUPPORTING ITS MOTION TO INTERVENE</u>

Plaintiff apparently would like this Court to enter judgment that numerous products designed, manufactured, and sold by Rose infringe four different patents—without Rose being allowed to appear and defend its products. Instead, Plaintiff would prefer that if it prevails against the United States in this case, that the Court have a second trial (an indemnity action between Rose and the United States) in which the parties will re-try the exact same patent validity, infringement and enforceability issues as in this case. RCFC 24 precludes the duplication, expense, and burden that will ensue under plaintiff's effort to sideline Rose. Indeed, this Court on several occasions—including the recent *Honeywell* decision—rejected the exact same arguments plaintiff presents in its opposition, favoring intervention by parties like Rose that have a direct interest in the case and would like to appear, be heard, and defend themselves.

### *A. Avocent Jumbles Together the Tests for Intervention of Right and Permissive Intervention.*

Rose moved to intervene both as of right (Rule 24(a)(2)) and permissively (Rule 24(b)(2)). Avocent's opposition makes no distinction, yet the tests are distinct. Under Rule 24(a)(2), the court "<u>must</u> permit" intervention: "when [1] the applicant claims an interest



DM_US:21272966_2

relating to the property or transaction which is the subject of the action and [2] the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties." (brackets added). Prejudice to existing parties is not mentioned in Rule 24(a)(2), and is irrelevant to the question of whether intervention of right is appropriate. *See, e.g., Texas Amer. Bank/Galleria, N.A. v. Kozak*, 958 F.2d 80, 84 (5th Cir. 1992); *Lelsz v. Kavanagh*, 710 F.2d 1040, 1045 (5th Cir. 1983).[1]

Under RCFC 24(b)(2), a third party "may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (emphasis added).

Avocent makes three arguments. It argues that "Rose has no interests in this case" in defending its products against Avocent's multiple infringement charges, but if that is not right, the United States will represent Rose's interests as completely and as vigorously as Rose would if it were allowed to participate. These arguments go to intervention of right under RCFC 24(a)(2). Avocent's final argument is that if Rose is permitted to intervene, it will make more work for Avocent. This is an attempt to show "prejudice," and therefore targets only permissive intervention under RCFC 24(b). As shown below, none of these arguments has merit.

### *B. Intervention of Right is Appropriate.*

Rose is entitled to intervene of right because it has direct interests in this case and the United States may not adequately represent each of those interests. Avocent's arguments to the

---

[1] If the movant unduly delayed in moving to intervene as of right, then prejudice (from the delay only) may be relevant, *see, e.g., Lelsz*, 710 F.2d at 1045, but Avocent does not allege that Rose delayed at all, nor could such an argument be made given that Rose moved to intervene almost immediately after being provided Notice of this suit.

contrary fail even to mention most of Rose's interests, and when it does, Avocent's arguments are directly contradicted by this Court's decision in *Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759 (2006).

### 1. Rose Has Legally Protectable Interests in this Case.

Just as in *Honeywell*, Rose's interests in this case spring from Avocent's allegation that numerous Rose products sold to the United States infringe four different Avocent patents. Rose has several specific and concrete interests: (1) Rose's contract with the United States calls for Rose to indemnify the United States against liability and costs in this case (*see Honeywell*, 71 Fed. Cl. at 764)[2]; (2) Rose and Avocent are engaged in existing litigation involving three of the four patents asserted in this case (*id.* at 765); (3) a finding of infringement in this case will impair Rose's business of selling its accused products (*id.* at 764); and (4) Rose's property interest in and concern regarding protection of its confidential information that will be produced in this case. (*Id.* at 766-67).

Avocent obliquely mentions only one of these interests (indemnity), effectively conceding that Rose's other enumerated interests support intervention. As to Rose's interest through its indemnity obligation to the government, Avocent makes the conclusory argument that this interest is "indirect and contingent" because this obligation does not arise unless and until the government loses. It suggests that the Court, Rose, and the United States ought to re-litigate all the patent validity, infringement and enforceability issues in a subsequent indemnity action between Rose and the United States after (and if) Avocent prevails in this case.[3] The inefficiency and waste inherent in that idea appear obvious; worse, however, is that it precludes Rose from protecting its interests in the first instance, a proposition specifically rejected by

---

2 *See* Exh. 1 (Rose's contract with the Government, pp. G00036, G000245).

