IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant,<br>and<br>ROSE ELECTRONICS,<br>Proposed Defendant-Intervenor. | No. 08-69C<br>Judge Lawrence S. Margolis |

**ROSE ELECTRONICS' CROSS-MOTION FOR A PROTECTIVE ORDER**

Proposed Defendant-Intervenor Rose Electronics cross-moves for a protective order that would prohibit attorneys who have access to highly confidential information disclosed in discovery from engaging in patent prosecution on the subject technology for a limited time. For the reasons set forth in the accompanying memorandum in support, Rose respectfully requests that the Court enter a protective order containing such a patent prosecution provision.

A proposed order granting this cross-motion, and a proposed protective order, are attached.

Respectfully submitted,

Dated: June 23, 2008

/s/ Bert C. Reiser
Bert C. Reiser, Esq.
HOWREY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Ph.: 202.783.0800
Fax: 202.383.6610
reiserb@howrey.com

*Attorney for Proposed Defendant-Intervenor*
Rose Electronics
10707 Stancliff Road
Houston, TX 77099

OF COUNSEL:

Michael S. Dowler, Esq.
Thomas L. Casagrande, Esq.
HOWREY LLP
1111 Louisiana, 25th floor
Houston, TX 77002-5242
713.787.1400 (phone)
713.787.1440 (fax)
dowlerm@howrey.com
casagrandet@howrey.com
phillipsj@howrey.com

Brian L. Jackson, Esq.
LAW OFFICE OF BRIAN L. JACKSON
1302 Waugh Drive # 582
Houston, TX 77019-3908
713.522.5766 (phone)
713.583.5785 (fax)
brian@brianjacksonlaw.com
(*application for admission pending*)

**RCFC 26(c) CERTIFICATION**

The undersigned hereby certifies the following: Counsel for Rose Electronics has conferred with counsel for Avocent Redmond (Mr. Don Jackson) by telephone on June 13, 2008, and with counsel for the United States (Mr. Robert Hilton) by telephone, in an effort to resolve this dispute without court action. Counsel for the United States does not object to the relief requested by Rose, but counsel for plaintiff Avocent Redmond Corp. objects. Rose and Avocent's counsel could not reach a resolution of their disagreement.

/s/ Thomas L. Casagrande
Thomas L. Casagrande
*Attorney for Rose Electronics*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served on this 23rd day of June, 2008 with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace Obermann
DAVIDSON, BERQUIST
JACKSON & GOWDEY LLP
4300 Wilson Blvd, Suite 700
Arlington, VA 22203

Jeffrey S. Bucholtz
Acting Assistant Attorney General
John Fargo
Director
Robert G. Hilton
Attorney
Commercial Litigation Branch
Civil Division
DEPARTMENT OF JUSTICE
Washington, DC 20530

/s/ Bert C. Reiser___________
Bert C. Reiser

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AVOCENT REDMOND CORP.

Plaintiff,

v.

THE UNITED STATES

Defendant,

and

ROSE ELECTRONICS,

Proposed Defendant-Intervenor.

No. 08-69C

Judge Lawrence S. Margolis

**ROSE ELECTRONICS' MEMORANDUM:**

**(1) IN OPPOSITION TO AVOCENT'S MOTION FOR A PROTECTIVE ORDER; AND**

**(2) SUPPORTING ROSE'S CROSS-MOTION FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. The KVM Switch Market and Avocent's Decade-Long Attempt to Assert a Patent Monopoly Over It. ..... 2

B. Avocent's Law Firm's Current Proceedings Before the Patent Office. ..... 4

C. Rose's Proposed Prosecution Provision. ..... 4

III. ISSUE ..... 5

IV. ARGUMENT ..... 5

A. General Principles ..... 5

B. There is an Unavoidable Risk that Avocent's Patent Prosecution Attorneys Will Inadvertently Use Rose's Confidential Information In Amending Claims in Patents that Avocent Is Currently Asserting Against Rose. ..... 6

1. Patent Prosecution Provisions Generally ..... 6

2. The Facts and Circumstances Here Indicate a High Risk of Both Inadvertent Disclosure and Substantial Prejudice to Rose. ..... 9

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Cases

*Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*,
236 F.R.D. 583, 587 (S.D. Fla. 2006)....................................................................... 10, 13

*Avocent Redmond Corp. v. Rose Electronics, Inc.*,
242 F.R.D. 574 (W.D. Wash. 2007) ................................................................................ 13

*Biotechnology Indus. Org. v. District of Columbia*,
496 F.3d 1362 (Fed. Cir. 2007). ...................................................................................... 11

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) (emphasis added) ............................................................ 9

*Chan v. Intuit, Inc.*,
218 F.R.D. 659, 662 (N.D. Cal. 2003)............................................................................. 10

*Commissariat à L'Energie Atomique v. Dell Computer Corp.*,
No. Civ.A. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004)................................ 10

*Cummings-Allison Corp. v. Glory Ltd.*,
2003 U.S. Dist. LEXIS 23653, *39 (N.D. Ill. 2003) ........................................................ 10

*FTC v. Exxon Corp.*,
636 F.2d 1336 (D.C. Cir. 1980)................................................................................... 9, 15

*In Re Papst Licensing*,
2000 U.S. Dist. LEXIS 6374, *12 (E.D. La. 2000) .......................................................... 10

*Infosint S.A. v. H. Lundbeck A.S.*,
No. 06 CIV 2869 LAK RLE, 2007 WL 1467784, at *4 (S.D.N.Y. May 16, 2007)........ 10, 12

*Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*,
1999 U.S. Dist. LEXIS 12437, *11 (N.D. Ill. 1999) ........................................................ 10

*MercExchange, LLC v. eBay, Inc.*,
467 F. Supp. 2d 608, n.23 (E.D. Va. 2006) ............................................................... 10, 13

*Mercoid Corp. v. Mid-Continent Inv. Co.*,
320 U.S. 661, 64 S. Ct. 268, (1944)................................................................................ 11

*Mikohn Gaming Corp. v. Acres Gaming Inc.*,
50 USPQ2d 1783 (D. Nev. Apr. 15, 1998)................................................................ 10, 13

*Motorola, Inc. v. Interdigital Tech. Corp.*,
1994 U.S. Dist. LEXIS 20714, *19 (D. Del. 1994).......................................................... 10

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
___ F. Supp. 2d ___, 2008 WL 608407 (S.D. Cal. Mar. 4, 2008).......................... 9, 10, 12

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001) ....................................................................................... 11

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*,
329 U.S. 637, 643 67 S. Ct. 610, 614 (1947)........................................................................ 11

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984) ................................................................................ 8, 10, 11, 14

## I. INTRODUCTION

Plaintiff, Avocent Redmond Corp. ("Avocent"), has rushed into Court seeking a protective order governing treatment of the parties' confidential information without soliciting any input from Rose Electronics ("Rose"), the party whose products and confidential information are at stake. Avocent did this despite Rose's pending motion to intervene, and despite the defendant's specific request that Avocent seek Rose's input. Avocent clearly wanted a ruling on this issue before Rose could have its say, and with good reason: Avocent has failed to apprise the Court of the dire consequences Rose will suffer from Avocent's requested order.

By this cross-motion, Rose seeks entry of a more balanced protective order, which differs from Avocent's proposed order only by the inclusion of a neutral "patent prosecution" provision.[1] The proposed provision simply and logically prevents anyone (on either side of the case) who receives discovery information designated at the highest level of confidentiality from prosecuting patent applications before the U.S. Patent and Trademark Office ("Patent Office") on the subject technology for a limited period of time. This type of provision ensures legitimate competition among the parties and has been approved by the overwhelming majority of federal courts that have considered the issue.

Although this provision was previously considered by the U.S. District Court in Seattle in a now stayed case between Rose and Avocent, the circumstances have changed dramatically since the Seattle court considered the issue: three of the patents at issue in this case (and all the patents at issue in Seattle) are now undergoing reexamination in the Patent Office. Consequently, and in contrast to the Seattle proceedings, Avocent now has the opportunity to

[1] The only other change between Avocent's and Rose's proposed protective orders is that Rose uses the term "Confidential" rather than "Protected" for the lower level of confidentiality,
(cont.. . .)

amend the claims of the three patents that are being asserted in both lawsuits. To make matters worse, the very lawyers representing Avocent in this lawsuit are also representing Avocent before the Patent Office in the reexamination proceedings. Thus, under Avocent's proposal, its lawyers will gain access to highly confidential technical information about Rose's products, while simultaneously re-writing the very patent claims being litigated to target those same products. Simply put, it would be manifestly unfair—indeed unthinkable—for Avocent to have access to Rose's secret technical documents while re-writing the very patents that those products are already accused of infringing.

In view of this serious competitive harm to Rose, and based on the authorities and testimonial evidence set forth herein, Avocent's motion should be denied, and Rose's proposed protective order entered for this case.

## II. BACKGROUND

### A. The KVM Switch Market and Avocent's Decade-Long Attempt to Assert a Patent Monopoly Over It.

Avocent and Rose are competing manufacturers of keyboard-video-mouse (KVM) switches. (Docket No. 1, Complaint ¶¶ 2, 6.) In 1995, Avocent's predecessor tried to gain a legal monopoly on a portion of the KVM switch market by applying for a patent relating to certain KVM switch technologies. In the following thirteen years, Avocent then took the 1995 application and filed one after another "continuation" applications. These continuation applications would permit Avocent to keep "tweaking" the claims in each successive application as it learned more and more about the way the market was developing over a period of several years, with each of the ensuing applications still able to gain the benefit of the 1995 application's

---

so that the labels in this case conform to those previously used in the parties' related Seattle litigation.

filing date. Amazingly, Avocent has a continuation application *still pending* from its thirteen-year old parent application.

From that 1995 parent application, Avocent has already obtained at least six patents, including all four patents at issue in this litigation. (*See* Exh. 1.)[2] Avocent sued Rose in 1998 in Seattle after obtaining the first issued patent from this still-continuing string of applications. After having a motion for summary judgment of invalidity filed against it, Avocent dropped the suit against Rose in 1999. (Dowler Decl. ¶ 2.) Avocent then went back to the Patent Office to try to obtain more "attack-proof" patents that it could then assert against its competitors. During that period, it also sued and ultimately settled with another competitor (Raritan Computer) (*see* Exh. 2). Then, with several more patents and cash in hand, Avocent trained its sights back on Rose, suing Rose again in Seattle in 2006, asserting several of the "new and improved" siblings from the 1995 parent application (Patent Nos. 5,884,096, 6,112,264, and 7,113,978), all of which are at issue in this lawsuit as well. (*See* Exh. 3.)

In October 2007, the Seattle court stayed the 2006 litigation because the Patent Office had determined that there were substantial new questions as to the patentability of all three patents-in-suit, and had instituted proceedings to re-examine those patents. (Dowler Decl. ¶ 4.)

Frustrated by its repeated inability to use its contrived stable of patents to shut Rose out of the KVM market, Avocent seeks—by filing the instant case against Rose's customer, the United States—a third bite at Rose's documents and money.

