# Exhibit 10

Case 1:08-cv-00069-LSM Document 24-4 Filed 06/23/2008 Page 2 of 62

United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz Alerts | News | Help

Portal Home | Patents | Trademarks | Other

**Patent eBusiness**

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

**Patent Information**

- Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

**Patent Searches**

- Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

**Other**

- Copyrights
- Trademarks
- Policy & Law
- Reports

**Patent Application Information Retrieval**

Order Certified Application As Filed Order Certified File Wrapper View Order List

**11/129,443 Computer interconnection system**

Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Published Documents | Address & Attorney/Agent

## Bibliographic Data

| | | | |
|---|---|---|---|
| Application Number: | 11/129,443 | Customer Number: | - |
| Filing or 371 (c) Date: | 05-16-2005 | Status: | Docketed New Case - Ready for Examination |
| Application Type: | Utility | Status Date: | 08-08-2006 |
| Examiner Name: | STRANGE, AARON N | Location: | ELECTRONIC |
| Group Art Unit: | 2153 | Location Date: | - |
| Confirmation Number: | 1720 | Earliest Publication No: | US 2005-0232260 A1 |
| Attorney Docket Number: | 2540-0844 | Earliest Publication Date: | 10-20-2005 |
| Class / Subclass: | 709/203 | Patent Number: | - |
| First Named Inventor: | Danny Beasley , Mukilteo, WA | Issue Date of Patent: | - |

Title of Invention: Computer interconnection system

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC) .*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*

You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

Case 1:08-cv-00069-LSM Document 24-4 Filed 06/23/2008 Page 3 of 62

Home | Site Index | Search | eBusiness | Help | Privacy Policy

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz Alerts | News | Help

Portal Home | Patents | Trademarks | Other

**Patent eBusiness**

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

**Patent Information**

- Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

**Patent Searches**

- Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

**Other**

- Copyrights
- Trademarks
- Policy & Law
- Reports

**Patent Application Information Retrieval**

Order Certified Application As Filed Order Certified File Wrapper View Order List

**11/129,443** **Computer interconnection system**

Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Published Documents | Address & Attorney/Agent

## Parent Continuity Data

| Description | Parent Number | Parent Filing or 371(c) Date | Parent Status | Patent Number |
|---|---|---|---|---|
| This application is a Continuation of | 09/683,582 | 01-22-2002 | Patented | 7,113,978 |
| is a continuation of | 09/590,170 | 06-09-2000 | Patented | 6,345,323 |
| is a continuation of | 09/244,947 | 02-04-1999 | Patented | 6,112,264 |
| is a continuation of | 08/969,723 | 11-12-1997 | Patented | 5,884,096 |
| is a continuation of | 08/519,193 | 08-25-1995 | Patented | 5,721,842 |

## Child Continuity Data

**No Child Continuity Data Found**

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC).*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*

You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

Case 1:08-cv-00069-LSM Document 24-4 Filed 06/23/2008 Page 5 of 62

Home | Site Index | Search | eBusiness | Help | Privacy Policy

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz Alerts | News | Help

Portal Home | Patents | Trademarks | Other

**Patent eBusiness**

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

**Patent Information**

Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

**Patent Searches**

Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

**Other**

Copyrights
Trademarks
Policy & Law
Reports

**Patent Application Information Retrieval**

Order Certified Application As Filed | Order Certified File Wrapper | View Order List

**11/129,443** **Computer interconnection system**

Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Published Documents | Address & Attorney/Agent

## Correspondence Address

| | |
|---|---|
| Name: | DAVIDSON BERQUIST JACKSON & GOWDEY LLP |
| Address: | 4300 WILSON BLVD., 7TH FLOOR<br>ARLINGTON VA 22203 |
| Customer Number: | - |

## Attorney/Agent Information

| Reg # | Name | Phone |
|---|---|---|
| 34776 | Berquist, James | 703-894-6400 |
| 40294 | Casey, Michael | 703-894-6406 |
| 33489 | Davidson, John | 703-894-6400 |
| 25872 | Gowdey, Peter | 703-894-6400 |
| 41090 | Jackson, Donald | 703-894-6400 |
| 37497 | Siritzky, Brian | 703-894-6400 |

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC) .*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*

You can suggest USPTO webpages or material you would like featured on this section by E-mail to the webmaster@uspto.gov. While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.

Case 1:08-cv-00069-LSM Document 24-4 Filed 06/23/2008 Page 7 of 62

# Exhibit 11

Presidio Components, Inc. v. American Technical Ceramics Corp.
S.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
PRESIDIO COMPONENTS, INC., Plaintiff,
v.
AMERICAN TECHNICAL CERAMICS CORPORATION, Defendant.
American Technical Ceramics Corporation, Counterclaimant,
v.
Presidio Components, Inc., Counterdefendants.
**Civil No. 07cv893 IEG (NLS).**

March 4, 2008.

**Background:** Parties, which were evaluating settlement of patent infringement litigation, filed joint motion for a protective order governing the exchange of confidential information.

**Holdings:** The District Court, Nita L. Stormes, United States Magistrate Judge, held that:
(1) defendant's in-house counsel, who was vice president of defendant's corporate parent, would not be permitted access to information designated "Attorneys Eyes Only," and
(2) plaintiff's patent prosecutors would be required to choose either litigate the patents at issue, or prosecute patents in the family of patents at issue, but not both.

Motion granted.

**[1] Patents 291 292.3(2)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k292 Discovery
291k292.3 Production of Documents and Other Matters
291k292.3(2) k. Subject Matter. Most Cited Cases
Under terms of protective order governing the exchange of confidential information in patent infringement litigation, defendant's in-house counsel, who was vice president of defendant's corporate parent, would not be permitted access to information designated "Attorneys Eyes Only;" in-house counsel was engaged in competitive decision-making for defendant's corporate parent, and plaintiff's risk of disclosure outweighed defendant's in-house counsel's need for confidential information.

**[2] Patents 291 292.3(2)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k292 Discovery
291k292.3 Production of Documents and Other Matters
291k292.3(2) k. Subject Matter. Most Cited Cases
When deciding whether one side's patent prosecutor should have access to the opposing party's confidential information, courts must balance the one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors; key inquiry is whether the attorney in question is in fact a competitive decision-maker.

**[3] Patents 291 292.3(2)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k292 Discovery
291k292.3 Production of Documents and Other Matters
291k292.3(2) k. Subject Matter. Most Cited Cases
Under terms of protective order governing the exchange of confidential information in patent infringement litigation, plaintiff's patent prosecutors would be required to choose either litigate the patents at issue, or prosecute patents in the family of patents at issue, but not both; plaintiff's counsel was engaged in competitive decision-making for plaintiff, defendant's risk of disclosure outweighed plaintiff's need to have its patent prosecutors access defendant's confidential information, there was some indicia that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff was at risk of inadvertently misusing defendant's confidential information, and burden on plaintiff would be minimal if plaintiff's patent prosecutors were not allowed access to defendant's confidential information.

Brett A. Schatz, Gregory F. Ahrens, Wood, Herron and Evans, Cincinnati, OH, Miles D. Grant, Grant and Zeko, San Diego, CA, for Plaintiff/Counterdefendants.
Marvin S. Gittes, Nathan R. Hamler, Peter F. Snell, Richard M. Lehrer, Timur E. Slonim, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC, New York, NY, for Defendant.

**ORDER GRANTING PARTIES' JOINT MOTIONS FOR (1) A PROTECTIVE ORDER [Doc. No. 31]; and (2) FOR LEAVE TO FILE EXCESS PAGES IN SUPPORT OF JOINT MOTION FOR PROTECTIVE ORDER [Doc. No. 32]**

NITA L. STORMES, United States Magistrate Judge.
***1** Plaintiff/Counterdefendant Presidio Components, Inc. (Presidio) and Defendant/Counterclaimant American Technical Ceramics Corporation (ATC) have been negotiating the terms of a stipulated protective order in this case that will govern the exchange of confidential information. While they agree on most of the terms in the proposed protective order, they disagree on two issues: (1) whether ATC's in-house general counsel Evan Slavitt, Esq. may access Presidio's Attorneys Eyes Only information (paragraph 8(c)); and (2) whether outside counsel for Presidio who receive Attorneys Eyes Only information should be barred from any involvement in patent prosecution in the field of multilayer capacitors for a period of two years from the date they view the materials or one year after the conclusion of the litigation, whichever is longer (paragraph 7).

First, the Court recognizes that the parties advanced all their arguments in a single joint motion and therefore **GRANTS** the parties' joint motion to file excessive pages in support of their memorandum of points and authorities [Doc. No. 32]. Second, having reviewed and considered the parties' arguments, the Court **GRANTS** the parties joint motion for a protective order [Doc. No. 31]. Finally, the Court addresses the parties' separately-lodged joint motion to file Exhibit G under seal.

***DISCUSSION***

***Paragraph 8(c): In-House Counsel for ATC.***

[1] The parties agree that in-house counsel's access to information designated Attorneys Eyes Only should be limited, but disagree as to who shall be one of ATC's designated in-house attorneys eligible to review that information. ATC seeks to include the bolded language into paragraph 8(c) below:

> No more than two (2) in-house attorneys or officers of the receiving party (including support staff as reasonably necessary), who have signed the form attached hereto as Attachment A, who are responsible for and/or working directly in the prosecution or defense of this action, and are not presently involved in patent procurement activities and/or in business decision-making and provided that no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in paragraph 10(b), below, ***including Mr. Evan Slavitt, Esq., Secretary of ATC and also VP of Business and Legal Affairs of AVX.***

ATC argues Slavitt, its Secretary and General Counsel, needs access to Presidio's information marked Attorneys Eyes Only because Slavitt has direct responsibility to oversee this litigation, formulate strategy and evaluate settlement possibilities. Presidio objects, arguing that Slavitt is a competitive decision-maker both for ATC and its parent company AVX (a non-party), and that giving him access to Presidio's most highly confidential information would place Presidio at great risk of inadvertent disclosure to its competitive disadvantage.

When evaluating the risk of inadvertent disclosure of Presidio's confidential information to Slavitt, the Court must examine the factual circumstances of Slavitt's relationship to ATC. *See Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir.1992) (citing *U.S. Steel Corp. v. U.S.,* 730 F.2d 1465, 1468 (Fed.Cir.1984)). The key inquiry is whether Slavitt is "involved in 'competitive decision-making'; that is, advising on decisions about pricing or design 'made in light of similar or corresponding

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

information about a competitor.'" Brown Bag, 960 F.2d at 1470 (barring in-house counsel from accessing confidential information even when outside counsel withdrew from the litigation) (quoting *U.S. Steel,* 730 F.2d at 1468 n. 3) (allowing in-house counsel access to confidential information where both parties agreed that in-house counsel was not involved in competitive decision-making). If the in-house counsel is involved in "competitive decision-making," "the risk of disclosure may outweigh the need for confidential information." *Intel Corp. v. VIA Technologies, Inc.,* 198 F.R.D. 525, 529 (N.D.Cal.2000) (citations omitted). The party attempting to show the need for confidential information must show actual prejudice to that party's case and not just increased difficulty in managing the litigation. *See id.*

***2** Slavitt is ATC's Secretary and General Counsel. Slavitt Decl. ¶ 4. His primary business responsibilities at ATC are to attend and draft minutes of the meetings of ATC's Board of Directors and Officers, and give legal advice relating to contracts, employment, foreign trade and environmental law. Slavitt Decl. ¶ 5. He does not give advice on pricing, marketing strategies, product development and review, manufacturing or patent claim drafting. Slavitt Decl. ¶ 5. He is not substantively involved in ATC's patent prosecution. Slavitt Decl. ¶ 6. Slavitt is, however, directly responsible for overseeing this patent infringement case and evaluating settlement possibilities. Slavitt Decl. ¶ 7. ATC argues it will be prejudiced if Slavitt cannot access the Attorneys Eyes Only information because this is ATC's first patent infringement case in its 30-year history, and ATC needs Slavitt's guidance because ATC's management is not experienced in litigation strategy and settlement evaluation. Slavitt Decl. ¶¶ 8-10.

Slavitt is the Vice-President of Business and Legal Affairs and Head of Acquisitions for ATC's parent corporation, non-party AVX. Slavitt Decl. ¶¶ 4, 15. In these roles, Slavitt reviews summaries, projections and analyses prepared by financial and marketing personnel. Slavitt Decl. ¶ 15. He has complete charge of AVX's employees and outside advisors during an acquisition. Slavitt Decl. ¶ 16. He is also AVX's sole in-house lawyer, and drafts and reviews AVX's contracts for competitive bids on projects. Slavitt Decl. ¶¶ 17-18. AVX competes with Presidio.[FN1]

In September 2007, AVX acquired ATC as its wholly-owned subsidiary. Slavitt Decl. ¶ 4. In having complete charge of AVX's acquisition of ATC, Slavitt would have been required to evaluate ATC's products, competitiveness, profitability, sales and market potential. Slavitt reviews summaries, projections and analyses to make financial and marketing decisions for AVX. He drafts and reviews contracts for AVX for competitive bids that could compete with Presidio. This Court finds that Slavitt's role necessarily requires him to engage in competitive decision-making for AVX. While AVX is not a party to this litigation, it is the parent corporation of defendant ATC. Presidio's most precious technical and commercial information should not automatically go to an officer of a competing company that is not even a party to this litigation. *See In re Plastics,* 2005 U.S. Dis. LEXIS 23771, *14-*15, 2005 WL 1458692 (E.D.Penn.2005) (preventing "disclosure of highly confidential information to the in-house legal department of a non-party ... potentially a competitor to the party designating and producing the information, even if that legal department provides legal advice to a party in this litigation").

Further, ATC does not show that it will be actually prejudiced if Slavitt is prohibited from reviewing Presidio's most confidential information. While it argues that its management is inexperienced with making patent litigation decisions, at most, ATC shows it may have more difficulty in managing the litigation. For example, ATC does not allege that its outside counsel's ability to litigate will be impaired, or that its management is completely ill-equipped to thoughtfully evaluate outside counsel's recommendations. Finally, ATC never addresses the potential damage to Presidio if its most confidential information is shared with Slavitt, or how ATC's need to have Slavitt access the confidential information could outweigh the risk of disclosure for Presidio.

***3** Because Slavitt is engaged in competitive decision-making for AVX, and Presidio's risk of disclosure outweighs Slavitt's need for confidential information, the Court **ADOPTS** Presidio's proposed paragraph 8(c) for the protective order.

***Paragraph 7: Outside Counsel and Patent***

***Prosecutors.***

Paragraph 7 of the Protective Order addresses the review of Attorneys Eyes Only information by counsel who may also conduct patent prosecution on behalf of a party. Presidio seeks to insert the bolded compromise language into Paragraph 7 below:

> Any individual who obtains, receives, has access to, or otherwise learns, in whole or in part, technical information ***relating to products that are unreleased or potential future product offerings, including ongoing research and development, and unpublished patent applications that has been*** designated ATTORNEYS' EYES ONLY under this Protective Order shall not prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming multilayer capacitor technology within two (2) years from the disclosure of such technical information or one (1) year after the conclusion of this litigation, including any appeals, whichever period is longer. To ensure compliance with this provision, the parties shall create an ethical wall between those persons with access to technical information designated ATTORNEYS' EYES ONLY under this Protective Order and those individuals who prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming multilayer capacitor technology.

At issue here is access to ATC's Attorneys Eyes Only information for Presidio's patent prosecution counsel. ATC seeks to force Presidio's patent prosecutors to make a choice: either litigate the patents at issue, or prosecute patents in the family of patents at issue, but not both. Attorneys at the law firm of Wood Herron & Evans LLP (WHE) prosecuted for Presidio the '356 patent at issue and its parent patent. WHE also represents Presidio in litigating the '356 patent in this lawsuit. ATC argues that Presidio's patent prosecutors must be restricted from accessing its confidential information because Presidio may pursue new and modified patent claims in the field of multilayer capacitor technology, where it already holds numerous patents. ATC argues it will suffer prejudice if certain of Presidio's outside counsel who are also patent prosecutors are privy to ATC's confidential capacitor information because armed with that knowledge, even if inadvertent, Presidio's counsel can develop a patent prosecution strategy that will bring more of ATC's products within the scope of Presidio's patents. ATC says Presidio will not be harmed if its patent prosecutors must choose, because Presidio has a technical expert and team of litigators to work on the litigation.

Presidio acknowledges its patent prosecutors should be restricted from certain of ATC's confidential information. It proposes that the patent prosecutors be restricted from seeing confidential information that relates to ATC's unreleased or future products, ongoing research and development and unpublished pending patent applications. Specifically, Presidio advocates access for Thomas Humphrey, one of the prosecutors of the '356 patent, and Presidio's most knowledgeable counsel. Presidio says Humphrey is indispensable to the litigation and must have access to ATC's confidential information, subject to the proposed restriction.

***4**[2] When deciding whether one side's patent prosecutor should have access to the opposing party's confidential information, courts must balance the “one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors.”*Avocent Redmond Corp. v. Rose Electronics,* 242 F.R.D. 574, 577 (W.D.Wash.2007) (citing *U.S. Steel Corp.,* 730 F.2d at 1468). The key inquiry is whether the attorney in question is in fact a competitive decision-maker. *Id.* (citing *U.S. Steel Corp.,* 730 F.2d at 1470). Some courts have found that a company's patent prosecutor also engages in competitive decision-making for that company, and thus must be barred from accessing the opposing party's confidential information. *See Infosint S.A. v. Lundbeck,* No. 06CIV2869, 2007 U.S. Dist. LEXIS 36678, 2007 WL 3145055 (S.D.N.Y. Oct. 26, 2007); *Motorola, Inc. v. Interdigital Technology Corp.,* No. Civ.A. 93-488 LON, 1994 U.S. Dist. LEXIS 20714, 1994 WL 16189952 (D.Del. Dec. 20, 1994) (prohibiting outside counsel who already received plaintiff's confidential information from prosecuting patents for defendant for one year after litigation ended).[FN2]“Prosecuting patent applications ‘involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to ‘read on new products and new directions where [a party] project[s] sales to be most critical.’”*Commissariat A L'Energie Atomique v. Dell Computer Corp.,* No. CIV.A. 03-484 KAJ, 2004 U.S. Dist. LEXIS 12782,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*8, 2004 WL 1196965, *2 (D.Del. May 25, 2004) (barring plaintiff's attorneys from accessing defendant's highly confidential information because they were prosecuting patents involving the technology at issue, including patents for defendant's competitors) (quoting *Motorola,* 1994 U.S. Dist. LEXIS 20714 at *11, 1994 WL 16189952, *3).

