IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP.<br>Plaintiff,<br>v.<br>THE UNITED STATES<br>Defendant,<br>and<br>ROSE ELECTRONICS,<br>Proposed Defendant-Intervenor. | No. 08-69C<br><br>Judge Lawrence S. Margolis |

DECLARATION OF MICHAEL L. LYNCH

I, Michael L. Lynch, declare as follows:

1. I am an attorney licensed to practice in Texas, and also before the U.S. Patent & Trademark Office ("PTO"). I have personal knowledge of the facts herein and, if called as a witness, could and would testify competently as to their truth.

2. I am a shareholder in the Austin, Texas office of Schwegman, Lundberg & Woessner P.A.

3. I was first admitted to practice in Texas in 1981, and was admitted to practice before the PTO in 1982. A copy of my resume is attached hereto as Appendix A.

4. I first started drafting and prosecuting patent applications in 1981 for Dresser Atlas Inc. I have continued to prepare and prosecute patent applications, either personally or in a supervisory capacity, throughout the entirety of my career.

5. As indicated in my resume, from 1993 through 1995 I was an adjunct professor of law at the University of Texas, and later at William Mitchell College of Law, where I taught courses in patent prosecution before the U.S. Patent and Trademark Office. I also was an instructor for a Patent Bar Review Course offered by the University of Houston Law Center from 1993 to 1998; and from 1991-1995 I authored the chapter on "Practice before the PTO" in the Patent Law Handbook.

6. Throughout my 27 year career, a substantial portion of my practice has involved the preparation and prosecution of patent applications, and the supervising of others doing such work. I have worked in both industry (12 years) and private law practice (15 years). Thus, I have personally dealt with patent prosecution issues from the perspective of an in-house lawyer as well as of an outside lawyer.

7. In particular. for almost 10 years, I worked in industry as counsel for Micron Technology, Inc. of Boise, Idaho, having the position, for almost all of that time, of Chief Patent Counsel. Micron Technology is a multi-national, Fortune 500 company, that manufactures many forms of semiconductor imaging and memory devices, such as DRAM and Flash memory devices, as used in computers, cell phones, and the like.

8. As Chief Patent Counsel for Micron Technology, my responsibilities included supervising essentially all patent application filings and prosecution for the company, which was performed primarily by multiple outside law firms that I retained to do Micron's patent prosecution work. During my tenure at Micron, the company was issued more than 12,000 U.S. patents. For each year from 2000 through 2007, Micron has ranked in the top 10 recipients of U.S. patents.

9. A patent grants its owner the right to exclude others from practicing an invention that is defined by the claims of the patent. Thus, the inherent goal of obtaining such a right to exclude others from practicing the claimed invention is to have or preserve, in

some way, a competitive advantage relative to others competing in the commercial arena of the subject patent.

10. In my opinion, a competent attorney prosecuting patent applications on behalf of a client is acutely aware of the right to exclude afforded by any patent he or she procures on behalf of that client. In nearly all the patent prosecution that I have done and have supervised during my career, I considered that it was my responsibility to use my best professional judgment to procure the best patent claims that I could, in terms of covering the competitive landscape of the subject invention as best possible in view of the existing prior art. In other words, my job was to maximize the competitive advantage afforded by the patents I procured for my clients.

11. While serving as Chief Patent Counsel at Micron Technology, the patent attorneys that I retained to provide patent prosecution services for the company were hired to draft patent applications and claims in a way that, in their best professional judgment, was best for Micron. Indeed, I hired these attorneys to make these types of decisions because of their expertise and abilities to make those decisions, and they were expected to exercise their professional judgment to obtain the most complete and valid scope of protection that they deemed appropriate. In my experience, the essence of a patent attorney's role when providing patent prosecution services to a client is to make decisions regarding the scope of claims that will be allowable over the prior art and will provide the best scope of exclusionary rights for that client.

12. In my experience, it is common that during prosecution of a patent application an attorney will become aware of products or services of a third party that have some similarity to the invention described in the patent application. In that circumstance, so long as the third party products and services are not prior art, then it is also common and desirable to submit claims in the application to cover those products or services, if the then-existing claims do not fully cover them. While it is true that any such claims must be supported by the original specification of the patent application, claim drafting is not a precise science, but is an art form that varies based on the skills, experience, and training of the attorney doing the drafting. Thus, seeing a competitor's information (whether confidential or not) makes it possible for the lawyer to draft new claims that he or she might not have otherwise thought to draft but that are still supported by the original patent specification.

13. In my experience, it is also common that a client owning one or more patent applications will specifically investigate, directly or through their patent attorney, the publicly-available information regarding the products or services of competitors in order to guide the drafting of patent claims to cover those products or services. Many times throughout my career, I have been involved in the drafting or revising of patent claims to specifically cover products and services offered by a competitor of my client. For many clients, such activities may be considered a standard portion of the services that I am hired to provide.

14. Because the drafting of claims requires decisions about the scope of the right to exclude that I will be seeking on behalf of my client, such decisions, in my opinion, are directly related to competition between my client and others. Where those decisions are made with knowledge of the products or services of a particular competitor, those decisions, in my opinion, directly impact competition between my client and at least that competitor.

15. Because of the need to cover competitors' products and services on behalf of clients, and the need to do so based only on publicly-available information, I have on occasion declined to receive confidential information of a third party, where I believed that such information might have been pertinent to one or more patent applications that I was working on, in some way, on behalf of a client. In my opinion, in many situations it could be very difficult for an attorney to compartmentalize, or otherwise ignore, confidential information he or she might receive regarding a third party's products and services pertinent to such an application, and to thus assure that such information did not play some role in how the attorney might choose to draft or revise claims in that application.

