**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AVOCENT REDMOND CORP., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 08-69C<br><br>Judge Lawrence S. Margolis |

**AVOCENT REDMOND'S AMENDED MOTION**
**TO STRIKE AND OPPOSITION TO**
**ROSE'S CROSS-MOTION FOR A PROTECTIVE ORDER**

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace K. Obermann
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
4300 Wilson Blvd, Suite 700
Arlington, Virginia 22203
Tel. 703-894-6400
Fax. 703-894-6430

Attorneys for Plaintiff Avocent Redmond Corp.

## TABLE OF CONTENTS

**I. ROSE'S OPPOSITION AND CROSS-MOTION SHOULD BE STRICKEN....1**

**II. ROSE'S CROSS-MOTION SHOULD BE DENIED UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL....1**

A. The Identical Issue Raised by Rose's Cross-Motion was at Issue in the Seattle Action.... 2

B. Rose's "Prosecution Bar" Issue was Actually Litigated in the Seattle Action .... 2

C. Judge Pechman's Denial of Rose's Proposed "Prosecution Bar" was Necessary to the Resulting Judgment.... 4

D. Rose had a Full and Fair Opportunity to Litigate the "Prosecution Bar" Issue.... 5

E. There are No Changed Circumstances Since Judge Pechman Ruled Against Rose in May, 2007 .... 5

**III. ROSE'S CROSS-MOTION SHOULD BE DENIED ON THE MERITS....6**

A. Rose's Cross-Motion Fails to Apply the *U.S. Steel* Test.... 7

B. *U.S. Steel* Mandates A Case-By-Case Analysis Of The Lawyer's Role .... 12

C. Rose Has Not Shown Good Cause for Its Version of the Protective Order.... 13

D. Rose's Analysis Is Fundamentally Flawed.... 14

E. Exclusion of Avocent's Patent Prosecution Counsel Would Work a Substantial Hardship on Avocent .... 16

F. The *Motorola* Decision Cited by Rose Supports Avocent's Position .... 16

G. Rose's Authorities Improperly Create a *Per Se* Bar, Employ a Flawed Analysis, and Yield an Absurd Result.... 17

**IV. LYNCH'S DECLARATION IS COMPLETELY UNHELPFUL....19**

**V. THE COURT SHOULD NOT PUT MUCH WEIGHT IN MACOUREK'S DECLARATION....20**

**VI. CONCLUSION ....20**

## TABLE OF AUTHORITIES

### CASES

*AFP Advance Food Products LLC v. Snyder's of Hanover Mfg., Inc.*,
2006 U.S. Dist. LEXIS 426 (E.D. Penn. 2006) ....................10, 13

*Amgen, Inc. v. Elanex Pharms., Inc.*,
160 F.R.D. 134 (W.D. Wash. 1994) ....................10

*Bank of Guam v. United States*,
80 Fed. Cl. 739 (Fed. Cl. 2008). ....................1

*Cummins-Allison Corp. v. Glory Ltd.*,
2003 U.S. Dist. LEXIS 23653 (N.D. Ill. 2003) ....................18, 19

*Fluke Corp. v. Fine Instruments Corp.*,
1994 U.S. Dist. LEXIS 16286 (W.D. Wash. 1994) ....................10

*Infosint S.A., v. Lundbeck A.S.*,
2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. 2007) ....................18, 19

*In Re Papst Licensing, GmbH*,
2000 U.S. Dist. LEXIS 6374 (E.D. La. 2000) ....................18, 19

*In re Trans Texas Holdings Corp.*,
498 F.2d 1290 (Fed. Cir. 2007) ....................1

*Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*,
1999 U.S. Dist. LEXIS 12437 (N.D. Ill. 1999) ....................18

*Jet, Inc. v. Sewage Aeration Sys.*,
223 F.3d 1360 (Fed. Cir. 2000) ....................1

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed. Cir. 1988) ....................15

*Matsushita Elec. Indus. Co., Ltd. v. United States*,
929 F.2d 1577 (Fed. Cir. 1991) ....................11

*MedImmune, Inc. v. Centocor, Inc.*,
271 F. Supp. 2d 762 (D. Md. 2003) ....................10

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
1998 U.S. Dist. LEXIS 22251 (D. Nev. 1998) ....................18

*Motorola, Inc. v. Interdigital Tech. Corp.*,
1994 U.S. Dist. LEXIS 20714 (D. Del. 1994) ............................................8, 9, 10, 16, 17

*Pergo, Inc. v. Faus Group, Inc.*,
2005 U.S. Dist. LEXIS 40601 (E.D. N.C. 2005) ..........................................................10

*Shingara v. Skiles*,
420 F.3d 301 (3d Cir. 2005)........................................................................................10

*Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*,
1997 U.S. Dist. LEXIS 24130 (S.D. Cal. 1997) ..........................................................8, 9

*Simmons v. Small Business Admin.*,
475 F.3d 1372 (Fed. Cir. 2007)........................................................................................4

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984)..................................................................... *passim*

## STATUTES

28 U.S.C. § 1498...............................................................................................................20

35 U.S.C. § 112.................................................................................................................15

35 U.S.C. § 115.................................................................................................................15

35 U.S.C. § 120...........................................................................................................14, 15

## OTHER AUTHORITY

*Restatement (Second) of Judgments § 13*.........................................................................4

*Restatement (Second) of Judgment § 27* ..........................................................................4

Plaintiff Avocent Redmond Corp. ("Avocent") moves to strike non-party Rose Electronics' ("Rose's") opposition to Avocent's motion for a protective order and its cross-motion for a protective order. Alternatively, Avocent opposes Rose's cross-motion because the issue Rose raises here has been fully litigated in the related litigation pending in the Western District of Washington ("the Seattle action"), and because the underpinnings of Rose's cross-motion are contrary to law. Avocent also asks the Court to issue an order requiring Rose to show cause why the Court should not award Avocent its costs and attorneys fees in responding to Rose's opposition and cross-motion.

