IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AVOCENT REDMOND CORP.

Plaintiff,

v.

THE UNITED STATES

Defendant,

and

ROSE ELECTRONICS,

Defendant-Intervenor.

No. 08-69C

Judge Lawrence S. Margolis

**ROSE ELECTRONICS' REPLY IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

I. SUMMARY ..... 1

II. ARGUMENT ..... 2

A. Avocent's Collateral Estoppel Argument Fails Because it Ignores Two of the Most Rudimentary Requirements of that Doctrine. ..... 2

B. Not Only Has Avocent Failed to Implement ANY Safeguards to Prevent Inadvertent Use of Rose's Confidential Information, It Recently Told the Seattle Court That IT ACTUALLY WANTS TO USE ROSE'S INFORMATION TO BENEFIT AVOCENT. ..... 4

C. Avocent Grossly Misreads the *U.S. Steel* Standard, Which the Undisputed Facts Demonstrate Rose Has Met. ..... 6

D. If Hardship is to be Considered, It Clearly Favors Barring Avocent's Patent Prosecution Attorneys from Seeing Rose's Confidential Information. ..... 10

E. Avocent's Suggestion that Rose's Product Designs are not Confidential is Absurd ..... 12

F. Avocent's Argument under 35 U.S.C. § 120 Ignores Reality ..... 13

G. Avocent's Claim that Rose's Proposed Protective Order will Preclude it from Advising its Client is Unfounded ..... 14

H. Rose Has Standing to Seek Protection Against Its Competitor's Unilateral Use of Rose's Confidential Discovery Documents to Its Competitor's Benefit and Rose's Detriment ..... 15

III. CONCLUSION ..... 16

**TABLE OF AUTHORITIES**

Cases

Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC,
236 F.R.D. 583 (S.D. Fla. 2006) .......... 4, 9

*Autotech Technologies L.P. v. Automationdirect.com, Inc.*,
237 F.R.D. 405 (N.D. Ill. 2006) .......... 5, 12

*Avondale Shipyards, Inc. v. Insured Lloyd's*,
786 F.2d 1265 (5th Cir. 1986) .......... 2

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992) .......... 4

*Chan v. Intuit, Inc.*,
218 F.R.D. 659 (N.D. Cal. 2003) .......... 4

*Commissariat à L'Energie Atomique v. Dell Computer Corp.*,
No. Civ.A. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004) .......... 4

*Cummins-Allison Corp. v. Glory Ltd.,*
2003 U.S. Dist. LEXIS 23653, *39 (N.D. Ill. 2003) .......... 4

*FTC v. Exxon Corp.*,
636 F.2d 1336 (D.C. Cir. 1980) .......... 5

*Fuji Photo Film Co. v. Jazz Photo Film Corp.*,
394 F.3d 1368 (Fed. Cir. 2005) .......... 8

*Genentech, Inc. v. ITC,*
122 F.3d 1409 (Fed. Cir. 1997) .......... 2

*In Re Papst Licensing,*
2000 U.S. Dist. LEXIS 6374, *12 (E.D. La. 2000) .......... 4

*Infosint S.A. v. H. Lundbeck A.S.*,
No. 06 CIV 2869 LAK RLE, 2007 WL 1467784, at *4 (S.D.N.Y. May 16, 2007) .......... 4, 9

*Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC,*
1999 U.S. Dist. LEXIS 12437, *11 (N.D. Ill. 1999) .......... 5

*Luben Indus., Inc. v. United States,*
707 F.2d 1037 (9th Cir. 1983) .......... 2

*MercExchange, LLC v. eBay, Inc.,*
467 F. Supp. 2d 608 & n.23 (E.D. Va. 2006) .......... 4

*Mikohn Gaming Corp. v. Acres Gaming Inc.,*
50 USPQ2d 1783 (D. Nev. Apr. 15, 1998) .......... 5

*Motorola, Inc. v. Interdigital Tech. Corp.*,
1994 U.S. Dist. LEXIS 20714, *19 (D. Del. 1994) .......... 5

*Public Citizen v. Liggett Group, Inc.*,
858 F.2d 775 (1st Cir. 1988) .......... 16

*RF Del., Inc. v. Pacific Keystone Tech., Inc.*,
326 F.3d 1255 (Fed. Cir. 2003) .......... 3

*U.S. Steel Corp. v. United States*,
730 F.2d 1465 (Fed. Cir. 1984) .......... passim

*Yachts Amer., Inc. v. United States*,
673 F.2d 356 (Ct. Cl. 1982) .......... 2

Statutes

35 U.S.C. § 120 .......... 13

Other Authorities

Mark A. Lemley & Kimberly A. Moore, Ending Abuse of Patent Continuations, 84 B.U. L. Rev. 63, 76 (2004) .......... 14

