**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AVOCENT REDMOND CORP., a Washington corporation,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>ROSE ELECTRONICS, a Texas general partnership,<br>Defendant-Intervenor. | No. 08-69C<br>Judge Lawrence S. Margolis |

**DECLARATION OF DONALD L. JACKSON IN SUPPORT OF AVOCENT REDMOND'S MOTION TO STRIKE ROSE'S ANSWER AND DEFENSES**

I, Donald L. Jackson, hereby declare as follows:

1. I am a member of Davidson Berquist Jackson & Gowdey, LLP, counsel to plaintiff Avocent Redmond Corp. in the above-captioned litigation. I am a member in good standing of the bar of this Court and of the Supreme Court of Virginia.

2. Attached hereto as Exhibit 1 is a true and correct copy of Avocent's Motion to Lift the Stay and Modify the Protective Order filed on June 19, 2008 in the action captioned *Avocent Redmond v. Rose Electronics, et al.*, No. 2:06-cv-01711-MJP, pending in the U.S. District Court for the Western District of Washington ("the Seattle action").

3. Attached hereto as Exhibit 2 is a true and correct copy of Avocent's Reply in Support of Its Motion to Lift the Stay and to Modify the Protective Order filed in the Seattle action on July 2, 2008.

4. I declare under penalty of perjury that the foregoing is true and correct.

DATED this 17th day of July, 2008.

Donald L. Jackson

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Donald L. Jackson________________
Donald L. Jackson

# Exhibit 1

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AVOCENT REDMOND CORP., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROSE ELECTRONICS, a Texas general partnership; PETER MACOUREK, an individual; DARIOUSH "DAVID" RAHVAR, an individual; ATEN TECHNOLOGY INC., a California corporation; ATEN INTERNATIONAL CO., LTD., a Taiwanese Company; BELKIN INTERNATIONAL, INC., a Delaware corporation, and BELKIN INC., a Delaware corporation,<br><br>Defendants. | NO. 06-1711-MJP<br><br>AVOCENT'S MOTION TO LIFT THE STAY AND TO MODIFY THE PROTECTIVE ORDER<br><br>NOTE ON MOTION CALENDAR: July 4, 2008<br><br>ORAL ARGUMENT REQUESTED |



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1
A. Posture of the Case ..... 1
B. The Reexamination Proceedings ..... 2
C. The Related Action Against the United States ..... 2
II. ARGUMENT ..... 3
A. The Stay Should Be Lifted ..... 3
1. Undue Prejudice and Tactical Advantage ..... 3
2. Simplification of the Issues ..... 6
3. Discovery and Trial Setting ..... 8
B. The Defendants Mischaracterized the Supreme Court's *KSR* Decision ..... 9
C. The Protective Order Should Be Modified to Allow Avocent to Disclose Evidence of Commercial Success to the PTO ..... 10
III. CONCLUSION ..... 12



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

Plaintiff Avocent Redmond Corp. ("Avocent") moves the Court for an order lifting the current stay. Avocent also asks the Court to modify the protective order to allow Avocent to submit evidence of commercial success due to defendants' sales of Avocent's patented inventions to the U.S. Patent and Trademark Office ("PTO") in the pending reexamination proceedings initiated by defendant Rose Electronics ("Rose").

# I. INTRODUCTION

## A. Posture of the Case

This case is currently stayed pending resolution of Rose's reexamination requests to the PTO. Defendants Rose, Peter Macourek, and Darioush "David" Rahvar (collectively, "the Rose defendants") moved to stay the present action on October 24, 2007 – only nine days before the scheduled technology tutorial on November 2nd, and 16 days before the claim construction hearing on November 9th. (*See* Dkt. No. 167). Although improperly couched as a "motion for relief from certain deadlines," the Rose defendants also moved to indefinitely postpone the technology tutorial and the claim construction hearing. (*See* Dkt. No. 158). The Rose defendants asked the Court to grant these motions because Rose planned to ask the PTO to reexamine Avocent's patents even though no reexamination request had yet been filed. (*See* Dkt. No. 158, p. 1; Dkt. No. 167, p. 1). The Aten defendants and the Belkin defendants joined the Rose defendants in seeking cancellation of the hearings, and the Aten defendants joined the Rose defendants seeking a stay of the case. (*See* Dkt. Nos. 166 and 176).

Avocent's opposition to the motion to stay was not due until November 5, 2007 (three days *after* the technology tutorial). Thus, by waiting to file the stay motion until October 24th, the Rose defendants effectively precluded Avocent from filing an opposition to that motion before the Court took up the "motion for relief from certain deadlines." The Rose defendants correctly hoped that the Court would decide the larger issue of whether to stay the case prior to the technology tutorial scheduled for November 2, 2007. The Court stayed the case on October 30, 2007 after an oral hearing that was scheduled earlier that day. (*See* Dkt. No. 177).



