**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AVOCENT REDMOND CORP., a Washington corporation,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>ROSE ELECTRONICS, a Texas general partnership,<br>Defendant-Intervenor. | No. 08-69C<br><br>Judge Lawrence S. Margolis |

**AVOCENT REDMOND'S REPLY TO ROSE'S OPPOSITION TO THE MOTION TO STRIKE ROSE'S ANSWER AND DEFENSES**

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace K. Obermann
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
4300 Wilson Blvd, Suite 700
Arlington, Virginia 22203
Tel. 703-894-6400
Fax. 703-894-6430

# TABLE OF CONTENTS

I. SYNOPSIS ........ 1

II. ROSE'S ANSWER AND DEFENSES SHOULD BE STRICKEN ........ 2

A. Rose's Prayer is a Request for an Affirmative Judgment and Should Be Stricken ........ 2

B. Rose's First Additional Defense is an Improper Defense Between Two Private Parties ........ 3

C. Rose's Seventh Additional Defense Under 28 U.S.C. § 1500 Should Be Stricken Because the Claims in this Action Are Different from the Claims in the Seattle Action ........ 4

D. Rose's Reservation of Rights Is Improper and Should Be Stricken ........ 5

III. AVOCENT'S MOTION IS TIMELY ........ 5

IV. HISTORICAL BACKGROUND ........ 6

V. CONCLUSION ........ 8

# TABLE OF AUTHORITIES

## CASES

*Bowser, Inc. v. United States*,
190 Ct. Cl. 441 (Ct. Cl. 1970) ..... 3

*Lemelson v. United States*,
8 Cl. Ct. 789 (Cl. Ct. 1985) ..... 2, 3, 6

*Sun Shipbuilding & Dry Dock Co. v. United States*,
204 Ct. Cl. 915 (Ct. Cl. 1974) ..... 2, 3

*United States v. King*,
395 U.S. 1 (1968) ..... 6

## STATUTES

28 U.S.C. § 1498 ..... *passim*

28 U.S.C. § 1500 ..... 4, 5

## RULES

RCFC 8 ..... 5

RCFC 9 ..... 5

RCFC 12(f) ..... 5, 6

RCFC 12(h)(3) ..... 6

## I. SYNOPSIS

Rather than acknowledging that its answer contains obviously improper defenses and claims, Defendant-Intervenor Rose Electronics ("Rose") goes to great lengths to try to justify the defects found in its pleading. Plaintiff Avocent Redmond Corp. ("Avocent") did not ask the Court to simply strike Rose's answer. Rather, Avocent asked the Court to provide Rose with the time to remove the improper portions of its pleadings. Rose cold have mooted the whole issue by simply removing: (1) the improper requests for affirmative judgment against Avocent, (2) the defenses that exceed this Court's subject matter jurisdiction, (3) the unsupportable assertion that Avocent has initiated duplicative litigation, and (4) the purported reservation of rights to assert unknown, additional defenses sometime in the future. Instead of accepting the limits imposed on its role in this case, and addressing the legal authority that imposes those limits, Rose attacks Avocent's motion, and uses this motion (as it has in earlier papers) as a soap box to portray itself as an innocent party being attacked by a bigger competitor.

Not only is Rose's story not relevant to the pleading issue now before this Court, it is wholly inaccurate. Avocent has been actively attempting to stop industry-wide infringement of the family of patents at issue in this action and the Seattle action for more than 10 years.[1] Rose was one after the first companies to adopt Avocent's patented technologies and one of the first sued for infringement. Despite Rose's awareness of Avocent patents, and Avocent's decade-long effort to stop the industry-wide infringement of those patents, Rose has steadfastly refused to either take a license or stop infringing. If anything, Rose steadily increased its reliance on Avocent's technology, incorporating that technology into virtually all of its product offerings. Rose was fortunate that another competitor, Raritan, emerged as a bigger competitive threat in the early 1990's and compelled Avocent to address Raritan's infringement of the Beasley patent family first. That enforcement action, including appeals, remand, and related Patent Office filings, consumed the period during which Rose accuses Avocent of unreasonable delay. To the

[1] That patent family is referred to as the Beasley family of patents after the first named inventor of those patents.

extent that this Court is interested in that history, it is described in detail in Section IV, Historical Background, below.

