IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> ROSE ELECTRONICS, <br><br> Intervenor. | No. 08-69C <br><br> Judge Lawrence S. Margolis |

**THE UNITED STATES AND ROSE
ELECTRONICS' MOTION TO LIMIT CLAIMS**

Avocent Redmond Corp. ("Avocent") accuses 17 different products of infringing 63 claims in the four related patents asserted in this case. This large number of asserted claims and products results in an unreasonable number of infringement (and corresponding invalidity) combinations.[1] It would be manifestly unreasonable to expect this Court (and the United States and Rose) to deal with this large number of claims. Avocent has refused the United States' and Rose's requests to limit the number of asserted patent claims to a reasonable number. This Court has the authority to require Avocent to limit the asserted claims to a reasonable number. While other courts have adopted even more restrictive approaches, the United States and Rose suggest a limit of no more than 10 representative claims total, including one from each patent asserted, as a reasonable number to guide discovery, claim construction, and trial in this case.

---

[1] Six products are accused of infringing 40 claims, 10 products are accused of infringing 41 claims, and one product is accused of infringing 63 claims. Because Avocent must prove infringement of each claim by each product independently, the number of combinations appears to be: $(6 \times 2^{40}) + (10 \times 2^{41}) + (2^{63})$. That is an unfathomably large number that is more than nine followed by 18 zeros.

1

**BACKGROUND**

In August 1995, Avocent[2] filed U.S. Patent Application No. 519,193 directed to prior art KVM switches that include prior art on-screen display (OSD) chips manufactured by other companies (*e.g.*, the specification includes references to NEC and a Motorola OSD chip). Through a series of continuation applications from the '193 application, Avocent has multiplied the resulting number of patents and claims by varying the wording of claims directed to the basic idea of KVM switches that include OSD chips manufactured by other companies. As originally filed, the '193 application contained eight claims. (*See* Ex. A (excerpts from Application Serial No. 08/519,193, dated August 25, 1995).) To date, Avocent's efforts to multiply the patents and claims over the last 13 years have resulted in six United States patents (including 124 claims) from the single application filed in August of 1995.[3] Given the large number of claims based on a single original application, many of the claims have overlapping scope and, consequently, the U.S. Patent Office has required Avocent to file terminal disclaimers restricting the term of several of the patents to the same as Avocent's first issued patent in this patent family.

In the present case, Avocent has asserted four of the six patents spawned by the '193 application and 63 of the corresponding 99 claims. (*See* Exs. B-E (cover page and claims for four patents-in-suit).) The asserted claims identified in Avocent's most recent discovery responses are:[4]

| Patent | Asserted Claims |
| --- | --- |
| U.S. Patent No. 5,884,096 | 1, 6, 7, 10, 11, 20, 26, and 32 |

---

[2]  Then in the form of Avocent's predecessor, Apex PC Solutions, Inc.

[3]  More than 13 years after the original application was filed, Avocent is continuing to seek additional patents from the '193 application. In May 2005, Avocent filed its most recent continuation including 20 additional claims. Those claims were rejected as anticipated, *inter alia*, by the U.S. Patent Office in an Office Action dated April 2009.

[4]  The Complaint in this case identifies ***only*** 58 asserted claims. Avocent's discovery responses are used here because they appear to reflect Avocent's most recent claims and because the difference between 58 and 63 asserted claims is immaterial. In the United States' and Rose's view, either number is unreasonable.

| Patent | Asserted Claims |
|---|---|
| U.S. Patent No. 6,112,264 | 1-10, 14, and 16 |
| U.S. Patent No. 6,345,323 | 1-8 |
| U.S. Patent No. 7,113,978 | 1-23, 25-32, 34, 38, 41, and 42 |

