IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) No. 08-69C ) |
| Defendant, | ) Judge Lawrence S. Margolis ) |
| and | ) ) |
| ROSE ELECTRONICS, | ) ) |
| Defendant-Intervenor. | ) |

DEFENDANT'S RESPONSE TO PLAINTIFF
AVOCENT REDMOND'S OPENING CLAIM CONSTRUCTION BRIEF

Defendant hereby responds to Plaintiff Avocent Redmond's (Avocent) Opening Claim Construction Brief, filed August 21, 2008. Since Rose Electronics (Rose) is also responding to Avocent's claim construction brief, the Government will only provide some additional response addressing certain of the disputed claim terms.

I.   The Specification Does Not Suggest That "Signal" Means Anything Other Than Its Nearly Universal Meaning

As pointed out in Rose's opening Claim Construction Brief, filed August 21, 2009, at page 8, dictionaries and electronic dictionaries indicate that *signal* (in its electronic sense) almost universally means *an electrical quantity or structure that is used to convey or transmit information, such as voltage, current, or frequency*.

By contrast, Avocent contends, at page 13 of its brief, that the claimed "signal" means *information content*. The record does not support Avocent's conclusion. First, Avocent argues that *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003) and *Avocent Redmond Corp. v. Raritan Computer, Inc.*, 2005 U.S. Dist. LEXIS 4017, 2005 WL 612722 (S.D. N.Y., March 11, 2005) "equated 'signal' with 'information content.'" That argument is not correct. *Apex* merely construed the claimed "data packet" to "include[ ] electronic signals," and it construed the claimed "switch" to include devices which did not provide a direct electrical path. 325 F.3d at 1375, 1377. In fact, the word *content* does not appear in the specification of any of the patents in suit, nor in the two cases cited by Avocent. Neither case holds that the claim word "signal" means *information content*.

Avocent also relies upon the declaration of Joseph C. McAlexander ¶¶ 150-54 to support the conclusion that the claimed "signal" means *information content*. Paragraph 150, as well as U.S. Patent 5,884,096 (the '096 patent), Col. 3, line 38-Col. 4, Line 12, correctly state that the claimed invention "converts the 'signals.'" Paras. 150-54 give examples of the signals' being changed. By contrast, Para. 150 correctly states that the information "must be the same," or remain *un*-changed. Para. 151 also states that "the pertinent information content – the "K" – remains the same," or is *un*-changed.

Having correctly established that the signal changes and that the information (or "information content") does *not* change, as they pass through the circuitry, Avocent now proposes the claim interpretation in which the claimed "signal" means *information content*. This proposed construction cannot be, since the claimed "signal" has the undisputed property of being

changed as it passes through the circuitry, and the information (or information content) has the undisputed property of being *un*-changed as it passes through the circuitry.

Moreover, information is always part of the "content" of a communication or signal; therefore, the word *information* alone would suffice instead of the two words *information content*. Furthermore, a signal is the *electrical quantity or structure that is used to convey or transmit information* [or "information content"]*, such as voltage, current, or frequency*. Use of the phrase *information content* appears to be an attempt to read out of the claim the requirement for the claimed "signal" to signify *an electrical quantity or structure* …

For the reasons stated in Rose's opening Claim Construction Brief at page 8 (dictionary definitions), the claimed "signal" means *an electrical quantity or structure that is used to convey or transmit information, such as voltage, current, or frequency*.

II.    "Remote" Means *Separated By a Distance That Is Greater Than Ususal*

As pointed out in Rose's Brief at pp. 16-17, *remote* usually means *separated by a distance that is greater than usual*. The specifications of the patents in suit sate the following:

> The present invention provides a computerized switching system that allows centrally located network administrators to operate multiple server computers over long distances without requiring a complicated wiring scheme. In general, the switching system allows data transmission between a workstation and a remotely located server computer.

U.S. Patent 5,884,096, Col. 1, Lns. 49-54 (Summary of Invention). The antecedent for the "remotely located server computer" is the "server computer [operated] over long distances." Thus, the word *remote* signifies a significant distance between computer operator and server computer. At present, there is no issue of law as to what a *greater than usual* distance is between an operator and server computer.

Instead, Avocent again calls upon the declaration of Mr. McAlexander ¶¶ 222-25 to argue that the claim word "remote" means only that the operators and servers are *capable of* being separated by a significant distance. The gist of Mr. McAlexander's lengthy observations is that there is nothing *else* in the specification or claims that requires significant separation between operator and server computer. The expert argument falls short of contradicting the statement in the specification, in which the antecedent of "remotely located server computer" is the "server computer [operated] over long distances." Mr. McAlexander's argument falls short of suggesting that the claims use *remote* in some way other than its usual meaning of *separated by a distance that is greater than usual*.

