## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP., a Washington corporation, | |
| Plaintiff, | No. 08-69C |
| v. | Judge Lawrence S. Margolis |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| ROSE ELECTRONICS, a Texas general partnership, | |
| Defendant-Intervenor. | |

## AVOCENT REDMOND'S OPPOSITION TO ROSE'S MOTION TO DEEM REQUESTS ADMITTED OR TO COMPEL AVOCENT TO FURTHER ANSWER

Plaintiff Avocent Redmond Corp. ("Avocent") opposes the motion of Rose Electronics to deem its Requests to Admit to Avocent admitted.

On September 30, 2009, following a meet and confer on this issue, Avocent moved this Court for a Protective Order relieving Avocent of any burden to further respond to the 331 Requests to Admit Rose has already served in this action and to limit the number of requests for admit that can be served by each side to 75. Avocent opposes the present motion on the grounds established to support its motion for a protective order and incorporates that memorandum by reference as if more fully set forth herein. Rose is improperly using Requests to Admit as a way to harass and burden Avocent. More specifically, many of Rose's Requests are directed to irrelevant subject and would require too much investigation to fully answer. Accordingly, Avocent respectfully requests that all aspects of Rose' present motion be denied.

**A.  Many Of Rose's Requests Are Directed To Irrelvant Subject Matter**

The majority of Rose's Requests to Admit are directed to Avocent's alleged delay in filing suit *before* Rose raised 28 U.S.C. § 1498 as an affirmative defense in the related Seattle District Court action.  Because Avocent could not sue both Rose and the United States seeking compensation on the same product sales, 28 U.S.C. § 1500, Avocent was not in the position to sue the United States under § 1498 until Rose raised that affirmative defense in 2007, just a year before Avocent initiated this action.  Rose had the option of not raising § 1498 as an affirmative defense in the district court litigation.  In that situation, which is not uncommon, the government supplier is responsible for its sales to the United States.  *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 555 (Fed. Cir. 1990).[1]  Prior to the pleading raising § 1498 as a defense, Avocent had no reason to believe that it needed to pursue a claim against the United States.

By its very terms, § 1500 provides that this Court does not have jurisdiction over any claim the plaintiff has pending in any other court against a party purporting to have acted under the authority of the United States.  Once a district court litigation is initiated against a government supplier, § 1500 operates as an effective bar to a claim against the United States *unless and until* that party pleads § 1498 as a defense for certain of its sales.  Otherwise, the plaintiff would be seeking compensation from two courts on the same sales.

When the government supplier pleads and establishes a § 1498 defense, the district court is divested of jurisdiction to award damages for those sales, and the plaintiff must bring its claim for unauthorized use in the Court of Federal Claims.  Here, despite an earlier patent infringement litigation between these parties in 1998 through early 1999, Rose did not raise § 1498 as an

---

[1] The same result would occur when a defendant has pled § 1498 but not proven that defense at trial.

affirmative defense until 2007. (*See* Berquist Declaration ("Berquist Decl."), ¶ 2, Tab A (Rose's 1998 Answer)). Thus, Avocent was not on notice that it needed to file an action in this Court until 2007, and Avocent's possible awareness of Rose's sales to the United States at an earlier time is irrelevant to any issue in this case.

**B. Rose's Requests Are Improper And Impose An Undue Burden On Avocent**

Critically, and contrary to Rose's sweeping generalization otherwise, Avocent did not refuse to admit or deny *even one* of Rose's Requests on the grounds of relevance only. Rather, Avocent responded to even irrelevant Requests if the answer could be obtained without extensive investigation. For example, in response to Rose's Request No. 45, directed to whether Avocent (and its officers, directors, employees, and agents) viewed Rose's website in 1998, Avocent objected to the Request as irrelevant (as explained above) but admitted that the statement was true. Avocent was able to admit that Request because it did not require extensive investigation – Avocent knew that its counsel had in fact viewed Rose's website in 1998. Accordingly, Avocent admitted that Request even though Avocent believed, and still believes, that the information sought by that Request is irrelevant. Avocent did, however, refuse to admit or deny the Rose Requests that were *both* irrelevant *and* required Avocent to undertake an extensive investigative effort.

It is generally accepted by courts that a Request to Admit is not a fact discovery device. *Moldenhauer v. Tazewell-Pekin Consol. Communs. Ctr.*, 2006 U.S. Dist. LEXIS 57058 (C.D. Ill. 2006). Instead, the purpose of requests for admission is to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial. If the truth of the facts in question is known to the parties or can be ascertained by reasonable inquiry, they can be eliminated as a point of contention in the case. *Lakeland Ptnrs., L.L.C. v. United States*, 88 Fed.

Cl. 124 (Fed. Cl. 2009). A request, like many of those served by Rose here, that requires a party

"to make an across-the-board admission" about the conduct, or knowledge, of its personnel is

improper. *Ransom v. United States*, 8 Cl. Ct. 646, 648 (Cl. Ct. 1985). This is especially true,

where, as here, the information sought by the Request is irrelevant.

Rose's Request No. 9 demonstrates the problem:

**REQUEST NO. 9:**

Admit you have been aware of Rose's GSA contract(s) since at least 1995.

**RESPONSE:**

Avocent objects to this request as being directed to an irrelevant subject
matter. Avocent's infringement claim against the United States did not
mature until after Rose plead an affirmative defense under §1498. Prior to
that time, it would have been improper to pursue a claim against the United
States and Rose for the same sales. Rose did not plead the §1498 defense
until February 8, 2007. The detailed factual investigation required by this
request is thus overly burdensome given this lack of relevance.

