# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AVOCENT REDMOND CORP.,<br>    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br>    Defendant,<br>and<br>ROSE ELECTRONICS,<br>    Defendant-Intervenor. | No. 08-69C<br><br>Judge Lawrence S. Margolis |

**AVOCENT REDMOND'S REPLY IN SUPPORT OF ITS MOTION TO PRECLUDE GEORGE SCHNURLE FROM ACCESSING AVOCENT'S <u>PROPRIETARY INFORMATION</u>**

James D. Berquist
J. Scott Davidson
Donald L. Jackson
Grace K. Obermann
DAVIDSON BERQUIST JACKSON &
GOWDEY, LLP
4300 Wilson Blvd, Suite 700
Arlington, Virginia 22203
Tel. 703-894-6400
Fax. 703-894-6430

Plaintiff Avocent Redmond Corp.'s ("Avocent's") motion to preclude George Schnurle from accessing Avocent's proprietary information should be granted. (*See* D.E. 220). Even at this late date, Defendant-Intervenor Rose Electronics ("Rose") will not unequivocally state that Mr. Schnurle will not (1) prepare an expert report in this case, or (2) testify as a technical expert witness in this case. Indeed, Rose has not identified a single legitimate reason for disclosing Avocent's proprietary information to Mr. Schnurle now that discovery has closed and the deadlines for expert reports have passed.

## I.      ARGUMENT

### A.      Rose Does Not Intend to Use Mr. Schnurle Merely as a "Technical Consultant"

Rose suggests that it only sought to have Mr. Schnurle approved under the protective order for the purpose of providing "technical consulting" to Rose's outside counsel to help them understand the technical issues in the case. That suggestion is not supported by the facts. Rose's counsel first made that representation to Avocent's counsel during a telephone call on March 16, 2010. (*See* Jackson Decl., ¶ 2). Avocent's counsel asked Rose's counsel to put that representation in writing so that Avocent could consider Rose's request that Avocent withdraw the present motion in light of that statement. (*See id.*). Rose opted against providing that written representation. (*See id.*).

On March 18, 2010, Avocent's counsel wrote to Rose's counsel regarding Mr. Schnurle and *again* raised the issue of whether Rose would provide a written representation that Mr. Schnurle's access to Avocent's confidential information would only be for the purpose of

serving as a technical consultant to Rose's counsel. (*See* Exh. 3).[1] Rose never responded to that letter either.

In its opposition brief, Rose again avoids the issue and never affirmatively states that Mr. Schnurle needs access to Avocent's confidential information *solely* as a technical consultant to Rose's counsel to assist them in preparing for trial. Instead, Rose makes the vague assertion that Mr. Schnurle's work on this case "will include analysis of Avocent's technical information." (See D.E. 222, p. 1). Indeed, Rose never unequivocally states that Mr. Schnurle will not submit an expert report or that he will not be designated as an expert witness for trial. Instead, Rose attempts to protect its ability to do just that by arguing that "***if*** Mr. Schnurle were to prepare an expert report … and ***if*** Rose were to designate him as an expert witness for trial," then Avocent could file another motion. (D.E. 222, p. 1 (emphasis added)). This is far from a representation that Rose will *not* submit an expert report from Mr. Schnurle and designate him as an expert witness at trial.

If Mr. Schnurle were not going to serve an expert report or testify as an alleged expert in this case, Rose could have made that representation to the Court. Had it done so, it would have been more difficult for Avocent to prevail on it motion to preclude Mr. Schnurle. Rose's failure to make those representations implicitly confirms Rose's intention to spring Mr. Schnurle as a testifying expert on Avocent and the Court just before trial. But opening expert reports were due on November 23, 2009, rebuttal reports were due on December 14, 2009, and discovery closed on December 23, 2009. (*See* D.E. 50).

Moreover, Rose's opposition suggests that its counsel needs Mr. Schnurle's assistance to understand and analyze the technical issues in this case. (*See* D.E. 222, p. 1). This strains

---

[1] Exhibits 1-2 are attached to Avocent's motion to preclude Mr. Schnurle under the protective order. (D.E. 220). Exhibits 3-7 are attached to the present reply brief.

credulity. Avocent originally sued Rose for infringement of the first Beasley patent in 1998. After the intervening Patent Office actions and the *Raritan* litigation, Avocent again asserted the Beasley family of patents against Rose in November 2006 – over three years ago – in the Seattle district court. Avocent initiated the present action against Rose's products in January 2008. Rose would have the Court believe that, after all those years of active litigation, Rose's lawyers still have not reached an understanding of the technical issues involved in this case, thereby necessitating Mr. Schnurle's access to Avocent's confidential information on the eve of the present trial. Rose's counsel know the technical issues in this case. But even if one were to assume that they do not understand those issues, Rose's previously-identified technical expert, Dr. Eisenbarth, is fully available to assist Rose and its counsel in preparing for trial. Indeed, Dr. Eisenbarth *should* be the person assisting with trial preparation since he will be asked to testify on the technical issues on behalf of Rose and the U.S.