3 Avocent speculates that the United States could waive its right to indemnification, but this speculation is not only unsupported by any evidence, but it is also counterintuitive.

*Honeywell*. 71 Fed. Cl. at 765 ("[Intervenor's] indemnification obligation and position as a potential defendant in a separate proceeding where the issue of the potential infringement [of the patent-in-suit] will be an issue more than satisfies a direct and immediate interest relating to [the patent-in-suit] and weighs in favor of [ ] intervention.")

Not contesting that *Honeywell* is directly on point, indistinguishable, and supports Rose's position, Avocent argues instead that a portion of the *Honeywell* decision (discussing the fact that a court decision adverse to the rejected intervenor's position may persuade a subsequent court to follow that decision to the detriment of the rejected intervenor) conflicts with the Federal Circuit's decision in *Penda Corp. v. United States*, 44 F.3d 967 (Fed. Cir. 1994). Avocent ignores, however, that the *Honeywell* Court carefully analyzed and rejected this precise argument. It noted that *Penda* "did not concern intervention, but whether a third party defendant and an indemnitor of the Government that intervened in the case, could appeal a judgment entered against the Government, where the Government elected not to appeal." 71 Fed. Cl. at 763. Accordingly, it specifically concluded, as should this Court, that *Penda* does not apply to the determination of whether intervention of right under RCFC 24(a) is required.[4]

Indeed, the former Court of Claims, whose decisions are binding, *see South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed.Cir.1982), previously allowed manufacturers of products accused of patent infringement to intervene in claims brought against the government's use of such products. *See, e.g., Rolls-Royce Ltd. v. United States*, 364 F.2d 415, 416 (Ct. Cl. 1966); *Tri-Wall Containers, Inc. v. United States*, 408 F.2d 748, 749 (Ct. Cl. 1969).

Putting aside for sake of argument Rose's other direct interests in this case, Rose's patent

---

[4] Moreover, the fact that any decision of this Court finding the government liable may not collaterally estop Rose from re-litigating the issues of infringement or invalidity in district court does not require rejection of intervention. As the Court noted in *Klamath Irrigation District v. United States*, 64 Fed. Cl. 328, 330-31 (Fed. Cl. 2005), the potential *stare decisis* effect of a decision often supplies the interest required for intervention of right under by Rule 24(a) (citing cases); *accord Honeywell*, 71 Fed. Cl. at 765.

indemnity obligation to the government by itself supports intervention of right. The government's right to indemnification for patent infringement liability on products it has already paid Rose for is not "indirect and contingent," as Avocent argues. In *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645 (2004), *aff'd* 143 Fed. Appx. 317 (Fed. Cir. Jul 22, 2005), the Court explained that patent indemnity clauses are not "contingent" because the government has already paid the intervenor and thus would pay twice (once to the intervenor and then to the patentee) if it lost, as opposed to situations where the government is obligated to pay the first time only if it loses. *Id.* at 654.[5] *American Maritime Transport, Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989), cited by Avocent, has no application to a patent indemnification clause (or even a general indemnity obligation). As this Court may recall, that case affirmed a decision by this Court denying a request to intervene in a contract case by a third-party to the contract who alleged that a decision in the case could disadvantage it in the competition for future unspecified contracts with the government. *See* 15 Ct. Cl. 29, 30 (1988) (Margolis, *J.*), *aff'd* 870 F.2d 1559 (Fed. Cir. 1989).

### 2. The United States May Not Adequately Represent Rose's Interests.

As the *Honeywell* Court also pointed out, the United States Supreme Court has held that the burden of demonstrating inadequacy of representation "is satisfied if the applicant shows that representation of his interest '*may* be' inadequate; and the burden of making that showing should be treated as minimal." 71 Fed. Cl. at 765 (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972) (emphasis added)); *see also Fund for Animals v. Norton*, 322 F.3d 728, 736 n.7 (D.C. Cir. 2003) ("*Trbovich* makes clear that the standard for measuring inadequacy of representation is low . . . .") That showing is easily made here, given that even Avocent

5 Other decisions of this Court have indicated that any indemnity obligation, not just patent indemnity obligations, supply the necessary interest for intervention of right. *See, e.g., Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 685-86 (2006); *Fala Corp. v. United States*, 53 Fed. Cl. 86, 87-88 (2002) (Margolis, *J.*).

concedes that Rose and the Government have not raised all the same defenses to Avocent's complaint. Nevertheless, oblivious to the pertinent standard and the differing asserted defenses, Avocent seems to think that all it has to do to defeat intervention is point out that the United States' answer and Rose's proposed answer contain many of the same defenses. But that is not the test, and Avocent cites no authority for this proposition.