[2] Unless otherwise noted, all exhibits cited herein are attached to the Declaration of Michael S. Dowler.

**B. Avocent's Law Firm's Current Proceedings Before the Patent Office.**

In the stayed Seattle case (*see* Exh. 3) and in this case, Avocent's lead attorneys are from the 7-lawyer firm of Davidson Berquist Jackson & Gowdy ("DBJG").[3] (*See* Exh. 4.) DBJG lawyers are also responsible for Avocent's proceedings before the Patent Office (i.e., patent prosecution). (*See* Exh. 5.) For example, they were counsel of record listed on the most recently-issued patent at issue in this lawsuit (No. 7,113,978). (*See* Exh. 6.) They are also counsel of record in the three currently-pending reexamination proceedings before the Patent Office. (*See* Exhs. 7-9.) Rose has already filed a request with the Patent Office seeking reexamination of the fourth patent at issue in this case (Patent No. 6,345,323) (Dowler Decl. at ¶ 5), and no doubt DBJG will appear for Avocent in the newly-filed reexamination request as well. DBJG is also counsel of record concerning the patent application still pending in the Patent Office from the same 1995 parent application. (*See* Exh. 10.)

**C. Rose's Proposed Prosecution Provision.**

Rose proposes that the following language be added to paragraph 7 of Avocent's proposed protective order:

> Proprietary Information designated as ATTORNEYS EYES ONLY can be disclosed to those persons designated in ¶¶ 7(a)-7(e) and 7(g)-7(k) only on the condition that any person who receives access to such information shall have no involvement whatsoever, from and after the date of first disclosure of any such information to such person, in the prosecution of any patent application that involves KVM switch technology for a period of one year after the conclusion of this litigation (including the exhaustion of all subsequent appeals). Patent prosecution shall include drafting, reviewing, editing, or supervising the drafting or preparation of patent applications, claims, specifications, amendments, responses to office actions and any other materials submitted to the United States Patent & Trademark Office or any other patent authority elsewhere in the world,

[3] Interestingly, these same lawyers were counsel for Cybex Computer Products Corp., a co-defendant of Rose's in the 1998 Seattle litigation. In other words, like Rose, they were adverse to Avocent in that case and argued that the exact same Avocent patent application that spawned the four patents-in-suit was invalid.

> as well as identifying or evaluating potential inventions, participating in the decision to file patent applications or consulting on any of the foregoing matters with others performing any of these activities.

## III. ISSUE

Should Avocent's lawyers be permitted access to Rose's confidential and trade secret materials and simultaneously be permitted to represent Avocent before the Patent Office, thereby creating a situation where they can amend the terms of Avocent's currently-asserted patent claims in an attempt to cover Rose's technology?

## IV. ARGUMENT

Avocent's proposed protective order permits its attorneys to see Rose's confidential technical documents and simultaneously be involved in reexamination and prosecution proceedings where they can amend the very patents in this suit to precisely target Rose's products. Rose's proposed protective order protects against this misuse of its confidential technical information by using a widely-accepted and neutral "patent prosecution" provision. Because Avocent and Rose are direct competitors, and because the risk of the use (inadvertent or otherwise) of Rose's trade secret and confidential technical information by Avocent's attorneys in the Patent Office proceedings is both unavoidable and high, and because the prejudice to Rose is so great, fairness requires entry of Rose's proposed protective order.

### A. General Principles

The Federal Circuit, as well as a vast majority of other courts across the country, has specifically adopted protective orders including prosecution provisions of the type Rose now seeks. In *U.S. Steel Corp. v. United States*, the Federal Circuit held that protective orders denying lawyers' access to an adversary's confidential documents are appropriate when there is "an unacceptable opportunity for inadvertent disclosure." 730 F.2d 1465, 1468 (Fed. Cir. 1984). Whether such an unacceptable opportunity exists must be determined "on the basis of each

individual counsel's actual activity and relationship with the party represented." *Id.* at 1469. Elaborating on *U.S. Steel*, the Ninth Circuit held that the *U.S. Steel* standard "requires the . . . court to examine factually all the *risks and safeguards* surrounding inadvertent disclosure by any counsel . . . ." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (emphasis added).

**B. There is an Unavoidable Risk that Avocent's Patent Prosecution Attorneys Will Inadvertently Use Rose's Confidential Information In Amending Claims in Patents that Avocent Is Currently Asserting Against Rose.**

Protective orders prohibiting a patentee's patent prosecution attorneys from seeing an accused infringer's confidential business and product information are commonplace. As explained below, where, as here, the specific circumstances and facts maximize both the likelihood of inadvertent disclosure and the magnitude of the prejudice flowing from it, and where Avocent has taken no steps to effectively safeguard against such inadvertent disclosure, such a provision is necessary.