Other courts have reached contrary results. *See* *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.,* 1997 U.S. Dist. LEXIS 24130, 1997 WL 688174 (S.D.Cal.1997); *Avocent,* 242 F.R.D. 574 (allowing plaintiff's prosecutors access to defendant's confidential information because defendant showed only a "vague and generalized threat of future inadvertent misuse of discovered materials"); *AFP Advanced Food Prods. LLC v. Snyder's of Hanover Mfg. Inc.,* No. CIV.A. 05-3006, 2006 U.S. Dist. LEXIS 426, 2006 WL 1531285 (E.D.Pa. May 31, 2006) (finding the threat of inadvertent use of defendant's confidential information, on its own, is not enough to justify barring plaintiff's attorneys from prosecuting similar patents for two years).

[3] Here, Presidio does not seek unfettered access to ATC's confidential information for its patent prosecutors. It "concedes that access to information by [its patent prosecutors] should be limited to a certain extent."Mem. Ps & As, p. 16. Presidio proposes implementing the compromise adopted by the district court in *Infosint,* which excluded plaintiff's outside counsel from accessing any pending patent applications and ongoing research and development. 2007 WL 3145055, at *1, 2007 U.S. Dist. LEXIS at *16-*17.Presidio advocates for this compromise because it seeks access specifically for Thomas Humphrey of the WHE firm, who has represented Presidio for several years and is the most knowledgeable outside attorney regarding Presidio and the technology involved in this case. Humphrey Decl. ¶ 2. Humphrey says his background in electrical engineering makes him uniquely qualified and necessary to help Presidio in this suit. Humphrey Decl. ¶ 3.

***5** ATC argues the proposal is unworkable because ATC's engineers use the research and development related to the accused product for ongoing research and development, so that ATC's confidential technical documents-even if they go to a different product-include information that a patent prosecutor for a competitor would find relevant to continuous claim drafting. Mem. Ps & As, p. 25. ATC asserts Presidio's patent prosecutors cannot separate this information in their minds. *Id.* It argues that by sharing its confidential information, ATC will be prejudiced because Presidio's patent prosecutors will know what experiments did and did not work, which would equip them with "a wealth of knowledge about the possible new direction for the technology."*Id.* at 27 (emphasis omitted).

In weighing Presidio's right to broad discovery against ATC's ability to protect its confidential materials from misuse by competitors, the Court ordered the parties to file supplemental briefing addressing how Presidio's proposal could be implemented. The Court also requested that Humphrey file a supplemental declaration addressing (1) his experience and procedure in separating confidential information from information he would use to advise a client; (2) whether he is prosecuting or plans to prosecute additional patent claims in the '356 patent family; and (3) why his access to ATC's confidential information is so critical.

Presidio proposed that in addition to the designations of "Confidential" and "Attorneys Eyes Only" that ATC will already be making, it also designate, at its expense, a class of documents as "Attorneys Eyes Only-Unreleased Products". Humphrey did not explain a specific procedure for how he segregates the confidential information in his mind, but stated he would not provide ATC's confidential information to Presidio when advising it on the merits of the litigation. Supp. Humphrey Decl. ¶ 3. He summarily repeated that his background and experience make him uniquely qualified to analyze ATC's confidential information. Supp. Humphrey Decl. ¶¶ 6-8. Most notably, Humphrey said he is "not presently prosecuting and do[es] not have plans to prosecute any additional patent claims in the patent family of the '356 patent."Supp. Humphrey Decl. ¶ 5.

ATC, without waiving its objections to Presidio's proposal, offered to designate the third category of documents that would be available to Presidio's patent prosecutors. To safeguard the documents once they are produced to the WHE litigators, ATC proposed WHE implement these additional restrictions:

(1) Physical Access: Hard copies of ATC's restricted documents shall be kept locked in an area inaccessible to WHE patent attorneys and employees involved in prosecuting Presidio's patent applications. The documents shall not be removed except for copying.

(2) Electronic Access: If WHE makes electronic copies of ATC's restricted documents, WHE must password protect the restricted documents with a hard-to-guess password. WHE should also keep an electronic access log sufficient to identify who had accessed the restricted documents, and when.

***6** (3) Information Based or Derived from ATC Restricted Documents: WHE should create an "ethical wall" between the patent attorneys and the litigators to prevent WHE litigators from talking to WHE patent prosecutors regarding the content of ATC's restricted documents due to the danger of inadvertent disclosure.

ATC's Supp. Brief, pp. 1-2.

The Court has considered Presidio's proposed compromise, but is not persuaded that it appropriately addresses ATC's ability to protect its confidential materials from misuse by competitors. In *Infosint,* the compromise could feasibly work because the patent prosecutor practiced at a firm in Italy while the lead litigators practiced at a firm in New York. Here, the patent prosecutors and litigators are at the same firm, in the same building. Ex. S. As stated in *Infosint,* the small size of WHE "increases the likelihood of inadvertent disclosure, since the members of the firm who are prosecuting the patents at issue will be under [Humphrey's] supervision."2007 U.S. Dist. LEXIS at *13-*14, 2007 WL 3145055, *3. Further, the physical and electronic restrictions WHE would have to implement, in addition to creating an ethical wall, increase the already-high risk of inadvertent disclosure. These restrictions would not be foolproof, and in its supplement brief ATC conceived of many situations where confidential information could be inadvertently disclosed, and it would be difficult under those circumstances to enforce the terms of the protective order.

This Court adopts ATC's proposed version for Paragraph 7 of the protective order and agrees that the patent prosecutors for any party should make a choice: either prosecute future patents in this family of patents, or litigate the patent at issue, but not both. While the district judge in this matter, Judge Gonzalez, found in a 1997 order that a defendant's patent prosecutors should be able to access the plaintiff's most confidential information, that case is distinguishable here. In *Sibia,* the magistrate judge entered an order prohibiting defendant's outside counsel, who were actively prosecuting patents for defendant, from accessing plaintiff's confidential information. 1997 U.S. Dist. LEXIS 24130 at *3, 1997 WL 688174. If they did access such information, the protective order required that they not engage in patent prosecution for applications relating to the technology at issue for at least one year until after the conclusion of the litigation. *Id.* Judge Gonzalez found that the burden imposed on defendant outweighed any risk of inadvertent disclosure, and modified the magistrate judge's protective order to allow all of defendant's outside counsel access to plaintiff's confidential information.*Id.* at *27.In making her decision, Judge Gonzalez (1) found it "highly significant ... that Sibia has been unable to cite any case other than *Motorola* in which a court even considered entering a protective order that disqualified outside counsel"; (2) determined that none of the outside attorneys engaged in competitive decision-making for defendant; and (3) ruled there was no indicia that a party was seeking to promote inadvertent misuse of confidential information by "transferring to its litigation counsel the responsibility for prosecuting the same patents that were at issue in the litigation".*Id.* at 22, 26-27.

***7** Here, numerous cases since *Motorola* have barred a plaintiff's patent prosecutors from accessing a defendant's most confidential information. *See* p. 6 of this Order, n. 2. Second, Humphrey is involved in competitive decision-making for Presidio. Like the patent counsel in *Infosint,* Humphrey has represented Presidio for several years and is the most knowledgeable attorney regarding Presidio and the technology in the lawsuit. *See* *Infosint,* 2007 U.S. Dist. LEXIS at *13, 2007 WL 3145055, *3. By prosecuting patents for Presidio, Humphrey would have had to make decisions involving scope and emphasis, such as drafting claims to read on new products and new directions "where [a party] projects sales to be more critical."*Commissariat,* 2004 U.S. Dist. LEXIS at *2, 2004 WL 1196965 (quotations

omitted). Further, Presidio, as a client of the WHE firm, may expect that Humphrey and other patent prosecutors are intimately involved with decision-making. The WHE firm markets itself as a firm with “a managed team approach” where “a lead attorney is closely associated with the client's research and commercial activities.”Ex. Q. It advertises that the attorneys are inextricably intertwined with the decision-making of their clients. Ex. R. The firm also advertises that its attorneys employ a patent protection strategy where they “work very closely with the client by explaining the patent coverage currently obtained and currently sought, and receiving input from the client on possible new directions for the technology so that the patent protection can also be steered in those same directions.”Ex. P. Humphrey, as the most knowledgeable attorney regarding Presidio and the technology involved in this lawsuit, can be expected, if he prosecutes further patents related to the one at issue here, to discuss new directions for Presidio's technology.

Third, there is some indicia that Presidio is at risk of inadvertently misusing ATC's confidential information. Presidio concedes that its patent prosecutors should not have access to all of ATC's highly confidential information. Also, Humphrey says that while he has no plans to prosecute more patents in the '356 patent family, he has not made the same statement regarding the WHE firm as a whole, so it is feasible that the WHE firm could prosecute more patents in the '356 family. *See* *Infosint,* 2007 U.S. Dist. LEXIS at *13, 2007 WL 3145055, *3.

Finally, if Presidio's patent prosecutors are not allowed access to ATC's confidential information, the burden on Presidio is minimal. Presidio is most concerned about access for Humphrey. But Humphrey says he has no plans to prosecute further patents in the '356 family of patents. Also, if Presidio chooses to keep Humphrey from accessing ATC's most confidential information, Presidio does not show that it will be prejudiced by receiving advice from other lawyers at the WHE firm. In his supplemental declaration Humphrey never addressed-though the Court specifically ordered him to do so-whether any other counsel could adequately advise Presidio with respect to its technical patent issues. Further, Presidio-despite having an additional opportunity to do so-has made only conclusory assertions as to why Humphrey's access is so critical to litigating this case.

***8** Because Humphrey is engaged in competitive decision-making for Presidio, and ATC's risk of disclosure outweighs Presidio's need to have its patent prosecutors access ATC's confidential information, the Court **ADOPTS** ATC's proposed paragraph 7 for the protective order. The Court **DENIES** Presidio's proposed compromise for a two-tier system of confidential documents accessible to outside counsel.

***Joint Motion to File Exhibit G Under Seal.***

The Court has reviewed Presidio's proposed justification for filing Exhibit G under seal and finds that there is good cause to grant the joint motion. The Court will enter a separate order addressing the filing of Exhibit G under seal.

***Conclusion and Order***

The Court **GRANTS** the parties' joint motion to file excessive pages in support of their memorandum of points and authorities [Doc. No. 32] and **GRANTS** the parties joint motion for a protective order [Doc. No. 31]. The parties shall lodge a proposed protective order in accordance with the terms of this Order by ***March 7, 2008.***

**IT IS SO ORDERED.**

FN1. Presidio asserts-and ATC does not rebut-that AVX is a competitor of Presidio. *See* Mem. Ps & As, p. 14.

FN2. Several other courts have barred counsel from accessing the opposing party's confidential information where the counsel was involved in patent prosecution. *See* *Chan v. Intuit, Inc.,* 218 F.R.D. 659, 662 (N.D.Cal.2003) (barring plaintiff's attorneys who provided advice related to patent prosecution or scope of claims); *Cummins-Allison Corp. v. Glory Ltd.,* No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653, 2003 WL 355470 (N.D.Ill. Feb. 12, 2003) (barring counsel from prosecuting certain patent applications up until one year after the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conclusion of litigation, including appeals); *Medtronic, Inc. v. Guidant Corp.,* No. 00-1473, 2001 U.S. Dist. LEXIS 22805, 2001 WL 34784493 (D.Minn. Dec. 20, 2001) (barring attorneys who received "Outside Attorneys Eyes Only" information from participating for one year in prosecuting the clients' patents in a certain field); *In re Papst Licensing, GmbH, Patent Litig.,* No. MDL 1298, 2000 U.S. Dist. LEXIS 6374, 2000 WL 1877107 (E.D.La. Dec. 26, 2000) (restricting Papst's counsel because risk of inadvertent disclosure outweighed any impairment on Papst's ability to litigate); *Interactive Coupon Mktg. Group, Inc. v. H.O.T.! Coupons, LLS,* No. 98 C 7408, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969 (N.D.Ill. Aug. 9, 1999) (barring plaintiff's counsel because involvement in **patentprosecution** constituted involvement in competitive decision-making).

S.D.Cal.,2008.
Presidio Components, Inc. v. American Technical Ceramics Corp.
--- F.Supp.2d ----, 2008 WL 608407 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 12

Infosint S.A. v. H. Lundbeck A.S.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
INFOSINT S.A., Plaintiff,
v.
H. LUNDBECK A.S., et al., Defendants.
**No. 06 CIV 2869 LAK RLE.**

May 16, 2007.

MEMORANDUM OPINION & ORDER

ELLIS, Magistrate J.

I. INTRODUCTION

***1** Pending before this Court is plaintiff, Infosint S.A.'s ("Infosint"), motion for entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c)(7). Infosint and defendants, H. Lundbeck A.S., Lundbeck Inc., and Forest Laboratories, Inc. (collectively, "Lundbeck"), agree that a protective order is necessary to protect the confidential information being exchanged between the parties and are ready to enter into a stipulated agreement, but disagree as the scope of the proposed order. Infosint requests that the protective order permit information designated as confidential to be accessible to all parties' designated counsel whereas Lundbeck proposes an order in which confidential information would be available to all counsel but only United States trial counsel would have access to information designated by the parties as highly confidential. For the reasons set forth below, Infosint's request is GRANTED, in part, and DENIED, in part.

II. BACKGROUND

Infosint, as owner of two patents that claim processes for the synthesis of the drug citalopram, brings this action for infringement against Lundbeck. Infosint S.A.'s Memorandum in Support of its Motion for Entry of Protective Order ("Pl.Mem.") at 1. Infosint claims that Lundbeck has infringed upon its patents by marketing products made by the claimed processes in the United States. *Id.* Because the nature of discovery in this case requires the production of trade secrets and other confidential material, all parties agree that a protective order is necessary. *Id.* The parties' dispute is over whether two of Infosint's designated counsel, Stefano de Bosio and Gianfranco Dragotti, will have full access to the information designated as confidential. Infosint relies on de Bosio, an attorney with an Italian law firm, Studio Legale Nodari & Associati, for commercial and corporate legal advice. *Id.* at 4, 6. Dragotti is also an attorney with an Italian law firm, Dragotti & Associati. *Id.* at 4. Dragotti advises Infosint on patent issues. *Id.*

Infosint's proposed protective order designates one category of materials, comprised of trade secrets or other proprietary information, as confidential.*Id,* Exh. A at 1. Access to this information by counsel would be limited to outside counsel for all parties who have entered an appearance in this litigation: de Bosio, Paolo Nodari, and Dragotti, outside Italian counsel for Infosint; and Charles Ryan, John Meidahl Petersen, and Thomas Kirkback, in-house counsel for Lundbeck. *Id,* Exh. A at 3. Lundbeck objects, arguing that Infosint's proposed order does not adequately safeguard the highly sensitive information Lundbeck is disclosing. Defendants' Memorandum in Opposition to Plaintiff's Motion for Entry of a Protective Order ("Def.Mem.") at 1. In the alternative, Lundbeck suggests a protective order with two levels of confidentiality. *Id.,* Exh. A at 1. Trade secrets and other proprietary information would be designated as confidential and available to all counsel listed above. *Id.,* Exh. A at 2-4. In addition, each side would be permitted to designate certain information as "Outside Counsel Eyes Only." *Id.,* Exh. A at 2. This category would presumptively include "pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or processes for making them."*Id.* Only outside counsel for all parties and Paolo Nodari, Italian counsel for Infosint,[FN1] would have access to the information designated as "Outside Counsel Eyes Only." Infosint's Italian counsel, de Bosio, and its patent attorney, Dragotti, as well as Lundbeck's in-house counsel, would have the information designated as confidential available to them, but

would be denied access to information classified as "Outside Counsel Eyes Only."

FN1. Nodari's access to the information would be contingent upon him signing a confidentiality agreement, proposed by Lundbeck, which would subject him to the jurisdiction of this Court.

II. DISCUSSION

A. Standard of Review

***2** According to Rule 26(b) of the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."FED. R. CIV. P. 26(b)(1).Rule 26(c)(7) authorizes courts, for good cause shown, to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ..."FED. R. CIV. P. 26(c)(7)."The party seeking a protective order has the burden of demonstrating that good cause exists for issuance of the order."*Uniroyal Chem. Co. v. Syngenta Crop Prot.,* 224 F.R.D. 53, 56 (D.Conn.2004) (*internal citations omitted* ); *see also*Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir.1992) (citations omitted). More than "[b]road allegations of harm unsubstantiated by specific examples or articulated reasoning," good cause requires "the moving party [to] demonstrate that 'disclosure will work a clearly defined and very serious injury." ' *Uniroyal Chem. Co.,* 224 F.R.D. at 56 (*internal citations omitted* ).

"Whether information merits protection in a particular case depends upon: 1) the extent to which the information is known outside the business; 2) the extent to which information is known to those inside the business; 3) the measures taken to guard the secrecy of the information; and 4) the value of the information to the business and its competitors."*Id.* at 56-57.Protective orders limiting access to highly confidential information to counsel and experts "are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information."*Vesta Corset Co., Inc. v. Carmen Foundations, Inc.,* 1999 WL 13257, at *3 (S.D.N.Y. Jan 13, 1999) (*internal citations omitted* ). Here, the information the parties seek to protect consists of trade secrets and other confidential or proprietary information not known to the public or the receiving party. Pl. Mem., Exh. A at 1. The action concerns the alleged infringement by Lundbeck of patents, held by Infosint, the subject of which is a "novel method of making one of the intermediates in the overall ... synthesis" of the drug citalopram. *Id.* at 1. As the parties themselves anticipate, discovery will necessarily involve the exchange of proprietary information, the disclosure of which is likely to cause economic harm.-is appropriate subject matter for a protective order. Therefore, this information merits a protective order pursuant to Rule 26(c)(7).

B. Balancing of Competing Interests

"Where a party seeks a protective order restricting the scope of discovery of technical, proprietary information, the court should balance ...'the interests in full disclosure of relevant information and reasonable protection from economic injury.'(*internal citation omitted* ) Relevant considerations in striking this balance include: 1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, 2) the risk of inadvertent disclosure of proprietary information, 3) the hardship imposed by the restriction, 4) the timing of the remedy and, 5) the scope of the remedy."*Uniroyal Chem. Corp.,* 224 F.R .D. at 57 (*internal citations omitted* )."The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors."*Medimmune, Inc. v. Centocor, Inc.,* 271 F.Supp.2d 762 (D.Md.2003) (*internal citations omitted* ).

***3** Whether a protective order should bar access to information by one party's attorney depends on the potential for "inadvertent or accidental disclosure." *U.S. Steel Corp. v. United States,*730 F.2d 1465, 1468 (Fed.Cir.1984). When conducting an inquiry, courts have adopted a case-by-case analysis, rather than a category-based exclusion policy, looking at "the factual circumstances surrounding each individual counsel's activities, association, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relationship with a party."*Id.*"[P]roper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained."*Brown Bag Software v. Symantec Corp*, 960 F.2d 1465, 1470 (9th Cir.1992) (*emphasis in original* ). The inquiry should not be directed at any one attorney's own ethical standards or record.*Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783, 1784 (D.Nev.1998)."Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create 'an unacceptable opportunity for inadvertent disclosure." ' *Id.* (*quoting* *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984)).