16. Additionally, I am aware of protective orders entered in patent litigation that have precluded the disclosure of confidential technical information of an opposing party in the litigation to persons involved with prosecuting patent applications on behalf of another party to the litigation. I am further aware of multiple such protective orders in litigations under the terms of which I, as well as others involved in prosecuting patent applications on behalf of my client, have been excluded from receiving such confidential technical information of an opposing party in the litigation; where the exclusion was specifically due to that involvement in prosecuting patent applications.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on June 20, 2008, at Austin, Texas.

Michael L. Lynch

Appendix A

**Michael L. Lynch**
**Schwegman, Lundberg & Woessner P.A.**
8911 Capitol of Texas Highway, Suite 4150
Austin, Texas 78759
(512) 628-9324

---

## EMPLOYMENT

**Schwegman, Lundberg & Woessner P.A.** Austin, Texas
Shareholder 2005 to Present

- Practice focuses on preparation and prosecution of patent applications; providing opinions on intellectual property rights, including patent validity, infringement and enforceability; and advising on developing, managing and enforcing intellectual property rights, including negotiating and drafting licenses and other transfers of intellectual property rights.

**Micron Technology, Inc.** Boise, Idaho
Chief Patent Counsel 1996 to 2005

- Managed and directly controlled building the company's patent portfolio from under 800 U.S. patents to approximately 13,000 U.S. patents, as well as a corresponding increase in the non-U.S. patent portfolio.
- Handled or supervised all technology licensing matters for the company (1996 through 2001), including agreements for joint development projects, complex business acquisitions and divestitures, university research projects, equipment testing and support, technology in-licensing, consulting relationships, and litigation settlements; and personally negotiated and drafted numerous licenses, technology transfers and other intellectual property agreements during the entire period at Micron.
- Participated in directing intellectual property litigation in the U.S. and Europe, including patent validity, infringement and anti-competition issues.
- Advocated on issues impacting intellectual property and international trade before agencies including the Patent and Trademark Office, the Federal Trade Commission, the International Trade Commission, and the World Customs Organization; and advised and advocated on intellectual property policy through participation on the Board of Directors of the Intellectual Property Owners Association.

**Arnold, White & Durkee** Minneapolis, Minnesota; Houston, Texas
Shareholder (1990-1996)/ 1983 to 1996
Associate (1983-1989)

- Practice included a mixture of patent and trade secret litigation and patent prosecution, as well as advising on strategic portfolio development. The prosecution practice involved a wide range of technologies including: semiconductor structures and processing; oil and gas industry activities including drilling, completion, production, logging and fluids recovery; medical devices including pacemakers, surgical instruments, prostheses and hospital beds; electromagnetic railguns; and seismic systems.

**Private Practice** Houston, Texas
Sole Practitioner 1982 to 1983

- Practice consisted of patent preparation and prosecution, primarily in oil and gas industry technologies.

**Dresser-Atlas, Inc.**
Houston, Texas
Patent Attorney 1981 to 1982

- Activities focused on preparation and prosecution of patent applications relating to electronic and nuclear instrumentation for logging oil and gas wells and the surrounding earth formations.

**Dresser-Atlas, Inc.**
Houston, Texas
Electronics Technician — 1974 to 1981

- Worked in R&D labs building, testing and repairing prototype electronic and nuclear instrumentation for logging oil and gas wells and the surrounding formations.

## EDUCATION and ADMISSIONS

**Admitted to Practice:** Texas 1981, U.S. PTO 1982, Minnesota 1996 (currently inactive), Idaho 1997 (currently inactive)

**University of Houston Law Center**, Houston, Texas
J.D. 1981
Editor, University of Houston Law Review 1980-81
Outstanding Candidate award, University of Houston Law Review 1979-80

**Lamar University**, Beaumont, Texas
B.S., 1973

## TEACHING

**William Mitchell College of Law** — St. Paul, Minnesota
Adjunct Professor of Law — 1995 to 1995

- Taught a two credit hour course in practice before the Patent and Trademark Office. The curriculum included the statutes and regulations governing practice before the Patent and Trademark Office and practical exercises in preparing and prosecuting patent applications.
-

**The University of Texas at Austin** — Austin, Texas
Adjunct Professor of Law — 1993 to 1995

- Initiated and repeatedly taught a two credit hour course in practice before the Patent and Trademark Office, substantially the same as that later offered at William Mitchell College of Law.

**Arnold, White & Durkee**

- Developed and repeatedly taught a one week curriculum in patent prosecution, with particular focus upon claim drafting and the rules of practice before the Patent and Trademark Office. The course was offered to associates in preparation for the Patent Bar Examination.

## REPRESENTATIVE ACTIVITIES AND PUBLICATIONS

Board of Directors, Intellectual Property Owners Association ("IPO"), 1999 to 2005; IPO Board Liaison, Patent Office Practice Committee, 2003-2005; IPO Executive Committee, 2003-2004.

Project Manager, Semiconductor Industry Association, 2004-present, "Multi-chip Package Project", representing the U.S. semiconductor industry in negotiations with international semiconductor advocacy groups and with Trade and Customs representatives of various nations, to achieve classification of multi-chip integrated circuits parallel to that of monolithic integrated circuits

Faculty member for the "Review Course In Preparation For The Patent Bar Exam" 1993-1998; sponsored by the University of Houston Law Center, Intellectual Property Law Foundation.

Author, Patent Law Handbook, Chapter 10 ("Practice before the PTO"), edited by Patricia Brantley, and published annually by Clark Boardman Callaghan; 1991-92, 1992-93, 1993-94, and 1994-95 editions.

## MEMBERSHIPS

Association of Corporate Patent Counsel; American Intellectual Property Law Association; American Bar Association; Austin Intellectual Property Law Association