## I. ROSE'S OPPOSITION AND CROSS-MOTION SHOULD BE STRICKEN

Rose's combination cross-motion and opposition to Avocent's motion should be stricken. Rose is not a party to this action, and neither the United States nor Avocent have sought discovery from Rose. Non-parties do not have the unilateral right to file motions or oppose motions. Thus, Rose has no standing to file an opposition/cross-motion on the issue of the appropriate protective order that should be entered in this case.

## II. ROSE'S CROSS-MOTION SHOULD BE DENIED UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL

Collateral estoppel, or issue preclusion, bars the re-litigation of issues in a second action that were fully briefed and decided in a first action between the parties. The elements of collateral estoppel are: "(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *In re Trans Texas Holdings Corp.*, 498 F.2d 1290, 1297 (Fed. Cir. 2007) (*quoting Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365-66 (Fed. Cir. 2000)); *see Bank of Guam v. United States*, 80 Fed. Cl. 739 (Fed. Cl. 2008).

### A. The Identical Issue Raised by Rose's Cross-Motion was at Issue in the Seattle Action

In its cross-motion, Rose seeks a version of a protective order that would bar any of Avocent's counsel that have access to highly confidential information from engaging in patent prosecution services for Avocent. Rose's proposed protective order is just another in a series of attempts to deprive Avocent of its chosen litigation counsel. Rose's sweeping prosecution bar reads as follows:

> Proprietary Information designated as ATTORNEYS EYES ONLY can be disclosed to those persons designated in ¶¶ 7(a)-7(e) and 7(g)-7(k) only on the condition that any person who receives access to such information shall have no involvement whatsoever, from and after the date of first disclosure of any such information to such person, in the prosecution of any patent application that involves KVM switch technology for a period of one year after the conclusion of this litigation (including the exhaustion of all subsequent appeals). Patent prosecution shall include drafting, reviewing, editing, or supervising the drafting or preparation of patent applications, claims, specifications, amendments, responses to office actions and any other material submitted to the United States Patent & Trademark Office or any other patent authority elsewhere in the world, as well as identifying or evaluating potential inventions, participating in the decision to file patent applications or consulting on any of the foregoing matters with others performing any of these activities.

(Docket No. 24, p. 6). This is exactly the same "patent prosecution bar" that Rose proposed in the Seattle action. (Exh. 1, p. 9).[1]

### B. Rose's "Prosecution Bar" Issue was Actually Litigated in the Seattle Action

The issue of Rose's proposed prosecution bar was actually litigated in the Seattle action. There, the parties fully briefed Rose's "prosecution bar" issue. Rose and the other defendants filed a cross-motion for entry of a protective order having the proposed prosecution bar, and a supporting declaration. (Exh. 2; Exh. 3, Docket Nos. 70-71). Avocent opposed that cross-motion and filed an evidentiary declaration. (Exh. 3, Dkt. Nos. 75-76). Rose and its co-

[1] Unless otherwise stated, all exhibits are attached to the Declaration of Donald L. Jackson ("Jackson Decl.") filed herewith.

defendants filed a reply in support of their motion (Exh. 3, Dkt. No. 81), and Avocent filed a surreply (Exh. 3, Dkt. No. 82).

After considering the voluminous briefing and the cited evidence, Judge Pechman issued her ruling on the protective order dispute on May 24, 2007. (Exh. 4). *Judge Pechman dedicated nearly six pages of her order to the "prosecution bar" issue Rose raises here.* (*See* Exh. 4, pp. 3-9). Specifically, Judge Pechman ruled the defendants failed to show that any of Avocent's counsel were involved in Avocent's "competitive decisionmaking," as required by the relevant case law. (*See* Exh. 4, p. 8). Judge Pechman specifically found that the prosecution bar would work a substantial hardship on Avocent. (*See* Exh. 4, p. 8). Judge Pechman held that "[t]he Court is unwilling to preclude lawyers from litigating here or in front of the patent office on a vague and generalized threat of future inadvertent misuse of discovered materials." (Exh. 4, p. 8).

Not only has Rose raised the exact same issue here as it raised in the Seattle action, Rose is also making the same arguments that it and its co-defendants made in Seattle. (*See* Exh. 2 (Rose's Seattle brief), pp. 1-10). Thus, Rose's "prosecution bar" issue was actually litigated in the Seattle action.