The Controversy Surrounding Continuing Applications and Requests for Continued Examination, 7 J. Marshall Rev. Intell. Prop. L. 545, 561-62 (2008) .......... 14

Rules

Fed. R. Civ. P. 26(c) .......... 12

## I. SUMMARY

The issue before the Court is straightforward: should Avocent be allowed to use Rose's proprietary information when drafting patent applications and re-writing the patent claims currently asserted in this case, all in an attempt to exclude Rose from the KVM switch market. The overwhelming majority of federal courts that have considered this issue, not surprisingly, say "no." Indeed, it is unconscionable that a chief competitor like Avocent would seek to position itself to use Rose's confidences in acquiring patent rights that will then be used against Rose.

This is not a hypothetical concern. Avocent has used Patent Office procedure for 13 years by filing no less than 6 continuation applications from the same original patent application that is the subject of this suit, and this is the third lawsuit Avocent has filed against Rose on that same patent family. Perhaps even more disturbing is the fact that only three weeks ago Avocent undeniably sought to use Rose's confidential financial information to bolster its position in on-going, public Patent Office reexamination proceedings, where Avocent's asserted patents are in jeopardy of being declared invalid.

Avocent's claim that there has been "no change" in circumstances since the Seattle court considered this protective order issue is flat out false. Avocent's patents were not under reexamination at that time and, therefore, there was no opportunity for Avocent to re-write its presently asserted patent claims to better target Rose. Nor at that time had Avocent sought (as it has now) to use Rose's confidential information in that reexamination process.

Rose's cross-motion explains how it would be impossible for Avocent's attorneys to avoid using Rose's confidential technical information while drafting patent claims, and Avocent's response fails to provide a single explanation for how it would avoid this inescapable quandary recognized by courts throughout the country. Instead, Avocent's primary defense is that Rose has not shown that Avocent's patent prosecution attorneys engage in "competitive decision making" when drafting patent claims that Avocent uses to exclude its competitors—like Rose—from the market. The illogic of that position speaks for itself, and the undisputed evidence of record on this motion, as well as confirmatory case law Avocent did not and could not

distinguish, establishes without any doubt that patent claim drafting constitutes competitive decision making.

Accordingly, Rose respectfully requests that the Court institute a "patent prosecution" provision in the protective order for this case. The requested provision has been adopted by numerous other courts in precisely these circumstances, it is party neutral (i.e., it applies to Rose just as it applies to Avocent), and it will maintain the competitive status quo between the parties by ensuring that neither misuses the other's confidential information, either intentionally or unintentionally.

## II. ARGUMENT

### A. Avocent's Collateral Estoppel Argument Fails Because it Ignores Two of the Most Rudimentary Requirements of that Doctrine.

Avocent begins its opposition brief not substantively but with an insupportable procedural argument concerning collateral estoppel. Yet its collateral estoppel argument is completely undermined by two undisputed facts: (1) the order that forms the basis for Avocent's argument is an unappealable, interlocutory ruling concerning entry of a protective order; and (2) no judgment has been entered in the Seattle litigation—the case is stayed but still pending.

Entry of a protective order in one case cannot collaterally estop a protective order dispute in another, because an interlocutory ruling that has not been subject to appeal cannot be given preclusive effect. *Genentech, Inc. v. ITC*, 122 F.3d 1409, 1416 (Fed. Cir. 1997); *accord Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269-70 (5th Cir. 1986) (interlocutory ruling does not give rise to collateral estoppel); *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) (same); *Yachts Amer., Inc. v. United States*, 673 F.2d 356, 363 (Ct. Cl. 1982) ("Interlocutory conclusions, of course, do not constitute final dispositions and neither res judicata nor collateral estoppel arise from them. The cases so holding are legion.") (citations omitted). Avocent nowhere suggests that the denial of the protective order in the Seattle case was appealable, because it was not. By itself, this basic flaw undoes Avocent's entire collateral estoppel argument.



DM_US:21338153_1

Avocent's collateral estoppel argument suffers from a second even more fundamental flaw: *there has been no judgment in the Seattle case.* The Seattle case is still pending. It has only been stayed until the Patent Office finishes its reexamination of all three Avocent patents asserted in that case (each of which is also asserted in this case). The most recent court order bearing on the status of the Seattle case is the October 31, 2007, Minute Order granting Rose's motion to stay the case. (Exh. 2.) It does not dismiss the case or render judgment. In fact, it calls for the parties to file periodic status reports throughout the reexamination process. No judgment for or against either party has been entered. The Federal Circuit has been very clear that where, as here, there is no final judgment, collateral estoppel "does not apply". *RF Del., Inc. v. Pacific Keystone Tech., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003) ("We conclude that collateral estoppel does not apply in the present case because no judgment, much less final judgment, was ever entered in the [prior] district court case.") Accordingly, Avocent's collateral estoppel fails for this reason as well.