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

**B. The Reexamination Proceedings**

Rose filed its initial reexamination requests for the '096 patent on October 19, 2007, and for the '264 patent and the '978 patent on October 30, 2007. (Exhs. 1-3).[1] In early November 2007, the PTO rejected all three of those reexamination requests for failing to comply with the PTO's rules and regulations. (*Id.*). Rose filed corrected reexamination requests on November 8, 2007 for all three patents. (*Id.*). The PTO ordered reexamination for the three patents on December 17, 2007. (*Id.*). The PTO forwarded the reexamination files for the '096 patent, the '978 patent and the '264 patent to an examiner on March 5, 2008, March 11, 2008, and April 10, 2008, respectively. (*Id.*). The PTO has not issued a substantive action in any of the three reexamination proceedings. (*Id.*).

**C. The Related Action Against the United States**

The Court should be aware that, during the stay, Avocent brought a related action against the United States in the U.S. Court of Federal Claims. The Court may recall that, in this case, the Rose defendants asserted an affirmative defense under 28 U.S.C. § 1498 thereby excluding infringing sales made to the United States government. (*See* Dkt. No. 21, p. 7). In pertinent part, section 1498 states as follows:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States …, <u>the owner's remedy shall be by action against the United States</u> in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a) (emphasis added). On January 31, 2008, Avocent filed a § 1498 action against the United States seeking compensation for the products Rose excluded from this case by virtue of § 1498 (*i.e.*, "the United States action"). (*See* Exh. 4). Because claims against the United States are subject to a 6-year limitation on damages, Avocent was forced to bring the action to keep the 6-year damages window from further limiting Avocent's damages. That case is ongoing.

---

[1] Unless indicated otherwise, all exhibits to this motion are attached to the Declaration of Donald L. Jackson filed concurrently herewith ("Jackson Decl.").



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

## II. ARGUMENT

### A. The Stay Should Be Lifted

The party seeking to stay an action "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Ariba, Inc. v. Emptoris, Inc.*, 2007 U.S. Dist. LEXIS 78857, *2-3 (E.D. Tex. 2007) (*quoting Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts consider the following three factors in deciding whether to grant a stay in favor of reexamination proceedings: "(1) whether a stay will unduly prejudice or present a clear tactical advantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Cooper Techs. Co. v. Thomas & Betts Corp.*, 2008 U.S. Dist. LEXIS 25938, *3 (E.D. Tex. 2008); *see Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 U.S. Dist. LEXIS 44107, *11 (N.D. Cal. 2007); *Fujitsu Ltd. v. Nanya Tech. Corp.*, 2007 U.S. Dist. LEXIS 83581, *7 (N.D. Cal. 2007).

#### 1. Undue Prejudice and Tactical Advantage

Continuing the stay imposes undue prejudice on Avocent. Courts considering stays in light of reexamination routinely find that the indefinite delay associated with PTO reexamination proceedings constitutes undue prejudice. *See Cooper Techs.*, 2008 U.S. Dist. LEXIS at *3 ("the PTO has not provided any definitive guidance on the length of time required for the reexamination. Accordingly, the potential delay for an indefinite period would likely prejudice Cooper."); *Fresenius Medical*, 2007 U.S. Dist. LEXIS at *19 ("In the lengthy delay that would inevitably ensue if a stay were granted, evidence could be lost and witnesses' memories could fade."); *Fujitsu*, 2007 U.S. Dist. LEXIS at *9 (finding that Fujitsu was validly concerned that it would be severely prejudiced by the loss of evidence during a stay); *Visto Corp. v. Research In Motion Ltd.*, 2007 U.S. Dist. LEXIS 76134, *3 (E.D. Tex. 2007) ("The PTO has not provided any definitive guidance on the length of time required for the reexamination proceedings. Accordingly, the potential delay for an indefinite period will likely



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

prejudice Visto.”); *Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006) (“Here, a stay of this action could result in an [sic] delay of months, if not years. Accordingly, this Court declines to stay, and thus prolong for an indefinite period of time, the instant litigation.”); *Xerox Corp. v. 3Com Corp*., 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999) (“the delay involved would likely be at least one year and could easily exceed two years. In light of the substantial time and resources already invested into this litigation, such a lengthy delay would prejudice the plaintiff, who claims that the defendants continue to willfully infringe the ‘656 patent.”).

The PTO is quick to grant reexaminations but slow to process them. In 2007, the PTO granted 577 of 594 *ex parte* reexamination requests – *i.e.*, over 97% of the requests filed. (*See* Exh. 13). At the same time, the average pendency of a reexamination proceeding is up to 24 months, excluding all appeals from the PTO’s final determination. (*See* Exh. 7). Indeed, “reexamination requests are often rubber-stamped by the examiners… .” Osenga, *Rethinking Reexamination Reform: Is It Time for Corrective Surgery, or Is It Time to Amputate,* Fordham Intell. Prop. Media & Ent. L.J.,Vol. 14:217, p. 236 (Dec. 2003). (*See* Exh. 5). Thus, it’s not significant that the PTO granted Rose’s requests, but it is significant that they have now languished in the PTO for more than seven months without substantive action. (*See* Exhs. 1-3). The PTO won’t give guidance on how long the Avocent reexaminations will take – even though they are supposed to be conducted with “special dispatch” – but it will clearly be longer than Rose’s prediction at the October 30, 2007 hearing of “one year.” *See Xerox*, 69 F. Supp. 2d at 407; and Exh. 6, p. 9.