## II. ROSE'S ANSWER AND DEFENSES SHOULD BE STRICKEN

### A. Rose's Prayer is a Request for an Affirmative Judgment and Should Be Stricken

To justify its request for a judgment against Avocent, Rose argues that it is "ask[ing] for nothing other than the negative of Avocent's claims." (Dkt. No. 36, p. 7). But the plaint text of Rose's prayer makes it clear that the entire prayer is a request that this Court enter an affirmative judgment in Rose's favor. (*See* Dkt. No. 12, p. 6). Rose's prayer states that "Rose requests a judgment in its favor providing the following relief." (*Id*.). Rose's prayer seeks both monetary and declaratory relief against Avocent. Rose seeks monetary relief in the form of its costs and reasonable attorneys' fees. (*Id*. at ¶ C). Rose also seeks a declaratory judgment that: (a) Avocent take nothing and Avocent's claims be dismissed with prejudice; (b) Avocent's patent claims are invalid, unenforceable, and that ***Rose*** has not infringed[2]; (c) the Court find this to be an exceptional case; and (d) Rose be granted all other relief to which it may be entitled. (*Id*. at ¶¶ A-D). It is double-talk for Rose to say that its prayer does not seek monetary or declaratory relief. Thus, Rose's entire prayer is improper and should be stricken. *See Lemelson v. United States*, 8 Cl. Ct. 789, 791 (Cl. Ct. 1985); *Sun Shipbuilding & Dry Dock Co. v. United States*, 204 Ct. Cl. 915, 916 (Ct. Cl. 1974) (holding that a third party's affirmative relief against the plaintiff "is in any event not available here.").

Rose asserts that "Avocent cites no authority for the proposition that a private intervening defendant in this Court may not tell the Court the judgment it [the private intervening defendant] seeks." This assertion is wrong on two counts. First, Avocent did cite authority specifying the limited extent to which an intervening defendant may participate in this case. As explained in

[2] As explained with respect to Rose's First Additional Defense, this court cannot adjudicate whether Rose is an infringer. That is outside the subject matter jurisdiction of this court.

Avocent's opening brief, a third-party intervenor-defendant is limited to "assist[ing] the United States in the defense of the case, or it may offer additional evidence on its own behalf and advance such legal contentions as it deems appropriate in the protection of its interest." *Bowser, Inc. v. United States*, 190 Ct. Cl. 441, 445-46 (Ct. Cl. 1970).

"Although a noticed third party may present any *defense* to plaintiff's claims it wishes, it 'is not entitled to seek any affirmative judgment, either monetary or declaratory, against the plaintiff.'" *Lemelson*, 8 Cl. Ct. at 791 (emphasis in original) (*quoting Sun Shipbuilding*, 204 Ct. Cl. at 916). Indeed, Rose premises its argument on the erroneous belief that it is entitled to ask this Court for a declaratory judgment against Avocent. That is wrong. This Court was not established to adjudicate claims between private parties and established authority makes clear that that a private intervenor, like Rose, "is *not* entitled to seek *any* affirmative judgment, either monetary or declaratory, against the plaintiff." *Lemelson*, 8 Cl. Ct. at 791 (emphasis added) (*quoting Sun Shipbuilding*, 204 Ct. Cl. at 916).

Accordingly, Rose's prayer should be stricken as an improper request for an affirmative judgment against Avocent.

**B. Rose's First Additional Defense is an Improper Defense Between Two Private Parties**

Rose's First Additional Defense alleges that Rose does not infringe. (*See* Dkt. No. 12, p. 5). But Avocent did not, and cannot, allege that Rose infringes in this case because, under 28 U.S.C. § 1498(a), this Court's jurisdiction is limited to action against the United States. Thus, a defense alleging that Rose does not infringe is improper and outside this court's subject matter jurisdiction.[3]

Like the United States, Rose argues that because decisions from this court refer to a government contractor infringing a patent, Rose can allege that it does not infringe as a defense.

[3] Avocent takes no issue with the portions of Rose's First Additional Defense relating to its products. Rose can assert as a defense that its accused products sold to the United States do not infringe.