Based on Avocent's discovery responses, Avocent is accusing, at least, 17 different Rose products of infringing the 63 claims in this litigation. (*See* Ex. F (Avocent Redmond's Supplemental Response to Rose Electronics' First Set of Interrogatories (No. 1), dated May 22, 2009).) The accused products and their date of first sale are listed below:

| Product Name | Date of First Sale (at least as early as) |
|---|---|
| UltraView w/ OSD | 4/16/97 |
| UltraMatrix X | 7/9/98 |
| UltraView Pro | 5/3/99 |
| ServeView Pro w/ OSD | 11/1//99 |
| UltraMatrix E | 1/3/00 |
| Vista w/ OSD | 2/2/00 |
| MultiVideo | 10/11/00 |
| UltraMatrix Remote | 2/25/02 |
| UltraConsole | 6/10/03 |
| QuadraVista | 2/11/05 |
| Xtensys | 7/13/05 |
| UltraView Remote | 7/19/05 |
| UltraConsole Remote | 7/29/05 |
| UltraView Remote 2 | 5/16/08 |
| UltraMatrix Remote 2 | 5/21/08 |
| UltraConsole Remote 2 | 7/29/08 |
| Vista Remote 2 | (no sales through at least March of 2009) |

3

In addition to the products listed above, Avocent is also accusing the Rose RackView product "to the extent any claim arguably recites a workstation." (*See* Ex. F at p. 6.)

If Avocent were going to attempt to prove infringement of each asserted claim by each accused product, it would need to establish over 700 cases of infringement. Indeed, on May 22, 2009, Avocent served claim charts related to its infringement allegations that alone ran to more than 125 pages. (*See* Ex. F.) Likewise, every prior art reference (and combination thereof) that invalidates each of the 63 asserted claims will require the United States to identify and describe its invalidity contentions 63 separate times for *each* of the prior art references. In other words, if there are only 10 prior art references, then 630 separate invalidity contentions will require litigation and trial.

## DISCUSSION

This Court, like every court, has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936). Faced with large numbers of asserted claims from multiple patents, district courts around the country have placed limitations on the number of claims that may be asserted by the patentee. For example, in *ReRoof America, Inc. v. United Structures of America, Inc.*, C.A. No. 96-cv-388 (N.D. Okla.), *aff'd*, No. 98-1378, 1999 WL 674517 (Fed. Cir. Aug. 30, 1999) (unpublished), the district court limited the plaintiff to a single claim from each of the five patents-in-suit and that decision was affirmed by the Federal Circuit. *Id*. at *4-6. Likewise, in *Kearns v. General Motors Corp.*, C.V. No. 2:85-cv-70461 (E.D. Mich.), *aff'd*, 1994 WL 386857 (Fed. Cir. July 26, 1994) (unpublished), the patentee sought to assert 51 claims from the five patents-in-suit (as well as other claims from other patents). The district court ordered the plaintiff to limit the asserted claims to no more than one representative claim for each of the five patents and that decision was, again, affirmed. *Id*. at *1-2. *See also Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, 2005 WL 2304190 (D. Del. Sept. 20, 2005) (plaintiff limited to 10 claims in nine-patent case); *Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 326 F. Supp.2d 1060, 1066 (C.D. Cal. 2003)

(plaintiff limited to three claims per asserted patent). Indeed, at least one court that regularly hears patent cases has adopted a policy of limiting the number of asserted claims to 10 per case (without motion from either party) and requiring the patentee to identify the claims before the claim construction process begins. (*See* Ex. G (Judge Folsom's "Example Docket Control Order" at Step 8).)

While the courts in *ReRoof America* and *Kearns* limited the plaintiff to a single claim from each patent, in the interests of compromise, the United States and Rose have proposed that Avocent be limited to 10 claims in this four-patent case. That is the same number adopted in *Fenster* and adopted by Judge Folsom and provides more than sufficient flexibility to Avocent to choose among a number of claims.

In response to the United States' and Rose' proposal, Avocent stated, in part:

> While there are many claims currently at issue in the case, discovery will guide the parties to a reasonable number of claims that will ultimately be tried. It may be that fewer than 10 claims will be tried in this case, but we must continue with discovery as to all asserted claims at this juncture.

(*See* Ex. H (Letter from Donald Jackson to James Pistorino, dated May 26, 2009).) Avocent's response that it ***may*** limit the asserted claims ***after*** discovery, at best, merely guarantees that the efforts of the Court and the parties will be wasted. Even if Avocent were to drop claims after the close of discovery (which it has refused to commit to do), that would be after the parties briefed and the Court was forced to consider and decide claim construction issues for all 63 claims. Thus, Avocent's position would guarantee that either (1) the parties' and the Court's efforts for dropped claims will be wasted, or (2) Avocent would proceed to trial with an unreasonable number of claims.