III.   A "Crosspoint Switch" Is *a Set of Vertical and Horizontal Switches Arranged In a Matrix, and Which Serves To Connect Any Vertical Point With Any Horizontal Point*

The claim term "crosspoint switch" is found in some, but not all, claims of U.S. Patent 6,345,323 (the '323 patent) and in some, but not all, claims of the '978 patent.

*Apex*, 325 F.3d at 1377, held that the claimed "crosspoint switch" was "a programmable device capable of forwarding packets from one computer/workstation/server to another." What was at issue, and had been argued, in *Apex* was whether the claim term "switch" required operation via a direct path. Whether or not the claim word "crosspoint" is a structural limitation was not argued or addressed in *Apex*. *Apex* contained no mention of any evidence of what might distinguish a *crosspoint* switch from a *non-crosspoint* switch. Although *Apex* encloses the word *programmable* in quotation marks ("programmable switch") and cites the specification of U.S. Patent 5,937,176, the word *programmable* is not to be found in that patent. (Appendix hereto)

The district court in *Raritan*, 2005 U.S. Dist. LEXIS 4017 at *13, 2005 WL 612722 at *5, adopted the Federal Circuit's definition.

The Rose brief, at page 22 (referencing Rose Exhs. K, L, and M), presents unrebutted documentary evidence of the meaning of *crosspoint switch*. These documents were not created in response to any of the litigation surrounding the patent in suit and, thus, have more credibility than litigation-related statements. Exhibit K is an electronic dictionary, and Exhibits L and M are advertising materials from persons unrelated to this case. Exhibit K (the electronic dictionary) states:

> **crossbar switch** A set of vertical and horizontal switches arranged in a matrix, and which serves to connect any vertical point with any horizontal point. Such a switch may be contained on a single chip, and may be used, for instance, for switching in a communications network. Also spelled **cross-bar switch**. Also called **crosspoint switch**.

(**bold type** in original)

The fact that a "crosspoint" switch is a limitation in some, but not all, claims suggests that the claim word "crosspoint" provides some structural limitation. Furthermore, if the claim word "crosspoint" merely meant no more than *programmable*, then there would be little purpose in using the obscure word "crosspoint." The way that the obscure word *crosspoint* is used in the patents in suit suggests that it has some structural meaning other than *programmable*.

Avocent relies upon an incorrect assumption of Mr. McAlexander. He incorrectly assumes at Para. 142 that, if the claimed "crosspoint switch" meant *switches arranged in a matrix*, then the claims would not cover the preferred embodiment. Actually, the claim phrase "crosspoint switch" does not appear in all claims of the patents. Thus, there still are claims in

the patents which cover the preferred embodiment. A keyboard video mouse *with* a crosspoint switch is simply a non-preferred embodiment that is covered by an alternative claim.

Moreover, Mr. McAlexander's proposed construction is *not based at all* on his observation as to what *crosspoint switch* means to persons in the art. The only basis for his conclusion as to the meaning of *crosspoint switch* is the attorney-style argument discussed in the preceding paragraph. Unsupported arguments cannot create a genuine issue of material fact. His declaration should be disregarded.

The unrebutted evidence is that a *crosspoint switch* is *a set of vertical and horizontal switches arranged in a matrix, and which serves to connect any vertical point with any horizontal point*.

IV.   A Cable Is Not the Same as A Medium For Conveying – a Cable Is a Physically Defined Structure; a Medium For Conveying Is a Functionally Defined Structure

Avocent's brief, at page 22, requests the court to define a "cable" as "a dedicated medium for conveying a signal from one location to another, for example a wire." Avocent cites for support Mr. McAlexander's declaration ¶ 185. Mr. McAlexander does not say that the proposed definition is a definition used in the art.

A cable is universally understood to be a physically defined structure, typically *an assembly of electrical conductors insulated from each other but laid up together, usually by being twisted around a central core*. Merriam-Webster's Collegiate Dictionary 158 (10th ed. 2001). By contrast, a medium is a functionally defined structure, typically *a means of effecting or conveying something*. Merriam-Webster's Collegiate Dictionary at 720. Patent law recognizes physically defined claim structures to be different from functionally defined claim

structures. 35 U.S.C. § 112 ¶ 6 (construction of "a means or step for performing a specified function"). The two different types of claim limitations are to be construed differently, as set forth in that statute. If Avocent had desired a functionally defined structure, it should have drafted one in the way that is set forth in Section 112 ¶ 6.

For that reason, Avocent's attempt to replace the physically defined structure (cable) with the functionally defined structure (medium for conveying) should be denied. The claimed "cable" should be defined as *an assembly of electrical conductors insulated from each other but laid up together*. *Merriam-Webster's Collegiate Dictionary* at 158.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN FARGO
Director

s/Robert G. Hilton
ROBERT G. HILTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0346

September 11, 2008        Telefax:    (202) 307-0345