(*See* Berquist Decl., Tab B (Avocent's Responses)). The admission sought by this Request

requires information not readily available and would require Avocent to survey its corporate

records and interview its current and former employees, officers, directors and agents. That is

plainly unreasonable, especially given the Request's lack of relevance.[2]

Requests to Admit are useful tools when a party has obtained witness testimony or

identified a document which tends to establish a fact which that party would like to remove from

contention. Here though, Rose uses a string of alternately worded Requests in an effort to force

Avocent to conduct Rose's discovery investigations for it. None of the disputed Requests are

---

[2] The burdens associated with Rose's Requests to Admit, and the unlimited number of
those Requests, was discussed at the parties meet and confer at which Rose refused to
acknowledge a problem or agree to a reasonable limit on the number of Requests that can be
served. That issue is the subject of Avocent's September 30 Motion for a Protective Order and
an Order to limit the number of Requests to Admit that can be served.

premised on prior testimony or documentary evidence, and the investigative burden associated with these Requests is too great.

Never once in the meet and confer between the parties <u>or</u> in the present motion has Rose even addressed the investigative burden it seeks to impose on Avocent through its Requests for Admission. Rather, Rose focuses exclusively on Avocent's relevancy argument. But relevance was only one part of Avocent's objection, and not even the important part. Where Avocent could admit the Request based on what it knows today, it did – even when it believed that the admission would turn out to be irrelevant. (*See e.g.*, Berquist Decl., Tab B, pp. 19, 21-22 (Avocent's Response to Requests 45 and 51-52)). The real problem with Rose's Requests is that they attempt to impose an unreasonable discovery burden on Avocent. That is why Avocent asked this Court for a Protective Order.

**C. Rose's Explanations Fail To Explain How<br>Its Requests Even Support Their *Laches* Theory**

Request No. 9, reproduced above, demonstrates a further problem with Rose's Requests. Rose did not introduce a KVM with OSD (the accused product) until 1998. Thus, even accepting Rose's assertion that any delay should be measured from the date Avocent first knew that Rose was selling the accused products to the United States, it is not clear how awareness of Rose's GSA contract in 1995 would be relevant. Similarly, it is not clear why review of various Rose's product catalogs before 2002, the subject of Rose's Requests 34-41, would be relevant to when Avocent first knew of Rose's sales of accused products to the United States. The same holds true of Requests 42-49 as to Avocent's review of Rose's website in various years, Requests 53-74 (Avocent's participation in various tradeshows) and Requests 1-4, and 9-33. At the meet and confer, Avocent asked Rose to explain how these questions were relevant. Rose flatly refused to answer that question as to any of its Requests. (Berquist Decl. at ¶¶ 5-7). Even now,

Rose simply advises the Court that its inquiries are relevant because the documents at issue "advertised Rose's sales to the United States." (Rose Memo., p. 6).

But Rose refused to provide that same information when asked at the meet and confer, and even now, Rose's statements regarding purported relevance are conclusory and uninformative. Specifically, do any of the documents addressed by Rose's Requests advertise the sale of its KVM switch with OSD to the United States? As to the catalogs published before Rose introduced the accused products, that answer to that question would, of course, be no. Rose was not yet selling the accused products in 1995 and 1996. Thus, Rose's 1995 and 1996 catalogs could not advertise the sale of those products to anyone. The 1998 Rose website, which Avocent admitted to having reviewed (*see* Avocent Response to Request No. 45) simply advised that Rose sold products to the United States. It did not "advertise" the sale of what Rose describes as its "alleged infringing products." (Rose Memo. p. 7).[3] Even assuming that any alleged delay should be measured from the date Avocent first knew, or should have known, that the United States was buying Rose's accused products, Rose has not established the relevancy of the disputed Requests and Rose has not explained why its Requests justify the burden and expense required to obtain an answer.

### D. Conclusion

For all the above reasons, and the reasons stated in Avocent's September 30 Motion for a Protective Order, Avocent respectfully requests that this Court deny all aspects of Rose's present motion. Rose has propounded an unreasonable number of admission requests and has those used

---

[3] Rose mistakenly refers to the products purchased by the government as "infringing products" in order to argue that Avocent could have brought the present action at any time under 35 U.S.C. § 271. (Rose Memo. p. 7). That argument, of course, ignores the fact that "infringement" actions against the United States are limited under § 1498 to claims for "unauthorized" use and that such claims must be brought in this Court.

requests improperly.  The investigative burden associated with responding to Rose's numerous Requests is oppressive.  This is especially true in light of the questionable relevance of many, if not all, of the Requests served.  The better course of action would be to limit the number of Requests each party can serve so as to limit Rose's ability to force Avocent to needlessly expend resources responding to irrelevant questions, discourage the use of Requests for fact discovery, and promote the proper use of this device.

DATED:  October 15, 2009.                  Respectfully submitted,

                                           PLAINTIFF AVOCENT REDMOND CORP.,
                                           by and through its Attorneys

                                           s/James D. Berquist
                                           James D. Berquist
                                           J. Scott Davidson
                                           Donald L. Jackson
                                           Grace K. Obermann
                                           DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
                                           4300 Wilson Blvd, Suite 700
                                           Arlington, Virginia 22203
                                           Tel. 703-894-6400
                                           Fax. 703-894-6430

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per RCFC 5.2.  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Donald L. Jackson
Donald L. Jackson