### B. Rose's Real Motive for Seeking to Disclose Avocent's Confidential Information to Mr. Schnurle

The real reason Rose wants to disclose Avocent's confidential information to Mr. Schnurle has nothing to do with assisting Rose's counsel with their trial preparation.

Mr. Schnurle's name first came up in this case when Rose identified him as an alleged <u>fact</u> (not expert) witness in Rose's Fifth Supplemental Initial Disclosures served on November 16, 2009. (*See* Exh. 4, p. 6). Rose identified Mr. Schnurle as a person that Rose may use to support its defenses who had information concerning "[c]onstruction and operation of circuit boards corresponding to circuit diagrams developed by Rose during Rose's development of its first commercial OSD-equipped KVM switch." (*See id.*).[2] Rose also listed Mr. Schnurle on its

---

[2] For purposes of this motion alone, Avocent will assume that this is actually an area of fact testimony as opposed to expert opinion testimony. The truth, however, is that Mr.

-3-

trial witness list served on February 25, 2010. (*See* Exh. 5, p. 9). The subject matter of Mr. Schnurle's trial testimony is identical to the subject matter contained in Rose's Fifth Supplemental Initial Disclosures. (*Compare* Exh. 4, p. 6, *with* Exh. 5, p. 9).

On its face, Mr. Schnurle's proposed area of "fact" testimony is not based on any of *Avocent's* confidential information. But Rose wants Mr. Schnurle to analyze Avocent's confidential information so that, when he testifies about Rose's alleged prior art circuit boards and schematics, his testimony will coincide with the circuit boards and circuit schematics for Avocent's patented products. If Mr. Schnurle knows how Avocent's patented products are designed, he can tailor his testimony about Rose's alleged prior art schematics and boards to mirror the schematics and boards developed for Avocent's patented products.

The problem for Rose is that Mr. Schnurle does not have access to Avocent's circuit schematics because they were produced as Avocent's confidential information under the Protective Order. That is one reason why Rose wants Mr. Schnurle to have access to Avocent's confidential information.

A second probable reason Rose wants Mr. Schnurle to have access to Avocent's confidential information is so that he can generate circuit schematics of Avocent's prior art products that look as similar as possible to the schematics for Avocent's patented products. In March 2010, Rose sent Mr. Schnurle to analyze one of Avocent's prior art products, the Desktop Concentrator, in Avocent's counsel's offices.[3] It is believed that Mr. Schnurle conducted this

---

Schnurle's 2009-2010 re-creation of alleged prior art circuit boards from alleged 1995 circuit schematics is clearly expert opinion testimony subject to the requirements of FRE 702 and RCFC 26(a)(2)(B).

   [3]   Mr. Schnurle's examination of Avocent's <u>products</u> did not require Mr. Schnurle to be under the protective order because Avocent's commercial products are publicly available, and thus, not "proprietary information." Avocent's circuit schematics are proprietary information, however.

analysis in order to, at least in part, reverse engineer the circuit schematics for this prior art product.[4]

In order to persuade the Court that there are only minor differences between Avocent's prior art products and its patented products, Rose needs the schematics Mr. Schnurle may generate to look like Avocent's schematics of its patented products. Rose can only do this by providing Avocent's schematics to Mr. Schnurle. But since Avocent's schematics have been produced as "Attorneys Eyes Only" information under the protective order, Rose cannot show them to Mr. Schnurle without violating the protective order. If Mr. Schnurle is approved as an "expert" under the protective order, Rose can provide Avocent's schematics to Mr. Schnurle. Mr. Schnurle can then tailor his schematics of Avocent's Desktop Concentrator product to look like the schematics for Avocent's patented products. The more similar the two sets of schematics look, the easier it will be for Rose to argue that Avocent's patented inventions were only a "trivial" or "minor" difference over the prior art.