In fact, persuasive authority on this point says just the opposite. The D.C. Circuit frequently deals with private parties who wish to intervene on the side of a governmental party. In such cases, the important fact is not what defenses are pled, but what respective interests the governmental entity and the private would-be intervenor seek to represent. And these interests are distinctly different: the government represents the public interest of its citizens, whereas a private party, "on the other hand, is seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens" who the government represents. *Fund for Animals*, 322 F.3d at 737 (citation omitted); *see also Klamath Irrigation*, 64 Fed. Cl. at 336. For that reason, the D.C. Circuit "has often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. In serving the interests of the citizenry at large, the government may determine that, given the "relatively small" amount in controversy (Avocent Opp. at 7), it is economically advisable to put on a limited defense, to settle, take judgment against it, seek indemnity from Rose, and/or to simply stop buying Rose's products. None of these courses are in Rose's interest. Quite obviously, Rose's business interest in defending against Avocent's meritless claims—particularly in light of Avocent's decade-long litigation campaign against Rose and the pending Seattle litigation—is simultaneously narrower and yet of much greater financial significance (to Rose) than the United States' interest(s).

Beyond diverging interests, the government begins this litigation with far less factual knowledge about the subject matter of the litigation than Rose. Most significantly, the government obviously is not as familiar with the inner workings of Rose's products as Rose (impacting the noninfringement defense), and is not as familiar with the state of the prior art in

the KVM switch market in the mid-1990s as Rose (impacting certain invalidity defenses), as Rose was a leader in innovation in the KVM switch market during that period.

In short, it is clear that intervention of right is required.[6]

### *C. Permissive Intervention is Appropriate Here As Well.*

It is also clear that Rose, in the alternative, should be permitted to intervene under RCFC 24(b). *See Honeywell*, 71 Fed. Cl. at 768 (allowing permissive intervention). Under Rule 24(b), there is one required element (that "an applicant's claim or defense and the main action have a question of law or fact in common"), and one factor that the Court should consider ("whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties"). Avocent does not contest Rose's showing of a question of law or fact in common. Indeed, it points out that there is nearly complete overlap. (Avocent Br. at 4-5.)

Instead, Avocent argues that it would be prejudiced if Rose—as the manufacturer of the accused products and the party with the most to lose—were allowed to defend its products. Specifically, Avocent argues that allowing Rose to defend itself would increase costs and delay resolution of this matter. Its sole evidence of this is to note that Rose contested Avocent's proposed protective order in the Seattle litigation. Apparently, Avocent believes that, absent a proposed intervenor's agreement that it will not contest any relief that its adversary may seek, prejudice warranting denial of a motion to intervene exists. Avocent cites no authority for—let alone any authority even remotely supportive of—such an outlandish proposition.[7]

---

[6] The government's reply argues that intervention of right is independently warranted by statute (*see* RCFC 24(a)(1)) pursuant to the provisions of 41 U.S.C. § 1114(b). Rose joins in this argument, and to avoid duplication will not repeat it here.

[7] Avocent also makes two other bizarre and conclusory arguments that it says requires denial of intervention, supporting neither with any authority. *See* Avocent Opp. at 4, 6 (simply declaring that because Rose will not be subject to collateral estoppel, and that Rose is "estopped" from intervening because this is a § 1498 action, respectively). Rose will not waste the Court's time responding to these facially frivolous, unsupported arguments.

**CONCLUSION**

Rose respectfully submits that it qualifies for both intervention of right and permissive intervention. Rose's direct interests in this case parallel those found by the *Honeywell* Court to support intervention. Avocent's sole attack on *Honeywell* was expressly distinguished in that decision. Rose also respectfully submits that the United States, because of the different constituency it represents and the differing defenses it and Rose have raised, may not adequately protect Rose's more parochial, yet greater, financial interests in this case. Thus, intervention of right is appropriate.

Further, it is uncontested that there is great overlap in the facts and law as between the issues in the case and Rose's position. In light of Avocent's failure to conjure any form of accepted prejudice, permissive intervention is also appropriate. Rose therefore respectfully requests that the Court grant its motion to intervene.