**1. Patent Prosecution Provisions Generally**

"[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980). For this very reason, courts applying the *U.S. Steel* holding to patent cases routinely enter protective orders preventing one party's patent prosecution attorneys from being able to see its adversary's confidential technical documents. *See, e.g.*:

> *Presidio Components, Inc. v. American Technical Ceramics Corp.*, ___ F. Supp. 2d ___, 2008 WL 608407 (S.D. Cal. Mar. 4, 2008) (Exh. 11)
>
> *Infosint S.A. v. H. Lundbeck A.S.*, No. 06 CIV 2869 LAK RLE, 2007 WL 1467784, at *4 (S.D.N.Y. May 16, 2007) (Exh. 12)

*Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 587 (S.D. Fla. 2006)

*MercExchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608, 624-25 & n.23 (E.D. Va. 2006)

*Commissariat à L'Energie Atomique v. Dell Computer Corp.*, No. Civ.A. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004) (Exh. 13)

*Cummings-Allison Corp. v. Glory Ltd.*, 2003 U.S. Dist. LEXIS 23653, *39 (N.D. Ill. 2003) (Exh. 14)

*Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003)

*In Re Papst Licensing*, 2000 U.S. Dist. LEXIS 6374, *12 (E.D. La. 2000) (Exh. 15)

*Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*, 1999 U.S. Dist. LEXIS 12437, *11 (N.D. Ill. 1999) (Exh. 16)

*Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 USPQ2d 1783 (D. Nev. Apr. 15, 1998) (Exh. 17)

*Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 20714, *19 (D. Del. 1994) (Exh. 18)

The reason that the majority of courts addressing this issue concur that "patent prosecution prohibitions" in protective orders are appropriate is because patent prosecution attorneys' activities put them in a unique position to "develop a patent prosecution strategy that will bring more of [its adversary's] products within the scope of [their client's] patents." *Presidio Components*, 2008 WL 608407 at *3 (Exh. 11). Patent prosecution counsel thus come within one of the specific situations mentioned by the *U.S. Steel* court as creating and "unacceptable opportunity" for inadvertent disclosure: situations where the person seeking access to a competitor's confidential documents is involved in "competitive decision-making." *See U.S. Steel*, 730 F.2d at 1468 ("In a particular case, *e.g.*, where in-house counsel are involved

in competitive decision-making, it may well be that a party seeking access should . . . be denied access" despite the need for access).[4]

Patent prosecution is competitive decision-making personified. (*See generally*, Declaration of Michael L. Lynch.) Patents confer upon their owners the right to exclude all competitors from making, using, or selling the claimed invention. *See, e.g.*, *Biotechnology Indus. Org. v. District of Columbia*, 496 F.3d 1362, 1372 (Fed. Cir. 2007). "Patentees value the right to exclude others in part because the ability *to foreclose competitors* from making, using, and selling the invention may allow them an opportunity to obtain above-market profits during the patent's term." *Id.* (emphasis added); *see generally Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 67 S. Ct. 610, 614 (1947) ("A patent . . . carries for the statutory period 'a right to be free from competition in the practice of the invention.'"); *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 665, 64 S. Ct. 268, 271 (1944) (same). Patent prosecution attorneys' ability to amend or modify the claims of an alleged patented invention during prosecution or reexamination puts them at the very center of competitive decisions of how to define the scope of the right to exclude as much competition as possible. *See, e.g.*, *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1375 (Fed. Cir. 2001) ("The scope of a patent claim is its very essence, and that with which the patentee and any competitors are most concerned.")

Because patents confer the right to exclude competition altogether, it is no surprise that the majority of courts agree that patent prosecution attorneys are engaged in activities where

[4] The *U.S. Steel* court noted that "'competitive decisionmaking' . . . would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.") 730 F.2d at 1468 n.3.

(cont.. . .)

"unacceptable opportunit[ies] for inadvertent disclosure" exist, and it is therefore appropriate under *U.S. Steel* to prohibit them from seeing a competitor's confidential documents. *See, e.g.*, *Presidio Components*, ___ F. Supp. 2d ___, 2008 WL 608407 at *7 ("Humphrey is involved in competitive decision-making for Presidio. . . . By prosecuting patents for Presidio, Humphrey would have had to make decisions involving scope and emphasis, such as drafting claims to read on new products and new directions 'where [a party] projects sales to be more critical.'") (Exh. 11); *Infosint S.A.*, 2007 WL 1467784 at *4 ("Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] projects] sales to be most critical.'") (citations omitted) (Exh. 12).

**2. The Facts and Circumstances Here Indicate a High Risk of Both Inadvertent Disclosure and Substantial Prejudice to Rose.**

Avocent's patent prosecution attorneys are more deeply steeped in a long-term, close relationship with Avocent in their efforts to exclude competition through patents than a typical patent attorney retained only on an as-needed basis. Attorney Davidson averred in his declaration in the Seattle case that he has "been outside patent counsel to Avocent Corporation and its affiliates for almost 10 years" and that he has "handled, and [he] continues to handle, dozens of patent applications directed to the field of KVM switches for Avocent Corporation and its affiliates." (Exh. 5 at ¶ 3.) In so doing, certainly Mr. Davidson would adhere to his firm's policy, stated on its website, to "work with our clients to develop and implement the legal strategies necessary to protect *their business goals*" and "always with an eye towards advancing *our clients' objectives*." *See* http://www.davidsonberquist.com (emphasis added). These sorts of

activities, coupled with a patent prosecution relationship of this duration and closeness, present an unacceptable risk that Rose's confidential information will be misused during Avocent's patent prosecution activities. *See, e.g., Andrx Pharmaceuticals*, 236 F.R.D. at 587 ("Mr. Endres has prosecuted patents on behalf of Andrx for twelve years. The extent of his relationship with Andrx suggests that he actively participates in competitive decision-making.")

Specifically, Avocent's patent prosecution attorneys are currently working on all three of the reexamination proceedings that are underway (*see* Exhs. 7-9) and which—significantly—concern three of the four patents that Avocent is asserting against Rose in this case. *See, e.g., MercExchange*, 467 F. Supp. 2d at 624-25 & n.23 (agreeing with courts that had held that there was an unacceptable risk of inadvertent disclosure where patentee's litigation counsel was simultaneously representing patentee in reexamination proceedings concerning those patents). In addition, Avocent's patent counsel is also currently representing Avocent on yet another pending application continuing from the initial 1995 Avocent application that has given rise to the four patents-in-suit. *See Mikohn Gaming*, 50 USPQ2d at 1786 (Exh. 17) (litigation counsel was in an "untenable position" where counsel was simultaneously prosecuting applications related to the patents-in-suit; bar imposed).