Lundbeck's proposed two-tier system of confidentiality would exclude Infosint's Italian counsel, de Bosio, and its patent attorney, Dragotti, from having access to information designated as "highly confidential." Def. Mem. at 1-2. Lundbeck's proposed order would also prevent disclosure of Infosint's "highly confidential" information to its own in-house counsel. *Id.* Infosint's proposed order would permit all information designated as confidential under the protective order to be available to the above-named attorneys, as well as Infosint's Italian counsel, Nodari, and all parties' U.S. trial counsel. Pl. Mem. at 3.

C. Scope of the Protective Order

Whether it is appropriate for Dragotti and de Bosio to be denied access to Lundbeck's "highly confidential" information depends on whether they are involved in competitive decision-making, thereby creating a risk of inadvertent disclosure, and, if so, the hardship their exclusion would impose on Infosint.

1. Patent Counsel, Gianfranco Dragotti

Infosint does not have an in-house patent function, and instead relies on Dragotti, "a widely known and respected member of the Italian and European patent bars," for patent issues. Pl. Mem. at 4; *id.* at 7;*id.,* Exh. C ¶ 3. Dragotti has been providing Infosint with scientific and legal advice since 2000. *Id,* Exh. C ¶ 6. Dragotti is neither an officer nor employee of Infosint, and is not involved in "business decisions regarding competitors of Infosint."*Id.* at 6;*id.,* Exh. C ¶ 8. Dragotti's "advice to Infosint does not relate to matters regarding the prosecution of Infosint's pending or future patent applications."Infosint S.A.'s Reply Memorandum in Support of its Motion for Entry of Protective Order ("Pl.Reply"), at 2. While Dragotti's firm does prosecute patents for Infosint, Dragotti "was not substantively involved in the prosecution of the applications leading to the patents in suit, nor is he personally involved in the prosecution of any pending applications related to the patents in suit."Pl. Mem. at 8; Pl. Mem., Exh. C ¶ 7.

***4** Lundbeck alleges, though without specifying how, that Dragotti's declaration "make[s] it clear that [he] is involved in competitive decision making for Infosint."Def. Mem. at 2. Lundbeck also argues that Dragotti should be denied access to "highly confidential" information because he "is the principal of Dragotti & Associati, a firm that is involved in the ongoing prosecution of Infosint's patent applications relating to the technology at issue in this litigation, including a continuation application of one of the patents-in-suit."*Id.*

"Several courts have determined that advice related to patent prosecution and advice on the scope of patent claims constitute competitive decision-making."*Andrx Pharmaceuticals, LLC v. Glaxosmithkline, PLC,* 236 F.R.D. 583, 586 (S.D.Fl.2006) (*internal citations omitted* )."Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] projects] sales to be most critical." ' *Commissariat A L'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1196965, at *2 (D.Del. May 25, 2004) (*quoting*Motorola, 1994 WL 16189689, at *4) (finding that plaintiff's patent attorneys' current prosecution of patent applications related to the subject matter of the suit created a high risk of inadvertent disclosure of confidential information).

Based on the record before the Court, it appears that Dragotti is involved in competitive decision-making with regard to Infosint. For nearly seven years, Dragotti has provided Infosint with patent advice, based on his scientific and legal expertise. While he did not prosecute the patent asserted in this litigation

himself, he was, by his own omission, involved in his firm's prosecution of the patent, at least to some degree. While he has offered to refrain from "any involvement in such prosecution in the future," he has not made the same offer with respect to his firm as a whole. Pl. Mem ., Exh. C. ¶ 7. Dragotti's position as the only named partner in the firm also increases the likelihood of inadvertent disclosure, since the members of the firm who are prosecuting the patents at issue will be under Dragotti's supervision. *See*Andrx Pharmaceuticals, LLC, 236 F.R.D. at 587 (finding that small size of firm increased chance of accidental disclosure of confidential information).

Infosint claims that it will be harmed by Dragotti's exclusion because neither Nodari nor de Bosio are technically trained and, therefore, cannot "advise Infosint effectively with respect to the technical patent issues."*Id.* at 5, 7. Infosint' states that it "desires to have the advice and counsel of its trusted European patent counsel."Pl. Reply at 4. Lundbeck's counter-argument is two-fold. First, it claims that Infosint "has failed to explain how restricting access to [Lundbeck's] highly sensitive material to U.S. counsel of record and one Italian counsel could impose an undue hardship."Def. Mem. at 3. Lundbeck notes that Infosint's experts will have access to all information, thereby being able to give technical assistance. *Id.* at 8. Second, it argues that Dragotti will still have access to the vast majority of information produced, and, if necessary, Infosint's U.S. counsel will be able to seek Dragotti's advice without disclosing the substance of the "highly confidential" material. *Id.* at 3-4.

***5** If counsel is determined to be involved in competitive decision-making, the issue is whether there is a demonstrated a need for access to the documents sufficient to outweigh the concerns such access gives rise to. *Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y.1992); *see also*Vesta Corset Co., Inc., 1999 WL 13257, at *3. A confidentiality order that excludes in-house counsel may be found to cause minimal prejudice when "[o]utside counsel has been involved in this litigation from the beginning and is fully familiar with the facts."*Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, 1994 WL 177795, at *3 (S.D.N.Y. May 5, 1994). When the challenged counsel is also litigation counsel, courts have permitted access, but with controls tailored to prevent accidental disclosure. *See, e.g.,Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 WL 16189689, at *4 (D.Del. Dec. 19, 1994) (permitting patent prosecution firm to build a "Chinese wall" so that attorneys could continue prosecuting patents but attorneys who had access to confidential information could continue representing plaintiff in litigation); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 1196965, at *2 (D.Del. May 25, 2004).

Infosint has not provided a sufficiently compelling reason why Dragotti should have access to Lundbeck's most confidential information. In its submissions to the Court, Infosint had made conclusory assertions of importance, but has not shown how or why Dragotti's access to the information in question "is critical to the prosecution of its case."*Andrx Pharmaceuticals, LLC*, 236 F .R.D. at 587. While Infosint's desire to have its trusted counsel involved in the litigation is understandable, Lundbeck's desire to keep its proprietary information protected is a superior interest. The Court does not believe that Dragotti would be anything but ethical in his dealings with the information, but the opportunity for accidental disclosure or subconscious influencing of actions or advice is too great. This decision will not cause Infosint undue harm. First, Dragotti is not Infosint's litigation counsel in this case, so access to the information is not crucial to prosecuting Infosint's claim. Second, Dragotti will still have access to all information designated as confidential, but will only be denied access to "pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or processes for making them."Def. Mem., Exh. A at 2.

2. Italian Counsel, Stefano de Bosio

Infosint relies on de Bosio, as well as Nodari, for advice on commercial and corporate legal matters. Pl. Mem. at 4, 6; *id.,* Exh. B ¶¶ 3-4. In this role, de Bosio does not "engage in competitive decision-making for Infosint," which Infosint defines as "decisions about pricing or product design made in light of similar or corresponding information about a competitor."*Id.* at 6. A respected member of the Italian bar, de Bosio is not an officer or employee of Infosint. *Id.* at 6-7;*id.,* Exh. B ¶¶ 2, 5. He also agrees to be "subject to the jurisdiction of this court with respect to any dispute

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relating to" the protective order. *Id.,* Exh. B ¶ 7. Lundbeck puts forth two primary arguments as to why de Bosio should not have access to the information. Def. Mem. at 9-10. First, Lundbeck claims that "it is clear that" de Bosio is involved in competitive decision-making because Infosint's business is the holding and assertion of patent rights and, "under such circumstances, the principal business decisions ... are likely to be made, or at least heavily influenced, by [Infosint's] legal advisers."*Id.* at 9. Second, Lundbeck argues that de Bosio should be precluded from access to "highly confidential" information because he "is likely to be called as a fact witness in relation to [Lundbeck's] defenses of "license" and "arbitration and award," based on his prior representation of Infosint's predecessors in interest."*Id.* at 3. Infosint argues that Lundbeck's desire to depose de Bosio is not a legitimate reason to deny him access to information because Lundbeck has failed to articulate any reason why taking his deposition is inconsistent with him having access. Pl. Mem. at 8; Pl. Reply at 5.

***6** There has been no evidence presented by Lundbeck to contradict de Bosio's statement that he is not involved in competitive decision-making. Unlike advice on patent issues, there is no precedent that general corporate legal advice constitutes involvement in competitive decision-making. Therefore, the Court finds that de Bosio is not involved in competitive decision-making, "which is arguably the determinative factor in this analysis,"*Amgen, Inc. v. Elanex Pharmaceuticals, Inc.,* 160 F.R.D. 134, 139 (W.D.Wa.1994) (rejecting two-tier system of confidentiality proposed by defendant after finding that plaintiff's in-house counsel was not involved in competitive decision-making, in spite of defendant's argument that plaintiff had sufficient representation in outside counsel). As for Lundbeck's second argument, that their intention to call de Bosio as a fact witness should prevent him from having access to "highly confidential" information, there appears to be no rationale based on the subject matter on which de Bosio will potentially be deposed.

## IV. CONCLUSION

For the foregoing reasons, Infosint's motion for a protective order is GRANTED, in part, and DENIED, in part, and Infosint shall submit a proposed order, in accordance with this opinion, for the Court's consent by May 22, 2007.

SO ORDERED

S.D.N.Y.,2007.
Infosint S.A. v. H. Lundbeck A.S.
Slip Copy, 2007 WL 1467784 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 13

Commissariat A L'Energie v. Dell Computer Corp.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
COMMISSARIAT A L'ENERGIE ATOMIQUE, Plaintiff,
v.
DELL COMPUTER CORPORATION; Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Electronics Canada, Inc.; Samsung International, Inc.; Sun Microsystems, Inc.; and Viewsonic Corporation, Defendants.
**No. Civ.A. 03-484-KAJ.**

May 25, 2004.

Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, DE, for Plaintiff and Counter-Defendant.
William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE, for Defendants.
Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants and Counter-Claimant.

*MEMORANDUM ORDER*

JORDAN, J.
***1** This is a patent infringement case. Jurisdiction is proper under 28 U.S.C. § 1331. Presently before me is a Motion for Expedited Entry of Protective Order filed, on April 13, 2004, by plaintiff Commissariat à L'Énergie Atomique ("CEA"). (Docket Item ["D.I."] 172; the "Motion".) For the reasons that follow, CEA's Motion will be denied.

CEA alleges that Defendants [FN1] are infringing its U.S. Patent No. 4,701,028 (issued October 20, 1987)("the '028 patent") and U.S. Patent No. 4,889,412 (issued December 26, 1989)("the '412 patent"), both of which claim certain liquid crystal display ("LCD") technology. (*See* D.I. 1.) CEA filed a motion for a preliminary injunction against Samsung on October 28, 2003 (D.I.58, 59) and, on March 3, 2004, I granted CEA's request for limited expedited discovery in connection with that motion (D.I.138). Samsung provided some responsive information to CEA's expedited discovery requests, and both sides want some form of protective order in place to protect confidential information, but CEA and the Defendants have reached an impasse in their negotiations over the scope of the protective order that should be entered.[FN2] (*See* D.I. 173 at 1; D.I. 199 at 2.)

FN1. On May 13, 2004, I issued a Memorandum Order granting in part and denying in part CEA's Motions to Consolidate this case with several others. (D.I.209.) Any reference herein to the "Defendants" means the module manufacturers against whom this action is now proceeding, namely, Samsung Electronics ("Samsung"), Fujitsu Display Technologies Corporation ("Fujitsu"), and Tottori Sanyo Electric Co., Ltd. ("Tottori Sanyo").(*Id.* at 8.) The Defendants have each submitted formal or letter briefing in response to CEA's Motion. (*See* D.I. 182, 183, 196, 198, 199.)

FN2. The Defendants, recognizing that these protective order issues will impact them equally as this case moves forward, share a common position in response to CEA's proposed protective order. (*See* D.I. 182 at 1 n. 2; D.I. 183; D.I. 196.)

The parties disagree over whether three of the attorneys who are on CEA's trial team and also prosecute patents for CEA-namely, Song Jung, Rebecca Rudich, and Yonggyu Kim (collectively referred to as "CEA's patent prosecution attorneys")-should have access to discovery designated as "highly confidential." (D.I. 173 at 1; D.I. 198 at 3; D.I. 199 at 2.) CEA argues that Mr. Jung, CEA's lead attorney in this case, and his colleagues, Ms. Rudich and Mr. Kim, need access to all discovery in order to continue to represent CEA effectively.[FN3](D.I. 173 at 2, 12.) The Defendants are seeking entry of a protective order that bars CEA's patent attorneys from accessing the Defendants' highly confidential information. (D.I. 199 at 9-10.) The Defendants argue that giving CEA's patent prosecution attorneys access creates an unacceptable risk of inadvertent disclosure

or misuse of their highly confidential research, technical, and proprietary information, especially since Mr. Jung and his colleagues prosecute patents for LG.Philips LCD Co., Ltd. ("LG.Philips"), one of the Defendants' major competitors. (D.I. 198 at 4; D.I. 199 at 3.) CEA responds that, just because their patent prosecution attorneys render legal advice with respect to patent prosecution, does not necessarily mean that they are involved in competitive decision making and thus warrant denying them access to highly confidential information. (D.I. 203 at 1.) The Defendants say, in the alternative, that if the patent prosecution attorneys are given access to confidential information, they should be barred from prosecuting patents in the LCD field for a minimum of one year. (D.I. 198 at 3; D.I. 199 at 21.) CEA asserts that any restriction on those attorneys' patent prosecution should be more narrow, and, specifically, "should be limited to the VA-mode birefringence compensation technology at issue or, at most, VA-mode LCD technology generally."(*Id.* at 1-2.)

FN3. CEA also argues that it need not identify its non-testifying experts and consultants who may have access to confidential information prior to the end of this case. (D.I. 173 at 3.) I heard argument from CEA and the Defendants on this point during an April 21, 2004 teleconference, and ruled that, if CEA wanted to show "confidential and what's asserted to be highly sensitive information" to non-testifying experts and consultants, CEA had to "tell [the Defendants] who they are before ... divulg[ing] it."(D.I. 197 at 16:5-11.)

***2**Federal Rule of Civil Procedure 26(c) provides that, "for good cause shown, ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...."Fed.R.Civ.P. 26(c)(7) (2004). This court has routinely recognized the importance of protecting technical information, particularly in patent cases. *See Motorola, Inc. v. Interdigital Tech. Corp.,* 1994 U.S. Dist. LEXIS 20714 at *6 (D.Del. Dec. 19, 1994) ("In a patent case, maintaining the integrity of the protective order is an especially serious concern."); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.,* 682 F.Supp. 20, 22 (D.Del.1988) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."). Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented...."*U.S. Steel Corp. v. U.S.,* **730F.2d1465**, 1469 (Fed.Cir.1984)."The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure" of highly confidential information. *Motorola,* 1994 U.S. Dist. LEXIS 20714 at *10.

I think it is appropriate to deny CEA's patent prosecution attorneys access to the Defendants' highly confidential information or, if they are permitted to have access to such information, to prevent them from prosecuting patents in the field of LCD technology for one year after the conclusion of this litigation, including appeals. Central to my determination is the Defendants' assertion, unrebutted by CEA, that CEA's patent prosecution attorneys-and Mr. Jung, in particular-prosecute patents in the field of LCD technology for LG.Philips, one of the Defendants' major competitors. (D.I. 198 at 3; D.I. 199 at 4.) I disagree with CEA's assertion that those attorneys' activities do not rise to the level of "competitive decision making" that is necessary to restrict their access to highly confidential information. (D.I. 173 at 2 (citing *U.S. Steel,* 730 F.2d at 1468).) Prosecuting patent applications "involves decisions of scope and emphasis" that implicate competitive decision making, as claims may be drafted to "read on new products and new directions where [a party] project[s] sales to be most critical."*Motorola,* 1994 U.S. Dist. LEXIS 20714 at *11. In this case, as in *Motorola,*"[t]here can be no question" that CEA attorneys who receive highly confidential information and then later prosecute patents in the field of LCD technology "will have to distill and compartmentalize the confidential knowledge they have gained." 1994 U.S. Dist. LEXIS 20714 at *12. This creates a high risk of inadvertent disclosure of the Defendants' highly confidential information. *See Motorola,* 1994 U.S. Dist. LEXIS 20714 at *13. CEA's patent prosecution attorneys are currently prosecuting patent applications related to the subject matter of the patents-in-suit. (*See* D.I. 198, Ex. A (U.S. Patent Application No. 10/437,982 entitled "Liquid Crystal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Display Device With Wide Viewing Angle," listing Mr. Jung as the corresponding attorney).) Those CEA patent prosecution attorneys who, if given access,

***3** were to view [the Defendants'] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be.

*Motorola,* 1994 U.S. Dist. LEXIS at *14-*15. In sum, I am persuaded that CEA's patent prosecution attorneys should not have unfettered access to the Defendants' highly confidential information. There is a substantial risk of inadvertent disclosure of such information, given that CEA's patent attorneys are prosecuting and will continue to prosecute patents in the field of LCD technology, including patents for the Defendants' competitors.

As previously noted, CEA argues that there are many different categories of LCD technology,[FN4] and that, because the subject matter of the patents-in-suit pertains to the field of VA-mode birefringence compensation, any restriction on its patent prosecution attorneys' prosecution activities should be limited to that narrow area. (D.I. 203 at 2.) However, I will not pick and choose which categories of LCD technology are fair game for CEA's patent prosecution attorneys and those which are not. If CEA's patent prosecution attorneys have access to the Defendant's highly confidential information, they will be barred from prosecuting patents "relating to the broad subject matter of the patents in suit," that is, LCD technology, for one year after the conclusion of this lawsuit, including all appeals.[FN5] *See Motorola,* 1994 U.S. Dist. LEXIS 20714 at *8-*9.

FN4. *E.g.,* vertical alignment ("VA"), in plane switching, twisted nematic, and ferroelectric liquid crystal LCD technologies.

FN5. CEA also argues that it will be unduly prejudiced in prosecuting this case if its patent prosecution attorneys are not allowed access to the Defendants' highly confidential information. (D.I. 173 at 12-13.) While this is "a factor to be balanced against [the Defendants'] need to protect [their] confidential information ... it is just one factor." *Motorola,* 1994 U.S. Dist. LEXIS 20714 at *16. As the Defendants point out, CEA fails to explain why Mr. Jung cannot continue to direct this litigation without access to the Defendants' highly confidential information, or why the many other attorneys on CEA's litigation team are incapable of handling this case as it moves forward. (D.I. 198 at 11.)