Undeterred, Rose apparently suggests that issue preclusion does not apply because Judge Pechman's ruling was limited to the evidence before her. (*See* Rose's Cross-Motion, p. 10 (characterizing the ruling by stating that Rose and the other defendants "have not offered any evidence that suggests that [Avocent's patent prosecution attorneys] advise Avocent in its 'competitive decisionmaking.'")). In other words, Rose appears to argue that the issue was not really decided by Judge Pechman. Instead, Rose intimates that all she determined was that Rose failed to meet its burden of proof. But issue preclusion fully applies to a failure of proof and to a

failure to sustain the burden of proof on an issue. *See Simmons v. Small Business Admin.*, 475 F.3d 1372, 1374 (Fed. Cir. 2007) ("Simmons' mere assertion of a different ground for invalidity of the settlement in this action … than that litigated in the district court … does not bar application of issue preclusion because '[i]t is reasonable to require [a party] to bring forward all evidence in support of [its argument] in the initial proceeding.'"); *see also Restatement (Second) of Judgment § 27*, comment d (Exh. 8) ("A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof."). If this were not the law, a party could continually relitigate every issue by putting forward a little bit more evidence, or reform its argument to be more persuasive, with each new motion. *See Restatement (Second) of Judgment § 27*, illustration 4 (Exh. 8) ("It is reasonable to require A to bring forward all evidence in support of the alleged negligence in the initial proceeding.").

### C. Judge Pechman's Denial of Rose's Proposed "Prosecution Bar" was Necessary to the Resulting Judgment

For purposes of issue preclusion, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Restatement (Second) of Judgments § 13* (attached as Exh. 5). Judge Pechman's May 24, 2007 ruling on the competing protective order provision was a final judgment for purposes of issue preclusion. The May 24, 2007 Order ruled against Rose's "prosecution bar." Thereafter, the parties exchanged massive amounts of discovery under a protective order that did not include Rose's "prosecution bar." Thus, not only was Judge Pechman's order "sufficiently firm," the parties actually implemented her order by exchanging highly confidential discovery. *See Restatement (Second) of Judgments § 13* (Exh. 5) ("the judgment must ordinarily be a firm and stable one, the 'last word' of the rendering court – a 'final' judgment").

**D. Rose had a Full and Fair Opportunity to Litigate the "Prosecution Bar" Issue**

As a party to the Seattle action, Rose had a full and fair opportunity to litigate the issue of its proposed "prosecution bar" protective order. The parties fully briefed the issue in April and May, 2007. Apparently satisfied with its briefing and the written evidence, Rose did not ask for a hearing on the issue, and thus, none was held.

**E. There are No Changed Circumstances Since Judge Pechman Ruled Against Rose in May, 2007**

To try to justify why Rose is re-litigating the "prosecution bar" issue, Rose claims that "the circumstances have changed dramatically since the Seattle court considered the issue." (Dkt. No. 24, p. 1). Rose points to the fact that Avocent's patent prosecution counsel (the undersigned firm) is representing Avocent in the Patent Office reexamination proceedings initiated by Rose. But, as Rose knows from the Seattle action, lawyers at Davidson Berquist have represented Avocent for about 10 years in patent prosecution. (*See* Declaration of Michael S. Dowler ("Dowler Decl.") in support of Rose's cross-motion, Exh. 5). Mr. Davidson's declaration in the Seattle action established that he has represented Avocent Corp. and its affiliates and predecessors in prosecution and litigation matters since 1998. (*See id.*). The reexamination proceedings initiated by Rose represent just another group of patent prosecution matters handled by Davidson Berquist for Avocent. Thus, the reexamination proceedings are not dramatically changed circumstances as argued by Rose.

As additional support, Rose argues that Avocent's counsel will be able to re-write the claims in the reexamination proceedings based on Rose's highly confidential information produced during discovery in the Seattle action. (*See* Dkt. No. 24, p. 2). This is a red-herring. Avocent had, and still has, a continuation application still pending in the Patent Office from the same patent family that is at issue in this case. (*See* Dowler Decl., Exh. 10). Thus, Avocent

could, and still can, add whatever claims it wants to that continuation case separate and apart from the reexamination proceedings so long as those claims are supported by the original patent specification. (*See* Section III.D, below). The continuation case was filed in 2005, well before Rose sought its "prosecution bar" in the Seattle action in 2007. Thus, the fact that Avocent can modify claims in the current patent family is not a "changed circumstance" warranting a second bite at the apple. There have been no intervening changes in the law or the facts.

In short, issue preclusion bars Rose from re-litigating the same "prosecution bar" issue it raised and lost in the Seattle Action. It was vexatious for Rose to file its cross-motion here, and Avocent asks the Court to issue an order requiring Rose to show cause why Avocent should not be awarded its fees and costs in responding to Rose's motion.

## III. ROSE'S CROSS-MOTION SHOULD BE DENIED ON THE MERITS

Rose's cross-motion should be denied on the merits as well. Rose's cross-motion presumes that attorneys will violate the Seattle protective order that states that the confidential information can only be used for purposes of that action. But such an assumption is unwarranted and Rose has absolutely no evidence that Avocent's counsel has violated, or will violate, the Seattle protective order.

Moreover, Rose's motion and attached declarations are filled with rampant speculation about the adverse effects that might befall Rose if the Court does not adopt a "prosecution bar." But Avocent's counsel has had all of Rose's highly confidential information since mid-2007 in the Seattle action. If Avocent's counsel was going to make improper use of that information, it certainly would have happened by now. Yet, Rose and its declarants cannot point to a single shred of actual evidence that Avocent's counsel has improperly used Rose's confidential information.