Avocent attempts to skirt the final judgment requirement by arguing that the Seattle protective order ruling is final enough because Rose abided by it. (Avocent Amended Br. at 4.) This is pure silliness. All court orders must be followed. But that does not make all court orders final judgments. Under Avocent's reasoning, any interlocutory order would gain preclusive effect unless the party subject to the order unlawfully refused to abide by it. This obviously is not the law, and Avocent cites no case law supporting that proposition.

In short, there is no legitimate basis for applying collateral estoppel to the protective order issue presented in this case.[1]

---

[1] Avocent's argument that there has been "no change" in circumstances since entry of the Seattle protective order is thus irrelevant. But it is also demonstrably wrong. The reexamination proceedings concerning Avocent's asserted patents had not yet been instituted when the Seattle order was entered, and Avocent had not yet sought to use Rose's confidential information during those proceedings. (*See* Casagrande Reply Decl. ¶ 3 and exh. 1 thereto) (hereinafter, all exhibits to this declaration will simply be referred to as "exh. __"). Avocent's argument that its pending continuation application somehow undoes the harm stemming from its opportunity to re-write its asserted patent claims during the reexamination proceedings is unavailing. First, the claims in its continuation application have not issued and they may never issue; thus, they present no opportunity for Avocent to re-write a patent claim currently being asserted against Rose. Second, (cont...)

**B. Not Only Has Avocent Failed to Implement ANY Safeguards to Prevent Inadvertent Use of Rose's Confidential Information, It Recently Told the Seattle Court That IT ACTUALLY WANTS TO USE ROSE'S INFORMATION TO BENEFIT AVOCENT.**

In the context of barring certain counsel from access to a competitor's confidential information, *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) "requires the . . . court to examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel . . . ." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (emphasis added). In its motion, Rose set forth in detail the work Avocent's prosecution attorneys must perform in the pending re-exams, and how it would be impossible for Avocent's lawyers to avoid using Rose's confidential information if they are allowed to write patent claims after seeing that information. Avocent's response on this issue was deafening silence: not only does Avocent say nothing about the impossible dilemma in which it would place its lawyers, but Avocent fails to offer any alternative safeguard to Rose's proposed patent prosecution provision. Avocent's complete failure to address this quandary, or any alternative safeguard, *by itself* warrants entry of the only safeguard before the Court, the patent prosecution safeguard proposed by Rose.

Rose's proposed safeguard has been endorsed by numerous other courts[2] and it is the

---

the pendency of Avocent's continuation application does not erase the changed circumstance arising from its recent attempt to use Rose's confidential information in the reexamination process.

2 See, e.g., Presidio Components, Inc. v. American Technical Ceramics Corp., ___ F. Supp. 2d ___, 2008 WL 608407 (S.D. Cal. Mar. 4, 2008) (Dowler 6/23 Decl. exh. 11); Infosint S.A. v. H. Lundbeck A.S., No. 06 CIV 2869 LAK RLE, 2007 WL 1467784, at *4 (S.D.N.Y. May 16, 2007) (Dowler 6/23 Decl. exh. 12); Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC, 236 F.R.D. 583, 587 (S.D. Fla. 2006); MercExchange, LLC v. eBay, Inc., 467 F. Supp. 2d 608, 624-25 & n.23 (E.D. Va. 2006); Commissariat à L'Energie Atomique v. Dell Computer Corp., No. Civ.A. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004) (Dowler 6/23 Decl. exh. 13); Cummins-Allison Corp. v. Glory Ltd., 2003 U.S. Dist. LEXIS 23653, *39 (N.D. Ill. 2003) (Dowler 6/23 Decl. exh.14); Chan v. Intuit, Inc., 218 F.R.D. 659, 662 (N.D. Cal. 2003); In Re Papst Licensing, 2000 U.S. Dist. LEXIS 6374, *12 (E.D. La. 2000) (Dowler 6/23 Decl. exh.15); Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437, *11 (N.D. Ill. 1999) (Dowler 6/23 Decl. exh. 16); Mikohn Gaming Corp. v. Acres Gaming Inc., 50 USPQ2d 1783 (D. Nev. Apr. 15, 1998) (Dowler 6/23 Decl. exh.17); Motorola, Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. LEXIS 20714, *19 (D. Del. 1994) (Dowler 6/23 Decl. exh.18).

most logical way to address the reality that, once Avocent's lawyers see Rose's confidential information, they cannot be expected to "forget" that information when writing patent claims that Avocent intends to use for excluding Rose from the KVM switch market. *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so"); *see also Autotech Technologies L.P. v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 410 (N.D. Ill. 2006) (such "mental gymnastics" are "manifestly impossible to perform" and counsel would be "no more able to do that than the boy in Mark Twain's story who was told to stand in a corner and not think of a white elephant"). Avocent, on the other hand, has no substantive comment on these cases or the undisputed inability of its lawyers to compartmentalize their minds to avoid misusing Rose's confidential information.