The stay should be lifted because Avocent continues to suffer undue prejudice due to the indefinite length of the reexamination proceedings. *See, e.g., Cooper Techs*., 2008 U.S. Dist. LEXIS at *3 (“the potential delay for an indefinite period would likely prejudice Cooper.”). Worse, the defendants’ willful infringement of Avocent’s patents continues unabated during the stay. The defendants continue to sell the patented products in competition with Avocent, eroding Avocent’s market share and interfering with Avocent’s commercial


**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

relationships while building their own. (*See* Declaration of Max Behnam filed herewith).

Further delay also will likely cause evidentiary prejudice to Avocent. During the Rule 30(b)(6) deposition of Rose, Mr. Macourek (one of Rose's two partners) testified over 40 times that he did not recall the answers to questions posed to him. (*See* Exh. 8). Many of those questions were directed to his own knowledge and actions. Continuing the stay will only further lengthen the period of the defendants' infringement, exacerbate witnesses' lack of memory, and potentially result in lost evidence.

The delay will cause undue prejudice to Avocent in another, related way. The defendants have each alleged laches as an affirmative defense. One element of laches is that the alleged infringer suffered material prejudice attributable to the delay. *See A.C. Aukerman Co. v. R.L. Chaides Construction Co*., 960 F.2d 1020, 1033 (Fed. Cir. 1992) (*en banc*). Here, Rose has expressly alleged the loss of evidence to support its laches defense. (*See* Exh. 9, p. 10). By asking for a stay, defendants implicitly seek to exacerbate the loss of evidence that they have alleged. The Court should immediately lift the stay to prevent the defendants from arguing that they have suffered any additional (and self-inflicted) evidentiary prejudice. More importantly, however, the stay should be lifted to avoid imposing undue prejudice on non-movant Avocent due to the loss of evidence. *See, e.g., Fujitsu*, 2007 U.S. Dist. LEXIS at *9 (finding that loss of evidence during a stay could severely prejudice the non-movant).

The stay also should be lifted because it was sought for tactical advantage. *See Fresenius*, 2007 U.S. Dist. LEXIS at *16-17. The Rose defendants filed the motion for a stay after they failed to persuade the Court to enter a protective order barring Avocent's litigation counsel from providing patent prosecution services to Avocent, and after they failed to have Avocent's litigation counsel disqualified. (*See* Dkt. Nos. 99 and 152). Indeed, the Rose defendants filed their motion to postpone the claim construction and technology tutorial hearings only 10 days after the Court ruled against Rose's disqualification motion. (*Compare* Dkt. No. 152 *with* Dkt. No. 158). As in *Fresenius*, the Rose defendants filed their motion to stay after losing on a series of issues.



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

In fact, the reexamination requests themselves were filed for tactical advantage. To file the reexamination requests, Rose hired a lawyer who advertises that his firm specializes in “compromising patents” through reexamination. (Exh. 10). That is exactly what has already happened here. All three patents are presumed to be valid and two of them have been fully litigated through appeal to the Federal Circuit. By requesting reexamination and obtaining an indefinite stay, the defendants have already compromised the value of Avocent’s patents. The fact that Avocent has suffered undue prejudice and that Rose requested the stay for tactical advantage weighs against a continuance of the stay.

It is also unclear whether the defendants will be able to pay the damage award sought by Avocent. Collectively, the defendants sell tens-of-millions of dollars worth of accused products every year. When the mounting damages are coupled with pre-judgment interest, the damage award due to Avocent easily could exceed any of the defendants’ ability to pay damages. This is especially true for Aten and Rose because their primary and most profitable products would be subject to the permanent injunction sought by Avocent.

Rose’s ability to pay a damage award is of particular concern. Although there has been no discovery into whether any of the defendants have the ability to pay an ever increasing damages award, the problem with Rose is more acute. Rose specializes in selling KVM switches, and is a general partnership having only two partners, Messrs. Macourek and Rahvar. All of Rose’s income (and the profits) flow to the two partners. Even though each partner is liable for Rose’s liabilities, it is much more difficult to collect a multi-million dollar judgment from individuals because the money may be invested in non-liquid assets, such as real estate, or because the money may have been spent on personal items or luxuries. (Exh. 14, § 152.304 (“all partners are liable jointly and severally for a debt or obligation of the partnership ….”)). Given the number of years Rose has been infringing, the damages award against Rose may exceed Rose’s ability to pay. This factor counsels in favor of lifting the stay.

**2. Simplification of the Issues**

It was complete speculation for the defendants to assert that the reexamination



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

proceedings will markedly simplify or "completely eliminate" this case. (*See* Dkt. No. 167, p. 7 ("A stay while the PTO conducts the requested reexamination is highly likely to simplify, if not eliminate, this case.")). As other courts have regularly recognized, reexamination will not necessarily simplify, much less eliminate, the district court litigation. *See Visto*, 2007 U.S. Dist. LEXIS at 4 ("Although RIM argues that the patent claims will likely materially change or cancel during reexamination, *it is also likely that some claims will remain after the reexamination proceedings have completed*. … Accordingly, waiting for the completion of the reexamination proceedings may only simplify the case to a limited degree. This factor is *speculative*. *Therefore, it does not support a stay*.").