This is incorrect. It is true that the decisions cited by Rose characterize a contractor as an infringer or as infringing another's patent. But the fact that the contractor may be an infringer does not confer jurisdiction on this court to adjudicate whether or not the contractor is an infringer. The same is true in the current dispute between Avocent and the United States. It is true that Rose is an infringer through the making and selling of several accused products. Avocent has made those allegations in the Seattle action before Judge Pechman. Nevertheless, in this case, Avocent could not seek a judgment that Rose infringes. Avocent is limited to alleging that the United States has made unauthorized uses of Avocent's patented inventions through the purchase of the accused items sold by Rose.[4]

### C. Rose's Seventh Additional Defense Under 28 U.S.C. § 1500 Should Be Stricken Because the Claims in this Action Are Different from the Claims in the Seattle Action

In this case, Avocent accuses certain *items* sold by Rose to the United States of infringement. Because Rose asserted 28 U.S.C. § 1498 in the Seattle action, Avocent's claim of infringement against the *items* bought by the United States in this case is necessarily distinct from the *items* accused of infringement in the Seattle action. There is *zero overlap* in the items accused of infringement in this case and the items accused of infringement in the Seattle action. The result is that, through operation of § 1498, the accused items sold to the government have been automatically excluded from the Seattle action. Section 1498 effectively divests the district court of jurisdiction to assess whether the accused items sold to the United States constitute an unauthorized use of Avocent's inventions. Thus, the infringement claim that will be litigated in this case (*i.e.*, whether the items sold by Rose to the United States constitute an unauthorized use of Avocent's inventions) is *not* the same claim that is being litigated in the Seattle action (*i.e.*, whether other items sold by Rose infringe Avocent's patents). The United States agrees with

[4] In its opposition, the United States explains the different ways Avocent has used the term "product." (*See* Dkt. No. 35 (Def. Opp.), pp. 2-3). While Avocent submits that the context makes the meaning of "product" clear, Avocent will endeavor to use the term "product" to refer to a type of article (*i.e.*, a model or product line), and the terms "item" or "article" to refer to individual things or units.

Avocent on this very point. According to the United States, "[t]he present case addresses *items* which would be excluded from the Washington case because they were sold to the government." (Dkt. No. 35, p. 7 (emphasis in original)).

Because there is no zero chance of overlap between the infringement claims in this case and the infringement claims in the Seattle case, Rose's § 1500 defense is improper and should be stricken. The same two claims will not and cannot be litigated in the two courts. Only the accused items subject to § 1498 will be adjudicated here. Only the accused item that are outside the scope of § 1498 will be adjudicated in Seattle.

**D. Rose's Reservation of Rights Is Improper and Should Be Stricken**

Like the United States, Rose argues that the reservation of rights is not a defense because it is not listed under the "defenses" section of Rose's answer. This is a pure form-over-substance argument. It does not matter that Rose attempted to reserve defenses under a "reservation of rights" heading just as it did not matter in the cases cited by Avocent that the attempted reservation of rights were listed under a "defenses" heading. Neither RCFC 8 nor RCFC 9 includes "reservation of rights" as an item that can be included in an answer. Indeed, RCFC 8(b) requires Rose to "state in short and plain terms the party's defenses to each claim asserted." An amorphous "reservation of rights" clause does not say anything about the potential defenses Rose may raise. Thus, Rose's reservation of rights section should be stricken.

Should additional defenses later arise, this Court's rules provide a mechanism to add that allegation, if appropriate under the circumstances then existing.

## III. AVOCENT'S MOTION IS TIMELY

Rose did not become a party to this action until July 10, 2008 when the Court granted Rose's motion to intervene. (*See* Dkt. No. 29). The fact that Rose filed its answer weeks before is irrelevant. Rose's answer was ineffective and only a proposed answer until Rose became a party. Thus, the time for filing a Rule 12(f) motion did not begin until July 10th when Rose was

added as a party. Avocent's present motion was filed only six judicial days later on July 18, 2008. Thus, this motion is timely.

Moreover, Rose ignores the fact that the current motion is only partially based on Rule 12(f). The motion is also based on 28 U.S.C. § 1498 which imposes subject matter jurisdictional limitations on the issues that can be considered and resolved by this Court. *See Lemelso*, 8 Cl. Ct. at 790 ("It is a settled proposition that the Claims Court's jurisdiction to grant relief 'depends wholly upon the extent to which the United States has waived its sovereign immunity to suit and that such a waiver cannot be implied by must be unequivocally expressed.'") (*quoting United States v. King*, 395 U.S. 1, 4 (1968)). Subject matter jurisdiction and motions to enforce that jurisdiction can never be waived. *See* RCFC 12(h)(3).

## IV. HISTORICAL BACKGROUND

The first Beasley patent issued on February 24, 1998, and Avocent (then Apex PC Solutions, Inc.) sued its then biggest competitors, Rose and Cybex Computer Products, the very next day. On February 22, 1999, Apex agreed to dismiss those claims, without prejudice, in order to provide the U.S. Patent and Trademark Office ("PTO") with the opportunity to evaluate Cybex's assertion that it – not Apex – owned the inventions claimed in the Beasley patents.