The unreasonable number of claims has the same effect on discovery more generally. As noted above, Avocent's own efforts to merely prepare charts outlining its infringement allegations of the 63 claims by the 17 products stretch to more than 125 pages. Avocent has served discovery asking the United States and Rose to respond with non-infringement positions to Avocent's 125 pages. In addition, Avocent has also served discovery seeking invalidity

analyses as to all 63 claims. (*See* Ex. F at p. 4.) Again, Avocent's refusal to limit the asserted claims would guarantee that either a large part of the parties' efforts will be wasted (in the event it drops claims just prior to trial) or that Avocent would proceed to trial with an unreasonable number of claims. Indeed, the number of trial days that will be necessary to try validity, infringement, enforceability, and damages on 63 different patent claims will be oppressive. Like the courts listed above, this Court should reject Avocent's unreasonable and wasteful approach.

The same "maybe after discovery" approach offered by Avocent has been rejected by other courts. In *Fenster*, the patentee asserted 90 claims from nine patents. When the defendant sought to limit the claims to a reasonable number, the patentee offered that it would "likely limit them after full discovery." The court rejected that approach, held that the number of asserted claims was unreasonable and limited the patentee to 10 claims total. *Id*. at *3. Likewise here, Avocent's "maybe after discovery" approach should be rejected and Avocent limited to no more than 10 representative claims total, the same number set by the *Fenster* court in a case involving even more patents.

## CONCLUSION

Defendants request that this Court limit the number of asserted claims to no more than 10 representative claims, including one from each patent, and require Avocent to identify the asserted claims before claim construction briefing begins.

Respectfully submitted,

Dated: June 3, 2009

/s/ Bert C. Reiser
Bert C. Reiser
HOWREY LLP
1299 Pennsylvania Avenue NW
Washington, DC  20004
Tel:  202.783.0800
Fax:  202.383.6610
reiserb@howrey.com

*Attorney for Intervenor*
Rose Electronics
10707 Stancliff Road
Houston, TX  77099

OF COUNSEL:

Michael S. Dowler
Jeffrey J. Phillips
HOWREY LLP
1111 Louisiana, 25th floor
Houston, TX  77002-5242
Tel:  713.787.1400
Fax:  713.787.1440
dowlerm@howrey.com
phillipsj@howrey.com


Dated:  June 3, 2009

Tony West
    Assistant Attorney General
John Fargo
    Director


 /s/ Robert G. Hilton
Robert G. Hilton
   Attorney
Commercial Litigation Branch
Civil Division
DEPARTMENT OF JUSTICE
Washington, DC  20530

*Attorneys for Defendant*
*THE UNITED STATES*

## RCFC 26(c) CERTIFICATION

    The undersigned hereby certifies the following: Counsel for Rose Electronics has conferred with counsel for Avocent Redmond Corp. (Mr. Don Jackson) by telephone on June 1, 2009, and with counsel for the United States (Mr. Robert Hilton) by telephone, in an effort to resolve this dispute without court action. Counsel for the United States does not object to the relief requested by Rose, but counsel for plaintiff Avocent Redmond Corp. objects. Rose and Avocent's counsel could not reach a resolution on their disagreement.

                                            /s/ Bert C. Reiser
                                            Bert C. Reiser
                                            Attorneys for Rose Electronics

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served on this 3rd day of June, 2009 with a copy of this document via the Court's CM/ECF system per RCFC 5.2. Any other counsel of record will be served by electronic mail on this same date.

**James D. Berquist**
**J. Scott Davidson**
**Donald L. Jackson**
**Grace Obermann**
**DAVIDSON, BERQUIST JACKSON & GOWDEY LLP**
**4300 Wilson Blvd, Suite 700**
**Arlington, VA  22203**

*Attorneys for Plaintiff*
*AVOCENT REDMOND CORP.*

             /s/ Bert C. Reiser
              Bert C. Reiser