Rose's strategy is improper for several reasons. First, Rose never disclosed Mr. Schnurle as an expert during discovery. Second, Rose never provided an expert report from Mr. Schnurle in accordance with the Scheduling Order. Third, Rose is improperly creating "prior art" using a fact witness. Fourth, Rose seeks to have the re-created "prior art" presented to look as similar as possible to the patented products based on its disclosure of Avocent's confidential information to Mr. Schnurle. This strategy is an abuse of the Federal Rules of Evidence, this court's rules of civil procedure, and the Scheduling and Protective Orders entered in this case.

---

[4] Rose did not send Mr. Schnurle to conduct his analysis until March 2, 2010 even though Rose's counsel had previously inspected the Desktop Concentrator product on November 19, 2009. (*See* Exhs. 6 and 7). Rose has not offered any explanation of why it waited until *after* expert reports and *after* the close of discovery to send Mr. Schnurle to conduct his analysis.

### C. Avocent Has Not Delayed Rose's Ability to Consult with Mr. Schnurle

Rose claims that Avocent has "improperly stymied" Rose's ability to prepare for trial by objecting to Rose's attempt to disclose confidential information to Mr. Schnurle. (*See* D.E. 222, p. 1). As a remedy, Rose asks the Court to *further* delay trial in this matter for every day that Mr. Schnurle is not able to access Avocent's confidential information. (*See id.*, p. 4).

Assuming that the Court allows Mr. Schnurle to have access to Avocent's confidential information, it is Rose – not Avocent – that is responsible for the delay. Rose disclosed Mr. Schnurle as a potential "fact" witness on November 16, 2009 – *prior to* the date that opening expert reports were due in this case. (*See* Exh. 4, p. 6). But Rose waited for nearly four months before it designated Mr. Schnurle as a potential expert under the protective order. (*See* Exh. 2). Had Rose designated Mr. Schnurle in October or November 2009, the issue of whether Mr. Schnurle could see Avocent's confidential information would have been resolved long ago. It was the fact that Rose delayed its designation of Mr. Schnurle that caused Avocent to file the present motion when it did. Moreover, the protective order gave Avocent 10 calendar days to object to Rose's designation of Mr. Schnurle. (D.E. 47, ¶ 8). Avocent, however, objected 5 calendar days after receiving Rose's designation, and filed the present motion the same day instead of waiting for the 10-day "negotiation" period allowed for in the protective order. (*See id.*). Thus, Avocent has *accelerated* resolution of whether Mr. Schnurle can have access to Avocent's confidential information – not delayed the process, as Rose argues.

### D. Rose's Complaint about an Inadequate "Meet and Confer" is a Red Herring

Courts impose "meet and confer" requirements so that the parties can be sure that there is an actual dispute between them. Avocent knew the parties would require Court resolution of this issue. Indeed, Rose will not withdraw its designation of Mr. Schnurle as an expert under the

Protective Order, and Avocent will not voluntarily allow Mr. Schnurle to have access to its confidential information. Thus, by March 15, 2010 when the present motion was filed, Avocent knew that there was an actual dispute that would require the Court's intervention. Avocent was proven correct when Rose refused to withdraw its designation of Mr. Schnurle in response to Avocent's March 18, 2010 letter. (*See* Exh. 3). Rose's complaint that Avocent failed to adequately meet and confer is substantively wrong, and is simply designed to distract the Court from the real issue.

**II.    CONCLUSION**

The inherent risk of inadvertent disclosure or use of Avocent's proprietary information vastly outweighs any alleged reason for Rose's request that Mr. Schnurle have access to Avocent's proprietary information under the protective order. Dr. Eisenbarth is fully available to Rose to provide whatever technical analysis of Avocent's documents may be needed by Rose. Indeed, the actual reasons Rose wants Mr. Schnurle to be cleared under the protective order are improper. Avocent respectfully asks the Court to preclude Mr. Schnurle from having access to Avocent's proprietary information. Avocent also respectfully asks that the Court deny Rose's other requests for relief.

DATED this 29th day of March, 2010.       Respectfully submitted,

                                          PLAINTIFF AVOCENT REDMOND CORP.,
                                          by and through its Attorneys

                                          /s/James D. Berquist
                                          James D. Berquist
                                          J. Scott Davidson
                                          Donald L. Jackson
                                          Grace K. Obermann
                                          DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
                                          4300 Wilson Blvd, Suite 700
                                          Arlington, Virginia 22203

Tel. 703-894-6400
Fax. 703-894-6430

-8-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per RCFC 5.2.  Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on this same date.

/s/ Donald L. Jackson_____
Donald L. Jackson