Dated: June 12, 2008

Respectfully submitted,

Bert C. Reiser, Esq.
HOWREY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Ph.: 202.783.0800
Fax: 202.383.6610
reiserb@howrey.com

*Attorney for Proposed Defendant-Intervenor*
Rose Electronics
10707 Stancliff Road
Houston, TX 77099

# Exhibit 1

fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notif the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(g) **Invoice.** The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized,) to the address designated i: the delivery or task order to receive invoices. An invoice must include—

(1) Name and address of the Contractor;
(2) Invoice date;
(3) Contract number, contract line item number and, if applicable, the order number;
(4) Description, quantity, unit of measure, unit price and extended price of the items delivered;
(5) Shipping number and date of shipment including the bill of ladin( number and weight of shipment if shipped on Government bill of lading;
(6) Terms of any prompt payment discount offered;
(7) Name and address of official to whom payment is to be sent; and
(8) Name, title, and phone number of person to be notified in event of defective invoice.

Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) Circular A-125, Prompt Payment. Contractors are encouraged to assign an identification number to each invoice.

(h) **Patent indemnity.** The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) **Payment.** Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract. The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) Circular A-125, Prompt Payment. Unless otherwise provided by an addendum to this contract, the Government shall make payment in accordance with

(ix) Taxpayer Identification Number (TIN). The Contractor shall include its TIN on the invoice only if required elsewhere in this contract.

Electronic Funds Transfer (EFT) banking information. The Contractor shall include EFT banking information on the invoice only if required elsewhere in this contract. If EFT banking information is not required to be on the invoice, in order for the invoice to be a proper invoice, the Contractor shall have submitted correct EFT banking information in accordance with the applicable solicitation provision, contract clause (e.g., 52.232-33, Payment by Electronic Funds Transfer – Central Contractor Registration, or 52.232-34, Payment by Electronic Funds Transfer – Other Than Central Contractor Registration), or applicable agency procedures.
EFT banking information is not required if the Government waived the requirement to pay by EFT.

(2) Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) and the Office of Management and Budget (OMB) prompt payment regulations at 5 CFR part 1315.

(h) **Patent indemnity.** The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) **Payment.**
- **Items accepted.** Payment shall be made for items accepted by the ordering activity that have been delivered to the delivery destinations set forth in this contract.
- **Prompt payment.** The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR part 1315.
- **Electronic Funds Transfer (EFT).** If the ordering activity makes payment by EFT, see 52.212-5(b) for the appropriate EFT clause.
- **Discount.** In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer payment is made.
- **Overpayments.** If the Contractor becomes aware of a duplicate contract financing or invoice payment or that the ordering activity has otherwise overpaid on a contract financing or invoice payment, the Contractor shall immediately notify the Contracting Officer and request instructions for disposition of the overpayment.

(j) **Risk of loss.** Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the ordering activity upon:

(1) Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or
(2) Delivery of the supplies to the ordering activity at the destination specified in the contract, if transportation is f.o.b. destination.

(k) **Taxes.** The contract price excludes all State and local taxes levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract. The Contractor shall state separately on its invoices taxes excluded from the contract price, and the ordering activity agrees either to pay the amount of the taxes to the Contractor or provide evidence necessary to sustain an exemption. See FAR clauses 52.229-1 State and Local Taxes [SEE C.2]; 52.229-3 Federal, State, and Local Taxes [SEE C.2]; and 52.229-5 Taxes—Contracts Performed in U.S. Possessions or Puerto Rico [SEE C.2] which are incorporated by reference.

(l) **Termination for the Ordering Activity's convenience.** The ordering activity reserves the right to terminate an order, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the order price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing *Rose Electronics' Corrected Memorandum in Support of Its Motion to Intervene* was served electronically and by first class mail on June 12, 2008, on all counsel of record, as follows:

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace Obermann
DAVIDSON, BERQUIST JACKSON & GOWDEY LLP
4300 Wilson Blvd, Suite 700
Arlington, VA 22203

Jeffrey S. Bucholtz
Acting Assistant Attorney General
John Fargo
Director
Robert G. Hilton
Attorney
Commercial Litigation Branch
Civil Division
DEPARTMENT OF JUSTICE
Washington, DC 20530



DM_US:21272966_2