Rather than disclose and address these facts in its motion, Avocent instead argues that the judge in the Seattle case made a factual "finding that Avocent's counsel was not engaged in competitive decision-making" (Avocent Mot. at 2) and suggests that this Court should simply parrot that ruling (*see id.* at 4). The Seattle judge, however, made no such finding. Rather, she noted that the defendants "have not offered any evidence that suggests that [Avocent's patent prosecution attorneys] advise Avocent in its 'competitive decisionmaking.'" *Avocent Redmond Corp. v. Rose Electronics, Inc.*, 242 F.R.D. 574, 579 (W.D. Wash. 2007). Moreover, irrespective

of what the facts were over a year ago, it has since become clear that Avocent's patent attorneys are indeed engaged in competitive decision-making directed specifically at squelching competition by Rose through proceedings in the Patent Office.

The facts before this Court show that Avocent's attorneys are now representing Avocent in ongoing proceedings before the Patent Office concerning *three of the very patents asserted here*—proceedings in which they will be permitted to propose amendments *to the patent claims asserted in this case*. And yet, while they are in this unique position to re-write patent claims that they are actively litigating against Rose, they would propose that they simultaneously be permitted to use their status as litigation counsel to review Rose's confidential technical materials, describing the operation of the very products that they hope to cover with the claims that they are actively re-writing. In addition, there is substantial proof—including from Avocent's attorney's own declaration—that Avocent's patent prosecution attorneys have indeed been integrally and closely involved in Avocent's competitive decision-making for nearly 10 years. (*See* Exhs. 2, 5, and 6.) These specific activities, particularly in light of the length and closeness of patent prosecution counsel's relationship with Avocent, weigh heavily in favor of such a prophylactic provision. *Cf. U.S. Steel*, 730 F.2d at 1468 (protective order should be "developed in light of the particular counsel's relationship and activities, not solely on a counsel's status as in-house or retained").

The impossible situation in which Avocent's lawyers would place themselves is easily illustrated. Consider Avocent's lawyer sitting down, in the pending Patent Office reexamination proceedings, to re-write the claims of the patents-in-suit that are being litigated in this case. Under Avocent's proposed protective order, that lawyer in his litigation capacity will have already had access to and reviewed highly confidential documents from Rose describing the

detailed operation of Rose's accused products. Thus, for any revision he makes to the patent claims, he will already know how it would affect Avocent's infringement case against Rose. In such a situation, which is unfortunately very real, Avocent's lawyer cannot help but misuse Rose's confidential information to Rose's detriment, because he cannot make himself "forget" how Rose's products operate while re-writing the patent claims. *See FTC v. Exxon*, 636 F.2d at 1350 ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."). Any claim amendment he makes would be made in light of that knowledge. Avocent's lawyers should not be able to use their litigation role to gain access to a competitor's secret information and then use it to enhance their patent portfolio in a way that harms that competitor.

In support of its opposition and cross-motion, Rose submits the Declaration of Michael L. Lynch, a former law professor and twenty-seven year patent law practitioner with extensive experience as both in-house and outside counsel for high-tech companies, whose career has focused on patent prosecution activities. As Mr. Lynch states, a patent is a way for a company to obtain an advantage over its competitors, by writing the broadest valid claims that cover the competitive landscape as best possible. (Lynch Decl. at ¶¶ 10-11.) Patent draftspersons often seek out publicly available information concerning competitors' products when drafting patent claims on behalf of a client, and importantly, seeing such information permits the attorney to write claims that he might not have thought to write on his own. (Lynch Decl. at ¶¶ 12-13.) Thus, Mr. Lynch's declaration demonstrates that which the case law naturally confirms—that patent prosecution is a key form of competitive decision-making. (Lynch Decl. at ¶ 14.) Further, it provides an example of the unfair advantage that Avocent could obtain if permitted to have access to Rose's confidential technical information while re-writing the claims of the

patents-in-suit: it would enable Avocent's lawyers to write patent claims that are more closely tailored to Rose's products than they could write without access to that secret information.

This is not a dispute about the theoretical possibility of a situation possibly arising where inadvertent disclosure could hurt Rose. As set forth in the declaration of Peter Macourek, the founder and one of the owners of Rose, Rose's business would be seriously harmed if Avocent's patent prosecution attorneys used Rose's confidential information to specifically target Rose's products with the patent claims they are currently prosecuting in various Patent Office proceedings—even if Rose were ultimately to prove, at the end of litigation, that the patents were unenforceable because of such wrongful conduct. (Declaration of Peter Macourek at ¶¶ 4-7.)

## V. CONCLUSION

When a patent lawyer is specifically trying to craft patent claims to cover a competitor's product, but at the same time has access to the competitor's secret technical documents through litigation, the potential for competitive harm is clear. The facts here present the prototypical case for a patent prosecution bar in the protective order:

- Avocent and Rose compete in the KVM switch market;
- Avocent has been engaged in a decade-long mission to use patent procurement and litigation to hinder Rose and other competitors in the KVM switch market;
- The same small law firm that represents Avocent in this litigation also represents Avocent in ongoing patent prosecution proceedings;
- Avocent's lawyers have worked closely with Avocent to use patents to further Avocent's competitive goals for over 10 years;
- The ongoing patent prosecution proceedings in which Avocent's litigation lawyers are involved concern three of the patents-in-suit and one additional application from the same patent family; and
- The prejudice and harm that such disclosure would work upon Rose is substantial.