If CEA wants Mr. Jung, Ms. Rudich, and Mr. Kim to continue in their current roles as litigation counsel, and to have access to the Defendants' highly confidential information, then either these three individuals, who also prosecute patents in the field of LCD technology, must be barred from having access to the Defendants' highly confidential information, or they must be prohibited from prosecuting patents in the field of LCD technology for one year following the conclusion of this litigation, including all appeals. This, I think, strikes the proper balance between "the goals of full disclosure of relevant information and reasonable protection against economic injury" that are implicated in patent infringement cases generally, and certainly in this one. *Safe Flight,* 682 F.Supp. at 23.

For these reasons, I will adopt the Defendant's proposed section 4.1(a) of the draft Stipulated Protective Order submitted as Exhibit D to Docket Item 174.[FN6] The parties are ORDERED to submit a Stipulated Protective Order containing this language to the court within five days of the date of this Memorandum Order.

FN6. This language provides, in relevant part, that "attorneys shall not be provided access to HIGHLY SENSITIVE CONFIDENTIAL information if such attorneys ... currently participate in, direct or supervise any patent prosecution activity involving (i) LCD technology or (ii) technology directed to increasing the wide-angle viewing of LCD products (collectively, "the Subject Matter"). During the pendency of this litigation and for one year after the full and final conclusion of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this litigation, including all appeals, those attorneys ... who are provided access to HIGHLY SENSITIVE CONFIDENTIAL materials covered by this order will not participate in, direct or supervise any patent prosecution activity ... involving the Subject Matter....” (D.I. 174, Ex. D at 5.) This provision gives CEA the option of deciding whether to give their patent prosecution attorneys access to the Defendants' highly confidential information, while also giving effect to the restrictions described herein, if CEA does decide to continue using their patent prosecution attorneys as litigation counsel in this case.

D.Del.,2004.
Commissariat A L'Energie v. Dell Computer Corp.
Not Reported in F.Supp.2d, 2004 WL 1196965 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 14

LEXSEE 2003 U.S. DIST. LEXIS 23653

**CUMMINS-ALLISON CORP., an Indiana Corporation, Plaintiff, vs. GLORY LTD., a Japanese Corporation; GLORY SHOJI CO., LTD., a Japanese Corporation; and GLORY (U.S.A.) INC., a California Corporation, Defendants.**

**No. 02 C 7008**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

***2003 U.S. Dist. LEXIS 23653***

**December 31, 2003, Decided**
**January 2, 2004, Docketed**

**SUBSEQUENT HISTORY:** Partial summary judgment granted by, in part, Partial summary judgment denied by, in part *Cummins-Allison Corp. v. Glory, Ltd., 2005 U.S. Dist. LEXIS 6150 (N.D. Ill., Mar. 28, 2005)*

**PRIOR HISTORY:** *Cummins-Allison Corp. v. Glory Ltd., 2003 U.S. Dist. LEXIS 16454 (N.D. Ill., Sept. 17, 2003)*

**DISPOSITION:** [*1] Glory's motion to amend protective order GRANTED.

**COUNSEL:** For Cummins-Allison Corporation, PLAINTIFF: Bruce L Bower, Winston & Strawn LLP, Chicago, IL USA. Edward L Foote, Winston & Strawn LLP, Chicago, IL USA. John Edmund Mooney, Winston & Strawn LLP, Chicago, IL USA. Jeffrey G Knoll, Wood, Phillips, Vansanten, Hoffman & Ertel, Chicago, IL USA. Stephen Gary Rudisill, Jenkens & Gilchrist, Chicago, IL USA. Edward Francis McCormack, Jenkens & Gilchrist, Chicago, IL USA. Keith Carter Hannigan, Jenkens & Gilchrist, Chicago, IL USA. Paul Richard Kitch, Jenkens & Gilchrist, Chicago, IL USA. Jeffrey Leonard Hamera, Jenkins & Gilchrist, Chicago, IL USA.

For Glory Ltd., Glory Shoji Co., Ltd., DEFENDANTS: Joseph Kent Mathewson, Donohue, Brown, Mathewson & SMYTH, Chicago, IL USA. Charles E Harper, Jr., Quarles & Brady LLP, Chicago, IL USA. Stuart Lubitz, Hogan & Hartson, LLP, Los Angeles, CA USA. David L Lubitz, Hogan & Hartson, LLP, Shinjuk-Ku Tokyo, Japan.

For Glory (USA) Inc., DEFENDANT: Steven P Hollman, Hogan & Hartson, Washington, DC USA. Joseph Kent Mathewson, Donohue, Brown, Mathewson & SMYTH, Chicago, IL USA. Charles E Harper, Jr., Quarles & Brady LLP, Chicago, IL USA. Stuart Lubitz, [*2] Hogan & Hartson, LLP, Los Angeles, CA USA. David L Lubitz, Hogan & Hartson, LLP, Shinjuk-Ku Tokyo, Japan.

**JUDGES:** District Judge Ronald A. Guzman. SIDNEY I. SCHENKIER, United States Magistrate Judge.

**OPINION BY:** SIDNEY I. SCHENKIER

**OPINION**

**MEMORANDUM OPINION AND ORDER**

In this opinion, we address an issue that was raised early in the litigation but, until recently, has lain dormant: the right of the plaintiff, Cummins, to show certain documents produced in this litigation by the defendants (collectively referred to as "Glory"), to Stephen G. Rudisill and Paul R. Kitch, attorneys who are both counsel of record for Cummins in this lawsuit and counsel who prosecute patent applications for Cummins.

Glory has filed a motion to modify the stipulated protective order entered October 10, 2002 (doc. # 129). In its motion, Cummins seeks to do the following: (a) add a new provision (paragraph 3(c)) creating a class of documents entitled "Confidential -- Patent Prosecution

Information," which would consist of information that is "Highly Confidential" as defined by the protective order, and that additionally relates to "non-public patent applications and related communications or design or to research [*3] and development activities concerning current or future products"; (b) add a new provision (paragraph 9(b)) prohibiting Messrs. Rudisill and Kitch from receiving Glory's "Confidential -- Patent Prosecution Information"; (c) in the alternative, provide in proposed paragraph 9(b) that if Messrs. Rudisill or Kitch receive such documents, they would be barred from participating in the prosecution of any patent applications "relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals"; and (d) make other, related changes to paragraphs 11, 12 and 25 of the protective order.

Cummins does not object to the proposed new classification of "Confidential -- Patent Prosecution Information," but objects to barring Messrs. Rudisill and Kitch from receiving them. Cummins further objects to any limitations on the ability of Messrs. Rudisill or Kitch to prosecute patent applications if they receive "Confidential -- Patent Prosecution Information"; in the alternative, Cummins argues that if limitations are imposed, they should differ from those suggested by Glory. Finally, Cummins disagrees [*4] with the changes to paragraphs 11, 12 and 25 of the protective order proposed by Glory.

For the reasons set forth below, the Court rules as follows:

> A. The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential -- Patent Prosecution Information."
>
> B. The Court DENIES Glory's request to bar Messrs. Rudisill and Kitch from receiving Confidential -- Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.
>
> C. The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.
>
> D. The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.
>
> E. The Court *sua sponte* modifies paragraph 16 of the protective to make clear that it applies to Confidential -- Patent Prosecution Information.

**I.**

We begin with a brief review of the background facts relevant to this motion. Cummins and Glory are competitors with respect to the [*5] sale of currency discriminators (which are machines that determine the authenticity and denomination of a stack of currency, and tabulate its value). Since early 1990, Cummins has prosecuted numerous patent applications relating to currency discriminators. [1]

> 1 In an earlier opinion in this case recommending denial of Cummins's motion for preliminary injunction, the Court examined in detail the various applications: (a) Application No. 07/475,111, dated February 5, 1990; (b) Application No. 07/885,648, dated May 19, 1992, which was a continuation-in-part ("CIP") of Application No. '111, and which led to the issuance of the '196 patent on March 15, 1994; (c) Application No. 08/127,334, dated September 27, 1993, which was a CIP of Application No. '648, and which resulted in the issuance of Patent No. 5,467,405 on November 14, 1995; (d) Application No. 08/339,337, dated November 14, 1994, which was a CIP of Application No. '334, and which resulted in the issuance of Patent No. 5,692,067 on November 25, 1997; (e) Application No. 08/841,203, dated April 29, 1997, which was a CIP of Application No. '337, and which resulted in the issuance of Patent No. 6,028,951 on February 22, 2000; and (f) Application No. 09/453,200, which was a CIP of Application No. '203, and which resulted in the issuance of the '806 patent on October 1, 2002.

[*6] On October 1, 2002, Cummins brought this suit alleging that Glory had infringed *United States Patent No. 6,459,806* ("the *'806 patent*"), issued to Cummins on October 1, 2002. Since that time, Cummins has amended the complaint to add claims of infringement of *United States Patent No. 5,291,196* ("the *'196 patent*"). Messrs. Rudisill and Kitch -- along with several other attorneys of the law firm of Jenkins & Gilchrist -- have been litigation counsel of record for Cummins from the beginning of this lawsuit. On October 11, 2002, Jeffrey Knoll, of the law firm of Wood, Phillips, Van Santen, Hoffman & Ertel (now known as Wood, Phillips, Kutz, Clark & Mortimer), filed an appearance for Cummins (doc. # 11). In April 2003, three attorneys from the law firm of Winston & Strawn filed additional appearances as counsel of record for Cummins (doc. ## 98-99).

In addition to being counsel of record, Messrs. Rudisill and Kitch have been extensively involved in prosecuting Cummin's patent applications in the Patent and Trademark Office ("PTO"), including the applications which led to the *'806* and *'196 patents*, which are directly at issue in this litigation (*see* Cummins Mem. at 3). Messrs. Rudisill [*7] and Kitch also have been involved in prosecuting eight other Cummins patent applications that are related to the *'806* and *'196*, including one patent that was the subject of prior litigation in this district between the parties (the '067 patent) and three patents at issue in a lawsuit currently pending in the Eastern District of Texas (the '067 patent, United States Patent No. 5,815,592, and United States Patent No. 6,381,354 (Glory Mot. at 3 n.5 and Ex. 1).

Messrs. Rudisill and Kitch have submitted unrebutted declarations stating that they are strictly outside patent counsel for Cummins: neither of them is - or ever has been - a shareholder, officer or employee of Cummins (Cummins Mem., Ex. A, P3; Ex. B, P3). It also is undisputed that neither Mr. Rudisill or Mr. Kitch is involved in Cummin's product design, marketing, pricing, or in "planning decisions" (*Id.,* Ex. A, P4; Ex. B, P4), and that neither has ever been cited for any ethical violation, or for violation of a protective order (*Id.,* Ex. A, P5; Ex. B, P5). However, Messrs. Rudisill and Kitch are silent on their roles in advising Cummins on the strategy of what to claim in a patent application, or how to respond when [*8] the PTO (as was often the case with the patents in suit and the applications that led to them) raised questions or rejected claim. Cummins does not assert that Messrs. Rudisill and Kitch are merely conduits through which Cummins transmits applications that have been fully formed by Cummins, without their input.

Messrs. Rudisill and Kitch state that they have been principal patent counsel in this litigation, and in that capacity, have devoted substantial time to familiarizing themselves with the patents at issue (which should not have been a time consuming task, since Messrs. Rudisill and Kitch prosecuted the applications that led to those patents) and with Glory's equipment and related technology (Cummins Mem., Ex. A, P6; Ex. B, P6). They do not claim to be the only attorneys representing Cummins who have done so, or to be the only attorneys of record for Cummins who are experienced patent attorneys. [2] Cummins also states that it has not yet shared with "patent prosecutors. . .selected confidential documents" identified by Glory (Cummins Mem. at 2) - thereby indicating that neither Mr. Rudisill nor Mr. Kitch has yet invested time in reviewing and analyzing materials that Glory seeks [*9] to protect as "Confidential - Patent Prosecution Information." [3]

2 According to its website, the Wood, Phillips firm specializes in intellectual property matters. However, the Wood, Phillips lawyer who appeared for Cummins, Mr. Knoll, no longer is with that firm and no longer appears to be practicing in Chicago; it is unclear whether Wood, Phillips has any continuing role on behalf of Cummins in this case. With respect to the three Winston & Strawn attorneys who are of record, Edward L. Foote is the only one who, judging from the Winston & Strawn website, has experience in litigating intellectual property matters. We do not know whether any other Winston & Strawn intellectual property lawyers are assisting Cummins without having formally appeared in the case.

3 We note that while this representation is made in Cummins's memorandum, the declarations offered by Messrs. Rudisill and Kitch are silent on this point. Moreover, the representation in Cummins's memorandum differs from what Cummins stated during a December 11, 2003 hearing to set the briefing schedule on this motion. At that time, Cummins stated that it had not shown the materials to both Mr. Rudisill and Mr. Kitch, but that one of them had seen the materials. Given the Court's decision that Messrs. Rudisill and Kitch will be barred from

prosecuting certain patent applications if they review Glory's Confidential - Patent Prosecution Information, the Court will require each of them to provide a declaration to Glory within 14 days of this order stating whether they have reviewed such information.

[*10] **II.**

As the party seeking to modify the protective order, Glory has the burden of showing good cause for its requested modifications. *SmithKline Beecham Corp. v. Synthon Pharmaceuticals Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002)*; *Jochims v. Isuzu Motors, Ltd., 145 F.R.D. 499, 501-502 (S.D. Iowa 1992)* (citing cases). As explained above, Cummins does not dispute the existence of good cause to modify the protective order to add paragraph 3(c), which creates a new class of Confidential - Patent Prosecution Information.

However, Cummins raises several challenges to Glory's request to bar Messrs. Rudisill and Kitch from viewing Confidential - Patent Prosecution Information. *First,* Cummins argues that the Court should not even address the merits of Glory's request because the request is untimely (Cummins Mem. at 2-3). *Second,* Cummins argues that Glory has failed to establish good cause to place any conditions, other than those already in the protective order governing Confidential and Highly Confidential Information, on the right of Messrs. Rudisill and Kitch to receive that information (*Id.* at 4-11). *Third,* Cummins argues that if any [*11] conditions are placed on the right of Messrs. Rudisill and Kitch to receive Confidential - Patent Prosecution Information, the conditions that Glory requests are too broad (*Id.* at 12-14). We address each of these arguments below.

**III.**

We begin the analysis with consideration of Cummins's argument that the Court need not address Glory's request to modify the protective order. Cummins argues that the protective order in this case was negotiated by the parties and entered by the Court (with modifications irrelevant to the pending motion) on October 11, 2002, without Glory seeking to include the provisions concerning Confidential - Patent Prosecution Information or access to it that Glory now requests. Cummins argues that at the time the protective order was entered more than one year ago, Glory knew that Messrs. Rudisill and Kitch were both counsel of record and patent prosecution counsel, and that it now is too late for Glory to complain (Cummins Mem. at 2-3). We disagree.

The protective order entered on October 11, 2002 was not written in stone. The stipulated protective order here specifically provides that either party "may apply to the Court for additional protection [*12] or disclosure beyond the terms of this Order . . ." (Cummins Mem., Ex. D: 10/11/02 Protective Order, P23). And even without such a provision, "courts have the inherent power to modify protective orders, including protective orders arising from a stipulation by the parties." *SmithKline Beecham, 210 F.R.D. at 166*. Nor do we agree with Cummins that the issue now before the Court "has been previously decided." The original protective order did not address the question of access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information, and the issue was not raised with the Court prior to the entry of the protective order. Therefore, that issue was not decided by the Court.

We also reject Cummins's related argument that having agreed to the original protective order, Glory has now waived its right to seek to modify the protective order to address the issue of access by Messrs. Rudisill and Kitch to Confidential -- Patent Prosecution Information (Cummins Mem. at 3). We might be more receptive to that argument if, as Cummins suggests, Glory had remained silent for one year after the entry of the protective order before alerting Cummins to Glory's [*13] request for this modification. However, Glory raised this issue within a few weeks after the protective order was entered. The Court invited briefing on the issue in an order dated October 31, 2002 (doc. # 18). The parties' attempts to resolve the issue took a backseat to the expedited discovery and briefing on Cummins's preliminary injunction motion (*see* Glory Motion, Ex. 5: 11/21/02 Tr. at 20-21). When the matter was not resolved by the time that the parties completed expedited discovery, the Court suggested that the parties defer the issue until after the preliminary injunction hearing, a suggestion that was acceptable to all parties (*Id.,* Ex. 6: 1211/02 Tr. at 16-17). When Cummins itself later moved to modify the protective order for other reasons, Glory made clear that Glory still sought a modification to the protective order to address the issue of access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information (*see* doc. # 106: 05/20/03 Glory Mem. at 4).

Thus, Cummins cannot seriously argue that Glory failed to raise this issue soon *after* the entry of the stipulated protective order. Cummins does raise the question of why Glory [*14] failed to do so *before* the entry of the protective order (Cummins Mem. at 3). Glory does not address this point either in its motion or reply. However, we note that the stipulated protective order was entered only ten days after Cummins filed suit. The parties did not then have the luxury of time to contemplate everything that should be covered by in the protective order. Cummins had sought expedited discovery and an early hearing on its motion for a preliminary injunction; and, at a status hearing on October 9, 2002, the Court indicated its intent to grant that request (if the parties could not agree to a standstill, or a settlement, or an accelerated trial on the merits). Given the hectic pace of the early stages of the case, the Court can understand if, through oversight, Glory failed to address this issue when the stipulated protective order was presented to the Court.

Moreover, Cummins failed to show that it has suffered any prejudice by the delay in this issue finally being presented to the Court for resolution. Cummins cannot claim that it showed the materials at issue to its patent prosecutors in reliance on the absence of any provision in the protective order prohibiting [*15] Cummins from doing so. To the contrary, Glory plainly raised this issue at the time of the initial document production, and Cummins says that pending the resolution of this issue, Cummins has honored Glory's request that Cummins not show Confidential -- Patent Prosecution Information to patent prosecutors (Cummins Mem. at 2). In these circumstances, while we do not condone Glory's failure to address the issue of access by Messrs. Rudisill and Kitch to Confidential -- Patent Prosecution Information at the time the stipulated protective order was first presented to the Court, we will not penalize Glory for that failure by refusing to address the issue now.

**IV.**

In deciding whether to bar or condition the access by Messrs. Rudisill and Kitch to Glory's Confidential -- Patent Prosecution Information, we must "balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access." *Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437, No. 98 C 7408, 1999 WL 618969, at *2 (N.D. Ill. Aug. 9, 1999)*. A denial of access "cannot rest on a general assumption that one group of lawyers [*16] are more likely or less likely inadvertently to breach their duty under a protective order." *U.S. Steel v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)*. Rather, the "factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, . . ., must govern any concern for inadvertent or accidental disclosure." *Id.*

The inquiry into those "factual circumstances" often centers on whether counsel is engaged in "competitive decisionmaking." *See U.S. Steel, 730 F.2d at 1468* and n.3; *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *2*. In this case, the dispute between the parties centers on the threshold question of what is included within the phrase "competitive decisionmaking." Glory argues that Messrs. Rudisill and Kitch long have been -- and currently are -- involved in shaping and prosecuting patent applications relating to the subject matter of this lawsuit (Glory Motion at 3), and that this conduct constitutes "competitive decisionmaking" (*Id.* at 6). By contrast, Cummins asserts that this competitive decisionmaking is limited to counsel's involvement in a client's "business decisionmaking, [*17] " and that Messrs. Rudisill and Kitch are not involved in Cummins's business decisions (Cummins Mem. at 9, 10-11).