Rose's cross-motion also ignores reality. Avocent's counsel in this case already possesses the information Rose identified as "highly confidential" by virtue of their representation of Avocent in the Seattle action. Rose's cross-motion would not in any way affect Avocent's counsel's possession of that information. The information exchanged in this case will likely be a limited subset of the discovery already exchanged in the Seattle action. In other words, Rose's motion here is truly irrelevant. This fact underscores the real motive behind Rose's cross-motion – *i.e.*, to deprive Avocent of its chosen litigation counsel, to compound the litigation, and delay resolution of the underlying infringement claims.

Critically, like the positions it took in Seattle, Rose's proposal: (1) fails to apply the Federal Circuit's controlling precedent in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984); (2) wrongly limits Avocent's access to counsel of its choice by adopting a *per se* bar excluding anyone with access to Attorneys Eyes Only ("AEO") material from prosecuting Avocent's patent applications; and (3) fails to demonstrate good cause for entry of such a restrictive protective order.

### A. Rose's Cross-Motion Fails to Apply the *U.S. Steel* Test

The most telling aspect of Rose's cross-motion is the Rose's complete failure to meaningfully apply the Federal Circuit's controlling decision in *U.S. Steel*, the leading case governing exclusion of counsel under a protective order. The *U.S. Steel* decision requires the court to determine whether individual lawyers are engaged in "competitive decisionmaking" for their client. *See U.S. Steel*, 730 F.2d at 1468 n.3. "Competitive decisionmaking" includes decisions about pricing, product design, etc. – *i.e.*, decisions that are typically made by businesspeople – not lawyers. *See id*.

The *U.S. Steel* court made it clear that there is no *per se* exclusion of counsel from accessing proprietary information. *Id*. at 1468 ("[T]he factual circumstances surrounding each

individual counsel's activities, association, and relationship with a party" must be considered.). The *U.S. Steel* court also recognized that the risk of inadvertent or accidental disclosure of another party's confidential information must be weighed against any unnecessary hardship that would be born by the lawyer's client. *Id*. at 1468. The key factor in determining whether there is any basis for excluding counsel from another party's confidential information is whether the particular attorney at issue is involved in "competitive decisionmaking" for its client. *Id*. The *U.S. Steel* court defined competitive decisionmaking as involving "counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id*.

Few courts outside the Northern District of Illinois and the District of Delaware have excluded outside patent counsel because of their involvement in patent prosecution activities for their clients. The most-widely cited case, and that relied upon by Rose, is *Motorola, Inc. v. Interdigitial Tech. Corp*., 1994 U.S. Dist. LEXIS 20714 (D. Del. 1994). The *Motorola* case should not apply here because: (1) the *Motorola* analysis has been strongly questioned by other courts; (2) it is contrary to the controlling precedent of the Federal Circuit; and (3) the facts of *Motorola* are significantly different from the facts here.

First, the court in *Sibia Neruosciences, Inc. v. Cadus Pharm. Corp.*, 1997 U.S. Dist. LEXIS 24130 (S.D. Cal. 1997), strongly questioned the analysis applied by the *Motorola* court. The *Sibia* court noted that:

> The *Motorola* court began its analysis by redefining "competitive decisionmaking." Where previous courts had looked to "a counsel's activities, association, and relationship with a client that 'are such as to involve counsel's advice and participation in any or all of the client's decisions . . . made in light of similar or corresponding information about a competitor," the *Motorola* court expanded competitive decisionmaking to include all "activities which define the scope and emphasis of a client's research and development efforts." The court then analogized the activities of patent counsel to this definition, concluding that "the process of prosecuting patent applications also involves decisions of scope

> and emphasis." Next, the court relied on [an] "implication" in *Safe Flight* that "prosecution of patents could be grounds for denying access."

*Sibia*, 1997 U.S. Dist. LEXIS at *19 (internal citations omitted). The *Sibia* court's critique of *Motorola* is absolutely correct. *Motorola* redefined and expanded the actual holding of *U.S. Steel*. Then it analogized patent prosecution activities to its new definition of "competitive decisionmaking." This analysis was error.

After initially acknowledging the case-by-case analysis mandated by *U.S. Steel*, the *Motorola* court effectively created a *per se* bar against lawyers who prosecute patent for their client. *Motorola*, 1994 U.S. Dist. LEXIS at *14-15. The *Motorola* court posited that attorneys who saw Motorola's confidential information could not keep from disclosing that information in patents that they later prosecuted for Interdigital. *Id*. (characterizing it as a "sisyphean task" to avoid disclosing Motorola's confidential information). But this is exactly contrary to the mandate of *U.S. Steel*. In that case, the Federal Circuit emphasized that "*the factual circumstances* surrounding each individual counsel's activities, associates, and relationship with a party . . . must govern any concern for inadvertent or accidental disclosure." *U.S. Steel*, 730 F.2d at 1468 (emphasis added). *U.S. Steel* directs us to analyze the "factual circumstances," while *Motorola* ignored the factual circumstances and effectively applied a *per se* bar to outside patent counsel. *Motorola* is contrary to *U.S. Steel* and this court's precedent.

Moreover, the facts of *Motorola* are significantly different from the facts here. In *Motorola*, Interdigitial transferred its patent prosecution files <u>to</u> its *Motorola* litigation counsel <u>*after*</u> the *Motorola* litigation had begun. Here, the situation is the exact opposite. Avocent retained its long-standing patent counsel to bring the present action against Rose's products sold to the United States. Even the *Motorola* court acknowledged that its holding was based, at least in part, on the fact that the litigation counsel became the patent counsel after the litigation had started.