Astoundingly, far from implementing safeguards *against use* of Rose's confidential information outside this suit, Avocent has recently taken affirmative steps *to exploit* its knowledge of Rose's confidences. Three weeks ago, Avocent asked the Seattle district court to loosen the protective order to expressly permit it to use certain Rose confidential financial information during the Patent Office reexamination proceedings involving its currently asserted patents! (*See* Casagrande Reply Decl. ¶ 3 & exh. 1.) This gambit lays bare both the legitimacy of Rose's concern and Avocent's mindset: it wants to use Rose's confidential information any way it can to benefit its own competitive position. When Avocent's lawyers' predisposition in this regard is coupled with the impossible "mental gymnastics" of their trying to "forget" Rose's information while writing patent claims, the risk that Avocent's lawyers will inadvertently misuse Rose's confidential information during patent prosecution rises to a certainty. Avocent's expressed desire to affirmatively use Rose's confidences also dispels any notion that Rose's requested patent prosecution provision is somehow conceived only to disrupt Avocent's choice of counsel. In sum, Avocent's own actions demonstrate that a patent prosecution provision in the protective order for this case is both necessary and warranted.

### C. Avocent Grossly Misreads the *U.S. Steel* Standard, Which the Undisputed Facts Demonstrate Rose Has Met.

To give the impression that the Federal Circuit's *U.S. Steel* decision requires rejection of a patent prosecution provision in this case, Avocent must, and does, grossly misread the decision. The Federal Circuit was exceedingly careful in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1983) in setting forth its holding. Most important, it repeatedly emphasized that its holding was limited to the facts presented there, which concerned whether status as "in-house" counsel rather than retained outside counsel could, by itself, support a bar to access:

> . . . We hold only that status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial [of access]. . .
>
> The certified question (whether access may be granted to retained and denied to in-house counsel solely on a presumption that inadvertent disclosure by the latter is more likely) is answered in the negative, *i.e.*, a denial of access sought by in-house counsel on the sole ground of their status as in-house counsel is error. In further proceedings, access should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained.

*Id.* at 1469 (emphasis added).

Rose's motion directly addressed the *U.S. Steel* court's directive requiring an assessment "of each individual counsel's actual activity and relationship with the party represented." *Id.* Specifically, Rose presented substantial undisputed evidence concerning the activities of Avocent's patent prosecution counsel and their relationship with Avocent:

- Avocent's patent prosecution and litigation counsel overlap, and they all practice in the same small 7-person law office (*see* 6/ 23 Dowler Decl. exhs. 3-6) (dkt. 24-2);

- They admittedly have a more than 10-year relationship with Avocent and its predecessor, providing patent prosecution counsel on "dozens" of patent prosecution matters concerning KVM switches, the exact same technology involved in this case (*see id.* exh. 5);

- They are currently involved in ongoing Patent Office proceedings defending the validity of three of the patents-in-suit in this case, in which Avocent will have the

opportunity to amend the claims of those patents asserted against Rose's products (*see id.* exhs. 7-9);

- They are currently involved in prosecution proceedings for yet another KVM switch patent in the same family as the patents-in-suit (*see id.* exh. 10);[3]
- They tout that they work closely with their clients to achieve their client's competitive goals (*see id.* exh. 4), which has been demonstrated to be enforcement actions designed to drive out competition in the KVM switch market.

Avocent tries to avoid these undisputed facts by claiming that its attorneys' status as "patent prosecution counsel" (like the "in house counsel" label in *U.S. Steel*) is not enough to conclude that they should be excluded from having access to Rose's confidential information. (Avocent Amended Br. at 13.) Avocent's argument entirely misses the point. An attorney's "in house" title admittedly tells you nothing about that attorney's duties and responsibilities, and that was the problem the *U.S. Steel* court had with excluding counsel's access to information based on that title alone. However, unlike the "in house counsel" label, the phrase "patent prosecution counsel" explains precisely that counsel's activities and relationship with Avocent—drafting patent applications, writing patent claims, and otherwise assisting Avocent in procuring patents that it can use to exclude competitors like Rose—activities that Avocent cannot and *does not deny* are performed by its counsel in this case. Thus, excluding counsel characterized as "patent prosecution counsel" from access to a competitor's confidential information would be entirely consistent with the *U.S. Steel* decision, because it focuses on their duties, not their mere title.