Collectively, Avocent has asserted 55 claims from the three patents against the defendants. (*See* Dkt. No. 148, pp. 2-8). According to the PTO's statistics, fully 29% of the time *all claims in a patent are confirmed* at the conclusion of a reexamination requested by a third party. (*See* Exh. 7, p. 2). Because there are three patents in reexamination, there is an 87% chance (3 times 29%) that *all claims* from at least one of the patents will be confirmed by the PTO. Thus, it is highly likely that many of the 55 asserted claims will be completely unaffected by the reexaminations.

It is an unsupported logical leap for the defendants to assert that, because a claim may be changed, this Court will "waste" its time and resources by continuing the litigation. (*See* Dkt. No. 167, p. 8). First, none of the defendants has agreed to be bound by the PTO's validity findings. Thus, the defendants will inevitably challenge the validity of any claim that the PTO allows in the reexamination process, whether the claim is changed or not.

Second, Rose's speculation that the reexamination process will save the Court's time and resources contradicts a key aspect of patent law. Under the Patent Act, issued patents are presumed valid. 35 U.S.C. § 282. If any speculation is proper, the Patent Act mandates the presumption that Avocent's asserted clams are valid and will be confirmed by the PTO.

Third, it is unlikely that the reexaminations will eliminate the Court's claim construction analysis. The parties were disputing the meaning of the terms "signal," "routing,"



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

"coupled," "transmit," "cables," "connectors," "combining," "portion," "remote," and "in response to." Even if Avocent's claims were modified, there is no reason to believe that the reexamination proceedings would have any impact on the meaning one of ordinary skill in the art would attribute to those generic terms. The stay should not be continued on the basis of defendants' speculative arguments that the reexamination process will preserve the Court's resources or simplify the case for trial.

**3. Discovery and Trial Setting**

Contrary to defendants' arguments, this case was far along in discovery. Since February 2007, the parties have served and responded to several sets of interrogatories and requests for production. With one exception, every defendant served multiple sets of responses to Avocent's interrogatories, with Rose serving five sets of responses. (Jackson Decl., ¶ 2).

On June 21, 2007, Avocent took the deposition of Rose's general partner, Peter Macourek, on several of Rose's "equitable" defenses. (Jackson Decl., ¶ 3). The parties also have collectively exchanged over 800,000 pages of documents. (Jackson Decl., ¶ 4). Rose served Rule 45 subpoenas on eight third parties. (Jackson Decl., ¶ 5).

In addition, Avocent served its preliminary infringement contentions on May 25, 2007. (Jackson Decl., ¶ 6). Avocent's preliminary infringement contentions for the Rose, Aten and Belkin accused products included 95, 36, and 67 pages, respectively, of highly-detailed claim charts. (Jackson Decl., ¶ 6). Avocent prepared and filed its Pre-Hearing Statement on September 24, 2007 containing hundreds of pages of detailed infringement claim charts against the accused products. (*See* Dkt. No. 148). The infringement charts were prepared based on Avocent's independent analysis of physical samples of the accused products, and on highly technical circuit schematics produced by the defendants. (Jackson Decl., ¶ 6). The defendants also served their invalidity contentions totaling about 110 pages. (Jackson Decl., ¶ 7).

The parties also expended significant time and resources related to the claim construction process. The parties exchanged lists of Proposed Terms and Claim Elements, and preliminary proposed constructions identifying extrinsic evidence and testimony. The parties



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

prepared and filed the Joint Claim Chart, and served summaries of their experts' claim construction testimony. The parties also prepared and filed their opening and rebuttal claim construction briefs. Avocent (and presumably the defendants) prepared video presentations for the technology tutorial and the *Markman* hearing. None of these tasks were inexpensive.

Thus, by the time the Court stayed the case, the parties had fully developed their claim construction, infringement, and invalidity positions, and developed vast amounts of discovery. This case was not in its infancy. Instead, it was well on its way to trial. Indeed, opening expert reports were due on December 20, 2007, and trial in this case had, by agreement of the parties, long been scheduled for June 23, 2008 – only four days from now. (*See* Dkt. No. 78). Development of the core issues in this case was largely complete at the time the Rose defendants asked for the stay at the end of October 2007. These facts weigh against continuing the stay. *See Fresenius*, 2007 U.S. Dist. LEXIS at *13 ("The vast majority of cases that have granted stays have done so when the cases were in their relatively nascent stages.").

**B. The Defendants Mischaracterized the Supreme Court's *KSR* Decision**

Rose, with the support of the other defendants, buttressed their stay request by mischaracterizing the Supreme Court's decision in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007), and the supposed effect that decision would have on invalidity determinations. (*See* Dkt. No. 167, p. 3). The Rose defendants incorrectly characterized that decision as one that "changed the long-settled standard for determining whether subject matter is obvious." (*See* Dkt. No. 167, p. 3). At the October 20, 2007 telephonic hearing, Rose's counsel stated that *KSR* represented a "sea change" in the way courts and the PTO view patent validity. (Exh. 6, p. 9). But the *KSR* decision itself reaffirmed the long-standing *Graham v. John Deere Co.*, 383 U.S. 1 (1966), obviousness standard, and stated that "[t]here is no necessary inconsistency between the idea underlying the TSM [*i.e.*, the teaching, suggestion, or motivation] test and the *Graham* analysis." *KSR*, 127 S. Ct. at 1741. Contrary to Rose's arguments, the Supreme Court did not reject the TSM test. Instead, the Court rejected the rigid *manner* in which the Federal Circuit had applied that test *in that particular case*. *See id.* ("In the years since the Court of



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

Customs and Patent Appeals set forth the essence of the TSM test, the Court of Appeals no doubt has [correctly] applied the test in accord with these principles in many cases.”).