Contrary to Rose's self-serving characterization of history, the Cybex and Rose cases were <u>*not*</u> dismissed because Cybex had filed a motion for summary judgment of invalidity. Cybex's request to initiate an "interference proceeding" between Apex's patents and a patent owned by Cybex caused Apex to agree to dismiss the Rose and Cybex district court actions.[5] The two stipulated orders dismissing the Cybex and the Rose cases makes it clear that the ownership issue was the reason the parties agreed to dismiss those cases without prejudice. (*See* Exhs. 3 and 4).[6] It was Apex's belief that the PTO would be the appropriate forum for the

[5] An interference proceeding is the procedure the PTO internally uses to determine which of two parties own patentable subject matter.

[6] Exhibits 3 and 4 are attached to the Declaration of Donald L. Jackson filed herewith.

interference to be decided. Cybex's request to initiate an interference remained pending in the PTO until at least July 2000 when Apex and Cybex merged, essentially mooting the issue.

Avocent has not delayed bringing an action to hold Rose accountable. In mid-2001, Apex (later renamed "Avocent Redmond Corp.") then sued Raritan in the Southern District of New York for infringement of some of the Beasley patents. At that time, Raritan was Avocent's biggest competitor. That litigation continued until May 2005 when Raritan and Avocent settled. Avocent then submitted all of the prior art and invalidity arguments from the Raritan litigation to the PTO so that it could consider that evidence during prosecution of the '978 patent, which is asserted against the United States here. The '978 patent issued on September 26, 2006 and Avocent brought the Seattle action on November 27, 2006 – about two months later. The defendants in the Seattle action are Rose Electronics (the defendant-intervenor here), Peter Macourek and Darioush Rahvar (Rose's two general partners), Aten Technology Inc., Aten International Co., Ltd., Belkin International, Inc., and Belkin Inc.

Contrary to Rose's assertion, Avocent has not needlessly compounded this litigation. As the Court is aware, Rose asserted 28 U.S.C. § 1498 as a defense during the Seattle action to limit the damages Avocent could recover from Rose in that case. Judge Pechman stayed the Seattle action on October 30, 2007 after Rose promised that it had filed, or would be filing, reexamination requests in the PTO against the Beasley patents at issue in the Seattle action.

Avocent initiated the present action on January 31, 2008 to preserve its ability to recover damages against the infringing items sold by Rose to the United States. According to Rose, Avocent "retaliated and sought to sidestep the stay" in Seattle by filing this action. (Dkt. No. 36, p. 2). But even the United States (the actual defendant here) does not fault Avocent for filing this case recognizing that Avocent needed to stop the statute of limitations period from running on its infringement claims. (*See* Dkt. No. 27, p. 2 ("Defendant understands the need for plaintiff to file the present action in order to prevent the statute of limitations from lapsing in the case of the government sales, and has offered no criticism of plaintiff's doing so.")). But Rose forgets

that this action would never have been filed had Rose not chosen to assert § 1498 as a defense in the Seattle action.

Contrary to its representations, Rose is plainly not an innocent party caught up in a problem of someone else's creation. Recognizing that it could not compete in the market without Avocent's patented technology, Rose built its entire business around the infringing KVM switches that are at the core of this action and the earlier actions against it, against Cybex and against Raritan. Avocent kept Rose abreast of major developments over the past 10 years. Over that period, Rose has failed to find an alternative to Avocent's patented technology and has refused to modify its products. Indeed, Rose continues to introduce new products that incorporate Avocent's patented technology. Rose has long refused to respect the intellectual property rights of its chief competitor and has used that technology to build a world-wide business with international operations in Canada, Germany, Spain, Singapore, and Australia.

## V. CONCLUSION

Avocent asks the Court to strike Rose's Answer and Defenses because it contains several improper defenses, requests, and reservations.

DATED this 14th day of August, 2008.

Respectfully submitted,

PLAINTIFF AVOCENT REDMOND CORP.,
by and through its Attorneys

s/James D. Berquist
James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace K. Obermann
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
4300 Wilson Blvd, Suite 700
Arlington, Virginia 22203
Tel. 703-894-6400
Fax. 703-894-6430

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

/s/ Donald L. Jackson________________
Donald L. Jackson