Accordingly, Rose respectfully requests that the Court enter a protective order that prohibits any lawyer engaging in patent prosecution activities concerning KVM switches from having access to any documents another party has marked "Attorneys' Eyes Only."

A proposed protective order—which is agreed-to except for this provision—is attached.

Respectfully submitted,

Dated: June 23, 2008

/s/ Bert C. Reiser
Bert C. Reiser
HOWREY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Ph.: 202.783.0800
Fax: 202.383.6610
reiserb@howrey.com

*Attorney for Proposed Defendant-Intervenor*
Rose Electronics
10707 Stancliff Road
Houston, TX 77099

OF COUNSEL:

Michael S. Dowler
Thomas L. Casagrande
HOWREY LLP
1111 Louisiana, 25th floor
Houston, TX 77002-5242
713.787.1400 (phone)
713.787.1440 (fax)
dowlerm@howrey.com
casagrandet@howrey.com

Brian L. Jackson
LAW OFFICE OF BRIAN L. JACKSON
1302 Waugh Drive # 582
Houston, TX 77019-3908
713.522.5766 (phone)
713.583.5785 (fax)
brian@brianjacksonlaw.com
(*application for admission pending*)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served on this 23rd day of June, 2008 with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace Obermann
DAVIDSON, BERQUIST
JACKSON & GOWDEY LLP
4300 Wilson Blvd, Suite 700
Arlington, VA 22203

Jeffrey S. Bucholtz
Acting Assistant Attorney General
John Fargo
Director
Robert G. Hilton
Attorney
Commercial Litigation Branch
Civil Division
DEPARTMENT OF JUSTICE
Washington, DC 20530

/s/ Bert C. Reiser___________
Bert C. Reiser

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AVOCENT REDMOND CORP.<br>Plaintiff,<br>V.<br>THE UNITED STATES<br>Defendant<br>and<br>ROSE ELECTRONICS,<br>Proposed Defendant-Intervenor. | No. 08-69C<br>JUDGE LAWRENCE S. MARGOLIS |

**ORDER**

Upon consideration of *Rose Electronics' Cross-Motion For A Protective Order*, the Court hereby ORDERS that the motion be, and hereby is, GRANTED. Plaintiff Avocent Redmond Corporation's motion for a protective order is DENIED-IN-PART, to the extent it does not contain a patent prosecution provision.

The Court will enter the Protective Order attached hereto as Exhibit 1.

IT IS SO ORDERED.

Signed this __________ day of ________, 2008

______________________________
LAWRENCE S. MARGOLIS
Judge, United States Court of Federal Claims

# Exhibit 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AVOCENT REDMOND CORP.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant,<br>and<br>ROSE ELECTRONICS,<br>Proposed Defendant-Intervenor. | No. 08-69C<br>Judge Lawrence S. Margolis |

**PROPOSED PROTECTIVE ORDER**

THIS MATTER having come before the Court on the parties' cross-motions for entry of a protective order, and the Court having determined that there is good cause under RCFC 26(c) for entry of a protective order to limit disclosure of confidential research, development, and commercial information as those terms are used in RCFC 26(c)(7), and information that the party is under a legal duty to maintain in confidence,

THEREFORE, IT IS HEREBY ORDERED that:

**1.** **Scope**. This Protective Order shall govern any information produced or disclosed in this action by any party or by any third party.

**2.** **Proprietary Information.** "Proprietary Information" means any information, document, electronically stored information, or thing that contains or is a trade secret or other confidential research, development, or commercial information as those terms are used in RCFC 26(c)(7), and information that the party is under a legal duty to maintain in confidence, provided that such information, document, electronically stored information, or thing is designated as set forth herein. Any Proprietary Information may be designated as CONFIDENTIAL. Proprietary Information relating to highly sensitive financial information, including but not limited to,

customer identification, sales prices to specific customers, profit margins and prospective marketing strategies, and highly sensitive technical information, including but not limited to, product design and development materials relating to products not yet for sale or released to the public, source code, or other highly sensitive, trade secret technical information not yet publicly disclosed, may be designated as ATTORNEYS EYES ONLY.

Any party to this action and any third party may designate as CONFIDENTIAL or ATTORNEYS EYES ONLY all or part of the following material: (a) answers to interrogatories or requests for admission; (b) deposition testimony; (c) documents produced by it or made available for inspection; and (d) any other materials or information produced or disclosed during the course of this litigation.

**3. Designation of Documentary Material.** Documentary material may be designated as CONFIDENTIAL or ATTORNEYS EYES ONLY by stamping or otherwise marking each page with the appropriate confidentiality designation and with the identity of the classifying party unless it is indicated as part of the production number (*e.g.*, "Plaintiff P00001") contained on the document. Except with respect to documents produced by any party prior to the execution by the parties of this Stipulated Protective Order, the identification and designation of Proprietary Information shall be made at the time when the answer to the interrogatory or the answer to the request for admission is served and when a copy of the document is provided to the requesting party.

Unless otherwise designated or agreed by the parties, all documents made available for inspection prior to copying and production shall be presumed to have been marked ATTORNEYS EYES ONLY. No documents of the party or third party producing documents shall be removed from the site of the inspection or copied until such producing party or third

party has had an opportunity to review and designate such documents in the manner previously explained.

With regard to non-written material, such as recordings, magnetic media, photographs and things, the designation of any information as CONFIDENTIAL or ATTORNEYS EYES ONLY for purposes of this Protective Order shall be made by affixing a CONFIDENTIAL or ATTORNEYS EYES ONLY designation to the material, or a container for the material, in any suitable manner at the time of copying (if any).