For the reasons that follow, we believe that Glory has the better of this definitional argument. We first explain how we reach that conclusion, and then apply that conclusion to the dispute now before us.

**A.**

We start with the definition of "competitive decisionmaking" provided in *U.S. Steel:*

> The phrase would appear serviceable as a shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*730 F.2d at 1468 n.3*. Plainly, the *U.S. Steel* court's listing of client decisions was not limited to "pricing and

product design." The court's use of "etc." reveals that those are only examples of the kinds of client decisions that may be made "in light of similar or corresponding information about a competitor." A number of courts have held that advice by counsel in prosecuting patent applications falls within [*18] the scope of "competitive decisionmaking."

In *Motorola, Inc. v, Interdigital Technology Corp., No. 03-488-LON, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994)*, the plaintiff moved to bar defendant's trial counsel -- who also prosecuted patent applications for the defendant -- from access to the plaintiff's confidential information. The court reasoned that prosecuting patent applications involves competitive decisionmaking activities: "the process of prosecuting patent applications . . . involves decisions of scope and emphasis, . . . '[Patent counsel] can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die.'" *1994 U.S. Dist. LEXIS 20714, at *11*. The court further found that the risk that the plaintiff's patent counsel would inadvertently use the defendant's confidential information was substantial:

> Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean [*19] task, for as soon as one idea would be stamped 'untainted,' another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [defendant's] attorneys may be.

*Id. at *14-15*. Based on this analysis, the court barred defense counsel who received the plaintiff's confidential information from prosecuting any of the defendant's patent applications "relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion of the present litigation, including appeals." *Id. at *20*. The court held that this limitation properly balanced the risk of inadvertent disclosure with the hardship to the defendant from that limitation. *Id. at *15-16*.

In *Mikohn Gaming Corp. v. Acres Gaming, Inc., 50 U.S.P.Q.2d 1783 (D. Nev. 1998)*, the court was presented with a situation in which the defendant's trial counsel also prosecuted patent applications for the defendant. As do Messrs. Rudisill and Kitch here, the patent counsel in *Mikohn* disavowed any relationship with the defendant as an officer, board member or employee, [*20] or any role in advising the defendant on business strategies regarding product design, development, pricing, or marketing. However, finding the reasoning in *Motorola* persuasive, the court held that counsel's admitted role in prosecuting patent applications, and providing legal advice and counseling in the field of intellectual property, constituted involvement in competitive decisionmaking:

> The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. . . . In light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive.

*50 U.S.P.Q.2d at 1785*. The court in *Mikohn* barred defendant's patent counsel from access to the plaintiff's confidential information, finding that the hardship to defendant was mitigated by the presence of other patent counsel in the case representing the defendant and, in any event, was outweighed by the risk of unauthorized disclosure.

In *Interactive Coupon,* the court was presented with a request to bar certain plaintiff's attorneys, who were also prosecuting patent applications for the plaintiff, [*21] from reviewing the defendant's confidential documents. The court reviewed the analysis in *Motorola* and *Mikohn,* and posed the central question as whether the plaintiff's law firm's "prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process." *1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *3*. The court answered that question in the affirmative, explaining that competitive decisionmaking "is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted." *Id.* Although patent counsel stated that they did not participate in the plaintiff's competitive business decisions, product pricing or design, and general business planning or strategizing, the court found that these statements failed to address the

role of counsel in prosecuting and shaping patent applications. *Id*. As a result, the court ordered that any patent counsel who "are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents [*22] in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals." *1999 U.S. Dist. LEXIS 12437, [WL] at *4*. [4]

4 In its reply, Glory cites two other decisions that also found patent prosecutions to be included with "competitive decisionmaking," and that barred counsel who received an adversary's confidential information from prosecuting related patent applications for a period of time. *See Chan v. Intuit, Inc., 218 F.R.D. 659 (N.D. Cal. 2003)*; *In re Pabst Licensing, GmbH, 2000 U.S. Dist. LEXIS 6374, No. MDL 1298, 2000 WL 554219, at *4 (E.D. La. May 4, 2000)* ("It is clear that the advice and participation of the Pabst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the non-Pabst parties confidential information").

The Court finds the discussion of "competitive decisionmaking" in these opinions persuasive, as it reflects the reality of the way in [*23] which patent applications are prosecuted. As this case vividly demonstrates, patent applications are not always fully formed and unchanging when they are filed. *See* note 1, *supra*. Patent applications may be revised in order to respond to a number of factors that may arise, such as concerns expressed by a PTO examiner -- or information about other products that have entered or are about to enter the market.

We would expect patent prosecution counsel to be intimately involved in deciding how to shape the original application, or how later to revise it. It is that intimate involvement in the shaping and revision of patent applications that provides for the risk that patent counsel inadvertently will use information obtained from a party in patent litigation in shaping the application. As the *Motorola* court quite properly observed, this is not a criticism of the ethics of any particular attorneys or of the bar in general. Rather, it is a recognition of the limits of human beings to completely compartmentalize the multiple sources from which they obtain information.

The Court has considered Cummins's criticisms of the competitive decisionmaking analysis in *Motorola, Mikohn,* [*24] and *Interactive Coupon,* but finds them unpersuasive. We do not agree that *Motorola* and *Mikohn* give "face time" to *U.S. Steel,* but disregarded the *U.S. Steel* admonition by relying on a general assumption that disclosure of confidential information to patent prosecution counsel will run the risk of inadvertent disclosure (Cummins Mem. at 7). Rather, those decisions examined the role of patent attorneys in prosecuting patents, and concluded that their roles -- and not the mere label of "patent prosecutor" -- brought them within the scope of what *U.S. Steel* referred to as competitive decisionmaking. Nor, in the Court's view, did the *Mikohn* court "essentially ignore[]" affidavits stating that the patent prosecutors were not engaged in competitive decisionmaking (Cummins Mem. at 8). Rather, the *Mikohn* court found that with respect to what the attorneys did in prosecuting the patent applications, the issue the court considered central, the affidavits were "so general as to be virtually meaningless." *50 U.S.P.Q.2d at 1786*.

Cummins also argues that the definition of competitive decisionmaking employed by these decisions is too broad, and urges [*25] that the Court instead follow the approach in *MedImmune, Inc. v. Centocor, Inc., 271 F. Supp. 2d 762 (D. Md. 2003)*. In that case, the court -- calling the decision a "close call," *id. at 773* -- rejected the defendants' argument that the plaintiff's patent prosecution counsel was a competitive decisionmaker. Glory correctly distinguishes *MedImmune* on the ground that, unlike the case in *Mikohn* and here, there was no indication in *MedImmune* that the plaintiff's counsel "was currently prosecuting patents on the exact same subject matter of the litigation" (Glory Reply at 5, quoting *MedImmune, 271 F. Supp. 2d at 775 n.14*).

However, that distinction is not a complete answer to the *MedImmune* analysis, because the court there directly expressed its disagreement with the *Interactive Coupon* analysis, on the ground that it "amounts to a *per se* prohibition on patent counsel" acting as both trial counsel and patent prosecutor. *Id. at 774 n.13*. In our view, the *MedImmune* court fails to come to grips with the role of a patent prosecutor in shaping the way in which a patent application is written, or how [*26] role of the patent prosecutor, when combined with the knowledge of a

competitor's confidential information gained through the litigation process, creates a risk of inadvertent use of that information to advance a client's patent prosecution. We are not persuaded by*MedImmune* that the courts in *Motorola, Mikohn,* and *Interactive Coupon* were incorrect in their analysis of the role performed by patent prosecutors, or in their conclusion that this role brings them within the scope of competitive decisionmaking that creates a risk of inadvertent disclosure of confidential information.

That said, we understand the concern expressed by the *MedImmune* court about creating a *per se* rule that patent prosecutors cannot act as litigation counsel. On that point, we have three observations. *First,* as we will explain below, we believe it would be rare that patent prosecution counsel would be absolutely barred from reviewing confidential information, as was the case in *Mikohn* (the opinion does not disclose whether some other alternative had been proposed). Rather, under the *Interactive Coupon* approach, the party could choose not to disclose confidential information to [*27] patent prosecution counsel, in which case that counsel could continue to prosecute patent applications; or, the party could choose to reveal confidential information to patent prosecution counsel, and accept limitations on that attorney's ability to prosecute certain patent applications for a period of time. *Second,* any limitation would apply as to the prosecution of patent applications relating to the subject matter of the patents in suit; it would not bar counsel from prosecuting unrelated patent applications in the PTO. *Third,* to the extent that the *Interactive Coupon* analysis would make it difficult for patent counsel to act unfettered both as litigation counsel and prosecution counsel, that difficulty is the proper consequence of the need to protect against inadvertent disclosure.

**B.**

The application of this analysis to the present case is straightforward. Cummins does not dispute that Messrs. Rudisill and Kitch have been -- and currently are --extensively involved in prosecuting patent applications related to the subject matter of this litigation. The declarations submitted by Messrs. Rudisill and Kitch state that they have no role in Cummins's product design, [*28] marketing, pricing or planning decisions, and have no affiliation with Cummins other than as its counsel. But, these declarations suffer from the same shortcoming as the affidavits offered in *Mikohn* and *Interactive Coupon:* the Rudisill and Kitch declarations are silent about their respective roles in shaping the many patent applications, revisions, and responses to PTO examiner questions that they have handled for Cummins, and that are directly related to the subject matter of this litigation.

Cummins has not attempted to argue that Messrs. Rudisill and Kitch have no role in shaping Cummins' patent applications and how they are prosecuted; to the contrary, Cummins concedes that they have been "centrally involved" in those prosecutions (Cummins Mem. at 3). Rather, Cummins argues that competitive decisionmaking should be defined in a way that does not encompass that role. That argument has failed, and thus Cummins is left with no other argument to avoid the conclusion that Messrs. Rudisill and Kitch are involved in competitive decisionmaking as that term was defined in *Motorola*,*Mikohn* and*Interactive Coupon,* and as the Court has defined it here.

**V.**

In light [*29] of the determination that Messrs. Rudisill and Kitch are involved in competitive decisionmaking, the Court considers what limitations should be placed on their access to Glory's Confidential -- Patent Prosecution Information. Glory seeks to bar those attorneys from having any access to that information; in the alternative, Glory asks that the Court order that Messrs. Rudisill and Kitch, or any other attorneys, who receive such information "shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals."

We reject Glory's request to bar Messrs. Rudisill and Kitch from having any access to the Confidential -- Patent Prosecution Information. In balancing the risk of inadvertent disclosure against the hardship to Cummins from such a categorical exclusion order, the Court is mindful that "disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993)* (quoting *Schiessle v. Stephens, 717 F.2d 417, 419-20 (7th Cir. 1983)* [*30] ). While an order barring Messrs. Rudisill and Kitch from access to Glory's Confidential -- Patent Prosecution Information would not formally bar them from continuing to participate in the litigation, such an order might limit their ability to fully represent and advise Cummins. Whether the hardship

resulting from such an order would be of the nature and extent claimed by Cummins is uncertain. But, any hardship to Cummins created by an order barring access altogether would be unwarranted, because such a broad order would not be reasonably tailored (much less, absolutely necessary) to the risk of inadvertent disclosure that Glory seeks to address. The risk created by giving Messrs. Rudisill and Kitch access to that information is not that this will create unfairness to Glory in defending this lawsuit, but that Glory will be injured by the inadvertent use of that information by Messrs. Rudisill and Kitch when prosecuting Cummins's patent applications.

Glory argues that Cummins has other attorneys with patent experience who have appeared of record in the case (Glory Motion at 11), a factor that was of significance to the court in *Mikohn* in deciding to bar the defendant's patent prosecution [*31] counsel from access to the plaintiff's confidential information. *Mikohn, 50 U.S.P.Q.2d at 1786*. However, it is unclear whether the Court in *Mikohn* was presented with an alternative proposal for addressing the risk of inadvertent disclosure. In any event, we do not believe that the presence of other counsel for Cummins warrants the entry of an overly-broad order that categorically bars Cummins's lead litigation patent counsel from any access to Glory's Confidential -- Patent Prosecution Information.

Rather, we adopt the alternative approach suggested by Glory, and utilized by the courts in*Motorola* and*Interactive Coupon:* allowing Messrs. Rudisill and Kitch (or other patent counsel) to receive Glory's Confidential -- Patent Prosecution Information, but limiting the ability of attorneys who receive that information to prosecute certain patent applications. Anticipating the possibility of this result, Cummins asks that Glory's proposed limitation be revised in two ways.

*First,* Cummins argues that the restriction should not apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit," but instead should be limited [*32] only to the prosecution of any patent application "that specifically disclose[s] or claims the contents or the substance of the information contained in a reviewed document marked 'Confidential -- Patent Prosecution Information" (Cummins Mem. at 12 and Ex. H). We disagree. The language proposed by Cummins is too narrow: it would allow a Cummins attorney who receives Glory's Confidential -- Patent Prosecution Information to use that information to prosecute a Cummins patent application, so long as the application does not "specifically disclose or claim" Glory's confidential information -- even if the application was generally influenced or shaped by that information. That kind of limitation does not sufficiently address the risk of inadvertent disclosure. Moreover, although Cummins argues that is does not understand what Glory means by suggesting that the limitation apply to prosecution of patent applications "relating to the subject matter of the patents-in-suit" (Cummins Mem. at 12), that is the language routinely employed by other courts when imposing such a restriction. *See Pabst, 2000 U.S. Dist. LEXIS 6374, 2000 WL 554219, at *4* (barring prosecution of patent applications "pertaining to [*33] the subject matter of the patents in suit"); *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *4* (barring prosecution of patent applications "relating to the subject matter of the patent in suit"); *Motorola, 1994 U.S. Dist. LEXIS 20714, at *19* (barring prosecution of patent applications "relating to the broad subject matter of the patents in suit"). That language is appropriate here as well; we therefore adopt Glory's proposal on this point.

*Second,* Cummins argues that the time period of the restriction should be either the pendency of the litigation and a period of one year after the conclusion of the litigation, including appeals (the period proposed by Glory), ***or*** "the time at which such information contained in the documents marked 'Confidential -- Patent Prosecution' legitimately becomes publicly known . . .," whichever is earlier (Cummins Mem. at 12-13 and Ex. H). We note, again, that the time limitation proposed by Glory is the same limitation adopted by the *Motorola* and *Mikohn* courts. *Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969, at *4*; *Motorola, 1994 U.S. Dist. LEXIS 20714, at *19*. A significant problem [*34] with Cummins's proposal is that if Cummins's patent counsel receive Glory's Confidential -- Patent Prosecution Information and some but not all of it is determined to be publicly known, and thus not truly confidential, we do not see how the Court could be confident that patent counsel was utilizing only the non-confidential information in prosecuting the patent, and was not (albeit inadvertently) having his or her approach to the patent prosecution influenced by the Confidential -- Patent Prosecution Information. The difficulty of separating out different sources of information, and ensuring that certain sources are not used, is what gives rise to the risk of inadvertent

disclosure in the first place. *Motorola, 1994 U.S. Dist. LEXIS 20714, at *14-15*. Cummins's proposal would lead the parties and the Court down the path that the order is designed to avoid, and we therefore reject it.

Accordingly, we will amend the stipulated protective order to include paragraph 9(b), which will read as follows:

> Confidential -- Patent Prosecution Information may be shown only to persons qualified to receive Highly Confidential Information. Any person who receives Confidential [*35] -- Patent Prosecution Information shall not directly or indirectly participate in the prosecution of any patent application relating to the subject matter of the patents-in-suit during the pendency of this suit and for a period of one year after the conclusion of this litigation, including appeals.

**VI.**

The only remaining changes to the stipulated protective order that remain in dispute are with respect to paragraphs 11, 12(c) and 25. We address in turn the parties' respective proposals for those paragraphs.

**A.**

Paragraph 11 of the protective order states that "either party may disclose Confidential or Highly Confidential Information in a Court proceeding upon consent of the designating party or permission of the Court." Glory proposes to amend that paragraph solely to include a reference to the new category of Confidential -- Patent Prosecution Information. Cummins agrees with that amendment, which will be adopted.

However, Cummins also proposes another change to paragraph 11, which Glory opposes. Cummins seeks to add the proviso that "information disclosed at an open Court proceeding will become public knowledge and persons present at any Court proceeding where [*36] Confidential -- Patent Prosecution Information is disclosed will not be subject to the patent prosecution restrictions of paragraph 9 due to their presence" (Cummins Mem., Ex. H). Once again, this Cummins proposal would create the difficult problem of determining whether Cummins patent counsel was prosecuting a patent application using Confidential -- Patent Prosecution Information that remained private or information that had become public. For the reasons discussed above with respect to Cummins's proposal in paragraph 9 concerning the time limitation of the restriction, the Court rejects Cummins's proposal for amending paragraph 11.

**B.**

The parties largely agree on an amendment to the protective order that would add a new paragraph 12(c); their only disagreement is with respect to the highlighted clause set forth below, which Glory seeks over Cummins's objection:

> The substance or content of any Confidential -- Patent Prosecution Information, as well as notes, abstracts, copies, summaries and memoranda relating thereto shall not be disclosed to ***or be accessible to*** anyone other than a person qualified to receive Confidential -- Patent Prosecution Information [*37] pursuant to this Protective Order, and any such notes, abstracts, copies summaries and memoranda shall be treated as Confidential -- Patent Prosecution Information in all respects.

This additional language proposed by Glory tracks the language in paragraphs 12(a) and 12(b) governing Confidential and Highly Confidential Information. Cummins has offered no reason why the same language should not apply to Confidential -- Patent Prosecution Information, which is a subset of Highly Confidential Information. Accordingly, we adopt the version of new paragraph 12(c) proposed by Glory.

**C.**

Paragraph 25 of the protective order provides that restrictions applicable to Confidential and Highly Confidential Information do not apply to information which already is public knowledge, which becomes public knowledge other than as a result of disclosure by the receiving party, or that the receiving party obtains by legitimate means independently of the producing party. Each side agrees that this provision should be revised to

include the new category of Confidential -- Patent Prosecution Information. Where they differ is on the following additional language that Glory proposes to add at [*38] the end of paragraph 25, over Cummins's objection:

> The party seeking to use information designated as Confidential, Highly Confidential, or Confidential -- Patent Prosecution Information, shall have the burden of providing that it is entitled to the use of such information.