> It is important to note that DS&M [*i.e.*, Interdigital's litigation counsel] has not been prosecuting these particular ITC patent applications for a long period of time. <u>*This is not a situation where*</u>

> *a client decided that it would be efficient to retain trial counsel who had prosecuted the particular patent in the past.* In fact, DS&M did not become attorney of record for these particular patent applications until one week after the filing of the Motorola suit.

*Motorola*, 1994 U.S. Dist. LEXIS at *16 (emphasis added). Thus, the facts in *Motorola* are significantly different from the facts of the present case. *See* Section III.E, below.

Numerous courts have refused to exclude outside patent counsel from accessing confidential information. *See AFP Advanced Food Products*, 2006 U.S. Dist. LEXIS at *6-7 ("that threat [of inadvertently using confidential discovery information], standing alone, under *Shingara [v. Skiles*, 420 F.3d 301 (3d Cir. 2005)] and *U.S. Steel*, is not enough to justify a protective order barring AFP's attorneys from prosecuting similar patents for two years."); *Pergo, Inc. v. Faus Group, Inc*., 2005 U.S. Dist. LEXIS 40601, *19-20 (E.D. N.C. 2005) ("To grant defendants the relief they seek here, on the showing that they have made, would inevitably take the form of a *per se* rule that counsel may not serve as both patent prosecutors and litigation counsel for their clients. This court holds that such a result would run contrary to the principles set down by the Federal Circuit in *U.S. Steel*."); *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 774 n.13 (D. Md. 2003) ("The Court disagrees with the reasoning applied in *Interactive* [following *Motorola*] because, in the Court's view, it amounts to a per se prohibition on patent counsel. If 'shaping' patent applications amounts to competitive decision-making, the court has trouble imagining a patent prosecutor who would not meet that standard.").

Many courts have applied the *U.S. Steel* decision and refused to exclude even *in-house* counsel from being able to access confidential information disclosed pursuant to a protective order. *See Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134, 139 (W.D. Wash. 1994); *Fluke Corp. v. Fine Instruments Corp*., 1994 U.S. Dist. LEXIS 16286, *16 (W.D. Wash. 1994). In *Amgen* and *Fluke*, the courts refused to exclude even *in-house counsel* from accessing confidential information because there was no evidence that counsel was involved in competitive decision making. *Id*.

Here, Rose has provided no evidence that any of Avocent's trial counsel is involved in competitive decision making. Instead, Rose's entire argument is based on the flawed premise that all patent prosecution counsel necessarily are involved in competitive decision making. (*See* Rose's Cross-Motion, p. 8 ("Patent prosecution is competitive decision-making personified.")). But Rose's categorical exclusion of patent prosecution counsel from access to AEO materials is exactly the type of *per se* rule rejected by the Federal Circuit in *U.S. Steel*. *See Matsushita Elec. Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) ("Indeed, the court's conclusion here even seems to suggest that general counsel are automatically to be denied access to confidential information merely because they have regular 'contact' with those who are involved in competitive decisionmaking, a criterion which would disqualify almost *all* in-house counsel and thus effectively constitute the very per se rule we rejected in *U.S. Steel*.").

Rose alleges that there is "substantial proof" that Avocent's patent prosecution attorneys are involved in Avocent's competitive decisionmaking for nearly 10 years. (*See* Rose's Cross-Motion, p. 11). But the "evidence" cited by Rose, even in their second bite at the apple, falls far short of proving the point. Exhibit 2 to the Dowler Declaration is the docket sheet from the *Avocent v. Raritan* litigation that ended in 2005. The Davidson Berquist lawyers served as Avocent's trial counsel in that earlier action. That is not part of being an Avocent decision-maker: It is proof that Davidson Berquist has been Avocent's trial counsel for some time.

Dowler Exhibit 5 is Mr. Davidson's declaration filed in opposition to Rose's protective order motion in the Seattle action. Judge Pechman considered that declaration and specifically relied on it in *rejecting* Rose's prosecution bar arguments. Mr. Davidson's declaration is not "proof" that he is involved in competitive decisionmaking. Indeed, it was submitted and considered as proof that Mr. Davidson acts as a lawyer – not a businessperson – for Avocent.

The third piece of "evidence" is Dowler Exhibit 6 which is Avocent's '978 patent. The '978 patent lists Davidson Berquist as the firm that prosecuted the patent, but that is not evidence of "competitive decisionmaking," as asserted by Rose.

### B. *U.S. Steel* Mandates A Case-By-Case Analysis Of The Lawyer's Role

A lawyer's exclusion under a protective order must be examined on a case-by-case basis by looking at the particular circumstances surrounding each lawyer's activities.

> *Thus, the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party,* whether counsel be in-house or retained, *must govern any concern for inadvertent or accidental disclosur*e.

*U.S. Steel*, 730 F.2d at 1468 (emphasis added). Not once does Rose identify any "individual counsel's activities, association, [or] relationship" with Avocent that justifies excluding any lawyer from having access to AEO material.