Nevertheless, as shown in Rose's opening brief and above, Rose has not sought to bar Avocent's counsel from access to Rose's confidential information based on their status as "patent prosecution counsel." Rose has gone much further, making a detailed factual showing explaining Avocent's lawyers' activities and relationship to Avocent. Avocent argues that no one of these multiple facts—none of which are disputed—*by itself* proves the "competitive decision-making"

---

[3] It is telling—and only highlights the competitive importance with which Avocent imbues these patents—that Avocent has thus far asserted, at various times, that Rose's products infringe 5 of the 6 patents that have issued from that initial Beasley application. Avocent nowhere disclaims that it will sue Rose on the latest application if it ever issues as a patent.

responsibility necessary to support excluding counsel from access to a competitor's confidential information. (*Id.* at 11-12.) Yet even a casual examination of the undisputed facts above shows that they clearly concern what Avocent and its patent prosecution counsel together *have done and continue to do* (*i.e.*, their "relationship" and "activities" as required under *U.S. Steel*). And contrary to Avocent's implication, *U.S. Steel* does not require a direct, self-contained, gift-wrapped admission that counsel engages in "competitive decision-making." Like any other ultimate fact to be proved, it can be proved by aggregating proof of subsidiary facts. *See, e.g.*, *Fuji Photo Film Co. v. Jazz Photo Film Corp.*, 394 F.3d 1368, 1374 (Fed. Cir. 2005) (stating that "[i]t is hornbook law that direct evidence of a fact is not necessary" and that a fact may be indirectly proved by other facts). Again, what is important here is that Avocent disputes *none* of the facts appearing above, and together they demonstrate the need for Rose's requested patent prosecution provision.

Another legal misdirection that Avocent employs is to suggest that a prosecution provision is not necessary because there is no proof that Avocent has violated the Seattle protective order. (Avocent Amended Br. at 6.) It goes without saying that Rule 26(c) does not require, as a prerequisite for a protective order, proof of prior wrongdoing, and Avocent cites no legal authority for such a standard.

Avocent also tries to shoot down the Lynch Declaration, which discusses in detail the duties and responsibilities involved in performing patent prosecution services and the fact that such activities constitute competitive decision making. Avocent merely laments that the detail in the Lynch declaration is "unhelpful" and "not even relevant," but neither in its brief nor in the two declarations Avocent submitted does Avocent (a) deny anything that Mr. Lynch avers, or, more probatively, (b) say anything that would even remotely suggest that Avocent's patent prosecution activities do not conform to the activities and goals discussed by Mr. Lynch. Indeed, the declaration of Scott Davidson, one of Avocent's dual litigation and patent prosecution attorneys involved in this case, amounts to a classic "non-denial denial." While admitting a long-term, close patent prosecution relationship with Avocent concerning "dozens" of KVM switch patents (the

very technology at issue in this case and the core part of both Avocent's and Rose's businesses), the declaration denies *only* that Mr. Davidson is employed by Avocent or sits on its Board of Directors. That's it. If the facts gathered by Rose were inaccurate, it was completely within Avocent's sole power to deny them, and it has not. Indeed, *not a single one* of Avocent's lawyers ever denies taking part in any of the individual acts that constitute competitive decision making in this case, such as drafting patent applications, patent claims, and otherwise procuring patents on Avocent's behalf.[4] Avocent's complete silence is telling.

Finally, Avocent spends multiple pages criticizing several district court decisions that it says created "*per se*" rules excluding patent prosecution counsel from access to a competitor's confidential documents. While Rose understands why Avocent feels compelled to try to come up with some criticism—any criticism—of the landslide of cases against its position, all that ink is beside the point. As demonstrated above, Rose has laid out, in full accord with the *U.S Steel* court's standard, undisputed facts concerning Avocent's relationship with its prosecution counsel and counsel's prosecution activities. Rose advocates no *per se* rule. Rose advocates prohibiting Avocent's prosecution counsel from seeing Rose's confidential documents because of:

- The length and closeness of their relationship with Avocent;
- Patent prosecution counsel's admitted focus on Avocent's competitive goals;
- The fact that Avocent and Rose are direct competitors;

[4] *See, e.g.*, *Presidio Components*, __ F. Supp. 2d __, 2008 WL 608407 at *7 ("Humphrey is involved in competitive decision-making for Presidio. . . . By prosecuting patents for Presidio, Humphrey would have had to make decisions involving scope and emphasis, such as drafting claims to read on new products and new directions 'where [a party] projects sales to be more critical.'") (Dowler 6/23 Decl. exh. 11); *Infosint S.A.*, 2007 WL 1467784 at *4 ("Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] projects] sales to be most critical.'") (citations omitted) (Dowler 6/23 Decl. exh. 12); *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 587 (S.D. Fla. 2006) ("Mr. Endres has prosecuted patents on behalf of Andrx for twelve years. The extent of his relationship with Andrx suggests that the actively participates in competitive decision making.")