The Federal Circuit and the PTO have each confirmed that *KSR* was not the “sea change” in patent law as asserted by the defendants. In *Ortho-McNeil Pharm., Inc. v. Mylan Labs, Inc.*, 520 F.3d 1358 (Fed. Cir. 2008), the Federal Circuit stated:

> In *KSR*, the Supreme Court explained that a “rigid” TSM test “is incompatible with our precedents.” … As this court has explained, however, a flexible TSM test <u>*remains*</u> the primary guarantor against a non-statutory hindsight analysis such as occurred in this case.

*Id*. at 1364 (emphasis added). Similarly, in the PTO’s Manual of Patent Examining Procedure (“MPEP”), the PTO states that “[t]he Supreme Court in *KSR* <u>reaffirmed</u> the familiar framework for determining obviousness as set forth in *Graham v. John Deere Co.* … .” (Exh. 11, MPEP § 2141, p. 2100-115 (emphasis added)).

During the October 30, 2007 hearing, the Court expressed concern that the *KSR* decision may have a significant impact on the validity issues in this case. (*See* Exh. 6, p. 4). We now know that neither the Federal Circuit nor the Patent Office agree with Rose’s view that *KSR* represented a “sea change” in the law. It is clear that the defendants over-sold the significance of the Supreme Court’s *KSR* decision.

### C. The Protective Order Should Be Modified to Allow Avocent to Disclose Evidence of Commercial Success to the PTO

Rose’s reexamination requests to the PTO asserted that Avocent’s patent claims were obvious based on a combination of references. (*See* Dkt. No. 180-2, pp. 6, 21, 36). One way that Avocent can rebut an obviousness rejection is to provide evidence of the invention’s commercial success. *See Akzo N.V v. U.S. Int’l Trade Comm’n*, 808 F.2d 1471, 1481 (Fed. Cir. 1986) (“Commercial success is, of course, a strong factor favoring non-obviousness.”). Avocent can establish commercial success by showing significant sales of the patented product, and a nexus between the success of the product and the patent claims. *See J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (“When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention.").

This case was stayed in part to allow the PTO to apply its "expertise" to the validity of Avocent's patent claims. (*See* Dkt. No. 167, p. 5). However, the PTO does not have a mechanism for the patentee (or patent applicant) to submit confidential information in private to the PTO. (*See* Exh. 12, MPEP § 724.03). All information submitted by the patentee will be available to the public. Obviously, this restriction can seriously limit the evidence that the patentee can rely on to show nonobviousness where, as here, there is substantial evidence of commercial success due to the defendants' infringement of Avocent's patents. If the goal of the stay was to truly allow the PTO to fully and fairly evaluate the validity of Avocent's claims, then Avocent must be allowed to submit the evidence of commercial success due to defendants' use of the patented inventions, as well as Avocent's use. Such evidence will show that virtually the entire industry has adopted Avocent's patented inventions, thereby establishing the non-obviousness of Avocent's claims. The PTO cannot begin to make a complete assessment of Avocent's claims with only part of the evidence.

If the Court is unwilling to so modify the Protective Order, then the stay should be lifted on the further grounds that the PTO will not have access to the evidence it needs to make a full and fair assessment of the validity of Avocent's claims without the commercial success evidence. Although it is a half-measure, Avocent alternatively asks that it be allowed to disclose to the PTO the approximate total dollar amount of sales made by the defendants, Avocent, and its licensees, collectively, and on a yearly basis, and the approximate share of the market collectively held by the patented products.

If Avocent is not permitted to disclose the commercial success evidence produced under the protective order, this case should not have been stayed in the first place. It is improper to stay a case pending reexamination where a foreseeable consequence of staying the action is that the patentee will be unable to raise an issue in any forum. *See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998) ("the stay was improper, because



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Seattle, Washington 98111-3926
(206) 628-6600

a foreseeable consequence of staying Slip Track's interfering patents suit in favor of the reexamination proceedings is that Slip Track will be unable to raise the issue of priority of invention in any forum."). If Avocent's proofs on the commercial success issue are limited by PTO rules or confidentiality obligations, the PTO could find Avocent's claims unpatentable. At that point, Avocent would be unable to resume the present litigation. Thus, without the requested modification to the protective order, it is a foreseeable consequence that Avocent would not be able to raise in any forum the issue of commercial success due to defendants' use of the patented inventions. Consequently, the stay would be improper. *See id.*

## III. CONCLUSION

For the foregoing reasons, Avocent asks the Court to lift the stay. By the time this motion is briefed and decided, the trial of this case would have been over under the original schedule. There is no indication when the reexamination proceedings will conclude, and Avocent is suffering undue prejudice in the meantime. The stay only allows Avocent's direct competitors to continue selling tens of millions of dollars per year of infringing products.

DATED this 19th day of June, 2008.