**4. Designation of Depositions.** Deposition or other oral testimony given in this case may be designated as CONFIDENTIAL or ATTORNEYS EYES ONLY by any party or third party either (a) during the deposition or proceeding during which the testimony is given, or (b) by written notice to the court reporter and to all counsel of record, within five (5) days of receipt, either by mail or email, of the deposition transcript. Unless otherwise ordered by the Court, pending the expiration of this five (5) day period, all parties and persons shall treat the testimony as if it has been designated ATTORNEYS EYES ONLY. Unless otherwise ordered by the Court, the designating party shall have the right to have all persons, except the witness, his or her counsel, the court reporter, and such other persons authorized to receive the designating party's Proprietary Information pursuant to this Protective Order, excluded from a deposition or proceeding, or any portion thereof, before the taking therein of testimony that has been so designated. The court reporter shall mark the cover of the original and all copies of the transcript or the portion of the transcript containing testimony designated as either CONFIDENTIAL or ATTORNEYS EYES ONLY with the appropriate legend.

**5. Belated Designation.** Notwithstanding the obligations to timely designate Proprietary Information under the foregoing paragraphs 3 and 4, nothing contained herein shall

preclude a party or a third party from later changing that designation and notifying the other parties in writing of that change; provided, however, that it shall not be deemed a breach of this Order for any action to have been taken by a party or its counsel with respect to such information consistent with the original designation of such information prior to receipt of such notice. A party receiving such written notice shall make every reasonable effort to retrieve any such materials from persons not authorized to receive them pursuant to this Protective Order and to avoid any further unauthorized disclosure. Any party that changes the designation of any materials under this Order shall timely provide the other parties to this action with new copies of the materials with the new designation(s).

**6. Non-use.** All Proprietary Information shall be used only for purposes of this litigation.

**7. Access to CONFIDENTIAL and ATTORNEYS EYES ONLY Materials.** Materials designated CONFIDENTIAL shall not be disclosed to any person except:

a. the Court and its officers and staff;

b. outside counsel of record in this action for each party (*i.e.*, counsel of record for a party who is not an employee of the party or its affiliates) and employees of such outside counsel;

c. outside experts who are not regularly employed by a party and who have been expressly retained to assist a party's counsel in the prosecution or defense of the litigation, and the secretarial, technical and clerical staff of such experts, provided that such experts have been approved pursuant to paragraph 8 hereof;

d. current or former employees of the disclosing party during the deposition of such employees or during examination of such employees at trial;

e. any party or non-party who authored, received, or reviewed the material prior to its production in the litigation;

f. two representatives of Avocent and two representatives of each of the defendants that are identified to opposing counsel, and necessary secretarial personnel of those individuals, provided that each such person has first signed a written statement under oath in the form attached as Exhibit A hereto, and a copy of that statement has been provided to opposing counsel;

g. court reporters and videographers, solely for the purpose of transcribing and/or recording testimony in the litigation;

h. independent litigation support services personnel, including copying services, imaging and coding services, trial exhibit preparation services, solely for the purpose of assisting a party with the litigation;

i. trial consultants, jury consultants, and mock jurors, focus group members and the like selected by trial consultants, jury consultants or by counsel in preparation for trial; provided that such persons have executed a confidentiality agreement in the form of Exhibit A and such agreement shall be kept by counsel for reference;

j. other persons as ordered by the Court or agreed to in writing or on the record by the parties, provided that each such person has first signed a written statement under oath in the form attached as Exhibit A hereto, and a copy of that statement has been provided to opposing counsel; and

k. attorneys within the Department of Justice involved in this litigation, including, but not limited to, attorneys of record and attorneys of counsel for the Government, and any attorney employed by the Government who is assisting the attorney of record in this litigation

and the staff of such attorneys to whom it is necessary that the information be shown for purposes of this litigation.

Proprietary Information designated as ATTORNEYS EYES ONLY can be disclosed to those persons designated in ¶¶ 7(a)-7(e) and 7(g)-7(k) only on the condition that any person who receives access to such information shall have no involvement whatsoever, from and after the date of first disclosure of any such information to such person, in the prosecution of any patent application that involves KVM switch technology for a period of one year after the conclusion of this litigation (including the exhaustion of all subsequent appeals). Patent prosecution shall include drafting, reviewing, editing, or supervising the drafting or preparation of patent applications, claims, specifications, amendments, responses to office actions and any other materials submitted to the United States Patent & Trademark Office or any other patent authority elsewhere in the world, as well as identifying or evaluating potential inventions, participating in the decision to file patent applications or consulting on any of the foregoing matters with others performing any of these activities.

This Protective Order has no effect upon and shall not apply to (1) any party's use of its own Proprietary Information for any purpose, or (2) any party's use of documents or other information developed or obtained independently of discovery in this action for any purpose.

Nothing herein shall bar or otherwise restrict an attorney, who is a qualified recipient under the terms of paragraph 7(b) of this Protective Order, from rendering advice to his or her client with respect to this action, and in the course thereof, from generally relying upon his or her examination of Proprietary Information. In rendering such advice or in other communications with the client, the attorney shall not disclose any Proprietary Information of another party or

third party where such disclosure would not otherwise be permitted under the terms of this Protective Order.