The Court sees no need for this additional sentence proposed by Glory. In the event that information designated with one of the levels of confidentiality becomes public by one of the means specified in paragraph 25, then the receiving party would have the right to question the confidentiality designation. Paragraph 16 of the protective order already provides a mechanism for doing so: it states that if a party objects to the designation of information as Confidential or Highly Confidential, then the designating party bears the burden of showing the propriety of the confidentiality designation. That allocation of the burden of proof recognizes that a party asserting confidentiality is asking for the document to be treated in a way that is contrary to the ordinary course of public litigation, *see generally Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943 (7th Cir. 1999)*, and [*39] should be in the best position to show why the document is entitled to special treatment. Glory offers no explanation for its proposal to shift the burden of proof to the challenging party, and the Court declines to do so. [5]

5 Paragraph 16 of the original protective order does not specifically call out Confidential -- Patent Prosecution Information, which is a subset of Highly Confidential Information. To avoid any future confusion about the scope of paragraph 16, the Court *sua sponte* will modify paragraph 16 of the protective order to include challenges to the designation of information as Confidential -- Patent Prosecution Information.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Glory's motion to amend the protective order as follows:

A. The Court GRANTS Glory's unopposed request to modify the protective order to add paragraph 3(c), creating a category of documents entitled "Confidential -- Patent Prosecution Information."

B. The Court DENIES Glory's request to bar [*40] Messrs. Rudisill and Kitch from receiving Confidential -- Patent Prosecution Information. The Court GRANTS Glory's alternative request to modify the protective order to add paragraph 9(b), and adopts the version proposed by Glory.

C. The Court GRANTS Glory's request to modify paragraphs 11 and 12 of the protective order, and adopts the versions proposed by Glory.

D. The Court GRANTS Glory's request to modify paragraph 25 of the protective order, and adopts the version proposed by Cummins.

E. The Court *sua sponte* modifies paragraph 16 to make clear that it applies to Confidential -- Patent Prosecution Information.

SIDNEY I. SCHENKIER

United States Magistrate Judge

DATED: December 31, 2003

# Exhibit 15

LEXSEE 2000 U.S. DIST. LEXIS 6374

**IN RE PAPST LICENSING, GmbH, PATENT LITIGATION**

**MDL Docket Number 1298 ALL CASES SECTION: G**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

***2000 U.S. Dist. LEXIS 6374***

**May 4, 2000, Decided**
**May 4, 2000, Filed**

**COUNSEL:** For PAPST LICENSING, GMBH, PATENT LITIGATION, In re: Gene W. Lafitte, Sr., Liskow & Lewis, New Orleans, LA. Steven W. Usdin, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA.

MICHAEL J BECK, other, Pro se, Clerk, MDL Panel, Washington, DC.

NEEL I CHATTERJEE, other, Pro se: Orrick, Herrington & Sutcliffe, LLP, Menlo Park, CA.

**JUDGES:** [*1] MOREY L. SEAR, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MOREY L. SEAR

**OPINION**

*MEMORANDUM AND ORDER*

*Background*

On October 13, 1999, the Panel on Multi-District Litigation transferred to this Court four related patent cases from the Northern District of Illinois, the Northern District of California, the District of Columbia and the District of Delaware, pursuant to *28 U.S.C. § 1407*. Each of the cases involve a number of patents and licensing agreements related to computer hard disk drives, licensed by Papst Licensing, GmbH and Georg Papst ("Papst parties") to several hard disk drive manufacturers and their customers ("Non-Papst parties").

All parties in the this multi-district litigation submit that a comprehensive protective order is necessary to protect the parties' confidential business, financial and technical information. The Papst and Non-Papst parties assert that they agree on most of the details of the proposed protective order. The parties, however, have not submitted to the Court a joint proposed protective order because the parties differ strongly on the issue of whether certain counsel with access to confidential information should be able to prosecute [*2] related patent applications.

The Non-Papst parties urge the Court to adopt a modified version of the protective order, entered on July 9, 1999, by the district court for the District of Columbia. That protective order includes the following provision:

> Confidential Information of a Furnishing Party may be disclosed only to: Outside Counsel for any Receiving Party in the Proceeding, except any Welsh & Katz attorneys or employees who receive Confidential Information under this Protective Order shall not prosecute, supervise or assist in the prosecution of any patent application on behalf of Georg Papst or Papst Licensing, GmbH or any entity related to Georg Papst or Papst Licensing, GmbH or any entity related to Georg Papst or Papst Licensing, GmbH pertaining to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including any appeals.

The Non-Papst parties argue that the provision is necessary because an unacceptable risk of inadvertent disclosure or misuse of the Non-Papst parties' confidential information arises from the participation of Papst parties' counsel in patent prosecution activities. [*3] In support of that assertion, the Non-Papst parties provide, among other documents, the following: (1) the declaration of Professor Martin J. Adelman, explaining a patent applicant or owner's ability to obtain new and broader exclusionary rights by adding additional claims to new, continuation-in-part, continuation and reissue patent applications and distinguishing between "new matter" and "new claims" in various patent application types; (2) a copy of portions of the transcript from a February 25, 1999 hearing in the Northern District of California in which Papst parties' counsel, Jerold B. Schnayer of Welsh & Katz, Ltd., testified as to a patent applicant or owner's ability to add additional claims to existing or pending patents so long as the basis of that new claim is not confidential information; and (3) a copy of a September 23, 1994 protective order stipulated to by Papst Licensing, GmbH, in its patent infringement suit against Western Digital Corporation, prohibiting persons with access to designated confidential prosecution bar information from prosecuting disk drive patent applications during the pendency of that suit and for one year after its conclusion.

The Papst Parties [*4] oppose the adoption of the Non-Papst parties' proposed restriction, arguing that it unilaterally and unfairly restricts only counsel from Welsh & Katz without justification. The Papst parties assert that the Non-Papst proposal seeks merely to limit the Papst parties' choice of counsel. In support of that assertion, the Papst parties point out that the proposed provision allows counsel of the Non-Papst parties' direct competitors, who prosecute patents, access to allegedly confidential information. Accordingly, the Papst parties argue that the only hardship the Non-Papst parties would suffer from a rejection of their proposal would be that the Papst parties' counsel of choice would be allowed to represent its long-time client in this litigation and in the prosecution of certain patent applications.

In addition to their opposition to the Non-Papst parties' proposal, the Papst parties submit their own proposed restriction:

> Outside counsel of record having access to Confidential Information from any party in The Litigation, shall not draft, file or prosecute, or assist in the drafting, filing or prosecution of new patent applications or new continuation-in-part applications on [*5] behalf of the parties during the pendency of The Litigation before this District Court, during the pendency of the individual actions upon remand to their respective District Courts and for one calendar year thereafter. New patent applications and new continuation-in-part applications are those applications which contain new disclosures not contained in patent applications which are or were pending anytime before this Protective Order becomes effective.

The Papst parties assert that a similar restriction was adopted by the district court in the Northern District of California, after an evidentiary hearing in which that court determined that a restriction on Welsh & Katz attorneys only and over all existing patent prosecutions was unreasonable.

*Discussion*

*Rule 26(c) of the Federal Rules of Civil Procedure* allows a district court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." *Rule 26(c)* requires that the party seeking [*6] to protect allegedly confidential information show good cause for such an order. The good cause requirement of *Rule 26(c)* demonstrates that the burden is upon the movant to show the necessity for the issuance of a protective order. The Rule "'contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" [1] Because the interest in protecting allegedly confidential information conflicts with the broad discovery mandate of *Rule 26 (b)(1)*, allowing access to all non-privileged information "reasonably calculated to lead to the discovery of admissible evidence," the courts seek to balance these interests in determining a motion for protective order. [2]

1 *In re Terra International, Inc., 134 F.3d 302,*

*305 (5th Cir. 1998)* (quoting *United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))* (further citation omitted).

2 *See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992).*

[*7] Specifically, "the court must balance the risk of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims." [3] In balancing these important competing interests, the court seeks to determine whether access to the confidential information creates "an unacceptable opportunity for inadvertent disclosure." [4] In determining whether an unacceptable risk of inadvertent disclosure exists, the court must consider "the facts on a counsel-by-counsel basis, and cannot [make the determination] solely by giving controlling weight to the classification of counsel as in-house rather than retained." [5]

3 *Id.*

4 *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984).*

5 *Id.*

The primary consideration in making this determination is whether the attorney with access to the confidential information is involved in "competitive decisionmaking," that is, whether the attorney's "activities, association, [*8] and relationship with a client . . . are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." [6]

6 *Id. at 1468 n.3.*

Several district courts have determined that competitive decisionmaking also includes advice and participation in prosecuting patent applications related to the patents in suit. For example, in *Mikohn Gaming Corp. v. Acres Gaming Inc.*, [7] the district court for the District of Nevada addressed whether counsel's role as lead trial and patent prosecution counsel for the defendant created an unacceptable risk of inadvertent disclosure of the plaintiff's confidential information. Because that court determined that counsel's patent prosecution activities involved patents at issue in the suit, the court determined that the advice rendered by the defendant's counsel was "intensely competitive" and that the risk of inadvertent disclosure [*9] outweighed the impairment of the defendant's ability to litigate the suit, especially in light of the defendant's retainer of other experienced patent counsel. [8] The court explained that

> Were he given access to [the plaintiff's] technology, [counsel] would be in the "untenable position" of having to either refuse his client legal advice on competitive design matters or violate the protective order's prohibition against revealing [the plaintiff's] technical information. . . . No matter how much good faith [counsel] might exercise, it is unrealistic to expect that his knowledge of [the plaintiff's] secret technology would or could not influence the nature of his advice to [the defendant]. This is so whether the advice relates to a pending application or a future application. . . .
>
> "Attorneys who were to view [the plaintiff's] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted," another would come to mind. The level of introspection that would be required is simply too much [*10] to expect, no matter how intelligent, dedicated, or ethical the . . . attorneys may be." [9]

7 *1998 U.S. Dist. LEXIS 22251, 50 U.S.P.Q.2D (BNA) 1783 (D. Nev. 1998).*

8 *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 50 U.S.P.Q.2D (BNA) at 1786.

9 *Id.* (quoting *Motorola, Inc. v. Interdigital Technology Corp., 1994 U.S. Dist. LEXIS 20714 (D.Del. 1994)).*

Similarly, in *Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, L.L.C.*, [10] the Northern District of Illinois court ordered that all plaintiff's counsel privy to defendant's confidential information "shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents in suit during the pendency of this case and for one year

after the conclusion of this litigation, including appeals." [11] Although the court found that competitive decisionmaking extends to "the manner in which patent applications are shaped and prosecuted," it cautioned that it is not appropriate "to disqualify patent prosecution from an [*11] active role in its client's litigation as a matter of course." [12] The court reasoned that the appropriate inquiry was "whether the firm's prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process" and explained that "the concern is whether the firm's involvement in developing a patent prosecution strategy will be informed by such information to the competitors' detriment." [13]

10 *1999 U.S. Dist. LEXIS 12437, 1999 WL 618969 (N.D. Ill. 1999).*
11 *Interactive Coupons, 1999 U.S. Dist. LEXIS 12437, 1999 WL 618969* at *3.
12 *Id.*
13 *Id.*

Here, after considering the parties' voluminous submissions, the determinations of the district courts to which the individual cases in this multi-district litigation shall be returned and the applicable case law, I find that the Non-Papst parties meet their burden of showing good cause for the proposed restriction. The risk of inadvertent disclosure of the Non-Papst parties' confidential information [*12] clearly outweighs the impairment, if any, of the Papst parties' ability to litigate this action. Despite the Papst parties' arguments to the contrary, it is clear that the advice and participation of the Papst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the Non-Papst parties confidential information. Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse. Although the Court is confident that counsel for the Papst parties maintains the highest ethical and professional standards, the risk of inadvertent disclosure and misuse and the difficulty of distinguishing the source of the Papst parties' basis for filing new claims are great.

Furthermore, I find that the Non-Papst parties proposed restriction works the least burden on the parties involved in this multi-district litigation. The parties have operated under an identical restriction imposed by the District of Columbia court [*13] for many months, and numerous third parties have consented to the disclosure of their confidential information in express reliance on that restriction. To alter the restriction significantly after thousands of documents have been produced would likely create significant disputes and delays.

Moreover, despite their numerous grounds for objecting to the Non-Papst parties' proposed restriction, the Papst parties fail to address the underlying risk of inadvertent disclosure or misuse and have not persuaded the Court that the Papst parties' ability to litigate the actions in this multi-district litigation will be substantially impaired. The Papst parties have stipulated to similar restrictions in other patent infringement cases and have continued to litigate this matter for months under the restrictions imposed by the July 9, 1999 D.C. protective order.

Accordingly, I find that the Non-Papst parties have met their burden of showing good cause for their proposed restriction and that the risk of advertent disclosure and misuse clearly outweighs the impairment, if any, on the Papst parties' ability to litigate this matter. Nevertheless, because the risk of inadvertent disclosure or misuse [*14] is identical whether counsel for the Papst parties is a member or associate of the Welsh and Katz firm or is inside or retained counsel, where the Papst parties' counsel with access to the information sought to be protected gives advice or participates in the prosecution of patents related to the patents in suit, the restriction applies to all counsel for the Papst parties prosecuting, supervising or assisting in the prosecution of patent applications related to the subject matter of the patents in suit. This restriction, however, applies only to information that embodies product design information which is classifiable as confidential and which is of the type that can be included in a patent application and form the basis, or part of the basis for a claim or claims. Such information shall be designated "Confidential - Prosecution Bar Material."

Finally, the Papst parties fail to show good cause for their proposed restriction, limiting all counsel's ability to prosecute all new and continuation-in-part patents, regardless of their relation to the patents in suit. The Papst parties make no argument that any risk of inadvertent disclosure of the Papst parties' confidential

information [*15] exists.

Accordingly,

IT IS ORDERED that the parties shall submit jointly to the Court on or before May 24, 2000, a proposed protective order, restricting the Papst parties' counsel, inside and retained, as well as their employees, with access to confidential prosecution bar materials, from prosecuting, supervising or assisting in the prosecution of any patent application on behalf of Georg Papst or Papst Licensing, GmbH or any entity related to Georg Papst or Papst Licensing, GmbH pertaining to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including any appeals.

IT IS FURTHER ORDERED that the parties, in preparing the joint protective order, shall rely to the greatest extent possible on the July 9, 1999 D.C. protective order.

New Orleans, Louisiana, this *4* day of May, 2000.

MOREY L. SEAR

UNITED STATES DISTRICT JUDGE

# Exhibit 16

LEXSEE 1999 U.S.DIST.LEXIS 12437

**INTERACTIVE COUPON MARKETING GROUP, INC. d/b/a COOLSAVINGS, Plaintiff, v. H.O.T! COUPONS, LLC., Defendant.**

**No. 98 C 7408**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

***1999 U.S. Dist. LEXIS 12437***

**August 5, 1999, Decided**
**August 9, 1999, Docketed**

**DISPOSITION:** [*1] Plaintiff's motion to reconsider denied and its motion for clarification granted.

**COUNSEL:** For INTERACTIVE COUPON MARKETING GROUP, INC. dba Coolsavings, plaintiff: Thomas G. Scavone, Christopher J. Lee, Sally Wiggins, David J. Sheikh, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL.

For HOT COUPONS INC, defendant: Jeffrey Edward Schiller, James L. Komie, Schuyler, Roche & Zwirner, Chicago, IL.

For HOT COUPONS INC, defendant: J. Kevin Grogan, Marina F. Cunningham, McCormick, Paulding & Huber, LLP, Hartford, CT.

For HOT COUPONS INC, counter-claimant: Jeffrey Edward Schiller, James L. Komie, Schuyler, Roche & Zwirner, Chicago, IL.

For HOT COUPONS INC, counter-claimant: J. Kevin Grogan, Marina F. Cunningham, McCormick, Paulding & Huber, LLP, Hartford, CT.

For INTERACTIVE COUPON MARKETING GROUP, INC. dba Coolsavings aka Interactive Coupon Marketing Group, Inc., counter-defendant: Thomas G. Scavone, Christopher J. Lee, Sally Wiggins, David J. Sheikh, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL.

**JUDGES:** JOAN B. GOTTSCHALL, United States District Judge.

**OPINION BY:** JOAN B. GOTTSCHALL

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Interactive Coupon Marketing Group, Inc. [*2] ("Coolsavings") has filed a motion to reconsider this court's Memorandum Opinion and Order of June 7, 1999 (the "Opinion"), which barred plaintiff's attorneys who are engaged in patent prosecution work from reviewing H.O.T. Coupons' confidential information produced in the course of this litigation. For the reasons stated below, plaintiff's motion to reconsider is denied and its motion for clarification is granted.

**BACKGROUND**

In the Opinion, the court set forth the factual scenario which underlies this litigation. Briefly, Coolsavings sues its competitor H.O.T. Coupons for patent infringement. H.O.T. Coupons moved to disqualify plaintiff's counsel because the firm acted as both trial counsel and patent prosecution counsel for Coolsavings and might be called as witnesses at trial. In the Opinion, that motion was denied and it is not challenged here. However, the court barred plaintiff's patent prosecution counsel from reviewing any of H.O.T. Coupons' confidential information. Coolsavings seeks review of that portion of the Opinion.

In the Opinion, the court relied on the declaration of Coolsavings' president, Hillel Levin, in assessing the

extent of plaintiff's counsel's [*3] involvement in Coolsavings' affairs. In his declaration, Levin emphasized the critical role that the law firm Niro, Scavone, Haller & Niro ("Niro Scavone") plays as Coolsavings' counsel. Specifically he made the following statements:

> "Niro, Scavone, Haller & Niro is currently responsible for maintaining all of Coolsavings' intellectual property and has done so since almost the inception of the company . . . ." Decl. Hillel Levin (April 30, 1999) ("Levin Decl. I"), at P 3.
>
> Niro Scavone "has become intimately familiar with Coolsavings' technology and business operations. Also, counsel has become involved with various licensing and litigation matters." *Id.* at P 4.
>
> Niro Scavone "knows our personnel, they reviewed our documents, and participated in several high level management meetings regarding intellectual property. This history uniquely qualifies Niro, Scavone, Haller & Niro to represent Coolsavings in litigation matters involving its '648 patent." *Id.* at P 5.

In Coolsavings' motion to reconsider, it submitted a second declaration by Hillel Levin that presumably is intended to paint a different picture of Niro Scavone's role in Coolsavings' affairs. Levin [*4] explained that the firm's representation was limited to legal advice relating to intellectual property matters and stated that the firm has no involvement in business planning. Levin testified:

> Niro Scavone "has become intimately familiar with CoolSavings' technology and business operations, but only in connection with its representation of CoolSavings on intellectual property matters, such as litigation, licensing and patent prosecution." Decl. Hillel Levin (June 21, 1999) ("Levin Decl. II"), at P 4.
>
> Niro Scavone "does not act as CoolSavings' 'business advisors' or participate in CoolSavings' 'competitive business decisions.' Moreover, the Niro Scavone law firm does not participate in decisions about CoolSavings' pricing or design." *Id.* at P 5.
>
> "While CoolSavings' personnel have met with attorneys at the Niro Scavone law firm, such meetings have been limited to discussions about CoolSavings' intellectual property, not general business planning or strategizing meetings." *Id.* at P 6.
>
> "No one at the Niro Scavone law firm is a member of the CoolSavings' Board of Directors. To my knowledge, no one at the Niro firm is related to anyone at CoolSavings." [*5] *Id.* at P 8.