This time around, Rose identifies Mr. Davidson as the lawyer who could potentially use Rose's AEO information in patent prosecution.[2] But Rose never points to any "factual circumstances" justifying its proposed exclusion order beyond stating the fact that Mr. Davidson prosecutes patents for Avocent directed to KVM switches, including a pending application related to the patents-in-suit and the reexamination proceedings. Mr. Davidson does not serve as a competitive decision maker. (*See* Declaration of J. Scott Davidson filed herewith). Under Rose's rationale, any lawyer that prosecutes patents would be subject to a *per se* bar excluding them from AEO material. As the *U.S. Steel* court instructed:

> Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined, as above indicated, by the facts on a counsel-by-counsel basis, and *cannot be determined solely by giving controlling weight to the classification of counsel* as in-house rather than retained.

---

[2] In the Seattle action, Mr. Casey, another of the Davidson Berquist partners, was the focus of the defendants' motion.

*Id.* (emphasis added). Just as it was improper for the lower court in *U.S. Steel* to exclude in-house counsel solely based on their status as in-house counsel, it is equally improper for Rose to urge adoption of a protective order excluding lawyers based solely on their status as patent prosecution counsel. The role each lawyer plays (or not) in the competitive decision making process must be considered before excluding that lawyer from AEO material.

**C. Rose Has Not Shown Good Cause for Its Version of the Protective Order**

As the party seeking to exclude patent prosecution counsel under the protective order, Rose bears the burden of showing good cause for such an order. *See AFP Advance Food Products*, 2006 U.S. Dist. LEXIS at *2 ("The party seeking the protective order must show that disclosure of the information sought to be protected would result in a 'clearly defined, specific and serious injury.'") (citations omitted). Here, Rose has not identified any injury that would result if patent prosecution counsel were not excluded. Instead, Rose has done nothing other than raise the unsubstantiated speculation that "Rose's business would be seriously harmed" without the exclusion of patent prosecution counsel. (*See* Rose's Cross-Motion, p. 13).

Rose submitted a declaration from one of its two owners, Peter Macourek, to try to bolster its motion. But Mr. Macourek's declaration contains no specific evidence linking the activities of any of Avocent's counsel to Avocent's competitive decisionmaking. Thus, his declaration is largely irrelevant to the issue raised by Rose's motion.

Moreover, while Mr. Macourek claims that Rose's circuit schematics are highly confidential and/or trade secrets, those schematics can be reproduced by studying one of Rose's commercially available products. In the Raritan litigation, for example, Avocent did not have access to any of Rose's circuit schematics. So Avocent's counsel had engineers acquire and reproduce block diagrams of Rose's circuit schematics to prove that Rose's products were not non-infringing alternatives to Avocent's claimed KVM switches. Exhibits 6 and 7 are the

schematics for Rose's UltraMatrix and UltraView Pro KVM switches that were generated during the Raritan litigation without the benefit of any confidential information from Rose. Thus, it is simply untrue for Rose and Mr. Macourek to claim that its schematics are trade secrets that could improperly fall into Avocent's hands and be used to obtain a competitive advantage. If Avocent wanted to reconstruct every one of Rose's products, it has the technical wherewithal to do so. Accordingly, Rose has not made the specific showing of good cause needed to justify a blanket exclusion of patent prosecution counsel.

Indeed, the technology at issue in this case was developed in the mid 1990's by Avocent's predecessor company, Apex PC Solutions Inc., and Rose has been selling the products accused of infringement for more than 5 years. The Rose's suggestion that Avocent can use discovery as a way to misappropriate *Rose's* technology is specious. It is Rose who appropriated Avocent's technology, not the other way around. Even if Avocent wanted to learn what Rose's technology was, it could simply buy that product on the market and reverse engineer it. The potential "serious harm" Rose complains about is pure fiction.

**D. Rose's Analysis Is Fundamentally Flawed**

Rose asserts that a lawyer engaged in patent prosecution can take Rose's confidential information and convert that information into Avocent's intellectual property. The Patent Act, however, prohibits this from happening.

There is no legitimate concern that Avocent will learn something from Rose in discovery that could possibly be "transferred" into Avocent's continuation application. Any claim that is included in Avocent's continuation application must be fully disclosed as part of the invention in the application originally filed on August 25, 1995. If the claimed subject matter was not disclosed in the August 1995 application, then it cannot be patented in the continuation application, period. *See* 35 U.S.C. § 120. Moreover, a patent application can only be filed in the

names of the true inventors. *See* 35 U.S.C. § 115 ("The applicant shall make oath that he believes himself to be the original and first inventor . . . .").

Even if the continuation claims are crafted to read on Rose's products, the claims must be fully disclosed in *the original 1995 application*. Thus, such claimed subject matter, if it exists, is part of *Avocent's* invention, not anything developed by Rose. Rose's concern that discovery will cause Avocent to modify its claims is misplaced. Avocent can freely obtain Rose's products on the open market, and craft claims to cover those products as it sees fit. *See Kingsdown Medical Consultants, Ltd. v. Hollister Inc*., 863 F.2d 867, 874 (Fed. Cir. 1988) ("[N]or is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant . . . ."). Even then, the claims are limited by the scope of the original application. If Avocent's inventors did not disclose it in 1995, it can't be claimed in the continuation application. That's the law, and Rose knows that.