- The fact that Avocent has accused Rose's products of infringing this patent family in three lawsuits, and in two of those cases sought an injunction to exclude Rose from the KVM switch market in which they compete;
- The 100% overlap between the subject matter that Avocent's patent prosecution counsel works on and the subject matter of this suit;
- Prosecution counsel's inability to "forget" Rose's confidential information while prosecuting patents for Avocent;
- Prosecution counsel's drafting patent claims in applications relating to KVM switches that Avocent uses in an attempt to exclude competition in the KVM market;
- Patent prosecution counsel's ongoing work on three of the patents-in-suit in this case (in which they can amend the claims to better target Rose's products);
- Patent prosecution counsel's ongoing work on yet another KVM switch application from the same family of patents asserted in this case (in which they can amend the claims to better target Rose's products);
- Avocent's utter failure to offer any safeguard as an alternative; and
- Avocent's recently stated desire to publicly *disclose and use* Rose's confidential information to bolster its claims to a patent monopoly in the ongoing patent reexamination proceedings for the patents-in-suit.

Every single one of these facts goes to Avocent's patent prosecution attorneys' activities for and relationship with Avocent, as well as the risks and lack of safeguards—all of which are critical under *U.S. Steel*. And every single one of these facts is undisputed, thereby warranting entry of a patent prosecution provision in the protective order for this case.

### D. If Hardship is to be Considered, It Clearly Favors Barring Avocent's Patent Prosecution Attorneys from Seeing Rose's Confidential Information.

If hardship is to play any role in this analysis, then Rose requests that the Court consider who created the relevant hardships. Avocent admits that the most widely-cited case concerning provisions barring patent prosecution attorneys' access to an adversary's confidential documents is the *Motorola* case, which was decided in 1994, *i.e.*, *before Avocent filed even its first patent application on this technology*. And as the citations in the parties' briefs show, myriad courts

have entered patent prosecution bars since then. Nevertheless, Avocent—either blindly or with the knowledge that it would be running a calculated risk of having a patent prosecution bar entered against it in view of this already-existing body of law—chose to have the same small group of lawyers simultaneously represent it before the Patent Office and in patent litigation against competitors.

Importantly, and contrary to what Avocent would have this Court believe, Rose's requested protective order provision would not necessarily disqualify a law firm from performing both prosecution and litigation for a client. So long as an individual attorney performing patent prosecution has not had access to Rose's highly confidential KVM switch information, that individual is free to continue to provide KVM switch patent prosecution services. To the extent Avocent has allowed individuals at its law firm to do both, however, it has knowingly and willingly put itself at risk of being required to comply with any patent prosecution bar provision that is entered.

To the extent its own willful choices put it in a position where it must choose whether its outside attorneys represent Avocent either in prosecution or litigation on KVM technology, that should not be weighed against Rose. Rose did not choose for Avocent's law firm to do both kinds of work and therefore run this well known risk. Rose did not choose for Avocent to continue to prosecute patents based on the same application for 13 years running. Rose did not choose to be accused of patent infringement. And even if this means Avocent's patent law firm has to choose KVM switch prosecution activities or litigation with Rose, this is no different from conflicts and other practical obstacles that frequently require lawyers to choose between pieces of work offered them.

On the other hand, the unfairness and hardship to Rose is unmistakable. As explained in Rose's cross-motion, prosecution lawyers who are privy to a competitor's confidential discovery documents would be in the impossible position of being "told . . . not to think of a white elephant." *See Autotech Tech.*, 237 F.R.D. at 410. From Rose's perspective, indeed any competitor's perspective, it is unconscionable to think that Avocent's lawyers could one day

study Rose's confidential design information and the next day write an Avocent patent application and/or re-write or otherwise defend the patents-in-suit in an effort to better target Rose. Worse, we now know by Avocent's own admission that it expressly wants to use Rose's confidential information in the reexamination proceedings for this very purpose. *See supra*, p. 3, n. 1. Beyond simply putting Rose at risk of a hardship, it is willfully seeking to impose a hardship on Rose.

In sum, the balance of hardships clearly favors entry of a patent prosecution bar.