/s/John A. Knox
John A. Knox, WSBA #12707
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Tel: (206) 628-6600
Fax: (206) 628-6611
Email: jknox@williamskastner.com

James D. Berquist
J. Scott Davidson
Donald L. Jackson
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
4300 Wilson Blvd., Suite 700
Arlington, Virginia 22203
Tel: (703) 894-6400
Fax: (703) 894-6430

Attorneys for Plaintiff Avocent Redmond Corp.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Rose Electronics, Peter Macourek, and Darioush "David" Rahvar:*

C. Seth Wilkinson
YARMUTH WILSDON CALFO, PLLC
925 Fourth Ave., Suite 2500
Seattle, WA 98104

Michael S. Dowler
Jeffrey J. Phillips
Thomas L. Casagrande
HOWREY L.L.P.
1111 Louisiana, 25th Floor
Houston, TX 77002

Brian L. Jackson
Law Office of Brian L. Jackson
1302 Waugh Drive, #582
Houston, TX 77019-3908

*Counsel for Aten Technology, Inc. and Aten International Co., Ltd.:*

Thomas F. Ahearne
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101-3299

Richard J. Codding
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3012

Yitai Hu
Ming-Tao Yang
Akin Gump Strauss Hauer & Feld LLP
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112

*Counsel for Belkin International, Inc. and Belkin, Inc.:*

Michael A. Moore
CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 4th Ave Ste 3900
Seattle, WA 98154-1051

David P. Enzminger
Ryan K. Yagura
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Dated this 19th day of June, 2008.

/s/John A. Knox ______________



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

# Exhibit 2

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AVOCENT REDMOND CORP., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROSE ELECTRONICS, a Texas general partnership; PETER MACOUREK, an individual; DARIOUSH "DAVID" RAHVAR, an individual; ATEN TECHNOLOGY INC., a California corporation; ATEN INTERNATIONAL CO., LTD., a Taiwanese Company; BELKIN INTERNATIONAL, INC., a Delaware corporation, and BELKIN INC., a Delaware corporation,<br><br>Defendants. | NO. 06-1711-MJP<br><br>AVOCENT'S REPLY IN SUPPORT OF ITS MOTION TO LIFT THE STAY AND TO MODIFY THE PROTECTIVE ORDER<br><br>NOTE ON MOTION CALENDAR: July 4, 2008<br><br>ORAL ARGUMENT REQUESTED |



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

## TABLE OF CONTENTS

I. Defendants have not Justified Why the Stay Should continue ..... 1

A. The Defendants Attempt to Flip the Burden of Sustaining the Stay by Calling Avocent's Motion a Motion for Reconsideration ..... 1

B. The Stay Should Be Lifted Because the Reexamination Proceedings, and Hence the Stay, Are of Indefinite in Length ..... 1

C. The Stay Cannot Be Continued on the Basis of Defendants' Speculation ..... 2

D. Avocent Did Not Sit on Its Hands before Bringing This Action ..... 4

E. New Evidence Confirms That Rose May Not Be Able to Pay a Judgment ..... 4

F. Rose Overstated the *KSR* Decision ..... 5

II. The Protective Order Should Be Modified to Allow Submission of Evidence to the PTO ..... 5



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

# I. DEFENDANTS HAVE NOT JUSTIFIED WHY THE STAY SHOULD CONTINUE

## A. The Defendants Attempt to Flip the Burden of Sustaining the Stay by Calling Avocent's Motion a Motion for Reconsideration

In an attempt to flip the burden of proof, and to raise the bar on that burden, the defendants begin their opposition by arguing that Avocent's motion to lift the current stay is really "an untimely motion for reconsideration." (Def. Opp., p. 2). But the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that he say for which he prays will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). A stay order, however, is a different kind of relief from those subject to the Court's local rules on reconsideration motion. Because a stay order is discretionary by nature and continuing, parties are free to seek to vacate the stay, and the parties favoring the stay bear the burden of proof on the issue.

The Supreme Court long-ago resolved the issue by finding that, "[w]e think the answer is inadequate that in the contingencies suggested[,] the respondents [*i.e.*, the non-movants] will be at liberty to move to vacate the stay, and will prevail upon that motion if they can satisfy the court that its restraints are then oppressive. To drive them to that course is to make them shoulder a burden that should be carried by the Government [*i.e.*, the party seeking the stay]." *Landis*, 299 U.S. at 257 (emphasis added). Thus, it is the defendants' burden to justify continuing the stay.

## B. The Stay Should Be Lifted Because the Reexamination Proceedings, and Hence the Stay, Are of Indefinite in Length

The holding in *Landis* provides additional guidance ignored by the defendants. Specifically, the Court there held that a district court abused its discretion by granting a stay of "indefinite duration." *Landis*, 299 U.S. at 255. "[A]n order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done." *Id.* at 257. "The stay is immoderate and hence unlawful unless so framed in its inception that its force will be



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

spent within reasonable limits, so far at least as they are susceptible of revision and description." *Id.* (emphasis added); *see Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (reversing district court's stay order for failure to follow restrictions mandated by *Landis*).