**8. Approval of Experts.** A party seeking to disclose another party's Proprietary Information to an outside expert shall serve such other party with a copy of the Undertaking attached hereto as "Exhibit A" signed by the expert, along with the expert's current resume, identifying (by employer and position) all past and current employment relating to his or her field of expertise, including employment as a consultant. The party receiving such Undertaking and resume shall have ten (10) calendar days after such service within which to object to such disclosure. Failure to object within this period shall be deemed approval. If the parties are unable to reach agreement within ten (10) days after service of an objection, the party objecting to disclosure to an expert shall raise its objection with the Court within fifteen (15) calendar days of such service of the objection. Failure to raise such objection with the Court within this period shall be deemed approval. Any party objecting to disclosure to an expert under this Protective Order shall bear the burden of proving that it will be harmed by such disclosure and that the protections of this Order are insufficient to reasonably protect such parties' proprietary interests.

**9. Filing Proprietary Information.** All papers, documents and transcripts containing or revealing the substance of Proprietary Information shall be filed under seal through the Court's CM/ECF system. Without prior written order of this Court, the Clerk of the Court shall not permit access to materials filed under seal to anyone other than counsel for the parties.

**10. Inadvertent Disclosure of Privileged or Immune Materials.** RCFC 26(b)(5)(B) governs the inadvertent or mistaken production of information that is subject to a claim of privilege or of protection as trial-preparation material. The inadvertent disclosure of

information that is privileged or otherwise immune from discovery shall not, by itself, constitute a waiver of the privilege or immunity.

**11. Disclosure of Proprietary Information to Unauthorized Person(s).** If Proprietary Information is disclosed to any person other than those authorized to receive such information by this Order, the party responsible for the disclosure shall immediately inform the designating party of all pertinent facts relating to such disclosure and shall make every reasonable effort to prevent disclosure by each unauthorized person who received such information and to obtain the return of such information.

**12. Conclusion of the Litigation.** Within ninety (90) days after entry of a final judgment or dismissal with prejudice in this litigation (including appeals or petitions for review) finally disposing of all issues raised in this litigation, counsel for the parties and all other persons having possession, custody or control of another party's or third party's Proprietary Information shall: (a) destroy all Proprietary Information and any copies thereof, or (b) if requested by the producing party, return all Proprietary Information and any copies thereof to the producing party. Notwithstanding paragraph 12(b), a receiving party shall destroy all Proprietary Information of another party or third party containing or contained in any notes, summaries, digest, synopses or other documents created by or on behalf of the receiving party. Counsel for each party shall give a written certification to counsel for all other parties that all of the producing party's Proprietary Information has either been destroyed or returned pursuant to this paragraph. If requested, counsel shall also provide the opposing party with the originals of all Undertaking forms executed by experts pursuant to paragraph 8.

Notwithstanding the foregoing paragraph, outside counsel may retain (a) copies of the pleadings and other Court filings, (b) copies of the deposition, hearing, and trial transcripts and

any related exhibits, and (c) one file copy of all materials produced in this litigation that are specifically referred to in an expert report, a motion, pleading or other paper filed with the Court.

In addition, the Government may retain an archival copy of each of (a) the pleadings and other Court filings, (b) the depositions, hearings, and trial transcripts and any related exhibits, and (c) all materials produced in this litigation that are specifically referred to in an expert report, a motion, pleading or other paper filed with the Court.

**13. Contested Designations.** The parties shall use reasonable care to avoid designating as CONFIDENTIAL or ATTORNEYS EYES ONLY any documents or information that has been published or otherwise entered the public domain. A party shall not be obligated to challenge the propriety of any other party's designation of materials or information as Proprietary Information at the time such designation is made, and failure promptly to challenge the designation shall not preclude a subsequent challenge thereto. In the event that a party disagrees at any stage of these proceedings with the designation of any information as CONFIDENTIAL or ATTORNEYS EYES ONLY, the parties shall try first to resolve such dispute in good faith on an informal basis. If the dispute cannot be resolved, the objecting party may seek appropriate relief from this Court. The party asserting that the material is entitled to CONFIDENTIAL treatment shall have the burden of proof. All Proprietary Information shall remain under the protection of this Order until otherwise ordered by the Court.

**14. Trial Procedures.** A party may request that the Court implement appropriate procedures to protect Proprietary Information that may be disclosed at the trial or any hearing in this matter consistent with the spirit and scope of this Order.

**15. Modification.** Stipulations may be made between counsel for the respective parties as to the application of this Order to specific situations provided that such stipulations are

recorded in writing or contained in the record of any oral proceeding. Nothing contained herein shall preclude any party from seeking an order of the Court modifying or supplementing this Order.

**16. Effect.** This Protective Order shall continue in effect until further order of this Court.

DATED this _______ day of _________, 2008.

_____________________________________
LAWRENCE S. MARGOLIS
Judge

**EXHIBIT A**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AVOCENT REDMOND CORP.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant,<br>and<br>ROSE ELECTRONICS,<br>Proposed Defendant-Intervenor. | No. 08-69C<br>Judge Lawrence S. Margolis |

UNDERTAKING AND CONSENT TO BE BOUND BY PROTECTIVE ORDER

I, ____________________________________, hereby declare as follows:

1. My address is _____________________________________________. My current employer is _____________________________________. My current occupation is __________________________________________.

2. I have received a copy of the Protective Order entered in the above-captioned action (the "Protective Order"). I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any Proprietary Information that is disclosed to me.

4. Promptly upon termination of this action, I will return all Proprietary Information that came into my possession, and all documents and things that I have prepared relating thereto, to counsel for the party by whom I am employed or retained.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

6. I understand that this Undertaking and the Protective Order are enforceable after the termination of this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: ____________________ ________________________________________
(Signature)

________________________________________
(Printed Name)