**DISCUSSION**

The issue to be decided is whether plaintiff's patent prosecution counsel at Niro Scavone should be denied access to H.O.T. Coupons' confidential information. "In evaluating whether . . . counsel should have access, a court should balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access." *Thomas & Betts Corp. v. Panduit Corp., 1997 U.S. Dist. LEXIS 14899*, *41, No. 93 C 4017, 1997 WL 603880, *12 (N.D. Ill. Sep. 23, 1997) (*citing Brown Bag Software v. Symantec, 960 F.2d 1465, 1470 (9th Cir. 1992)*. A key factor in assessing the risk of inadvertent disclosure of trade secrets is whether counsel is engaged in competitive decisionmaking. *Brown Bag Software, 960 F.2d at 1470*. Involvement in competitive decisionmaking refers to counsel's actual "advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *United States Steel Corp. v. United States, 730 F.2d 1465, 1468, n.3 (Fed. Cir. 1984))*.

H.O.T. Coupons argues [*6] that it is not necessary to find that Niro Scavone was involved in Coolsavings' business affairs because the firm's involvement in patent prosecution is enough to find that it was engaged in competitive decisionmaking. For this proposition, H.O.T. Coupons relies on two district court decisions that denied access to outside patent counsel engaged in patent prosecution work because the nature of patent prosecution work constituted involvement in competitive decisionmaking. *See Mikohn Gaming Corp. v. Acres Gaming Inc., 1998 U.S. Dist. LEXIS 22251, 50*

*U.S.P.Q.2D (BNA) 1783 (D. Nev. 1998)*; *Motorola, Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. LEXIS 20714 (D. Del. 1994)*. In *Mikohn*, the plaintiff sought to deny outside defense counsel access to plaintiff's confidential technical information during the course of the patent infringement action. Defense counsel testified that his only association with the defendant was as its outside patent counsel, providing counseling and legal advice in the field of intellectual property. *Mikohn, 50 U.S.P.Q.2D (BNA) at 1784*. He denied that he participated in marketing, product development, design, or pricing. [*7] *Id*. Although the court credited the attorney's statements, the court still denied access because the law firm was prosecuting patent applications directly related to the patents-in-suit. *Id. at 1785*. The court concluded that the advice rendered by the firm was "intensely competitive." *Id*. The court also noted that the defendant had invested in the attorney's technical training and concluded that it "cannot be doubted that as patent prosecution counsel [the attorney] works very closely with and advises [defendant] on matters relating to product design." *Id. at 1786*. The court found that the risk of inadvertent disclosure outweighed the burden that the defendant would experience if the firm was denied access, particularly since the defendant had already retained additional outside counsel to litigate the action. *Id*.

In *Motorola*, defendant's attorneys were involved in patent prosecution and trial work for the defendant. The court held that involvement in patent prosecution constituted involvement in competitive decisionmaking and/or scientific research and created a high risk of inadvertent disclosure. The court stated that, like activities that define the [*8] scope and emphasis of a client's research and development efforts, "the process of prosecuting patent applications also involves decisions of scope and emphasis . . . ." *Motorola, supra*, at *11. Further, the court concluded that the attorneys "who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped 'untainted', another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the . . . attorneys may be." *Id*. at *14-15. Accordingly, the court denied access to the attorneys because they prosecuted patents.

The court is not persuaded that it is appropriate to disqualify patent prosecution counsel from an active role in its client's litigation as a matter of course. However, in the case at bar, the Niro Scavone firm has represented and is likely to represent Coolsavings in the prosecution of numerous related patents, and it appears that the firm is deeply involved in representing [*9] the client in multiple, related infringement cases in the context of a fluid, developing technology. The court needs to ask whether the firm's prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process. The concern is whether the firm's involvement in developing a patent prosecution strategy will be informed by such information to the competitors' detriment.

Coolsavings' submissions have not been helpful to the court. In his first declaration, Mr. Levin, in an obvious attempt to persuade the court that disqualification of the Niro Scavone firm would have a catastrophic impact on Coolsavings, suggested that the Niro Scavone firm was deeply involved in Coolsavings' business decisionmaking in the area of intellectual property; that is how the court interpreted his declaration, although with the wisdom of hindsight the declaration appears rather vague in spots. Then, in his second declaration, Mr. Levin attempts to persuade the court that the Niro Scavone firm is not involved in business decisions. This declaration, however, is even more vague than the first one and really says nothing. This court cannot [*10] make much sense of a statement like, "The Niro Scavone law firm has become intimately familiar with CoolSavings' technology and business operations, but only in connection with its representation of CoolSavings on intellectual property matters . . . ." In this court's view, competitive decisionmaking is not limited to decisionmaking about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted. *See U.S. Steel, 730 F.2d at 1468, n.3* (Involvement in competitive decisionmaking refers to counsel's actual "advice and participation in *any or all of the client's decisions* (pricing, product design, etc.) *made in light of similar or corresponding information about a competitor*.") (emphasis added). Levin's vague declaration does not provide a basis for reconsideration. Courts confronted with such vague statements have no choice but to assume disabling involvement. *See Carpenter Tech. Corp. v. Armco, Inc., 132 F.R.D. 24 (E.D. Penn. 1990)* (denying access to in-house attorney because his vague testimony that he had "no *direct* responsibility or authority over competitive decisions"

led the court to assume [*11] that he had at least some involvement) (emphasis added).

Coolsavings has attempted to walk a fine line, using careful wording to try to persuade the court first of Niro Scavone's central involvement with Coolsavings' activities and then of its peripheral status. It has been too shrewd for its own good, convincing the court of nothing other than that the concerns raised by H.O.T. Coupons have not been answered. Accordingly, the motion to reconsider is denied. The court's order of June 7, 1999 is, however, clarified as follows: all of plaintiff's attorneys who are privy to confidential information obtained from defendant in discovery shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

ENTER:

JOAN B. GOTTSCHALL

United States District Judge

DATED: August 5, 1999

# Exhibit 17

In summary, we affirm the grant of summary judgment by the trial court as to all three counts which are the subject of this appeal.

Affirmed.

Greene and Lewis, J.J.

---

**U.S. District Court**
**District of Nevada**

Mikohn Gaming Corp. v. Acres Gaming Inc.

No. CV-S-97-1383-HDM(LRL)

Decided April 15, 1998

**JUDICIAL PRACTICE AND PROCEDURE**

**1. Procedure — Discovery — Matters discoverable — In general (§410.4002.01)**

Defendant's law firm will be denied access to confidential technical information during course of patent infringement action, since firm functions as both outside litigation counsel and patent prosecution counsel, and is prosecuting applications that are part of very core of instant suit, since advice rendered by firm is intensely competitive, in view of defendant's claims that these pending patents will be infringed by plaintiff's product as soon as they are issued, since legal and factual components of firm's advice to defendant regarding complex technology are so intertwined as to be inseparable, and since defendant's firm, if given access to plaintiff's technology, would be placed in untenable position of having to either refuse to give client legal advice on competitive design matters, or violate protective order's prohibition against revealing plaintiff's technical information.

---

Action by Mikohn Gaming Corp. against Acres Gaming Inc. for declaratory judgment of patent invalidity and non-infringement, in which defendant counterclaims for patent infringement. On defendant's motion to compel discovery and for protective order. Motion for protective order granted, to extent that plaintiff's proposed protective order shall govern discovery; motion to compel granted in part.

Steven E. Shapiro and D. James Chung, of Mitchell, Silberberg & Knupp, Los Angeles, Calif.; Steve Morris and Adam P. Segal, of Schreck Morris, Las Vegas, Nev., for plaintiff.

Jerry A. Riedinger and Michael D. Broaddus, of Perkins Coie, Seattle, Wash.; Alan T. McCollom and Stephen S. Ford, of Marger, Johnson, McCollom & Stolowitz, Portland, Ore.; John E. Leach and Keith E. Gregor, of Woodburn & Wedge, Las Vegas, for defendant.

**Leavitt, U.S. magistrate judge.**

This case comes before the Court on defendant Acres' Motion to Compel Discovery and for a Protective Order (#36, filed December 23, 1997). The court has considered the motion, plaintiff Mikohn's Opposition (#39, filed January 7, 1998), Acres' Reply (#46, filed January 20, 1998), Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (#47, filed January 23, 1998), Acres' Response to Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel and for Sanctions (#49, filed January 28, 1998), Acres' Submission of New Precedent in Support of Acres' Motion to Compel Discovery and for a Protective Order (#51, filed February 2, 1998), Mikohn's Response to Submission of "New Precedent" by Acres Gaming Corporation in Support of Its Motion to Compel Discovery (#55, filed February 4, 1998), Mikohn's Reply in Support of Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel Discovery, and for Sanctions (#56, filed February 9, 1998), the arguments presented by counsel during the telephone hearing on February 23, 1998, and Mikohn's Supplement in Support of Mikohn's Request for Entry of its Proposed Protective Order (#62, filed February 24, 1998).

Also before the court is Mikohn's Ex Parte Discovery Plan and Scheduling Order (received January 12, 1998). The court has considered Mikohn's proposed discovery plan, Acres' Response (#42, filed January 15, 1998), and the representations of counsel during the hearing on February 23, 1998.

Motion to Compel Discovery and for a Protective Order (#36)

The central issue underlying this dispute is whether one of Acres' law firms, Marger, Johnson, McCollom & Stolwitz ("the Marger firm"), should be denied access to Mikohn's confidential technical information during the course of this patent infringement action. The parties have agreed upon the basic contours of the protective order that will govern discovery in this case, with one

major exception: Mikohn would deny the Marger firm access to the sensitive technical information that Mikohn deems highly confidential, such as software codes and hardware electrical designs, and would further deny the Marger firm the right to attend any depositions. Mikohn's proposal for a significantly more restrictive protective order is based on the Marger firm's dual role as Acres' outside litigation counsel *and* its patent prosecution counsel. Indeed, in its latter capacity the Marger firm is currently prosecuting certain patent applications for Acres that are the very subject matter of this litigation. Mikohn fears that if access to Mikohn's confidential technical information is given to the Marger firm in its role as litigation counsel, there would be a substantial risk that in its role as patent prosecution counsel the Marger firm would misuse the information to Mikohn's detriment. Whether the misuse were deliberate or inadvertent, the result, according to Mikohn, would be the same: Mikohn would be placed at a distinct and unfair competitive disadvantage.

Acres denies that the Marger firm's possession of Mikohn's confidential technical information would or could harm Mikohn's position in the marketplace. Acres also argues that denial of access to such information would undermine the Marger firm's ability to represent its client effectively, and would essentially "disqualify" it from the case. Acres' Reply (#46) at 12.[1] Notwithstanding that it has retained a second firm, Perkins Cole, as additional patent litigation counsel, Acres asserts that to be denied the litigation services of the Marger firm, and particularly of Alan McCollom, whose technical expertise in electrical engineering uniquely qualifies him as litigation counsel in this case, would deprive Acres of the benefit of the trust and confidence it has come to place in the Marger firm over the course of a long standing attorney-client relationship.

Fed.R.Civ.P. 26(c) authorizes the court to protect a party from "undue burden or expense" in discovery by directing that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." The party seeking the protective order carries the burden of showing good cause for its issuance. *Jepson, Inc. v. Makita Elec. Works, Ltd,* 30 F.3d. 854, 858 (7th Cir. 1994). Discovery orders are reviewed for abuse of discretion. *Ah Moo v. A.G. Becker Paribas, Inc.,* 857 F.2d 615, 619 (9th Cir. 1988).

Where parties to a lawsuit are commercial competitors, and one of them moves for protection against misuse of its confidential technical information, the court must balance the risk to the moving party of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims. *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 [22 USPQ2d 1429] (9th Cir. 1992). Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create "an unacceptable opportunity for inadvertent disclosure." *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir, 1984). In resolving this question, the key consideration is not whether the attorney is in-house or outside counsel, but whether the attorney is involved in "competitive decision-making," *i.e.,* whether "a counsel's activities, association, and relationship with a client [ ] are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at n. 3.

In support of its position that the Marger firm does not engage in competitive decision-making as defined in *U.S. Steel,* Acres offers the affidavit of its longtime patent lawyer, Alan McCollom. McCollom asserts that his only association with Acres is as its outside patent counsel; he is neither a board member, officer nor employee of the company. He denies that he "participate[s] in Acres' marketing meetings or in Acres' product development or engineering meetings," or that he "advise[s] Acres regarding general nonlegal business strategies such as developing or marketing products." In short, he denies that he's "been involved in decisionmaking activities regarding product pricing, new product design or new product development." He states that his "involvement with Acres is limited solely to providing legal advice and counseling in the field of intellectual property." McCollom's representations are corroborated by the affidavit of Acres' board chairman and chief executive officer, John F. Acres.

[1] In other papers and at the hearing on this motion Mikohn has suggested that the Marger firm should be disqualified as litigation counsel in this case. No grounds for disqualification have been formally presented to the court, and none will be considered in this decision. The court here addresses only the scope of an appropriate protective order, irrespective of any conceivable grounds for the disqualification of the Marger firm.

At the hearing on this matter Acres argued additionally that Mikohn's unfounded fear of improper disclosure stems from a misapprehension of the type of use which the Marger firm could make of Mikohn's confidential information. Acres contends that Patent Office procedures governing the processing of patent applications make it impossible for the Marger firm to abuse the confidential information it receives from Mikohn. According to Acres, if it were to refine claims in its pending patent applications, or write new claims in re-issue proceedings, it would necessarily be limited to the specifications contained in its original applications. Because it would not be allowed to amend claims or add new claims regarding matters that were not already disclosed in its original patent application, Acres argues that it would be theoretically impossible for the Marger firm to exploit for its own competitive advantage the confidential information it would receive from Mikohn, even if it wanted to. In short, Acres argues that any confidential information it might receive from Mikohn would, in effect, be irrelevant to the application process.

Mikohn, however, points to *Motorola, Inc. v. Interdigital Technology Corp.*, 1994 U.S. Dist. LEXIS 20714 (D.Del. 1994), in which the proper scope of a discovery-related protective order was considered in the context of a patent infringement action.[2] There, as here, the law firm representing one of the parties, Interdigital Technology Corp. ("ITC"), functioned as both lead trial counsel and patent prosecution counsel. At the time the case was pending, the firm was prosecuting several patent applications, four of which were related to the patents in suit. The issue presented to the court was whether ITC's counsel should have access to Motorola's confidential information. Motorola argued, as Mikohn does here, that it would be "impossible for [ITC's] attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications." *Id.* at *6. As in *U.S. Steel*, the critical inquiry was "whether the attorney in question is in a position that creates a high risk of inadvertent disclosure." The answer to that question turns on whether the attorney is involved in competitive decisionmaking such that he "would have a difficult time compartmentalizing his knowledge." *Id.* at *10-11. Importantly, the court observed that "[t]here can be no question that attorneys [for ITC] who receive confidential information and then later prosecute patents will have to distill and compartmentalize the confidential information they have gained." *Id.* at *13.

The court concluded that the potential harm to Motorola from inadvertent disclosure of its confidential information outweighed the hardship that would befall ITC if its counsel were disqualified or restricted in some fashion. To eliminate the risk of inadvertent disclosure and at the same time minimize the hardship to ITC, the court precluded ITC's trial attorneys from prosecuting its patent applications. Because ITC's trial attorneys had only recently begun to prosecute their client's patent applications, the court found that the resultant hardship on ITC would be minimal. *Id.* at *16-18.

**[1]** As applied to the present case, the court finds *Motorola* persuasive.[3] The Marger firm is prosecuting patent applications that are not merely related to the patents in suit, they are part of the very core of this suit. Indeed, the Marger lawyers allege that these pending patents will be infringed by Mikohn's MoneyTime system as soon as they are issued. Hence, in light of the claims made in this lawsuit, the advice rendered by the Marger firm is intensely competitive. In an effort to distance himself from the type of competitive decisionmaking discussed in *U.S. Steel*, Mr. McCollom characterizes his patent prosecution work for Acres as merely "providing legal advice and counseling in the

[2] Neither *Brown Bag* nor *U.S. Steel* involved a patent infringement claim.

[3] Acres urges the court to follow *In re Sibia Neurosciences, Inc.*, 1997 WL 688174 (Fed. Cir. 1997), which is also a patent infringement case, but one in which the Federal Circuit let stand a district court order permitting trial/patent prosecution counsel for Cadus Pharmaceutical Corporation to have access to Sibia's confidential information. Mikohn objects to Acres' reliance on *Sibia* on the ground that the Federal Circuit deemed its opinion unsuitable for publication. The court agrees. For this reason alone *Sibia* should not be considered.

Even if the court in *Sibia* had deemed its opinion suitable for publication, there is another reason why this court would be disinclined to follow it. The case was before the circuit court on a petition for a writ of mandamus, in support of which Sibia had the difficult burden of making a "clear and indisputable" showing that the district court had engaged in "a clear abuse of discretion or usurpation of judicial power." Mikohn's burden here is not so onerous; it need only demonstrate "good cause" for its proposed protective order.

field of intellectual property." This description is so general as to be virtually meaningless. By Acres' own admission, it has made a considerable investment in Mr. McCollom's technical training. It therefore cannot be doubted that as patent prosecution counsel Mr. McCollom works very closely with and advises Acres on matters relating to product design. The legal and factual components of Mr. McCollom's advice regarding complex technology are so intertwined as to be inseparable. A bright line cannot be drawn between them. Were he given access to Mikohn's technology, Mr. McCollom would be in the "untenable position" of having to either refuse his client legal advice on competitive design matters or violate the protective order's prohibition against revealing Mikohn's technical information. *Brown Bag Software,* 960 F.2d at 1471. No matter how much good faith Mr. McCollom might exercise, it is unrealistic to expect that his knowledge of Mikohn's secret technology would not or could not influence the nature of his advice to Acres. This is so whether the advice relates to a pending application or a future application. Under such circumstances, he and the Marger firm would be in precisely the same position in which ITC's patent lawyers found themselves in *Motorola*:

> [ITC's attorneys are] currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the [ ] attorneys may be.

*Motorola, Inc. v. Interdigital Technology Corp.*, at *14-15. For these reasons the court concludes that if the Marger firm were given access to Mikohn's confidential information, the risk is great that Acres would gain an unauthorized and unfair competitive advantage.