Section 120 of the Patent Act governs the ability of a patent applicant to claim the benefit of an earlier filing date in a continuation application. *See* 35 U.S.C. § 120. Section 120 precludes Avocent, and every other patent applicant, from amending claims beyond that which was "disclosed in the manner provided by the first paragraph of section 112 of this title." Section 112, first paragraph, requires a patent application to contain a *written description* of the invention, and to disclose the invention so as to *enable* a person skilled in the art how to *make and use* the invention. 35 U.S.C. § 112, ¶ 1. Thus, every claim included in Avocent's continuation application or in the reexamination proceedings must be supported by the description found in the original application filed on August 25, 1995. Rose's fear that

Avocent's patent prosecution counsel will "transfer" one of their inventions into Avocent's patent application is irrational – the Patent Act precludes that result.

**E. Exclusion of Avocent's Patent Prosecution Counsel Would Work a Substantial Hardship on Avocent**

Entry of Rose's proposed protective order will work a substantial hardship on Avocent. Mr. Davidson is one of Avocent's long-standing patent prosecution counsel and trial counsel in this action. The scope of Rose's proposed order would cover all patent applications that "involve" *KVM switch technology – i.e.*, Avocent's technology. Mr. Davidson is not an Avocent employee and is not on Avocent's board. (Davidson Decl., ¶ 2). Rather, Mr. Davidson has been Avocent's outside patent counsel for almost 10 years. (Davidson Decl., ¶ 3). In that capacity, Mr. Davidson has handled, and continues to handle, dozens of applications directed to the field of KVM switches for Avocent and its sister companies. *Id.* In addition, Mr. Davidson has represented Avocent, its predecessor, or a corporate affiliate in three patent litigations involving KVM switches since 1998. *Id.*

Given this experience, and its corresponding value to Avocent, it would be manifestly unfair to limit Avocent's right to have Mr. Davidson represent it – either as prosecution or litigation counsel. Rose's proposal should be rejected because it will work an undue hardship on Avocent. Indeed, this would be the result if this Court were to reject the approach adopted by Judge Pechman and adopt the rationale employed by the court in *Motorola*.

**F. The *Motorola* Decision Cited by Rose Supports Avocent's Position**

Ignoring for the moment the fact that the *Motorola* decision violates controlling Federal Circuit precedent by creating a *per se* rule, the correct application of *Motorola* supports Avocent. In considering the potential hardship to the client, the *Motorola* court stated:

> It is important to note that DS&M has not been prosecuting these particular patent applications for a long period of time. This is not a situation where a client

> decided that it would be efficient to retain trial counsel who had prosecuted the particular patent in the past. In fact, DS&M did not become attorney of record for these particular patent applications until one week after the filing of Motorola's suit.

*Motorola*, at *16. Here, the proposed restriction would deny Avocent access to at least one of its long-standing counsel who has prosecuted dozens of patent applications directed to KVM switches, and has represented Avocent in three patent litigations directed to KVM switch products. The hardship of this loss is irrefutable.

### G. Rose's Authorities Improperly Create a *Per Se* Bar, Employ a Flawed Analysis, and Yield an Absurd Result

It appears from the holding itself that the *Motorola* court was misled into believing that patent counsel could draft claims directed to the confidential information disclosed in litigation. *See, e.g., id*. at *11 (noting that "[t]hey can make the claims read on new products and new directions.") That concern is misplaced. As explained above, the Patent Act is not so fickle. The *Motorola* court simply misunderstood key aspects of the Patent Act.

Moreover, carried to its logical conclusion, Rose's argument for excluding patent prosecution counsel would lead to an absurd result. Essentially, Rose argues that Avocent's patent prosecution counsel should not see Rose's AEO information because that information may affect the legal advice and services that the patent prosecution counsel provides to Avocent. It is not clear, however, why the legal services provided by one category of lawyers (*i.e.*, patent prosecution counsel) should be singled out.

If Rose becomes a party to this action, Rose's litigation counsel in this case will review and carefully study Avocent's AEO information. Rose's litigation counsel will provide legal advice and services to their clients *based on Avocent's AEO information*. That legal advice will be used by the Rose in a whole host of ways affecting their business (*e.g.*, potential product design-arounds, ways to market their products to minimize damages, etc.). Yet, Rose's proposal

singles out patent prosecution counsel as the only category of lawyers who cannot see AEO information and still provide legal advice to their clients.

There is no principled difference between the advice and service provided by Avocent's patent prosecution counsel and the advice and services provided by Rose's litigation counsel. If the advice and services provided by patent prosecution counsel is labeled "competitive decisionmaking" under *U.S. Steel*, then the advice and services provided by Rose's litigation counsel also must be "competitive decisionmaking." Rose's rationale logically leads to the absurd result that no party's litigation counsel can review AEO information ***and*** provide legal counsel to their client.

Rose's prohibition against patent prosecution counsel should be rejected for what it is – a thinly-veiled attempt to effectively exclude the lawyers at Davidson Berquist. Essentially, Rose is trying to create a dilemma for Avocent: either continue using Davidson Berquist for patent prosecution matters, or use Davidson Berquist for litigation matters, but not both. Rose has identified no good reason for denying Avocent its choice of counsel.