**E. Avocent's Suggestion that Rose's Product Designs are not Confidential is Absurd**

Avocent's justifications for its intended use of Rose's confidential information are simply not credible. For example, Avocent suggests that the detailed circuit schematics and diagrams for Rose's KVM switches are not confidential because that information could be reverse engineered from commercially available products. This respectfully makes no sense. If it does, no company possesses confidential technical information because every product can be reverse engineered given enough time and resources, and the thousands of protective orders entered by courts across the country to protect parties' confidential technical information (including Fed. R. Civ. P. 26(c) itself) have all been colossal wastes of time and have no practical effect or use.

It is also telling that Avocent concedes to having reverse engineered only portions of one switch in each of Rose's UltraMatrix and UltraView Pro product lines, and that it was able to do so only by acquiring these two products, and tasking engineers with the "technical wherewithal" to try to reverse engineer each small portion of those two products. (Avocent Amended Br. at 13-14.) Multiplying that effort by the sheer number of Rose products Avocent accuses of infringement—in the Seattle case Avocent accused 12 different product lines—it is clear that comprehensive reverse engineering would require substantial money and man-hours of highly-trained technical employees, suggesting that this could not be done without substantial disruption to Avocent's ordinary business activities or in a timeframe where it could make any meaningful use of the information. Presumably, that is why it demanded that Rose produce all of its

schematics in the Seattle case, rather than creating its own set of reverse-engineered schematics. But if this Court lets Avocent's prosecution attorneys see Rose's confidential circuit schematics, Avocent will get this information for free. In essence, Rose would be subsidizing Avocent's opposition research. (Not to mention that even if Avocent were able to reverse engineer each and every accused Rose product, it is undoubtedly true that Avocent could never achieve full confidence that such reverse-engineered schematics would be accurate without actually comparing the reverse engineered information to Rose's confidential information.)

Finally, actions speak louder than words on this point, and in the Seattle case, Avocent has marked its own product schematics at the highest level of confidentiality under the protective order in that case. (*See* Casagrande Reply Decl. ¶ 5.) Avocent's KVM switch products are just as susceptible to reverse engineering as Rose's and yet Avocent itself has asserted the schematics for them are highly confidential. This, perhaps more than anything else, shows that Avocent's argument that such documents are not highly confidential is a convenient fiction created for advocacy's sake.

**F. Avocent's Argument under 35 U.S.C. § 120 Ignores Reality**

Avocent erroneously contends that the disclosure requirements of 35 U.S.C. § 120 prevent its lawyers from using Rose's confidential information to better craft its patents for eventual assertion against Rose because Rose's confidential information post dates the filing date of Avocent's patent applications. (Avocent Amended Br. at 14-16.) While perhaps superficially logical, this is an egregious misrepresentation. The practice of attempting to incorporate a competitor's later-developed technology in an earlier-filed patent application is a well known ploy in patent practice.

The strategy involves filing an initial patent application and then filing multiple "continuation" applications (under 35 U.S.C. § 120) so that there is always an active patent application on file at the Patent Office that can be amended to claim later developed technologies. This practice can go on for many years, i.e., essentially for as long as the patent applicant is willing to pay to file additional continuation applications. (Not coincidentally, this is exactly how

Avocent currently has an active patent application on file—from the same family of patents asserted in this case—that claims priority to an original application filed in 1995.) While it is true that a patent can only claim an invention that was disclosed in the originally-filed application, the issue of whether a later-claimed technology is or is not disclosed in the originally-filed application becomes the subject of millions of dollars of litigation fees and lengthy jury trials. Patentees know that accused infringers do not like that sort of litigation risk, and so they continue with this game/practice—Avocent undeniably being an exemplary participant through the at least 6 continuation applications (one of which is *still* pending) it has filed from a single application filed in 1995.[5]

With this background, which Avocent undoubtedly knows very well, it is shameless and misleading that Avocent would attempt to convince the Court that it is not possible for it to misuse Rose's confidential information during prosecution of its patents-in-suit and the string of continuation applications associated with those patents. The brazenness of the argument alone suggests all the more the need for a prosecution provision in the parties' protective order.