This case is currently stayed until the three reexamination proceedings conclude, whenever that might be. (*See* Dkt. No. 177, p. 1). The Patent Office has not issued any guidance on when any of the reexamination proceedings will conclude. Thus, the stay is indefinite in length. As such, the stay is "immoderate and hence unlawful," and should be lifted. *See Cooper Techs. Co. v. Thomas & Betts Corp.*, 2008 U.S. Dist. LEXIS 25938, *3 (E.D. Tex. 2008); *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 U.S. Dist. LEXIS 44107, *19 (N.D. Cal. 2007); *Fujitsu Ltd. v. Nanya Tech. Corp.*, 2007 U.S. Dist. LEXIS 83581, *9 (N.D. Cal. 2007); *Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999).

**C. The Stay Cannot Be Continued on the Basis of Defendants' Speculation**

Rather than affirmatively justify why the stay should continue (as required by *Landis*), the defendants once again ignore the statutory presumption of validity and urge this Court to assume that continuing the case will be a waste of time. But all of defendants' arguments are based on rank speculation about what *might* happen, or what effect the reexamination proceeding *might* have on this case. Speculation is inadequate to justify a stay. *See, e.g., Texas MP3 Techs., Ltd. v. Samsung Electronics Co., Ltd.*, 2007 U.S. Dist. LEXIS 80392, *5 (E.D. Tex. 2007) ("The court agrees with Apple that it would be inefficient to litigate claims that are cancelled or narrowed during reexamination. Such a result, however, is speculative."); *Cooper Techs.*, 2008 U.S. Dist. LEXIS at *4 ("waiting for the completion of the reexamination may only simplify the case to a limited degree. This factor is speculative and does not support a stay.").

The defendants' entire approach to the stay ignores the statutory presumption that



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

Avocent's claims are valid. *See* 35 U.S.C. § 282. In fact, the defendants start from the proposition that it much more likely than not that Avocent's claims will be modified or canceled. In other words, they start from the presumption that the current claims are not valid and at least will have to be modified to sustain their validity. By ignoring the presumption of validity, the defendants' arguments in favor of a stay are contrary to law. Moreover, even if the PTO were to cancel or modify some of the asserted claims, potential judicial economy alone does not support continuing the stay. *See Dependable Highway*, 498 F.3d at 1066 (finding that "case management standing alone is not necessarily a sufficient ground to stay proceedings."); see also *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

The defendants' argument that the Court "must" consider the reexamination prosecution history before ruling on the claim construction is circular and wrong. (Def. Opp., p. 3-4). As support, defendants cite *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367 (Fed. Cir. 2005). But in *Howmedica*, the reexamination proceedings were already available for use, and thus it was appropriate to consult them for claim construction purposes. *Id.* at 1372. The *Howmedica* court never suggested that a district court must stay a case pending reexamination so that it could await the creation of a record from that proceeding. Nor must a court stay the case pending a reexamination proceeding. The fact that new evidence *may later be created,* however, is never a proper basis to delay trial or to deny a plaintiff her day in court. Something new might always arise.

Finally, contrary to defendants' argument, there is an 87% probability that one of Avocent's three patents will emerge from reexamination unchanged (29% x 3). Where the occurrence of any one of three events is mutually exclusive of the others, the probability that one that one of the three events will occur is the sum total of the individual probabilities. (*See* Exh. 15, p. 2 ("If two events A and B are mutually exclusive then the probability of either occurring is P(A or B) = P(A U B) = P(A) + P(B)")). As a matter of law, each of Avocent's patent claims are a separate invention. *See Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984) ("each claim must be considered as defining a separate invention."). Thus, the PTO



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

must deal with the patentability of those claims separately. Consequently, there is an 87% probability that one of the applications will be confirmed without modification.

**D. Avocent Did Not Sit on Its Hands before Bringing This Action**

Although not directly pertinent to the issue at hand, it is important to set the record straight with respect to Avocent's decade-long attempts to end infringement of the Beasley patent family.

The first Beasley patent issued on February 24, 1998, and Avocent (then Apex) sued Rose and Cybex the next day. The Rose and Cybex cases were dismissed without prejudice on February 22, 1999 so that the PTO could consider Cybex's claim that it owned the inventions claimed in the Beasley patent. The PTO ownership proceedings continued until at least July 2000 when Apex and Cybex merged forming the parent to plaintiff Avocent. Avocent then sued Raritan (Avocent's biggest competitor at the time) in the Southern District of New York for infringement of the Beasley patents. That litigation continued until May 2005 when Raritan and Avocent settled. Avocent then submitted all of the prior art and invalidity arguments from the Raritan litigation to the PTO so that it could consider that evidence during prosecution of the '978 patent, which is asserted against the defendants here. The '978 patent issued on September 26, 2006 and Avocent brought this action on November 27, 2006 – about two months later.

Thus, contrary to defendants' repeated mischaracterizations, Avocent has not been sitting on its hands. Avocent literally has been fighting a decade-long battle to stop industry-wide infringement of the Beasley patent family.

**E. New Evidence Confirms That Rose May Not Be Able to Pay a Judgment**

The stay should also be lifted because new evidence from Rose confirms that it may not be able to satisfy the large judgment Avocent will be seeking from Rose and its partners. One of Rose's two general partners, Mr. Macourek, recently filed a declaration in the *Avocent v. United States* action pending in the Court of Federal Claims ("the United States action"). In support of Rose's efforts to obtain a protective order that bars access for Avocent's patent



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

prosecution counsel (again), Mr. Macourek explains that the litigation is costing Rose "substantial sums in legal fees" that are a burden on the small Rose company. (Exh. 16, ¶ 6). Mr. Macourek also complains about the "magnitude of the disruption and litigation expense" on Rose. (*Id.* at ¶ 7).