Acres argues that by denying the Marger firm access to Mikohn's confidential information the court would undermine the firm's ability to provide effective representation. Whether that is so remains to be seen. Even if it were, the court finds that the potential harm to Mikohn from unauthorized disclosure of its confidential information would clearly outweigh the burden Acres will experience without the assistance of the Marger firm as litigation counsel. As previously noted, Acres has also retained the experienced patent law firm of Perkins Coie, which has been involved in this litigation from its inception. The court is satisfied that Perkins Coie is quite capable of effectively representing Acres in this case. Hence, it can scarcely be said that the court's decision deprives Acres of the ability to defend itself or to press its claims. Equally importantly, Acres will continue to have the valuable services of the Marger firm as patent prosecution counsel.

## ORDER

IT IS ORDERED that Acres' motion to compel (#36) is granted to this extent: Mikohn shall respond to Acres' discovery requests not later than May 8, 1998. In all other respects the motion is denied.

IT IS FURTHER ORDERED that Mikohn's proposed protective order shall be the protective order that governs discovery in this case.

IT IS FURTHER ORDERED that Mikohn's Motion to Strike a Portion of Acres's Reply in Support of Motion to Compel; and for Sanctions (#47) is granted to the extent that the court has placed no reliance on *In re Sibia Neurosciences, Inc.*, 1997 WL 688174 (Fed. Cir. 1997). In all other respects the motion is denied.

IT IS FURTHER ORDERED that the following Discovery Plan and Scheduling Order shall govern these proceedings:

1. In addition to the discovery subjects listed in Mikohn's proposed discovery plan, discovery may also be conducted on all patent issues in this case.
2. The last day of discovery shall be February 15, 1999.
3. Experts and their reports shall be disclosed not later than November 13, 1998.
4. Rebuttal experts and their reports shall be disclosed not later than December 31, 1998.
5. Pleadings may be amended and parties added until November 13, 1998.
6. The interim status report shall be filed on December 11, 1998.
7. Dispositive motions shall be filed by April 30, 1999.

---

**Virginia Circuit Court**
**Nineteenth Judicial Circuit**

Umbro International Inc. v. 3263851 Canada Inc.

# Exhibit 18

LEXSEE 1994 U.S.DIST.LEXIS 20714

**MOTOROLA, INC., Plaintiff, vs. INTERDIGITAL TECHNOLOGY CORPORATION, Defendant.**

**Civil Action No. 93-488-LON**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***1994 U.S. Dist. LEXIS 20714***

**December 19, 1994, Decided**

**COUNSEL:** [*1] Jeffrey B. Bove, Esquire of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; Of Counsel: Gary M. Hoffman, Esquire and Howard N. Feldman, Esquire of Dickstein, Shapiro & Morin, Washington, D.C.; Attorneys for Plaintiff.

Richard K. Herrmann, Esquire of Bayard, Handelman & Murdoch, Wilmington, Delaware; Of Counsel: Robert G. Krupka, Esquire and Linda S. Resh, Esquire of Kirkland & Ellis, Chicago, Illinois; Attorneys for Defendant.

**JUDGES:** Joseph J. Longobardi, D.J.

**OPINION BY:** Joseph J. Longobardi

**OPINION**

***MEMORANDUM OPINION***

December 19, 1994

Wilmington, Delaware

Joseph J. Longobardi

**I. NATURE AND STAGE OF THE PROCEEDINGS**

This suit involves patent claims relating to the mobile telephone industry. On October 8, 1993, Motorola filed a civil action seeking declaratory relief, *Motorola, Inc., v. Interdigital Technology Corporation,* Civil Action ("C.A.") No. 93-488- *LON, 1994 U.S. Dist. LEXIS 20714*. On October 12, 1993 Interdigital Technology Corporation, ("ITC"), filed a patent infringement claim arising out of the same patents, *Interdigital Technology Corporation v. Motorola, Inc.,* C.A. No. 93-5430, in the Eastern District of Pennsylvania. On February 17, 1994, the Eastern District case was [*2] transferred to this Court and designated C.A. No. 94-73. On September 22, 1994, the two actions were consolidated, with 93-488 designated as the lead case.

Presently before the court is Motorola's letter of September 21, 1994, ("Motorola letter") and ITC's response letter of September 23, 1994, regarding the dual roles performed by the firm Dickstein, Shapiro & Morin ("DS&M"). DS&M is lead trial counsel for ITC in this action, and as such is entitled by the protective order to receive Motorola's confidential information. DS&M also prosecutes patents for ITC in the PTO. Motorola seeks to amend the protective order in this case to ensure that no DS&M attorneys who prosecute patent applications for ITC in the patents in suit have access to Motorola's confidential information. On September 28, 1994, both parties argued this issue before the Court.

**II. FACTS**

On October 8, 1993, Motorola filed its claim in this present action. Docket Item ("D.I.") 1. One week later, on October 15, 1993, DS&M became attorneys of record for several ITC patent applications, "including four United States continuation or divisional applications which take their parentage from the patents in suit." [*3] D'Amico Affidavit, at 2-3. Prior to October 15, 1993, Kenyon & Kenyon had been attorney of record for these patent applications.

On March 4, 1994, a protective order was entered in this case. D.I. 35. The protective order provided that DS&M was to have access to Motorola's confidential

information. [1] The protective order did not specifically deny access to DS&M attorneys who prosecuted patent applications for ITC. The Court accepts as true Mr. D'Amico's representation that to date, none of the DS&M attorneys who have drafted claim revisions to any of the four continuation/divisional applications had access to Motorola's confidential information while preparing those revisions. D'Amico Affidavit P 6.

1 "Confidential Information shall be given, shown, disclosed, made available or communicated only to: . . . (a). . . (i) Partners and associates of Dickstein, Shapiro & Morin, and stenographic, clerical, and/or paralegal employees of those attorneys whose functions require access to Confidential Information."

[*4] Motorola claims that, at the time the protective order was entered, Motorola "reasonably believed" that Kenyon & Kenyon was the law firm responsible for prosecuting any patent applications in this case. Motorola letter at 3. Moreover, Motorola alleges that on at least two occasions, DS&M concealed the fact that they were prosecuting patents for ITC. On February 9, 1994, both parties argued the issue of whether Mr. Bramson, in-house counsel for ITC, should have access to Motorola's confidential information under the protective order. Motorola implies that DS&M should have disclosed its patent prosecution representation at that time. Later, on August 10, 1994, ITC and Motorola entered into a stipulation which enabled two lawyers from Cushman, Darby & Cushman ("CD&C") (co-counsel for ITC) to obtain access to confidential information under the protective order. As a condition for this access, the two CD&C attorneys agreed "to refrain from prosecution of patent applications directed to mobile digital telephone communication equipment and processes during the pendency of this case and until one year after the conclusion of this litigation." D.I. 69. Again, Motorola implies that ITC should [*5] have disclosed its patent prosecution representation at this time.

ITC denies these allegations of improper concealment. Mr. Hoffman of DS&M states, "during the course of the parties' negotiations over Robert Bramson's access to certain Motorola documents, I believe I told counsel for Motorola that DS&M was prosecuting patents for ITC." Hoffman Affidavit at 4, P7. With respect to the CDC stipulation, Mr. Hoffman states that ITC consented to the stipulation in order to save time and expense, not because it agreed with Motorola's position. Hoffman Affidavit at 4-5, P8. [2] Moreover, counsel for ITC seem to have been guided at all times by their belief that no restriction exists on an outside counsel's ability to prosecute patent applications involving the technology related to the patents at issue. D'Amico Affidavit P9; Hoffman Affidavit P3; D.I. 86, at 109 (Mr. Bove stating that in his mind, there was always a clear distinction between inside and outside counsel).

2 Mr. Hoffman's statement is supported by Mr. Bove's letter of August 8, 1994 to Mr. Hermann of Bayard, Handelman & Murdoch (local counsel for Motorola): "So the record is clear, we are providing this [CD&C] Stipulation at Motorola's request in order to avoid burdening the Court with what we perceive is a improper position taken by Motorola." ITC letter, Exhibit G.

[*6] For purposes of this opinion, the Court accepts as true the representations by ITC's various attorneys that there was no intentional concealment of DS&M's dual role. Nevertheless, an important issue is now before the Court which the Court is compelled to resolve.

**III. Discussion**

In a patent case, maintaining the integrity of the protective order is an especially serious concern. "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20 (D. Del. 1988)*. Motorola argues that its confidential information will be inadequately protected if DS&M attorneys who have access to the confidential information also prosecute ITC patents. Motorola fears that it is impossible for DS&M attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications. Such use would violate the protective order's prohibition against use of the confidential information for [*7] any use other than the present litigation.

To supports its contention that there is no prohibition against outside counsel performing these dual roles, ITC relies upon *In re Certain Amorphous Metal Alloys,* No. 337-TA-143 (U.S.I.T.C. 1983)., and its progeny, *In re*

*Certain Magnetic Switches,* 1993 ITC LEXIS 143 (U.S.I.T.C. 1993). *Amorphous Metal* is factually similar to the present case. Two firms were acting as trial counsel for respondents and each firm had access to complainant's confidential information. The first firm assisted their client's in-house patent agents in preparing patent applications. The second firm did not prosecute their client's patent applications, but prosecuted patents for other clients in the same subject matter. *Amorphous Metal* at 1 n.2. Complainant argued that these firms could not possibly respect the protective order and still zealously prosecute the patent applications.

The International Trade Commission allowed both firms to gain access to the confidential information. The Commission based its decision upon the following factors: an in-house/outside counsel distinction, faith in the attorneys ability to respect the protective order while [*8] pursuing future patent prosecutions, the lack of a present conflict, and the burden to the clients if the attorney's were disqualified from the litigation. While *Amorphous Metal* formulates and addresses the important issues present in this dispute, the Court declines to reach the Commission's result. To some extent this is due to factual differences between *Amorphous Metals* and the present case, but to some extent the Court simply disagrees with and declines to follow the Commission's reasoning.

"The goals of full disclosure of relevant information and reasonable protection against economic injury 'are in tension and each must be fairly balanced against the other.'" *Safe Flight, 682 F. Supp. at 23* (quoting *E.I. Du Pont de Nemours & Company v. Phillips Petroleum Company, 219 U.S.P.Q. 37 (D. Del. 1982)* (Latchum, J.)). After carefully weighing the relevant factors, which are discussed below, the Court holds that the DS&M attorneys who have received confidential information from Motorola under the protective order shall not prosecute any ITC patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year [*9] after the conclusion of the present litigation, including appeals.

**A. The In-house/Outside Counsel Distinction**

In their letter and at argument, Counsel for ITC present the Court with a general rule: courts split on whether inside counsel may receive confidential information while at the same time continue to prosecute patents, but outside counsel are always able to do both. In *Amorphous Metal,* the Commission gave its reasons for viewing in-house counsel differently from outside counsel:

> Traditionally and in the instant investigation, in-house counsel have been excluded from protective orders not because of an inherent untrustworthiness, but because of their close ties with the corporate client. Although in-house counsel serve as legal advisors, their employment often intimately involves them in the management and operation of which they are a part. The two roles of legal advisor and corporate official will often merge; when they do, the efficacy of the protective order is greatly diminished. Furthermore, because they are in regular contact with technical personnel, in-house counsel are in a significantly different position with regard to opportunities for inadvertent [*10] transmission of confidential information than are outside counsel.

*Amorphous Metal* at 5.

The Court declines to rest its decision upon a bright-line distinction between "in-house" and "outside" counsel. Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984). U.S. Steel* was decided eight months after the Commission's opinion in *Amorphous Metal,* and involved a CIT decision which had relied upon a bright-line distinction to deny in-house counsel access to confidential information. The Federal Circuit held that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access." *U.S. Steel, 730 F.2d at 1469.*

The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure. In discussing access for in-house counsel, courts look for involvement in competitive [*11]

decision making or scientific research in determining whether an individual would have a difficult time compartmentalizing his knowledge. *Carpenter Technology Corp. v. Armco, Inc., 132 F.R.D. 24, 27-28 (E.D. Pa. 1990)* (granting access to one individual and denying access to another individual based upon involvement in competitive decision making and scientific research); *U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)* (discussing the need to retain outside counsel to gain access to confidential information if in-house counsel is involved in competitive decision making). These are activities which define the scope and emphasis of a client's research and development efforts. The process of prosecuting patent applications also involves decisions of scope and emphasis, as was argued by Mr. Krupka at the September 28 hearing: "They can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die." D.I. 86, at 126. [3]

3 *Amorphous Metal* did not address this aspect of the patent prosecution process. The Commission was satisfied that no danger existed because the outside counsel had no direct contact with the client's technical personnel. *Amorphous Metal* at 6.

[*12] Moreover, this court has implied in the past that prosecution of patents could be grounds for denying access. In *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20 (D. Del. 1988)* (Roth, J.), the Court denied plaintiff's request that defendant's in-house counsel be denied access: "The defendant has represented to this Court that its in-house counsel neither conduct scientific research *nor prosecute patents*. These attorneys simply do not face [plaintiff's president's] prospect of having to distil one's own thoughts from a competitor's thoughts during the course of future . . . work." [4] *Id*. The court also relied upon the fact that defendant's in-house counsel would be segregated to avoid "the possibility of conscious or unconscious abuse of confidential information." *Id. at 23*.

4 The Court had previously denied Plaintiff's request that Plaintiff's President be granted access because of the President's heavy involvement in research and decision making. *Safe Flight, 682 F. Supp. at 22*.

[*13] There can be no question that DS&M attorneys who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential knowledge they have gained. The inquiry must shift, therefore, to the dangers of inadvertent disclosure and the possible protections that may exist against such disclosure.

**B. Inadvertent Disclosure**

DS&M attorneys are prosecuting patents that are directly at issue in the present litigation. DS&M does not deny that it is theoretically possible for them to abuse the confidential information received, but argue that they understand their ethical duty and will act in conformance with it. The Commission adopted this position in *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C. 1983): "In the event that a conflict is posed as a result of knowledge gained under a protective order, we would expect that counsel would refer the matter to other counsel. We therefore believe that it is appropriate to presume that respondents' counsel will respect the integrity of the confidential information released under a protective order."

The Court does not question the ethics of the DS&M attorneys, [*14] nor does it doubt that DS&M attorneys would respond appropriately if a conflict were "posed" to them. The issue is not deliberate disclosure, however, but *inadvertent* disclosure. In *Safe Flight,* the Court denied Plaintiff's President access to defendant's confidential information because of the dangers posed by inadvertent disclosure. "Accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas." *Safe Flight, 682 F. Supp. at 22*.

"Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision." *U.S. Steel Corp., 730 F.2d at 1468*. DS&M is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the [*15] patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be

stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS&M attorneys may be.

**C. Hardship to Client**

Courts have also considered the hardship to the client if counsel is disqualified or restricted in some manner. *See U.S. Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984)* ("forcing USS to rely on newly retained counsel would create an extreme and unnecessary hardship"); *Safe Flight Instrument Corp. v. Sundstrand Data Control, 682 F. Supp. 20, 22 (D. Del. 1988)* (denying access to Plaintiff's president would not unduly hamper plaintiff ability to assess litigation); *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C. 1983) ("disqualification imposes too great a burden on respondents in this case"). ITC has urged the Court to consider the cost it will incur if DS&M's representation is limited in any way. *See* D.I. 86, at 110 (representations by Mr. [*16] Bove regarding ITC's concern regarding costs). ITC's hardship is certainly a factor to be balanced against Motorola's need to protect its confidential information, but it is just one factor.

It is important to note that DS&M has not been prosecuting these particular ITC patent applications for a long period of time. This is not a situation where a client decided that it would be efficient to retain trial counsel who had prosecuted the particular patent in the past. In fact, DS&M did not become attorney of record for these particular patent applications until one week after the filing of Motorola's suit. This creates the appearance of a situation where a client felt it would be efficient to have trial counsel prosecute the patent application in the future. This creates far too great a risk that any efficiency will be to some extent the result of inadvertent use of confidential information.

This conflict was created by ITC after the initiation of litigation, and could have been avoided altogether by ITC. Under these circumstances, the Court will take hardship into account in fashioning its remedy, but does not consider the hardship severe enough to deny relief altogether.

[*17] **D. Timing of the Remedy**

In *Amorphous Metal,* the Commission recognized that a danger existed, but decided that there was not a present conflict, only a mere possibility of future conflict. *Amorphous Metals* at 8. As a result of this conclusion, the Commission chose not to deny access, but rather indicated that it would investigate in the future if the complainant could "show that subject matter directly related to the confidential information appeared in a patent application after release under a protective order." *Amorphous Metal* at 6 n.13. In effect, the Commission promised to remedy the injury after it occurred, while complainant was asking the Commission to prevent the injury from occurring. Given the voluminous information supplied to date by Motorola under the protective order, the ongoing dual role of the DS&M attorneys, and the need to closely guard confidential information in the patent area, this Court believes a conflict exists at the present time and will act to prevent the possibility of injury to Motorola.

**E. Scope of the Remedy**

All DS&M attorneys or employees who have received confidential information from Motorola under the protective order [*18] in this case shall not prosecute any patent application for ITC relating to the broad subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

This remedy is broad enough to protect Motorola's confidential information, yet seeks to minimize the hardship to both ITC and DS&M. The prohibition applies only to ITC patent applications that are the subject matter of this litigation, not all ITC patent applications. The prohibition applies only to patent prosecutions for ITC, not for all other clients. [5] Finally, there is a time limit on the prohibition similar to the limit requested by Motorola for the CDC attorneys. *See* D.I. 69.

5 The Court presumes that DS&M's ethical duty to its client, ITC, would prevent DS&M from prosecuting patent applications for other clients that are of similar subject matter as ITC's patents in this case. Therefore, Motorola's confidential information should not be threatened by any representation of a third party which DS&M may undertake.

[*19] DS&M has represented that to date, only Mr. D'Amico has worked on patent application matters and then subsequently reviewed confidential information. *See* D'Amico Affidavit. Because he has had access to

Motorola's confidential information, he is subject to the Court's prohibition. Going forward, DS&M shall set up a Chinese Wall to separate the ITC patent application attorneys from the Motorola litigation attorneys who have received confidential information. This shall ensure that, with the exception of Mr. D'Amico, ITC shall continue to receive the same services from the same DS&M attorneys that ITC has received in the past.

***ORDER***

NOW, THEREFORE, for all the reasons stated by the Court in its Memorandum Opinion of December 19, 1994, IT IS ORDERED that:

1. The protective order, Docket Item 35, shall be amended to provide that any Dickstein, Shapiro & Morin ("DS&M") attorneys who have received confidential information from Motorola under the protective order shall not prosecute any InterDigital Technology Corporation patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion [*20] of the present litigation, including appeals.

2. DS&M shall set up a Chinese wall to ensure that the Court's order is effectively enforced.

Joseph J. Longobardi, D.J.

12/19/94