Finally, Rose directs this Court to consider the holdings in several additional cases, including *Mikohn Gaming Corp. v. Acres Gaming, Inc*., 1998 U.S. Dist. LEXIS 22251 (D. Nev. 1998), *In Re Papst Licensing, GmbH*, 2000 U.S. Dist. LEXIS 6374 (E.D. La. 2000), *Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC*, 1999 U.S. Dist. LEXIS 12437 (N.D. Ill. 1999), *Cummins-Allison Corp. v. Glory Ltd*., 2003 U.S. Dist. LEXIS 23653 (N.D. Ill. 2003), and *Infosint S.A., v. Lundbeck A.S.*, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. 2007). But each of these cases simply adopts the holding of *Motorola*, including the flaws discussed above. To the extent they differ from the *Motorola* analysis, they present issues not found in this case.

For example, in *Papst,* the court entered its protective order in light of the fact that the case was a multidistrict proceeding and the parties had been operating under the same order in another case for some time. *Papst*, 2000 U.S. Dist. LEXIS at *12-13. In *Infosint*, the lawyers at issue were Italian patent counsel, and thus the prejudice to the party in litigation was limited. *Infosint*, at 16 (not clear to the court why access by Italian counsel was "critical to the prosecution of its case.") In *Cummins-Allison*, the plaintiff patent was represented by at least nine lawyers at three different law firms, and the court created a third, limited category of confidential information for patent prosecution materials. *Cummins-Allison* at 37. Here, it is not clear that Rose will be required to produce any information relating to future product designs and even if it did, Avocent cannot claim someone else's invention as their own. Moreover, only one firm represents Avocent in this case and Mr. Davidson, a partner with that firm, has served at both patent prosecution counsel and litigation counsel to Avocent during the past ten years. It would be manifestly unjust to require Avocent to chose between relying upon Mr. Davidson in this litigation or in the protection of its inventions.

## IV. LYNCH'S DECLARATION IS COMPLETELY UNHELPFUL

This time around, Rose also filed a declaration from a patent attorney, Michael Lynch, to shore up its "prosecution bar" arguments. But as with Mr. Macourek's declaration, Mr. Lynch's declaration is irrelevant to the *U.S. Steel* inquiry because it contains no evidence that *Avocent's litigation counsel* is involved in competitive decisionmaking. What Mr. Lynch believes that he delivers to his clients is not even relevant here.

The thrust of Mr. Lynch's declaration is simply that he believes *U.S. Steel* is wrong. According to Mr. Lynch, attorneys who engage in patent prosecution are, by definition, competitive decision-makers. This is directly contrary to the *U.S. Steel* holding which requires

that "*the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party,* whether counsel be in-house or retained, *must govern any concern for inadvertent or accidental disclosur*e." *U.S. Steel*, 730 F.2d at 1468 (emphasis added). Mr. Lynch's opinion about what the law *should be* is not probative on how this Court is to apply the law as it currently exists.

## V. THE COURT SHOULD NOT PUT MUCH WEIGHT IN MACOUREK'S DECLARATION

As discussed above, Mr. Macourek's declaration is irrelevant to the *U.S. Steel* analysis. His declaration only contains vague allegation of harm that will be inflicted on Rose if the Court denies Rose's cross-motion. This is completely unfounded. Indeed, Avocent could regenerate those schematics at any time if it wished to do so.

Mr. Macourek's declaration does underscore an inconsistency in Rose's arguments to this Court. In his declaration, Mr. Macourek complains about the supposed "magnitude of the disruption and litigation expense" Avocent has caused Rose to incur. (Macourek Decl., ¶ 7). Yet, Rose is actively seeking to intervene in this case. The Court can help Rose save money by denying its motion to intervene in this case. After all, Rose waived whatever rights it may have had to defend against the infringement charges in this case when it asserted 28 U.S.C. § 1498 in the Seattle action. Rose has no one to blame but itself for the multiple litigations. Rose *chose* to assert § 1498 as a defense. All of the infringement allegations could have been addressed in the Seattle action.

## VI. CONCLUSION

The Court should strike Rose's opposition and cross-motion for a protective order because Rose is not a party to this action, and does not otherwise have standing to file an opposition/cross-motion. Moreover, this precise issue was fully litigated and decided by Judge

Pechman in the Seattle action. Rose lost the issue in that court, and now, seeks to re-litigate that issue here. Issue preclusion fully applies to Rose's cross-motion for a "prosecution bar" and that motion should be denied. Rose's motion for a "prosecution bar" should also be denied on the merits. Under the controlling *U.S. Steel* decision, Rose was required to supply evidence that Avocent's counsel are involved in "competitive decisionmaking." Rose failed to come up with any such evidence in the Seattle action, and it fails to come up with any here.

Avocent also asks the Court to order Rose to show cause why Avocent should not be awarded its fees and costs in responding to Rose's opposition and cross-motion.

DATED this 1st day of July, 2008.

Respectfully submitted,

PLAINTIFF AVOCENT REDMOND CORP.,
by and through its Attorneys

s/James D. Berquist
James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace K. Obermann
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
4300 Wilson Blvd, Suite 700
Arlington, Virginia 22203
Tel. 703-894-6400
Fax. 703-894-6430

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the following counsel was served by hand-delivery on July 1, 2008:

Bert C. Reiser
Howrey, LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004
Ph.: 202-783-0800
Fax: 202-383-6610
reiserb@howrey.com
Attorney for Rose Electronics

The undersigned also hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

Jeffrey S. Bucholtz
Acting Assistant Attorney General
John Fargo
Director
Robert G. Hilton
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530

/s/ Donald L. Jackson________________
Donald L. Jackson