### G. Avocent's Claim that Rose's Proposed Protective Order will Preclude it from Advising its Client is Unfounded

Avocent postulates that Rose's proposed patent prosecution provision—taken to its logical extreme—necessarily means that <u>all</u> counsel (litigation and prosecution) must be denied access to confidential information. (Avocent Amended Br. at 17-18.) Avocent's floodgates

---

5 *See, e.g.*, Mark A. Lemley & Kimberly A. Moore, *Ending Abuse of Patent Continuations*, 84 B.U. L. Rev. 63, 76 (2004) ("Inventors can keep an application pending in the PTO for years, all the while monitoring developments in the marketplace. They can then draft claims that they can be sure will cover those developments. In the most extreme cases, patent applicants add clams during the continuation process to cover ideas they never thought of themselves, but instead learned from a competitor.") (exh. 3). Judge Kimberly Moore is now a Federal Circuit judge. *See also* Comment, *The Controversy Surrounding Continuing Applications and Requests for Continued Examination*, 7 J. Marshall Rev. Intell. Prop. L. 545, 561-62 (2008) ("...permitting applicants to file an unlimited number of continuing applications and RCEs poses detrimental effects to an applicant's competitors ... an applicant could keep an application pending in the PTO for years while monitoring developments in the marketplace [and] then modify claims to cover competitors' products, or more severely, add claims that they never thought of themselves, but rather garnered from the commercial market.") (exh. 4).

argument presumes that Rose is seeking some sort of unprecedented relief that would lead to "absurd," far-reaching, and unexpected results. This is simply not the case; as Rose pointed out, a majority of the courts who have considered this issue have agreed with Rose and put Rose's proposed protections in place without invoking Avocent's imagined paradox. Given that the weight of law strongly favors Rose, and given that years of court decisions favoring Rose have not seen the "absurd" results of which Avocent warns, Avocent's argument must be viewed as meaningless exaggeration.

Further, Avocent's argument contradicts its own analysis of the *U.S. Steel* case, which requires a showing of an attorney's involvement in specific activities constituting competitive decision-making before access to confidential information is denied. No party in this case has accused anyone acting solely in a litigation counsel's capacity of being a "competitive decision maker," because they are not. On the other hand, the unchallenged evidence of record shows that Avocent's patent prosecution counsel are competitive decision makers by virtue of their relationship with Avocent and their unique responsibility for re-writing or otherwise obtaining patents that Avocent uses to exclude competition in the market. Accordingly, Avocent's parade of horribles fails.

### H. Rose Has Standing to Seek Protection Against Its Competitor's Unilateral Use of Rose's Confidential Discovery Documents to Its Competitor's Benefit and Rose's Detriment.

Avocent also opens its brief denying that Rose has standing to seek protection against Avocent's misuse of Rose's confidential documents and seeking to strike Rose's cross-motion. The apparent basis is that Rose "is not a party to this action." (Avocent Amended Br. at 1.) After Avocent filed its brief, however, the Court granted Rose's motion to intervene. (Document No. 29.) This argument therefore is now moot. Even if the Court had not yet granted Rose's motion, however, Rose would still have had standing to contest an aspect of the protective order concerning use of its documents. *See, e.g.*, *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775,

783-84 (1st Cir. 1988). Thus, Avocent's standing argument provides no basis to deny or strike Rose's cross-motion for a protective order.

## III. CONCLUSION

Avocent is unable to dispute the relevant facts concerning its patent prosecution counsel's activities and relationship with it. Instead, it is reduced to factual misdirection, misrepresentation of the law, and saying the words "status" and "*per se* rule" a lot. Rose has directly addressed the *U.S. Steel* standard and proven undisputed facts indicating that the risks and potential consequences of inadvertent disclosure under the facts and circumstances here warrant barring Avocent's KVM switch patent prosecution counsel from seeing Rose's confidential documents. Rose respectfully requests that the Court grant its cross-motion for a protective order.

Dated: July 14, 2008

Respectfully submitted,

Bert C. Reiser
HOWREY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
Ph.: 202.783.0800
Fax: 202.383.6610
reiserb@howrey.com

*Attorney for Defendant-Intervenor*
Rose Electronics
10707 Stancliff Road
Houston, TX 77099

OF COUNSEL:

Michael S. Dowler
Thomas L. Casagrande
HOWREY LLP
1111 Louisiana, 25th floor
Houston, TX 77002-5242
713.787.1400 (phone)
713.787.1440 (fax)
dowlerm@howrey.com
casagrandet@howrey.com

Brian L. Jackson
LAW OFFICE OF BRIAN L. JACKSON
1302 Waugh Drive, # 582
Houston, TX 77019-3908
713.522.5766 (phone)
713.583.5785 (fax)
brian@brianjacksonlaw.com
(*application for admission pending*)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served on this 14th day of July, 2008 with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace Obermann
DAVIDSON, BERQUIST JACKSON & GOWDEY LLP
4300 Wilson Blvd, Suite 700
Arlington, VA 22203

Jeffrey S. Bucholtz
Acting Assistant Attorney General
John Fargo
Director
Robert G. Hilton
Attorney
Commercial Litigation Branch
Civil Division
DEPARTMENT OF JUSTICE
Washington, DC 20530

Bert C. Reiser



DM_US:21338153_1