This June 23, 2008 declaration confirms Avocent's suspicion that Rose may not be able to pay the judgment in this case, especially where the damages continue to mount for every sale Rose makes coupled with prejudgment interest. These concerns justify lifting the stay. At least, before this Court perpetuates an indefinite stay, Avocent would like to take limited discovery to test Rose's ability to pay monetary damages. If Rose's business is being impacted by the legal fees it has incurred, it is very unlikely that Rose will be able to pay the damages award, which will be many times larger.

### F. Rose Overstated the *KSR* Decision

In an effort to rehabilitate its claim that the Supreme Court's *KSR* decision was a sea-change in the patent law, Rose cites two internet magazine articles and the Federal Circuit's decision in *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293 (Fed. Cir. 2007). But the two magazine articles are obviously subject to the writer's bias, and they should carry much less weight than the Federal Circuit's and the PTO's opinions as to the affect of the *KSR* decision. Moreover, in *Aventis*, the court found that the district court erred in finding no obviousness because it applied the teaching-suggestion-motivation test too rigidly, as the Federal Circuit had done in the *KSR* decision itself. Thus, *Aventis* does not support Rose's assertion. Avocent respectfully submits that this Court should rely on what the Federal Circuit and the PTO have actually said about the effect of *KSR* – it was <u>not</u> a "sea-change."

## II. THE PROTECTIVE ORDER SHOULD BE MODIFIED TO ALLOW SUBMISSION OF EVIDENCE TO THE PTO

Although the defendants howl about Avocent's request to submit litigation evidence to the PTO, it was the <u>defendants</u> that requested a deferral of this case in favor of the PTO on the theory that the PTO was better equipped to make validity determinations. As the defendants



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

concede, however, the PTO does not have a mechanism to submit confidential information favoring patentability. (Def. Opp., p. 11). Worse, the defendants oppose any effort to provide that kind of information to the PTO.

The PTO, however, is obligated to resolve obviousness questions using the same factors that this Court would use, including commercial success of the invention. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). The degree to which a patented invention is being used is probative to commercial success. *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1360 (Fed. Cir. 1999) ("As evidence of commercial success, IGT presented evidence that the vast majority of slot machines sold throughout the world are virtual reel slot machines."). Thus, the evidence obtained from the defendants that they infringe and the sales volume of that infringement is relevant, if not key, to the PTO's obviousness determination.

To provide the PTO with an evidentiary record upon which to evaluate the commercial success issue, the Protective Order must be modified to allow Avocent to submit at least collective sales information (*e.g.,* in 2002 Avocent, Raritan and the present defendants generated __ dollars in revenue from selling __ units of 1x8 OSD-equipped KVM switches compared to __ dollars in revenue from selling __ units of 1x8 switches without OSD). This compromise will provide the PTO with at least some record upon which to evaluate the commercial success issues without compromising anyone's confidential information. If the PTO is denied access to this evidence, then the stay is improper. *See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998).

Finally, the defendants argue that Avocent should not "receive favoritism over other patentees" by being able to use evidence from this case in the reexamination proceedings. (Def. Opp., p. 11). This argument is absurd. Whether other patentees have access to the same type of evidence available to Avocent and this Court is plainly irrelevant.



Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

DATED this 2nd day of July, 2008.

/s/John A. Knox
John A. Knox, WSBA #12707
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Tel: (206) 628-6600
Fax: (206) 628-6611
Email: jknox@williamskastner.com

James D. Berquist
J. Scott Davidson
Donald L. Jackson
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
4300 Wilson Blvd., Suite 700
Arlington, Virginia 22203
Tel: (703) 894-6400
Fax: (703) 894-6430
Email: jay.berquist@davidsonberquist.com
scott.davidson@davidsonberquist.com
dlj@dbjg.com

Attorneys for Plaintiff Avocent Redmond Corp.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Rose Electronics, Peter Macourek, and Darioush "David" Rahvar:*

C. Seth Wilkinson
YARMUTH WILSDON CALFO, PLLC
925 Fourth Ave., Suite 2500
Seattle, WA 98104

Michael S. Dowler
Jeffrey J. Phillips
Thomas L. Casagrande
HOWREY L.L.P.
1111 Louisiana, 25th Floor
Houston, TX 77002

Brian L. Jackson
Law Office of Brian L. Jackson
1302 Waugh Drive, #582
Houston, TX 77019-3908

*Counsel for Aten Technology, Inc. and Aten International Co., Ltd.:*

Thomas F. Ahearne
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101-3299

Richard J. Codding
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3012

Yitai Hu
Ming-Tao Yang
Akin Gump Strauss Hauer & Feld LLP
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112

*Counsel for Belkin International, Inc. and Belkin, Inc.:*

Michael A. Moore
CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 4th Ave Ste 3900
Seattle, WA 98154-1051

David P. Enzminger
Ryan K. Yagura
Vision L. Winter
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Dated this 2nd day of July, 2008.

/s/John A. Knox



**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600